**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| EVANGELINE J. PARKER,<br><br>     Plaintiff,<br><br>v.<br><br>REEMA CONSULTING SERVICES, INC.<br><br>     Defendant. | Civil No. _____<br><br>Jury Trial Demanded |

**COMPLAINT**

Plaintiff Evangeline J. Parker, by and through her attorneys, for her complaint against her former employer, Reema Consulting Services, Inc., respectfully alleges and states as follows:

**INTRODUCTION**

This civil rights lawsuit seeks to remedy the hostile work environment to which Evangeline J. Parker ("Plaintiff" or "Ms. Parker") was subjected at Reema Consulting Services, Inc. because of her sex and the company's unlawful and discriminatory termination of her. Ms. Parker was an exemplary employee who earned six promotions based on her performance and professionalism while at the company. Faced with the hostile work environment caused by unfounded and sexually-explicit rumors targeting her, Ms. Parker tried to resolve the situation both formally or informally, including by reporting to the Human Resources at the company. Rather than correct the hostile environment, the company discharged Ms. Parker in retaliation and discriminatorily for her reporting of the sexual harassment incidents. With nowhere else to turn, Ms. Parker has been forced to resort to litigation.

1

## NATURE OF THE ACTION

1.      Plaintiff Evangeline J. Parker brings this action against Defendant Reema Consulting Services, Inc. ("Defendant" or "RCSI"), her former employer, for subjecting her to a hostile work environment on the basis of her sex, discharging her in retaliation for submitting a sexual harassment complaint to RCSI's Human Resources, and discriminating against her based on her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

2.      Plaintiff seeks back pay, compensatory damages, and punitive damages, among others, to redress injuries suffered as a result of Defendant's unlawful harassment, discrimination, and retaliation committed in violation of Title VII.

## PARTIES

3.      Plaintiff is a female resident of Temple Hills, Maryland and a former employee of Defendant.  During her employment with Defendant, Plaintiff worked at Defendant's Sterling, Virginia facility.

4.      On information and belief, Defendant is a Maryland company with its principal place of business in Gaithersburg, Maryland, and Defendant owns and operates a warehouse facility located in Sterling, Virginia.  On information and belief, Defendant employs fifteen or more employees.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3) because this action arises under the laws of the United States.

2

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because most or all of the events or omissions giving rise to the claims occurred in the Eastern District of Virginia.

**FACTS**

7.      On December 1, 2014, Ms. Parker was hired by RCSI as an inventory control clerk to work at RCSI's Sterling, Virginia warehouse facility.  She continued to work at that facility until her unlawful termination on May 18, 2016.

8.      Ms. Parker was a promising employee while at RCSI.  Although she started as a clerk, one of the lowest-level positions at RCSI, she quickly and continuously earned promotions.

9.      During the course of her employment, Ms. Parker was promoted six times including to supervisory positions, specialist positions, and finally to the managerial position of Assistant Operations Manager.

10.      To Ms. Parker's knowledge, she earned each of these promotions based on her distinguished performance and professionalism.

11.      On or about March 1, 2016, when she assumed the position of Assistant Operations Manager, Ms. Parker was one of few female employees who had reached the managerial level in several years.  She remained in that position until her unlawful termination.

12.      Approximately two weeks after she accepted the managerial role, Ms. Parker was made aware of an unfounded, sexually-explicit rumor about her that certain male employees were circulating within RCSI.  The rumor falsely and maliciously portrayed her as having a sexual relationship with a co-worker, Mr. Damarcus Pickett, RCSI's Deputy Program Manager,

3

in order to obtain her managerial position.  Mr. Pickett was a married, higher-ranking manager at RCSI.  Mr. Pickett has also stated that the rumor was untrue.

13. The rumor originated with one RCSI employee, Mr. Donte Jennings, as confirmed by multiple witnesses.  For instance, Ms. Parker was informed by Ms. Romaine Thompson, a former employee of RCSI, that Mr. Jennings was spreading the rumors.  On another occasion, Ms. Parker heard from Mr. Pickett that Mr. Jennings was the source of the rumors.

14. Mr. Jennings began working at RCSI's warehouse as a clerk (the same position Ms. Parker began in) around the same time Ms. Parker joined the company.  Although they both began working at the same level, Ms. Parker soon became Mr. Jennings's superior because of the promotions she earned.

15. Among those who were spreading the rumor was Larry Moppins, RCSI's Program Manager.  Mr. Moppins was (and, on information and belief, still is) the highest-ranking manager at the warehouse facility.

16. Mr. Pickett recounted to Ms. Parker that Mr. Moppins had derogatively asked him: "hey, you sure your wife ain't divorcing you because you're fucking [Parker]?"

17. As the rumor spread, Ms. Parker's work environment became increasingly hostile. She was treated with open resentment and disrespect from a number of her co-workers, including employees that she was responsible for supervising.

18. In an effort to resolve the hostility in her work environment informally, Ms. Parker confronted Mr. Jennings and asked him to speak directly with her if he had any questions about her conduct.  Ms. Parker also met with other employees in an effort to set the record straight.

19.     On or about April 21, 2016, Mr. Moppins called a full staff meeting, the topic of which was unknown to Ms. Parker prior to the meeting; however, it was widely understood that attendance at the meeting was mandatory for all warehouse employees.

20.     Ms. Parker was running a few minutes late for the meeting after being delayed by a work-related telephone call.  She arrived at the conference room with Mr. Pickett.  When they arrived, Mr. Moppins opened the door just enough to let Mr. Pickett in and promptly slammed the door in Ms. Parker's face and locked her out.

21.     Ms. Parker was humiliated, in front of all the warehouse employees, by Mr. Moppins's inappropriate behavior.  The meeting continued on without her, and as a result, Ms. Parker was denied an opportunity to speak for herself in the meeting.

22.     Ms. Parker learned the next day from a co-worker that the rumor was discussed at the meeting.

23.     The following day, on April 22, 2016, Ms. Parker arranged a meeting with Mr. Moppins to speak about the rumor.  Ms. Angela Wallace, RCSI's Transportation Manager, attended that meeting as a witness.

24.     In the meeting, Mr. Moppins blamed Ms. Parker for bringing the situation to the workplace.  Further, Mr. Moppins stated that he had "great things" planned for Ms. Parker at RCSI but that he could no longer recommend her for promotions or higher-level tasks because of the rumor.  He also stated that he would not allow her to advance any further within the company.

25.     Ms. Parker explained to Mr. Moppins that the rumor was untrue, and that it had been started by a co-worker who was jealous of her success at the company, but Mr. Moppins did not want to listen to Ms. Parker's explanation.

5

26.    Mr. Moppins's harsh comments and failure to listen to Ms. Parker's side of the story not only aggravated the hostile work environment to which she was subjected, but put her in fear of losing her job.

27.    On or about April 25, 2016, Ms. Parker was called to another meeting with Mr. Moppins, at which Mr. Pickett and Ms. Wallace were present as witnesses.  Again, Mr. Moppins blamed Ms. Parker for the disruption to the workplace and stated that he should have fired her the day before when she came in "huffing and puffing about this BS rumor."  During the meeting, Mr. Moppins lost his temper and began screaming at Ms. Parker.  He dismissed her after saying, "don't let this happen again."

28.    Following this meeting, it became clear to Ms. Parker that Mr. Moppins had no intention of fairly and appropriately handling the issues caused by the rumor or disciplining any of the employees who were perpetuating the rumor.  That same day, Ms. Parker went to Ms. Cathy Price, RCSI's Human Resources Manager, to file a sexual harassment complaint against Mr. Moppins and Mr. Jennings.

29.    A few days later, on April 27, 2016, Ms. Price organized a meeting with Ms. Parker, Mr. Moppins, and Mr. Pickett, during which Ms. Price encouraged the three managers to apologize to one another and instructed them to put the prior incidents behind them and move on. After the meeting, Ms. Price assured Ms. Parker that her job was not in jeopardy.

30.    Several days later, Ms. Parker left for a pre-approved vacation from May 11, 2016, through May 16, 2016.

31.    On May 12, 2016, while Ms. Parker was on vacation, Mr. Jennings submitted a complaint alleging that Ms. Parker was creating a hostile work environment against him through inappropriate conduct.  Upon her return to work on May 17, 2016, Ms. Parker was instructed to

have no contact with Mr. Jennings, even though she had not been given an opportunity to review or respond to his complaint.  Later, when Ms. Parker was informed of the specifics of Mr. Jennings's complaint, she denied Mr. Jennings's allegations to Mr. Moppins.  Upon information and belief, there were no witnesses to support Mr. Jennings's claim.

32.     Ms. Parker never acted inappropriately towards Mr. Jennings.

33.     Despite her knowledge that Mr. Jennings's complaint was untrue, Ms. Parker followed the instruction she had been given and kept away from him.  However, Mr. Jennings was permitted by his supervisor to spend time in Ms. Parker's work area conversing with employees under her supervision during working hours and distracting them from their duties. During these conversations, Mr. Jennings directed long stares at Ms. Parker, and he smirked and laughed at her.

34.     As a result of Mr. Jennings's behavior, Ms. Parker continued to be subjected to a hostile work environment.  Although she raised this situation with Mr. Shaun Reeves, her immediate supervisor, and the Human Resources Department, neither resolved the situation for Ms. Parker.

35.     On May 18, 2016, Ms. Parker was called to a meeting with Mr. Moppins, Ms. Price, and Ms. Reema Vora, RCSI's in-house counsel.

36.     During the meeting, Mr. Moppins issued two written warnings to Ms. Parker and immediately fired her.

37.     One of the warnings was based on Mr. Jennings's allegations against Ms. Parker. The other warning accused her of poor management ability and insubordination to Mr. Moppings.  These were the first written warnings Ms. Parker had ever received while at RCSI, and both were unfounded.

7

38.     Ms. Parker was terminated by Mr. Moppins approximately three weeks after she had filed a sexual harassment report against him.

39.     On information and belief, RCSI has a "three strikes" rule under which employees are subject to termination after receiving three written warnings.  To Ms. Parker's knowledge, that rule was disparately enforced such that male employees were generally not fired even after receiving three or more warnings, while some female employees were terminated without three warnings or with all three warnings being issued at once.

40.     RCSI's unlawful termination of Ms. Parker has caused, and continues to cause, her to suffer economic loss, pain and suffering, and humiliation.

41.     RCSI's hostile work environment has caused, and continues to cause, Ms. Parker to suffer economic loss, pain and suffering, and humiliation.

## INVOCATION OF ADMINISTRATIVE REMEDIES

42.     On or about August 24, 2016, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC").

43.     On or about February 18, 2017, Plaintiff was issued a Notice of Right to Sue by the EEOC.  This Complaint is filed within 90 days of receipt of that Notice.

## COUNT I
### Discrimination under 42 U.S.C. § 2000e-2 (Hostile Work Environment Harassment)

44.     Plaintiff re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 43 above.

45.     Through the forgoing actions, Defendant subjected Plaintiff to a hostile work environment and allowed harassing conduct because of her sex that was unwelcome and severe or pervasive enough to alter the conditions of her employment.

46.     Senior management personnel had actual knowledge of the harassment and did nothing to stop it.

47.     These employment practices by Defendant constitute discrimination on the basis of sex in violation of 42 U.S.C. § 2000e-2.

## COUNT II
### Discrimination under 42 U.S.C. § 2000e-3 (Retaliatory Termination)

48.     Plaintiff re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 47 above.

49.     Defendant took an adverse employment action against Plaintiff in retaliation for her opposition of what she reasonably and in good faith believed to be a violation of Title VII's prohibition on sexual harassment.

50.     Through the foregoing actions, Defendant terminated Plaintiff in retaliation for opposing unlawful and discriminatory employment practices in violation of 42 U.S.C. § 2000e-3.

## COUNT III
### Discrimination under 42 U.S.C. § 2000e-2 (Discriminatory Termination)

51.     Plaintiff re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 50 above.

52.     Through the foregoing actions, Defendant unlawfully terminated Plaintiff on the basis of sex in violation of 42 U.S.C. § 2000e-2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.     Enter a declaratory judgment finding that the foregoing actions of Defendant violated 42 U.S.C. §§ 2000e-2 and 2000e-3;

B.     Award back pay in an amount to be proven at trial;

9

C.      Award compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the humiliation, embarrassment, or mental and emotional distress caused by the conduct of Defendant alleged herein;

D.      Grant appropriate injunctive relief, including the return of Plaintiff to the employment position she would have held but for Defendant's wrongful conduct and a prohibition of similar conduct in the future;

E.      Award punitive damages to Plaintiff in an amount to be determined by the jury that would punish Defendant for its willful, wanton, or reckless conduct alleged herein and that would effectively deter Defendant from engaging in similar conduct in the future;

F.      Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

G.      Order such other relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands trial by jury for all claims which may be so tried.


Dated:  May 15, 2017                          Respectfully submitted,


                                              By:  */s/ Christine T. Dinan*

Christine T. Dinan (VSB No. 84556)
Matthew K. Handley*
Dennis A. Corkery*
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
11 Dupont Circle NW, Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010

Andrew R. Kopsidas*
Min Suk Huh*
FISH & RICHARDSON P.C.
The McPherson Building
901 15th Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

*Pending admission *pro hac vice*

Attorneys for Plaintiff
EVANGELINE J. PARKER