**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MARYLAND**

EVANGELINE J. PARKER                    *

    Plaintiff                              *

v.                                      *       Civil Action No. 8:17-CV-01648-RWT

REEMA CONSULTING SERVICES, INC.  *

    Defendant                              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Reema Consulting Services, Inc. ("RCSI"), by its undersigned attorneys, submits this

Memorandum in Support of its Motion to Dismiss the Complaint.  As is explained in more depth

below, Evangeline Parker ("Parker") claims she endured a hostile work environment, gender

discrimination and that she was retaliated against when she questioned her supervisor.  Upon

closer inspection of her allegations, it is clear that Parker cannot satisfy the elements of pleading

a hostile work environment nor can she demonstrate RCSI violated any law.

Accepting her allegations as true for the sake of this Motion only, Parker describes a

rumor which was premised only on her conduct, not her gender.  This rumor was pursued and

spread by her as she attempted to "set the record straight."  Even Parker admits that management

gave no credence to the rumor and told her to stop "huffing and puffing about this BS rumor."

Because the rumor only focused on Parker's alleged conduct and her allegations do not suggest

that similar stories or treatment existed for other female managers, Parker's allegations fail to

give rise to a cause of action for maintenance of a hostile work environment.

Further, in the most transparent attempt at salvaging her Complaint, Parker also made a

patently vague allegation, premised solely on her beliefs, that men were disciplined differently

{00352797v. (15424.00002)}

than women.  Devoid of any substantive or supporting factual allegations of any male employee being treated differently, Parker's Complaint must be dismissed.  More importantly, Parker never raised this issue with the EEOC and her Complaint must be dismissed for failure to pursue her administrative remedies.

### Background

As Parker alleged, this suit arose because she was "[f]aced with the hostile work environment caused by unfounded and sexually-explicit rumors targeting her." See Complaint, Introduction.  Parker was hired by RCSI in December, 2014 and worked at RCSI's Sterling, Virginia warehouse facility until her termination on May 18, 2016. Complaint ¶6. Approximately two weeks after she accepted a managerial role at RCSI, Parker was made aware of a rumor about her which portrayed her as having a sexual relationship with Mr. Damarcus Pickett, RCSI's Deputy Program Manager, in order to obtain her managerial position. Complaint ¶11. Parker traces the origination of the rumor to a subordinate coworker, Donte Jennings. Complaint ¶13.

Although Parker claimed the rumor spread, she has not identified anyone else who told her of it, made inquiry about it, or spread it to coworkers.  According to her Complaint, it was Parker who continued to bring up the rumor at work confronting Jennings and others. Complaint ¶18.  She made no allegation that anyone placed any credence in the rumor and although she identified that there were other female managers, she offered no facts or allegations that those other female managers were subjected to similar rumors or disrespect. Complaint ¶ 10.  In fact, Parker conceded in her Complaint that the RCSI manager, Larry Moppins, did not want to discuss the rumor and dismissed its efficacy or impact in his management of her when he told her to stop "huffing and puffing about *this BS rumor*.'" Complaint ¶ 27 (emphasis supplied).

According to Parker, this rumor led to her being excluded from a meeting for which she was late, Complaint ¶20, Mr. Moppins' refused to listen to Parker's side of the story, Complaint ¶26, that Jennings made a harassment claim against her which she denied, Complaint ¶31, and that Jennings "was permitted by his supervisor to spend time in Ms. Parker's work area conversing with employees under her supervision during working hours and distracting them from their duties. During these conversations, Mr. Jennings directed long stares at Ms. Parker, and he smirked and laughed at her." Complaint ¶33.  Although Parker insinuates her termination was precipitated by this rumor, she makes no effort to deny that the rumor was about conduct and not about her gender.

Parker further claimed that:

On information and belief, RCSI has a "three strikes" rule under which employees are subject to termination after receiving three written warnings. To Ms. Parker's knowledge, that rule was disparately enforced such that male employees were generally not fired even after receiving three or more warnings, while some female employees were terminated without three warnings or with all three warnings being issued at once.

Complaint ¶39.  This allegation was not raised in her EEOC Charge and Parker made no allegation of disciplinary treatment different from her male coworkers. See attached Exhibit 1.

After receiving a right to sue notice, Parker filed this Complaint alleging harassment premised on a hostile work environment (Count I), retaliation (Count II) and discriminatory termination (Count III).

## Standard of Review

The purpose of a Federal Rule of Civil Procedure 12(b)(6) motion is to "test[ ] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citation omitted). In considering a Rule 12(b)(6) motion, a court "must accept as

true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted), and all reasonable inferences must be drawn in the Plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The consideration of the sufficiency of the complaint is also balanced against F.R. Civ. P. 8(a)(2) that it must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the complaint need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," a plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual information "to raise a right to relief above the speculative level" so as to "nudge the[ ] claims across the line from conceivable to plausible." Id. at 555, 567; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Although employment discrimination claims carry no heightened pleading standard, the Fourth Circuit has not removed the burden of a plaintiff to plead facts sufficient to state all the elements of his or her claim. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764–65 (4th Cir.2003). The facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

> While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief. The words "hostile work environment" are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.

Bass, 324 at 764–65.

Plaintiffs must do more than "plead[ ] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[ ] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678. The complaint must not only allege but also "show" that the plaintiff is entitled to relief. Id. at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. (internal quotation marks and alteration omitted).

## I.    Parker's Hostile Work Environment Claim Must be Dismissed

For Parker to state a viable hostile work environment claim, she must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. Bass, 324 at 765; see Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir.2001). Even accepting her allegations as true, Parker cannot meet this standard here.

### a.    Even accepting Parker's allegations, it is inescapable that any alleged harassment was not based on gender but was based on Parker's conduct.

At the heart of Parker's Complaint is her belief that the rumors spread about her conduct led to a hostile work environment. According to Parker, the suit arose because she was "[f]aced with the hostile work environment caused by unfounded and sexually-explicit rumors targeting her." The courts have long held that rumors, especially those about an employee's conduct, are insufficient to find harassment. While the gossip may have had the effect of causing Parker some discomfort, "the mere existence of uncomfortable rumors in the workplace is not the type of hostile environment" that Title VII was meant to redress. McDonnell v. Cisneros, 1995 WL 110131, *8 (N.D.Ill.1995) (stating that evidence of false rumors circulating the plaintiffs' work place regarding sexual misconduct on their part was insufficient to survive defendant's motion for summary judgment on plaintiffs' hostile work environment claim); Munday v. Waste

<u>Management of North America, Inc.</u>, 858 F. Supp. 1364, 1374 (D. Md. 1994) ("Mere utterance

of an epithet which engenders offensive feelings in a female employee would not affect the

conditions of employment to a sufficiently significant degree to violate Title VII" (internal

quotations and citations omitted)).

In <u>Rose-Stanley v. Virginia</u>, 2015 WL 6756910 (W.D. Va. 2015), the court confronted

allegations similar to those presented by Parker and rejected the possibility of them being the

basis for a sexual harassment claim.

> Stanley bases her hostile environment claim on rumors about an alleged sexual
> relationship she had with Mathena, along with questions posed by Washington
> about that relationship. All of these events occurred over a period of about three
> weeks. These allegations do not rise to the level of objective hostility or abuse.
> The Supreme Court has repeatedly stated that "'simple teasing, offhand
> comments, and isolated incidents (unless extremely serious) will not amount to
> discriminatory changes in the 'terms and conditions of employment.'" <u>Clark Cty.
> Sch. Dist. v. Breeden</u>, 532 U.S. 268, 271 (2001) (quoting <u>Faragher v. Boca Raton</u>,
> 524 U.S. 775, 788 (1998)). Rumors are commonplace in the work environment,
> and Washington had the right to investigate those rumors to determine whether
> Mathena was improperly favoring Stanley. While the rumors and resulting
> conversation might have made Stanley uncomfortable, they did not create an
> objectively hostile and abusive work environment. The facts pled simply do not
> state a plausible claim for hostile environment sexual harassment.

<u>Rose-Stanley</u>, *6.

In the present action, there is little doubt that the fundamental premise of Parker's

Complaint is flawed and insufficient to support a cause of action for maintenance of a hostile

work environment.  Not only was the rumor which she claims to have been battling not the type

of comments which could give rise to a hostile work environment,[1] the alleged rumor fueling her

Complaint is based on her conduct and not her gender.  Her alleged misdeed which found its

---

[1]      <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 512, n. 3 (4th Cir. 2005) (expanding a hostile
work environment claim to cover common workplace occurrences, such as being ordered out of
an office, forbidden from leaving early, and receiving intimidating responses to letters, would
"countenance a federal cause of action for mere unpleasantness").

place into workplace gossip was an affair with a supervisor not an activity which was premised on her being female. According to Parker, this same rumor was maligning Mr. Pickett and caused him to be questioned by Mr. Moppins.  Complaint ¶16.  Importantly, Parker provides no details suggesting that the rumor was gender based or that the rumor was that she was unqualified *because* she was a woman.  In fact, Parker noted that other women held managerial roles and RCSI. Complaint ¶¶ 10, 23 (Parker was "one of few female employees who had reached the managerial level in several years"; she met with Mr. Moppins and "Ms. Angela Wallace, RCSI's Transportation Manager").  Parker has made no suggestion that the managerial positions held by those women were similarly questioned.  Instead, she summarily (and incorrectly) asserts that the negativity about her rumored relationship with Mr. Pickett was based only on her gender and not her alleged conduct.

As the court explained in Rose-Stanley, it is dubious if rumors of an affair could ever be considered to be based on plaintiff's gender.

> I also question whether the rumors about the alleged inappropriate relationship were based on the plaintiff's gender.  According to the Complaint, the rumors concerned both Stanley, a female, and Mathena, a male. In that sense, the rumors can be construed as gender-neutral. Likewise, the Complaint alleges that Washington questioned both Stanley and Mathena about the alleged affair.

Rose-Stanley, *6, n 4; see also Campbell v. Masten, 955 F. Supp. 526, 530 (D. Md. 1997)(Plaintiff's hostile work environment fails because alleged harassing conduct was based on supervisor's "fears that his wife would learn of their past affair" not verbal or physical conduct of sexual nature); Winsor v. Hinckley Dodge, Inc. 79 F.3d 996, 1001 n. 1 (10th Cir. 1996) ("although there was a sexual content to the rumors of a relationship between plaintiff and the sales manager, and the statements attributing her success to such a relationship, the district court's finding that the rumors and comments were gender neutral is not clearly erroneous.... It

appears that such rumors and inferences would have occurred even if the roles were reversed and plaintiff were male").

The rumor was that Parker was having an affair with a supervisor. Parker offers no suggestion that the rumor was premised on her gender or that any other female manager was subjected to similar comments. Even the alleged inquiry by Mr. Moppins to Mr. Pickett, the other alleged subject of the rumor, was about his divorce and participation in the conduct, i.e., the affair, and not employment actions taken based on Parker's gender. Despite its importance to her, Parker even concedes in her Complaint that Mr. Moppins did not want to discuss the rumor and dismissed its efficacy or impact in his management of her. Not only did he not want to discuss the rumor or hear "her side of the story," Complaint ¶26, he told her to stop "huffing and puffing about *this BS rumor*.'" Complaint ¶27 (emphasis supplied).

Accepting Parker's portrayal of her facts supporting her Complaint, it is abundantly clear that the employment environment which she found so offensive was premised on rumored beliefs of her actions, not her gender. Under such circumstances, it is impossible for her to demonstrate a viable hostile work environment claim. This is the same situation as found in Bass where the Fourth Circuit Court of Appeals concluded that the plaintiff's complaint could not sustain a 12(b)(6) challenge. "Bass' complaint is full of problems she experienced with her co-workers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment." Bass, 324 F.3d at 765. See also Signal v. Gonzales, 430 F. Supp. 2d 528 (D.S.C. 2006) ("aside from generally averring that she is Korean and that her supervisor treats Caucasians, African–Americans, and Puerto Ricans differently, Plaintiff offers absolutely no facts to support a causal connection between the alleged hostile environment and her race").

Since Parker's conduct led to her claims of a hostile work environment and not her gender and she has offered no causal connection between her gender and alleged mistreatment, she cannot meet the elements of a hostile work environment claim and Count I of the Complaint must be dismissed.

**b. Parker's claims of hostility were not legally sufficient to be deemed severe or pervasive.**

Even viewed in the light most favorable to Parker, the facts she alleges fall short of the type of severe or pervasive race-based activity necessary to state a hostile work environment claim. As this Court has previously held, "[p]roving that conduct rises to the level of objectively severe and pervasive is a tall order." Hill v. Panetta, 2012 WL 12871178 *8 (E.D. Va. 2012); see also E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) ("[W]e have recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test ....") (internal quotations omitted).  No matter how disrespectful the treatment "cursing, yelling, and reprimanding" are insufficient to give rise to a hostile work environment claim. Hill, 2012 WL *8; Bass (finding "a story of a workplace dispute regarding [plaintiff]'s reassignment and some perhaps callous behavior by her superiors" insufficient); Chacko v. Patuxent Inst., 429 F.3d 505, 512, n. 3 (4th Cir. 2005) (expanding a hostile work environment claim to cover common workplace occurrences, such as being ordered out of an office, forbidden from leaving early, and receiving intimidating responses to letters, would "countenance a federal cause of action for mere unpleasantness").

To be actionable, "the conduct in question must be judged by both an objective and a subjective standard: [t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." Harris v. Forklift Sys., 510 U.S. 17, 21–22 (1993).  In determining

the existence of a hostile work environment, the court must examine the totality of the circumstances, which may include (1) the frequency of the alleged discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. Harris, 510 U.S. at 17.  No single factor is dispositive, but "[e]mployment discrimination laws are not designed to create a general civility code for the workplace." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315–16 (4th Cir.2008).

Here, it is apparent that Parker's allegations, which include conduct that may have been annoying, bothersome, and stress-inducing, do not meet the "severe or pervasive" standard for a hostile environment.  Her complaints that a rumor was being spread around the workplace by unknown persons about her may have been annoying, however, that rumor played no part in the employment decisions of RCSI or how it was treating her.  Similar to other women, she was promoted to a managerial position.  She has also identified no substantively severe conduct which impeded her work progress.  According to Parker, this rumor led to limited impact in the workplace.  She was excluded from a meeting for which she was late; Mr. Moppins' refused to listen to her side of the story regarding the rumor and told her did not want to discuss it; Jennings made a harassment claim against her which she denied; and Jennings "was permitted by his supervisor to spend time in Ms. Parker's work area conversing with employees under her supervision during working hours and distracting them from their duties. During these conversations, Mr. Jennings directed long stares at Ms. Parker, and he smirked and laughed at her."

None of this conduct is sufficient to support a finding of the kind of gender-biased, offensive environment which courts have previously found actionable.  Parker was not subjected

to different working conditions, she was not impeded in accomplishing her tasks and she was not otherwise limited in the opportunities available to her.  In fact, this type of conduct has been held in the past to not be sufficiently severe to support a claim of discrimination. See, e.g., Bass, 324 F.3d at 765 ("Even viewed in the light most favorable to Bass, the facts she alleges merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her supervisors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim"); Buchhagen v. ICF Int'l, Inc., 545 Fed. Appx. 217, 219 (4th Cir. 2013) (holding that supervisor making "snide comments" to plaintiff, "playing favorites with employees," "repeatedly harping" on plaintiff's mistake, and "unfairly scrutinizing and criticizing" plaintiff failed to state hostile work environment claim); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 276 (4th Cir. 2000) (holding that complaint premised on "a routine difference of opinion and personality conflict with her supervisor" insufficiently stated actionable facts for a hostile work environment claim); Averette v. Diasorin, Inc., 2011 WL 3667218, at *3 (W.D.N.C. 2011) ("All of Plaintiff's allegations of 'harassment' do nothing more than establish that she did not get along with her co-workers....").

Parker's failure to allege facts of such severe and pervasive nature indicate that she cannot support a hostile work environment claim under Title VII, 42 U.S.C. § 2000e, et. seq. and Count I of her Complaint must be dismissed.

    **c.** **There is no basis for imposing liability on RCSI because Parker does not allege facts showing RCSI failed to address her complaints.**

It is abundantly clear from a reading of Parker's allegations that the alleged harassment and rumors spread either from her or another employee, not from her supervisor or RCSI.  Mr. Moppins did not want to discuss the rumors and directed Parker to stop discussing the "BS rumors."  As such, any harassment which Parker believes existed was at the hands of co-workers

or subordinates and not her supervisors.  Where the alleged harasser is not a supervisory

employee, <u>Faragher v. City of Boca Raton</u>, 522 U.S. 978 (1997), requires that Parker must come

forward with evidence that the employer was negligent "with respect to the offensive behavior."

<u>Vance v. Ball State University</u>, 133 S. Ct. 2434, 186 L.Ed.2d 565 (2013).  Not only does Parker

present no argument or allegation that RCSI negligently failed to control the situation, she made

only one allegation that a supervisor was ever even involved in commenting on the rumor.  In

that single instance, he merely questioned the other alleged participant who was Parker's

supervisor.

The burden is on Parker to allege sufficient facts upon which a jury could find that RCSI

was negligent in controlling the working conditions. <u>Vance</u>, 133 S. Ct. at 2444. Parker makes no

allegation that RCSI did not take action to appropriately address the situation.  Mr. Moppins

directed Parker that he did not want to discuss it and there is no indication that the rumor

persisted beyond Parker's discussions with her coworkers to "set things straight."  Although

Parker did not like that the rumor was started, she has firmly laid its origination on a subordinate

employee and not RCSI.  Her anger about the rumor is misdirected at RCSI who is not

responsible for every indignity she may feel she suffered in the workplace.

Because Parker has failed to allege facts that support the notion that RCSI was negligent

in controlling the working conditions at RCSI, her Title VII hostile work environment claim fails

as a matter of law.

**II.     Parker has not alleged a viable cause of action for retaliation.**

Section 704(a) of Title VII prohibits an employer from taking an adverse employment

action against any employee "because he has opposed any practice made an unlawful

employment practice under this subchapter." Title VII § 704(a), 42 U.S.C. § 2000e-3(a).  The

plain meaning of the statutory language provides protection of an employee's opposition activity when the employee responds to an actual unlawful employment practice or when it responds to an employment practice which the employee reasonably believes is unlawful. EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406-07 (4th Cir. 2005) (citing United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist., 367 F.3d 245, 255 (4th Cir. 2004), vacated on other grounds, 545 U.S. 409 (2005); Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992).

> To have engaged in a protected activity, a plaintiff must oppose an "employer's discriminatory activities." Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (internal citations omitted). "[T]o show 'protected activity,' the plaintiff in a Title VI retaliation case need 'only . . . prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring.'" Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003) (internal citations omitted). This requires that the plaintiff: (1) have a good faith belief that the employer is engaging in an unlawful employment practice; and (2) that the belief is objectively reasonable in light of the facts. Id. at 321.

Coleman v. Loudoun County Sch. Bd., 294 Fed. Appx. 778, 781 (4th Cir. 2008). See also Johnson v. Mechanics & Farmers Bank, 309 Fed. Appx. 675, 685 (4th Cir. 2009); Perry v. Kappos, 776 F. Supp. 2d 182 (E.D. Va. 2011), aff'd on other grounds, 489 Fed. Appx. 637 (4th Cir. 2012) (because no reasonable trier of fact could find that plaintiff's opposition activity was in response to employment actions he could reasonably have believed to be unlawful, the court found that the plaintiff had failed to establish a prima facie case of retaliation under Title VII).

Whether the employee's belief that a violation occurred was reasonable is an objective one and the issue is resolved as a matter of law. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001) (per curiam) (resolving the objective reasonableness of Title VII plaintiff's beliefs through the summary judgment procedure); Johnson v. Mechanics & Farmers Bank, 309 Fed. Appx. 675, 685 (4th Cir. 2009). The starting point for this analysis is the Supreme Court's opinion in Clark County School District v. Breeden, 532 U.S. 268 (2001).  There the Court made

clear that where the law and facts make clear that illegal discrimination had not occurred, an employee's alleged contrary belief is unreasonable. Thus, if the factual scenario protested would not amount to illegal discrimination, it will not support a claim for retaliation.

> Plaintiff seems to suggest that her "reasonable belief" applies to the question of whether the practice that she believed Defendant to be engaging in was in fact proscribed by Title VII. The Court disagrees. Title VII protects a Plaintiff who is wrong about the facts but will not protect a Plaintiff mistaken about the law. In other words, Title VII only protects a Plaintiff who is ultimately wrong as to whether Defendant in fact engaged in the unlawful employment practice she reasonably believed it to have engaged in. Title VII does not protect a Plaintiff who reasonably, but wrongly, believes that a certain practice of Defendant is unlawful.

McGruder v. Epilepsy Foundation of America, Inc., 2012 WL 832800 *6 (D. Md. 2012).

Parker has utterly failed to plead a viable cause of action for retaliation. Foremost, as argued and explained above, there did not exist a hostile work environment. She does not claim that Mr. Moppins continued the rumor, reversed his direction to her to stop discussing the "BS rumor," or that he took any other action toward her.

Beyond her complaint of the propagation of rumors about her conduct and not her gender which cannot objectively support a retaliation claim, Parker's only other causal link to a retaliation claim is the notion that she was terminated three weeks after she filed a harassment claim against Mr. Moppins. This was the same claim which she said was resolved when she met with Mr. Moppins and Mr. Pickett "during which Ms. Price encouraged the three managers to apologize to one another and instructed them to put the prior incidents behind them and move on. After the meeting, Ms. Price assured Ms. Parker that her job was not in jeopardy." Complaint ¶29.[2] Beyond the timing of a harassment claim which she believed was resolved, Parker

---

[2]    In her EEOC Charge, Parker was more positive that the issues raised by her harassment claim had been resolved noting that "apologies were made to one and other and I felt the situation would die itself down." See Exhibit 1.

provides no nexus between her protected conduct and her termination to reasonably conclude that it was related.  Timing alone is insufficient to show the necessary nexus for retaliation especially given Parker's allegations of other conduct which presumably led to her termination including poor job performance, poor management ability, insubordination, arguments with subordinate employees and continued discussion of the rumor.

Count II of her Complaint must be dismissed.

### III.    Parker has failed to exhaust her administrative remedies to support Count III.

In the present case, it is clear that Parker never raised with the EEOC any issue that she was treated differently from her male counterparts under her alleged belief in a "three strike rule."  Attached as Exhibit 1 is her Charge[3] which notes only her difficulties in attempting to quell the rumors and the treatment she feels she received by mentioning the rumors. Her Complaint provides no support for this new allegation beyond her own knowledge; she fails to cite where this policy exists or even identify any similarly situated male or female employees who underwent any such discipline.  Not only are the allegations so vague and devoid of substance beyond her personal belief, her claims are fatal because she failed to raise them with the EEOC.

A plaintiff who files a Title VII claim in federal court without first properly exhausting administrative remedies fails to properly invoke the jurisdiction of the court. See Jones v. Calvert

---

[3]    Pursuant to Rule 12(b)(6), this Court need not convert this Motion into a Rule 56 motion for summary judgment when it considers Parker's EEOC Charges.  Consideration of a document "outside the pleadings" does not convert the motion into one for summary judgment under Rule 56, as the EEOC Charges are referred to in the Complaint and relied upon by Parker. See Biospherics, Inc. v. Forbes, Inc., 989 F. Supp. 748, 749 (D.Md.1997) (recognizing an exception to Rule 12(d)'s conversion rule when documents are referred to in the complaint and relied on in bringing the action); see also New Beckley Mining Corp. v. Int'l Union, United Mine Workers of America, 18 F.3d 1161, 1164 (4th Cir.1994) (holding that the district court did not err in considering, in connection with a Rule 12(b)(6) motion, a document referred to in the plaintiff's complaint to justify a cause of action).

Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009); Davis v. N. Carolina Dep't of Correction, 48 F.3d

134, 140 (4th Cir. 1995); Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999).

Courts have interpreted the requirement to exhaust administrative remedies to mean that ***each***

***discrete incident*** of discriminatory treatment must be administratively exhausted. Martinez v.

Potter, 347 F.3d 1208, 1210 (10th Cir.2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir.2007). The

allegations contained in the administrative charge of discrimination generally limit the scope of

any subsequent judicial complaint. King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th

Cir.1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in

the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge'

") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec., 532 F.2d 359, 365 (4th

Cir.1976)); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000) ("A

plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit"). Only

those claims stated in the initial administrative charge, those reasonably related to the original

complaint, and those developed by reasonable investigation of the original complaint may be

maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d

954, 963 (4th Cir.1996) (affirming the district court's dismissal of some of the plaintiff's claims

because they were outside the scope of her original EEOC charge and were therefore time

barred).

> The Fourth Circuit has emphasized:

> The filing of an administrative charge is not simply a formality to be rushed
> through so that an individual can quickly file his subsequent ... lawsuit. Rather,
> Congress intended the exhaustion requirement to serve the primary purposes of
> notice and conciliation. First, an administrative charge notifies the employer of
> the alleged discrimination. This notice gives the employer an initial opportunity to
> voluntarily and independently investigate and resolve the alleged discriminatory

actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning. Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.

Chacko, 429 F.3d at 510 (citations omitted).  Therefore, a "civil suit under Title VII is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge." Stehle v. Gen. Mills Rest., Inc., 875 F. Supp. 320, 323 (D.S.C. 1994). When a claim "raised under Title VII exceed[s] the scope of the EEOC charge and any charge that would naturally have arisen from an investigation thereof," it is procedurally barred. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir.1995).

There is no doubt that Parker failed to raise or even intimate the scheme of "three strike" discipline or the notion that it was applied differently between male and female employees. Having failed to raise this issue with the EEOC, Parker cannot now raise these issues for this Court to decide.  Count III of her Complaint must be dismissed.

## Conclusion

For the reasons noted above, Parker's Complaint must be dismissed as failing to sufficiently allege a viable cause of action against RCSI.

   /s/ Donald J. Walsh
Donald J. Walsh (Bar # 09384)
Wright, Constable & Skeen, LLP
Attorneys for Plaintiff
7 St. Paul Street, 18th Floor
Baltimore, Maryland 21202
Telephone: (410) 659-1320
Fax:  (410) 659-1350
dwalsh@wcslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of June, 2017, a copy of the Memorandum in Support of Motion to Dismiss was sent to those counsel identified via the Court's ECF system.


                         */s/ Donald J. Walsh*

{00352797v. (15424.00002)}                18