**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt)**

EVANGELINE J. PARKER                          *

    Plaintiff                                     *

v.                                            *        Civil Action No. 8:17-CV-01648 RWT

REEMA CONSULTING SERVICES, INC.  *

    Defendant                                     *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM IN SUPPORT OF
REPLY TO RESPONSE TO MOTION TO DISMISS**

Reema Consulting Services, Inc. ("RCSI"), by its undersigned attorneys, submits this

memorandum in support of its Reply to the Response to its Motion to Dismiss the Complaint.

Despite taking extreme liberties in construing the allegations of her Complaint, Plaintiff is unable

to salvage her claims and demonstrate a viable hostile work environment claim.  Even with

Plaintiff's generous expansion of the inferences to be drawn from her Complaint, her allegations

still leads to the conclusion that she complains only of the existence of a rumor about her

conduct and cannot demonstrate that the alleged offensive conduct has to do with her gender.

Plaintiff's Complaint must be dismissed.

**I.      Plaintiff cannot establish the fundamental element that she was harassed
"because of" her gender.**

Title VII makes it unlawful for an "employer ... to discriminate against any individual

with respect to his ... conditions ... of employment, because of such individual's ... sex...." 42

U.S.C. § 2000e–2(a)(1).  A prima facie case of sexual harassment also requires a showing that,

but for the plaintiff's sex, he or she would not have been the subject of harassment. See

McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 282 n. 10 (1976). Harassment that is inflicted without regard to gender is not actionable because the harassment is not based on sex.

In her Response to the Motion to Dismiss, Plaintiff clearly identifies the genesis of her Complaint as the rumor which she claims was started by a jealous co-worker. According to Plaintiff the rumor was that she slept with one of her supervisors in order to obtain her position at RCSI. She admits that the rumor originated "because she advanced more quickly in the company than Mr. Jennings" and because "he was jealous of her career advancement." Putting aside the veracity of the rumor, Plaintiff utterly fails to demonstrate that this rumor is gender related. Her own arguments and the facts alleged in the Complaint repeatedly undermine her legal conclusion that this rumor was premised on her gender and reaffirms that it is solely related to allegations of her conduct. She herself explains how she was repeatedly promoted by RCSI and how there were other female managers at RCSI undermining any suggestion of gender discrimination.

Conspicuously, she identified no other female managers who were subjected to the same type of rumors or any gender disparaging comments at all. She has not identified any other conduct suffered by any other female employee or manager which suggests that they were subjected to any mistreatment or rumors objectifying or belittling their accomplishments at RCSI. Plaintiff noted that the human resources director was female, that other female managers existed including one other manager who met with her and Mr. Moppins and that in-house counsel was also female. Despite the ability to identify these female leaders and managers at RCSI, Plaintiff makes no attempt to suggest that they were subjected to similar conduct supporting her claim of a hostile work environment.

Notwithstanding this complete dearth of allegations or plausible inferences, Plaintiff repeatedly jumps to the legal conclusion that the rumor was "gender based" in seeking to defend the Complaint.  This Court is not bound to accept this conclusion simply because it has been advanced by Plaintiff.  Courts are never required to accept unsupported legal allegations, Revene v. Charles County Commissioners, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions disguised or couched as factual allegations, Papasan v. Allain, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir.1979).

Importantly, the Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions and made clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, n. 3 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." Twombley, at 570.

> While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief. The words "hostile work environment" are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.

Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764–65 (4th Cir. 2003).  Plaintiffs must do more than "plead[ ] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ibqal, 556 U.S. at 678.  "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. (internal quotation marks and alteration omitted).

3

There is little doubt that Plaintiff's complaints of a rumor, which was largely propogated and kept alive by her, are not soundly premised on a showing that they are gender based. Construing inferences in her favor does not equate to jumping to legal conclusions that the rumor and the hostility of which she claims which emanated from this rumor, are related to her gender. Even Plaintiff concedes that this rumor was started by a coworker who was jealous "because she advanced more quickly in the company than Mr. Jennings."  She has not suggested that he was upset that she was a female or that she was undeserving of the raise because of her gender; according to Plaintiff he started the rumor because "he was jealous of her career advancement." Jealousy of a coworker's advancement is a far cry from gender bias.

Despite identifying many female leaders and managers at RCSI, Plaintiff points to no other woman who was subjected to unfounded rumors or allegations of having slept their way to promotions.   Plaintiff admits that she "was a promising employee, quickly earning six promotions from her initial position as a clerk to the managerial position of Assistant Operations Manager," that "[s]he earned her promotions based on her distinguished performance and professionalism," and that "few females had been promoted to managerial positions at RCSI for several years."[1]

The entire premise for Plaintiff's suit is her incredible leap that everything done at RCSI subsequent to the rumor was premised on her gender.  She claims the door was shut in her face, she was yelled at and she claims that Mr. Jennings submitted an unsupported claim against her and then directed long stares, smirking and laughing at her.  She makes no suggestion that any of these indignities were performed to other females or that any of this conduct was done solely because she was a female.  Every incident identified by Plaintiff was based on the rumor of her

---

[1]    Not only is there no claim in the Complaint that Mr. Pickett was treated differently, there is no possible comparison that can be used with Mr. Pickett who was already the supervisor.

4

conduct of having an affair with a supervisor.  Even as Plaintiff claims the rumor spread, she notes that she was "treated with open resentment and disrespect from a number of her co-workers," but she fails to indicate that only the male co-workers were doing this, that other female managers were also treated with the same disrespect or that any male employee indicated that this derisive conduct was premised upon her being a woman.

According to Plaintiff, RCSI's treatment of her communicated to her that "it is not acceptable for a female to raise concerns of sexual harassment or hostile treatment in the workplace."  This legal leap of faith is simply not supported by the facts alleged (or in reality) nor is it a natural and plausible conclusion given the entire premise for her dispute with RCSI was based on a rumor surrounding her conduct and her desire to discuss that rumor.

Further undermining her errant conclusions that this was gender-based hostility is Plaintiff's comments that "Mr. Moppins's harsh comments and failure to listen to Ms. Parker's side of the story not only aggravated the hostile work environment to which she was subjected, but put her in fear of losing her job."  The fact that Mr. Moppins would not "listen to her side of the story" does not lead to the conclusion that his treatment of her was related in any fashion to her gender.  In fact, the only conclusion which can be reached from this statement by Plaintiff is that he did not care to discuss the rumor of her conduct.  Plaintiff has not argued that Mr. Moppins listened to or engaged in discussions with males who were accused of having affairs to advance their employment.  Plaintiff's own allegations further undermined her conclusions that Mr. Moppins refusal to discuss the rumor was premised on her gender where she admitted that management gave no credence to the rumor and told her to stop "huffing and puffing about this BS rumor."  Plaintiff's acknowledgement that he saw the rumor as "BS" is in stark contrast to slamming a door in her face because of her gender.

Plaintiff's other complaints also are unrelated to a gender bias and demonstrate only frustration with the conduct of an employee.  "[I]t became clear to Ms. Parker that Mr. Moppins had no intention of fairly and appropriately handling the issues caused by the rumor or disciplining any of the employees who were perpetuating the rumor."  Not even Plaintiff's allegation that Mr. Moppins slammed the door in her face provides any causal connection to the fact that this indignity was related to her gender. [2]  It is entirely possible that she was not permitted into the meeting because she was late, it did not require her presence, because Mr. Moppins was irritated with her conduct in continuing to pursue the rumor or because he was holding a meeting seeking to stop further discussion of the rumor.[3]  This would be consistent with his direction that she stop "huffing and puffing about this BS rumor."

As pointed out in RCSI's Motion, the courts are not easily convinced that rumors of extramarital affairs in the workplace or other sexual conduct are gender based and not conduct based.  Despite Plaintiff's insistence, there is no required conclusion that rumors of extramarital affairs are gender based.  For instance, in Pasqua v. Metro Life Insurance, 101 F.3d 514 (7th Cir. 1996), Donald Pasqua sued his employer based on his employees' rumors that he was "engaged in an intimate relationship" with a female subordinate and that he was showing her favoritism.

---

[2]     Plaintiff also makes yet another leap in her Response to the Motion that Mr. Pickett entered the meeting and defended himself.  This allegation was certainly not raised in the Complaint and is not a plausible inference which can be made given the tenuous allegation only that the "rumor was discussed" in this meeting.

[3]     Judge Williams' words in Fry v. Prince George's Cty., Md., 2008 WL 9360013, at *1 (D. Md. 2008), are apropos here.

> Most people, generally, spend a significant part of their natural lives working, the majority either in offices or at least having some interaction with other people. As it often happens, co-workers and supervisors may have personality conflicts or differences of opinion which may affect their working environment. Fortunately, the law protects the American worker from specific types of abuses that no worker should have to endure; however, the law does not prescribe a general code of civility in the American workplace or promotes one personality or management style over another. The case at bar seems to fall into this latter category.

Both Mr. Pasqua and his female subordinate were upset about the rumors.  Mr. Pasqua complained to his employer several times about the rumors and reported that the female subordinate was threatening to file a sexual harassment lawsuit.  The Seventh Circuit Court of Appeals held that his claim could not meet the "because of" sex requirement for a hostile work environment claim. "Harassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex." Id., 101 F.3d at 517.   The court found that when the subject matter of the rumors were about a man and a woman, and "both men and women alike were talebearers."

Other cases have followed the same analysis and determined that sexual rumors about an individual are generally not sufficient on their own to satisfy the requirements of demonstrating hostile work claims. See, e.g., Duncan v. Manager, Dep't of Safety, Denver, 397 F.3d 1300, 1312 (10th Cir. 2005) (City was not liable for hostile work environment for failing to respond to letter alleging that female officer had relationships with male officers since letter made series of salacious allegations about both male and female officers and did not single female officer out for disparate treatment because of gender); Ptasnik v. City of Peoria, Dep't of Police, 93 F. App'x 904, 909 (7th Cir. 2004) ("[b]ecause both male and female officers were the subject of sexual rumors, these rumors were likely spread for reasons having 'nothing to do with gender discrimination'"); Lawrence v. Christian Mission Center Inc. of Enterprise, 780 F.Supp.2d 1209 (M.D. Ala. 2011) ("[w]hile 'it is not inconceivable that someone might spread slanderous rumors in the workplace for the simple motivation that someone else was of a particular gender,' Lawrence has not pled any facts that demonstrate that the rumors about her sexual relationship with a resident of Christian Mission were spread because of or were based on her gender");

Lewis v. Bay Indus., Inc., 51 F. Supp. 3d 846, 854-55 (E.D. Wis. 2014) (Employee did not engage in protected activity when he reported that there were rumors that female co-worker's promotion was due to her alleged sexual affair with male owner, absent any indication that any hostility directed at the co-worker was because of her sex; rumors were based on belief, whether true or not, that co-worker had been unfairly given a position she was not qualified to perform); Reiter v. Oshkosh Corp., 2010 WL 2925916 (E.D. Wis. 2010) ("Even if a rumor was circulating, there is no indication that any other employees attempted to make fun of her or taunt her about it. In fact, much of the evidence of the rumor seems to have resulted from her own questioning of other employees"); Snoke v. Staff Leasing, Inc., 43 F. Supp. 2d 1317, 1327 (M.D. Fla. 1998) ("defendant points to evidence in the record that both plaintiff and Ayala, a male, were the subject of the rumors, and that both men and women were discussing them. Accordingly, the rumors do not show harassment 'because of' sex"); Fletcher v. Illinois, 2006 WL 3196795 (S.D. Illinois 2006) (Plaintiff alleged that male officers talked about her as if she were "a piece of trash" and that she was referred to as the "company whore" but co-workers' conduct do not appear to be sufficiently severe, or linked to her actions in filing a complaint and record was void of any evidence of favorable treatment given to "similarly situated individuals who did not engage in protected ... activity").

In her Response to the Motion, Plaintiff attempts to salvage her claim by citing to Jew v. University of Iowa, 749 F. Supp. 946 (S.D. Iowa 1990), to establish that rumors of a sexual nature can create a hostile working environment. However, the present case is easily distinguishable from Jew. In Jew, the rumors lasted for thirteen years, and included faculty members yelling sexual slurs at the plaintiff in the hallway, faculty members posting cartoons depicting the plaintiff in sexual acts with another faculty member on office doors, and writing

sexual slurs about the plaintiff in the bathroom regarding a supposed affair with another faculty member. Jew, 749 F. Supp. at 958. This was despite the fact that there was no evidence that the plaintiff ever had an affair with the other faculty member. The court in Jew held that these rumors created a hostile working environment and the plaintiff had an actionable sexual harassment claim under Title VII.[4]

In the present action, there is little doubt that the fundamental premise of Plaintiff's Complaint is flawed and insufficient to support a cause of action for maintenance of a hostile work environment.  Not only was the rumor which she claims to have been battling not the type of comments which could give rise to a hostile work environment, the alleged rumor fueling her Complaint is based on her conduct and not her gender.  Her alleged misdeed which found its place into workplace gossip was an affair with a supervisor not an activity which was premised on her being female.  Importantly, Plaintiff provides no details suggesting that the rumor was gender based or that the rumor was that she was unqualified *because* she was a woman.

Under such circumstances, it is impossible for her to demonstrate a viable hostile work environment claim.  This is the same situation as found in Bass where the Fourth Circuit Court of Appeals concluded that the plaintiff's complaint could not sustain a 12(b)(6) challenge. "Bass' complaint is full of problems she experienced with her co-workers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment." Bass, 324 F.3d at 765.  Since Plaintiff's conduct led to the rumor, not her gender, and she has offered no causal connection between her gender and any alleged mistreatment, she cannot meet the elements of a hostile work environment claim and Count I of the Complaint must be dismissed.

---

[4]    Plaintiff's reference to Allen v. TV One, LLC, 2016 WL 337533 (D. Md. 2016) are similarly unpersuasive.  Central to the plaintiff's claims in that action were allegations of persistent accusations, rumors, and urging of a romantic relationship with her male supervisor. This is a far cry from Plaintiff's allegations here.

**II.      Given the unreasonable belief that she was mistreated based on her gender, Plaintiff has no viable claim for retaliation.**

Given her impossibilities of demonstrating a viable claim for harassment based on allegations related to her conduct, it is similarly impossible for Plaintiff to continue to maintain her action for retaliation premised on the same conduct.  The starting point for an analysis of the viability of retaliation claims is the Supreme Court's opinion in Clark County School District v. Breeden, 532 U.S. 268 (2001), which explained that an objective analysis is made of retaliation claims.  There the Court made clear that where the law and facts make clear that illegal discrimination had not occurred, an employee's alleged contrary belief is unreasonable and not possible to support a retaliation claim.

The Court followed this same analysis in its subsequent decision of Burlington, N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), where it stated that the review of such claims is based on a reasonable employee "because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." 548 U.S. at 68-69.  Thus, if the factual scenario protested would not amount to illegal discrimination to a reasonable and objective individual, it will not support a claim for retaliation.

> Plaintiff seems to suggest that her "reasonable belief" applies to the question of whether the practice that she believed Defendant to be engaging in was in fact proscribed by Title VII. The Court disagrees. Title VII protects a Plaintiff who is wrong about the facts but will not protect a Plaintiff mistaken about the law. In other words, Title VII only protects a Plaintiff who is ultimately wrong as to whether Defendant in fact engaged in the unlawful employment practice she reasonably believed it to have engaged in. Title VII does not protect a Plaintiff who reasonably, but wrongly, believes that a certain practice of Defendant is unlawful.

McGruder v. Epilepsy Foundation Of America, Inc., 2012 WL 832800 *6 (D. Md. 2012).

10

Plaintiff has utterly failed to plead a viable cause of action for retaliation.  Foremost, as argued and explained above, there did not exist a hostile work environment.  Since she was mistaken that a legal conclusion could be reached that she was the victim of any sexual harassment, she cannot rely on this conduct to support her claim for retaliation.  The same type of bootstrapping of two claims made by Plaintiff here was rejected in Pasqua where the plaintiff sought to pursue a retaliation claim based on rumors of his infidelity.

> Pasqua's subjective beliefs are irrelevant. Pasqua was required to establish that he had a reasonable belief that the rumors amounted to harassment based upon sex. Again, there is not a trace of evidence in the record that the rumors circulating throughout the NHBO and other MetLife offices were motivated by any disparate consideration of either Pasqua or Vukanic's gender.

Pasqua, 101 F.3d at 518 (citations omitted).

The same conclusion was reached in Lewis where the court concluded that "Lewis's Title VII claim fails because his belief that the harassment suffered by King was based on her gender was objectively unreasonable." Lewis, 51 F. Supp. 3d at 854.  After discussing the rulings emanating from Pasqua's examination of rumors in the workplace to ensure that claims were premised on gender and not conduct, the court rejected the notion that Plaintiff could support a retaliation claim.

> In short, the evidence suggests that when Lewis complained about the affairs to Dan and Arnold Schmidt, he could reasonably have believed that King had been bullied and harassed, but he could not have reasonably believed that King was subjected to discrimination on the basis of her sex. As in Pasqua, no reasonable jury could find that Lewis's comments about rumors of an alleged affair constituted protected activity.

Lewis, 51 F. Supp. 3d at 856.

Beyond her complaint of the propagation of rumors about her conduct which cannot objectively support a retaliation claim, Plaintiff's only other causal link to a retaliation claim is the notion that she was terminated three weeks after she filed a harassment claim against Mr.

Moppins.  This claim, however, was again premised on the existence of the rumors and Plaintiff's continued desire to discuss them with Mr. Moppins who refused.  Much like her failure to state a viable claim for harassment, the house of cards upon which her retaliation claim is built similarly crumbles.  His alleged yelling at her, refusal to discuss the rumor and even slamming the door in her face are all premised on her claims that she was being illegally harassed because of the existence of the rumors that she wanted stopped.  Therefore, her retaliation claims must be dismissed.

Count II of her Complaint must be dismissed.

### III.     Plaintiff has failed to exhaust her administrative remedies to support Count III of her Complaint.

In the present case, it is beyond repute that Plaintiff never raised with the EEOC any issue that she was treated differently from her male counterparts under her alleged belief in a "three strike rule."  Plaintiff does not dispute that this issue was not directly raised in her Charge filed with and investigated by the EEOC.  Her Charge noted only her difficulties in attempting to quell the rumors and the treatment she received upon seeking to dispel those rumors.  In addition to its absence from her Charge, her Complaint provides no factual support for this bare allegation beyond her own knowledge; she fails to cite where this policy exists, who or how it was applied or even identify any male or female employees who underwent any such discipline.  Even ignoring the failure to include the allegations in her Charge, such bare allegations are completely insufficient to meet the necessary standards for pleading under <u>Bass</u> and can be dismissed.

Importantly, Plaintiff agrees that her "charge must be 'sufficiently precise to identify the parties, and to describe generally *the action or practices complained of*,' 29 C.F.R. § 1601.12(b), such that a claimant's 'employer is put on notice of the alleged violations.'" Response at 24 (emphasis supplied).  Given this recognition by Plaintiff and the absence of any

12

argument that the Charge did not even contain the slightest suggestion that there was a disciplinary policy at play which was applied differently to opposite genders, the dismissal of Count III should be uncontested. Since the Charge failed to contain any information notifying RCSI that it could have expected to investigate or defend its policy or treatment of Plaintiff, it cannot now be raised in the Complaint.

The courts have uniformly interpreted the requirement to exhaust administrative remedies to mean that ***each discrete incident*** of discriminatory treatment must be administratively exhausted. If the new allegations are outside the scope of the original Charge, they are barred in the subsequent suit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge'") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec., 532 F.2d 359, 365 (4th Cir.1976)); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit").

There is no doubt that Plaintiff failed to raise or even intimate that there was a "three strike" discipline rule or the notion that it was applied differently between male and female employees. The entire focus of her Charge was her belief of unfair treatment solely based on what she perceived as unfounded rumors about her conduct. Having failed to even hint at any issue of discriminatory application of RCSI's discipline policy with the EEOC, Plaintiff cannot now raise these issues with this Court. Count III of her Complaint must be dismissed.

## Conclusion

For the reasons noted above and in RCSI's Motion to Dismiss, Plaintiff's Complaint must be dismissed.

                                     /s/ Donald J. Walsh
                                     Donald J. Walsh
                                     Wright, Constable & Skeen, LLP
                                     Attorneys for Plaintiff
                                     7 Saint Paul Street, 18th Floor
                                     Baltimore, Maryland 21202
                                     Telephone: (410) 659-1320
                                     Fax: (410) 659-1350
                                     dwalsh@wcslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of July, 2017, a copy of the Reply to Response to the Motion to Dismiss was sent to those counsel identified via the Court's ECF system.

                                     /s/ Donald J. Walsh