## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### GREENBELT DIVISION

| | |
|---|---|
| EVANGELINE J. PARKER, | |
| Plaintiff, | Civil No. 8:17-cv-01648-RWT |
| v. | Jury Trial Demanded |
| REEMA CONSULTING SERVICES, INC. | |
| Defendant. | |

### PLAINTIFF'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO VACATE THE JUDGMENT AND PERMIT PLAINTIFF TO FILE AN AMENDED COMPLAINT

Plaintiff Evangeline J. Parker, by and through her attorneys, respectfully moves for reconsideration of the Court's December 7, 2017 order granting the Defendant's motion to dismiss, pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, or, in the alternative, vacatur of the order and judgment and leave to file an amended complaint, pursuant to Rules 15(a)(2) and 60(b).  For the reasons set forth in the accompanying memorandum, good cause exists to grant the motion.

Dated:  January 4, 2018                    Respectfully submitted,


By:  */s/ Dennis A. Corkery*

Matthew K. Handley (Bar. No. 18636)
Dennis A. Corkery (Bar. No. 19076)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
11 Dupont Circle NW, Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010

Andrew R. Kopsidas (Bar No. 16057)
Daniel Tishman (*admitted pro hac vice*)
Min Suk Huh (*admitted pro hac vice*)
**FISH & RICHARDSON P.C.**
The McPherson Building
901 15th Street N.W., 7th Floor
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331


*Counsel for Plaintiff Evangeline J. Parker*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### GREENBELT DIVISION

EVANGELINE J. PARKER,

        Plaintiff,

v.

REEMA CONSULTING SERVICES, INC.

        Defendant.

Civil No. 8:17-cv-01648-RWT

Jury Trial Demanded

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION FOR RECONSIDERATION OR, IN
THE ALTERNATIVE, TO VACATE THE JUDGMENT
AND PERMIT PLAINTIFF TO FILE AN AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND AND PROCEDURAL HISTORY.................................................. 1

III.   MOTION FOR RECONSIDERATION .................................................................... 2

       A.    Legal Standard .............................................................................................. 2

       B.    Argument ....................................................................................................... 3

             1.    The Complaint Properly Alleges that Ms. Parker's Harassment Was on the
                   Basis of Gender ................................................................................ 3

             2.    The Complaint Properly Alleges that Ms. Parker's Hostile Work
                   Environment was Severe and Pervasive. .................................................. 10

             3.    The Complaint Properly Alleges that Ms. Parker Engaged in Protected
                   Activity When She Opposed a Hostile Work Environment She Reasonably
                   Believed to Exist ................................................................................ 12

IV.    IN THE ALTERNATIVE, PLAINITFF MOVES TO VACATE THE JUDGMENT TO
       PERMIT PLAINTIFF TO FILE AN AMENDED COMPLAINT ................................... 15

       A.    Legal Standard .............................................................................................. 15

       B.    Argument ....................................................................................................... 16

V.     CONCLUSION.......................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Boyer-Liberto v. Fontainebleau Corp,*
786 F.3d 264 (4th Cir. 2015) ..............................................................................12, 13, 15

*Brown-Baumbach v. B&B Auto., Inc.,*
437 Fed. App'x 129 (3d Cir. 2011)...................................................................................4, 7

*Bryant v. Aiken Reg'l Med. Ctrs. Inc,*
333 F.3d 536 (4th Cir. 2003) .........................................................................................12

*United States ex rel. Carter v. Haliburton Co.,*
866 F.3d 199 (4th Cir. 2017) ...........................................................................................2

*Dube v. Hadco Corp.,*
No. 97-554-SD, 1999 U.S. Dist. LEXIS 21184 (D.N.H. Feb. 4, 1999) ...................................8

*Edwards v. City of Goldsboro,*
178 F.3d 231, 244 (4th Cir. 1999) ...................................................................................3

*EEOC v. Navy Federal Credit Union,*
424 F.3d 397 (4th Cir. 2005) .....................................................................................12, 13

*Gillen v. Borough of Manhattan Community College,*
No. 97 Civ. 3431 (DAB), 1999 U.S. Dist. LEXIS 4862 (S.D.N.Y. Apr. 14, 1999) ...................................................................................................................8

*Grant v. Hazelett Strip-Casting Corp.,*
880 F.2d 1564 (2d. Cir. 1989)........................................................................................13

*Harris v. Forklift Systems,*
510 U.S. 17, 17 (1993)...................................................................................................10

*Jew v. University of Iowa,*
749 F. Supp. 946 (S.D. Iowa 1990) ...............................................................................7, 8

*Johnson v. Oroweat Foods Co.,*
785 F.2d 503 (4th Cir. 1986) .........................................................................................15

*Jordan v. Alternative Resources Corp.,*
458 F.3d 332 (4th Cir. 2006) .........................................................................................13

*Katyle v. Penn Nat'l Gaming, Inc.,*
637 F.3d 462 (4th Cir. 2011) .....................................................................................16, 17

*Kaye v. Storm King Sch.*,
   11 CV 3369, 2015 U.S. Dist. LEXIS 127508 (S.D.N.Y, June 8, 2015) ...................................9

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) (en banc) ....................................................................15, 16, 17

*Los Angeles Dept. of Water and Power v. Manhart*,
   435 U.S. 702 (1978)..................................................................................................................4

*McDonnell v. Cisneros*,
   84 F.3d 256 (7th Cir. 1996) ......................................................................................................7

*Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
   148 F.3d 396 (4th Cir. 1998) ....................................................................................................3

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989)..................................................................................................3, 4, 8, 10

*Sias v. City Demonstration Agency*,
   588 F.2d 692 (9th Cir. 1978) ..................................................................................................14

*Spain v. Gallegos*,
   26 F.3d 439 (3d Cir. 1994)..............................................................................................4, 7, 8

*Stegall v. Citadel Broad. Co.*,
   350 F.3d 1061 (9th Cir. 2003) ..................................................................................................8

*Sumner v. United States Postal Serv.*,
   899 F.2d 203 (2d. Cir. 1990)...................................................................................................13

*Wentz v. Maryland Cas. Co.*,
   869 F.2d 1153 (8th Cir. 1989) .................................................................................................13

*Zinkand v. Brown*,
   478 F.3d 634 (4th Cir. 2007) ....................................................................................................2

*Ziskie v. Mineta*,
   547 F.3d 220 (4th Cir. 2008) ..................................................................................................12

**Statutes**

42 U.S.C. §§ 2000e-2(a)(1)-(2)...............................................1, 3, 4, 7, 8, 10, 12, 13, 15

**Other Authorities**

Diana Burgess and Eugene Borgida, *Who Women Are, Who Women Should Be:
   Descriptive and Prescriptive Gender Stereotyping in Sex Discrimination*, 5
   Psych. Pub. Pol. And L. 665 (Sept. 1999) ...............................................................................9

Madeline E. Heilman, Elizabeth J. Parks-Stamm, *Gender Stereotypes in the Workplace: Obstacles to Women's Career Progress*, Social Psychology of Gender (Mar. 12, 2015) ........................................................................................................9

Smith J.S., Brescoll V.L., Thomas E.L. (2016), *Constrained by Emotion: Women, Leadership, and Expressing Emotion in the Workplace*, Connerley M., Wu J. (eds), Handbook on Well-Being of Working Women. International Handbooks of Quality-of-Life ................................9

## I.    <u>INTRODUCTION</u>

On December 7, 2017, the Court heard oral argument regarding Defendant Reema Consulting Services, Inc.'s (RCSI) motion to dismiss, and entered an order dismissing the Complaint.  Plaintiff respectfully requests that the Court reconsider its decision pursuant to Federal Rule of Civil Procedure 59(e) and vacate its order pursuant to Rule 60(b).  Specifically, dismissal of Plaintiff's Complaint was based on at least three errors of law.  First, the Court failed to consider Plaintiff's well-pled allegations of gender-based harassment under Title VII.  Second, the Court erred in determining that the hostile work environment to which Ms. Parker was subjected was not severe and pervasive.  Third, the Court failed to properly consider the well-pleaded allegations of Plaintiff's reasonable, good faith belief that the Defendant was engaging in unlawful employment action when she opposed such action.  Reconsideration is necessary in order to correct these mistakes, to prevent injustice, and/or for any additional reasons the Court deems appropriate.[1]

Alternatively, Plaintiff requests that the Court vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b) and permit Plaintiff to file an amended complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2).

## II.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

As set forth in detail in the Plaintiff's opposition brief to Defendant's motion to dismiss (ECF No. 34-1, "Op. Mem."), Plaintiff was the subject of a malicious and false workplace rumor about a sexual affair with her superior manager, Mr. Damarkus Pickett.  Compl. at ¶ 12.  The rumor was that Ms. Parker engaged in an extramarital affair in order to advance at her job, and it

---

[1] Plaintiff also maintains that the Court erred in dismissing Count III of the Complaint regarding discriminatory termination; however, Plaintiff does not address that error in the instant motion.

1

was pervasively spread creating a hostile work environment for Ms. Parker. *Id*. at ¶¶ 12, 15, 17. She attempted to resolve the hostility in her work environment on her own, but it only grew more severe and pervasive. *Id*. at ¶¶ 18, 20, 24, 27. When she formally complained to Defendant's Human Resources department about the hostile work environment that she was subjected to, she was terminated. *Id*. at ¶¶ 28, 38.

Because Ms. Parker was not able to resolve the ongoing hostile work environment on her own, she filed a charge with the Equal Employment Opportunity Commission and eventually filed a Complaint at the United States District Court for the Eastern District of Virginia on May 15, 2017. The Complaint was subsequently transferred to the United States District Court for the District of Maryland. ECF No. 19. Defendant filed a motion to dismiss on June 28, 2017 (ECF No. 31), Plaintiff filed an opposition on July 12, 2017 (ECF No. 34), and Defendant filed a reply on July 21, 2017 (ECF No. 35). Oral arguments were heard on Defendant's motion to dismiss on December 7, 2017, and the Court granted Defendant's motion to dismiss. ECF No. 39.

## III.   MOTION FOR RECONSIDERATION

### A.   Legal Standard

A motion to alter or amend a judgment may be filed pursuant to Federal Rule of Civil Procedure 59(e) within 28 days after entry of judgment. Such relief may be granted "'(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *United States ex rel. Carter v. Haliburton Co.*, 866 F.3d 199, 210 (4th Cir. 2017) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)).

B.      **Argument**

The Court should grant Plaintiff's motion for reconsideration under Rule 59(e) to correct clear mistakes without the need for appellate proceedings.  *See Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal citations committed).  Plaintiff respectfully submits that the Court clearly erred in at least three ways in dismissing the Complaint.

> ### 1.      *The Complaint Properly Alleges that Ms. Parker's Harassment Was on the Basis of Gender*

During the December 7, 2017 hearing on Defendant's motion to dismiss, the Court determined that Ms. Parker's allegations of harassment had no gender-based component and dismissed her hostile work environment claim.  Exhibit A, Dec. 7, 2017 Hearing Transcript ("Hrg. Tr.") at 33:9-12, 33:24-34:2, 34:8-10.  In reaching this conclusion, the Court stated:

> Here, the legal question is whether spreading a rumor or circulating a rumor that somebody's promotion was based upon the providing of sexual favors is not gender-based discrimination.  It is conduct based rumor mongering, for the sake of a better word, and it could apply without regard to gender as has happened in other cases that I have had before me.

Hrg. Tr. at 36:5-11 (emphasis added).

Ms. Parker pled that her treatment by Defendant was gender-based and relied on sex stereotyping and specifically plead facts in support of that allegation.  Those facts were entitled to deference by the Court as well as all inferences to be drawn from them.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Whether specific acts or statements constitute sex-stereotyping sufficient to make out a claim under Title VII is a factual and not a legal question.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 288-89 (1989).  Ms. Parker is entitled to produce evidence at trial through expert and other testimony that "sleeping to the top" and other characterizations of her conduct were based on sexual stereotyping.  *Id.* at 255.

The Complaint and Plaintiff's briefing and argument asserted that Ms. Parker's harassment was grounded in impermissible gender stereotypes, including the negative stereotypes regarding a woman's submissive and overly-emotional nature, as well as the relationship between the advancement of women in the workplace and their sexual behavior. *See Price Waterhouse*, 490 U.S. at 235; *Spain v. Gallegos*, 26 F.3d 439, 448 (3d Cir. 1994); *Brown-Baumbach v. B&B Auto., Inc.*, 437 Fed. App'x 129, 133 (3d Cir. 2011). .

The Supreme Court has recognized that an employer's reliance on gender stereotyping can create an actionable gender-based claim under Title VII.  In *Price Waterhouse v. Hopkins*, the Court determined that the plaintiff's employer denied her a promotion at least in part because of her nonconformity with female stereotypes: she was described as "macho," "advised to take 'a course at charm school,'" and was instructed to walk, talk, and dress "more femininely."  490 U.S. at 235.  In its analysis, the Court confirmed that an employer who acts on the basis of gender-based stereotypes has indeed "acted on the basis of gender" for the purpose of Title VII. *Id*. at 288.  The Court then emphasized the legal relevance of gender stereotyping under Title VII, reaffirming that "[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes."  *Id*. at 251 (quoting *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978)).

As alleged in the Complaint, the harassment that Ms. Parker suffered was based on her gender—but for her status as a woman in the workplace, she would not have been subjected to her hostile work environment.  Compl. at ¶¶ 11-15, 17, 19-22, 24-28, 31-37, 45.  The rumor smearing Ms. Parker's professional achievements and undermining her credibility in the workplace was directed at her precisely because of her gender.  *See id*. ¶¶ 11-15, 17, 25; Opp.

4

Mem. at 9-12; Hrg. Tr. at 13:18-14:3, 14:8-18.  And as pled in the Complaint and underscored in Plaintiff's briefing and at the December 7, 2017 hearing, Ms. Parker's gender-based harassment did not end with the pervasive circulation of this false rumor—the belittling and disparate treatment she suffered when she objected to her harassment was also due to her gender.  *See* Compl. at ¶¶ 18-28, 31-38; Opp. Mem. at 9-12; Hrg. Tr. at 12:19-14:3, 14:8-18.  At the heart of Ms. Parker's gender-based harassment was a proscribed reliance on impermissible gender stereotypes.  Hrg. Tr. at 13:18-14:3, 14:8-18.  The impermissible stereotyping and the harm to which it directly led are clearly pled on the face of the Complaint.  As alleged, that harassment was impermissibly grounded in three traditional female stereotypes: first, that women who advance in the workplace rely on their sexuality and promiscuity to do so; second, that women should be submissive and non-assertive in the workplace; and third, that when women do complain, they do so because they are overly emotional, dramatic, or hysterical.

The alleged circulation and aftermath of the false rumor demonstrates the corrosive and harmful impact of this first stereotype.  As pled in the Complaint, a male subordinate, who was jealous of Ms. Parker's earned success at the company, concocted and circulated the false rumor—to great effect—in order to smear Ms. Parker's promotion and impugn the integrity of her workplace performance.  Compl. at ¶¶ 12, 13, 25.  The rumor accomplished its intended effect as it was allowed to gain traction: "[a]s the rumor spread," the Complaint alleges, Ms. Parker was regarded with "open resentment and disrespect" from her co-workers, subordinates, and superiors, including a supervisor who proclaimed he "could no longer recommend her for promotions or higher-level tasks" and "would not allow her to advance any further within the company."  *Id*. at ¶¶ 12, 15, 17, 20-21, 24.  Notably, the rumor also involved a male employee, Mr. Pickett, but the only workplace consequence he allegedly suffered was a single derogative

question from his superior.  *Id*. at ¶ 16.  Ms. Parker and Mr. Pickett were the subject of the same sexually-explicit rumor, but while Mr. Pickett, a man, suffered no ill consequence, Ms. Parker, a woman, experienced severe and pervasive harassment that culminated in her termination.

Allegations of the disparate treatment that Ms. Parker suffered when she voiced an objection to this harassment manifest the second and third gender stereotypes.  When Ms. Parker asserted her desire to be free of harassment through the normal procedures available to her at RCSI, she was physically shut out of relevant meetings, repeatedly ignored, verbally harassed and screamed at, accused of "huffing and puffing" about the false rumor, repeatedly blamed for disrupting the workplace, threatened with termination, instructed to never "let this happen again," accused of being a "poor manage[r]," and accused of "insubordination."  *Id*. at ¶¶ 20-22, 25-27, 37.  When Mr. Jennings filed a false hostile environment claim, his claim was immediately resolved in his favor without a chance for Ms. Parker to review or respond to the allegations.  *Id*. at ¶ 31.  Ms. Parker was forbidden from having any contact with him, and he faced no adverse consequences, in stark contrast to the negative and pervasive harassment that Ms. Parker suffered.  In fact, Mr. Jennings was provided wide discretion to improperly linger in Ms. Parker's workplace, where he openly mocked and taunted her.  *Id*. at ¶ 33.  When Ms. Parker, a woman, asserted herself in the workplace, she was repeatedly punished and harassed for rejecting the traditionally submissive female role, and her objections were either ignored or characterized as overly dramatic or emotional, which constitute clear gender-based characterizations.  When Mr. Jennings, a man, asserted himself in the workplace, his complaints were immediately legitimized and he was instantly rewarded.  It is telling that the two simultaneously-issued written warnings that formed the alleged basis of Ms. Parker's termination

6

were (1) Mr. Jennings's unsubstantiated and false allegations and (2) unfounded and gender-based accusations of Ms. Parker's "poor management ability" and "insubordination." *Id*. at ¶ 37.

In considering similar allegations of hostile environments, numerous courts have concluded that the types of workplace harassment Ms. Parker experienced constituted actionable gender-based discrimination. Here, as in *Spain v. Gallegos*, "the crux of the rumors and their impact upon [Ms. Parker] is that [Ms. Parker], a female, subordinate employee, had a sexual relationship with her male superior." 26 F.3d at 448. "The ongoing rumors, which were false, accused her of physically using her sex as a tool for gaining favor, influence and power with [her superior], a man, and suggested that her professional accomplishments rested on sexual achievements rather than achievements of merit." *Jew v. University of Iowa*, 749 F. Supp. 946, 958 (S.D. Iowa 1990). As the United States Court of Appeals for the Third Circuit has repeatedly held, such harassment is gender-based for the purposes of Title VII because "traditional negative stereotypes regarding the relationship between the advancement of women in the workplace and their sexual behavior stubbornly persist in our society." *Spain*, 26 F.3d at 448; *Brown-Baumbach*, 437 Fed. App'x at 133 (quoting same). Because these entrenched "stereotypes may cause superiors and co-workers to treat women differently from men, . . . a reasonable jury could conclude that [the plaintiff] suffered the effects she alleges because she was a woman." *Spain*, 26 F.3d at 448. For these reasons, the United States Court of Appeals for the Seventh Circuit has similarly determined that "[u]nfounded accusations that a woman worker is a 'whore,' a siren, carrying on with her coworkers, a Circe, 'sleeping her way to the top,' and so forth" are "accusations based on the fact that she is a woman." *McDonnell v. Cisneros*, 84 F.3d 256, 259-60 (7th Cir. 1996). As noted in Plaintiff's brief in opposition to Defendant's motion to dismiss: "Were [Ms. Parker] not a woman, it would not likely have been rumored that

7

[she] gained favor with [her superior] by a sexual relationship with him." *Jew*, 749 F. Supp. at 958; *see also Spain*, 26 F.3d at 448 ("[I]f [the plaintiff] had been a man she would not have been treated in the same manner." (citation omitted)).

As in *Jew* and *Spain*, the situation here was "not merely one of idle gossip about an alleged office romance." *Spain*, 26 F.3d at 449 (quoting *Jew*, 749 F. Supp. at 959). And although certain sexually-explicit rumors may have gender-neutral effects, when the "accusation[] [is] that the female participant in the purported affair was using sex to advance her career . . . [the rumors] are no longer gender neutral." *Dube v. Hadco Corp.*, No. 97-554-SD, 1999 U.S. Dist. LEXIS 21184, at *16 (D.N.H. Feb. 4, 1999); *see also Gillen v. Borough of Manhattan Community College*, No. 97 Civ. 3431 (DAB), 1999 U.S. Dist. LEXIS 4862, at *14 (S.D.N.Y. Apr. 14, 1999) (satisfied that the plaintiff alleged discrimination on the basis of sex for purposes of surviving a motion to dismiss where "the essence of the rumors is that Plaintiff's job achievement was based not on merit, but rather on her sexual relationship with her male superior"). Accordingly, Ms. Parker has properly and sufficiently alleged "that the rumors directed at her and her resulting ostracization and adverse evaluation for advancement purposes were both sex-based and intentional." *Spain*, 26 F.3d at 449.

It is also well-established that harassment rooted in antipathy toward a woman's decision to reject the typically submissive female role in the workplace is improper gender stereotyping well within the ambit of Title VII. *See, e.g.*, *Price Waterhouse*, 490 U.S. at 288 (noting that an employer "who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072 (9th Cir. 2003) (noting the "history of discrimination against women in the workplace" and highlighting the "repeated[] echoe[s] [of] the all too familiar complaints about assertive, strong

8

women who speak up for themselves: 'difficult,' 'negative attitude,' 'not a team player,' 'problematic.'"); *Kaye v. Storm King Sch.*, 11 CV 3369, 2015 U.S. Dist. LEXIS 127508, at *16 (S.D.N.Y June 8, 2015) (finding that referring to women in the office as "dramatic," "hysterical," and "overemotional" could lead a reasonable jury to conclude that plaintiffs were faced with a "'steady barrage of opprobrious discriminatory comments' based on their gender, which is sufficient to create a hostile work environment" (citation omitted)).

Empirical research confirms that the images of women as passive, submissive, and emotional are gender-based stereotypes that have persistently burdened women in the workplace. *See, e.g.*, Smith J.S., Brescoll V.L., Thomas E.L. (2016), *Constrained by Emotion: Women, Leadership, and Expressing Emotion in the Workplace*, Connerley M., Wu J. (eds), Handbook on Well-Being of Working Women. International Handbooks of Quality-of-Life. Springer, Dordrecht (explaining how entrenched female stereotypes of being "too emotional" detrimentally affect women in professional settings); Madeline E. Heilman, Elizabeth J. Parks-Stamm, *Gender Stereotypes in the Workplace: Obstacles to Women's Career Progress*, Social Psychology of Gender (Mar. 12, 2015) (explaining that prescriptive gender stereotypes for women demand they be submissive and non-self-assertive, and that the perceived violation of these stereotypes will generally have negative effects for women in the workplace); Diana Burgess and Eugene Borgida, *Who Women Are, Who Women Should Be: Descriptive and Prescriptive Gender Stereotyping in Sex Discrimination*, 5 Psych. Pub. Pol. And L. 665, 669 (Sept. 1999) (noting that "women are often perceived stereotypically, in ways that are detrimental to their role as workers (*e.g.,* illogical, emotional, passive)"). Researchers have further concluded that a woman's legitimate response in a professional setting is "often scrutinized and exaggerated" as emotional,

overly dramatic, or hysterical, such that "perceptions of a woman's competence" are "diminish[ed]," "ultimately undermining her authority and status." Smith J.S., at 209.

Ms. Parker's well-pled complaint thus embodies what other courts and social scientists have already concluded: that harassment grounded in impermissible gender stereotypes constitutes gender-based rather than gender-neutral harassment. Ms. Parker's allegations clearly illustrate severe and pervasive forms of harassment that were inflicted on Ms. Parker precisely "*because of* [her] . . . sex." *Price Waterhouse*, 490 U.S at 239 (quoting 42 U.S.C. §§ 2000e-2(a)(1)-(2)) (second alteration in original). Accordingly, the Court's finding that the Complaint failed to adequately allege gender-based harassment constitutes a clear error of law and Plaintiff respectfully requests the Court reconsider its dismissal of Plaintiff's Complaint and permit Plaintiff to present evidence in support of her claims.

### 2. *The Complaint Properly Alleges that Ms. Parker's Hostile Work Environment was Severe and Pervasive.*

The Court also erred in dismissing Ms. Parker's hostile work environment claim in finding that it was not severe and pervasive in part because "the temporal elements [were] very short in terms of how long [the] rumor was in circulation." Hrg. Tr. at 34:12-18. The fact that Ms. Parker was fired shortly after the unlawful hostile work environment began does not excuse RCSI's unlawful conduct—Ms. Parker suffered a severe and pervasive hostile work environment until she was unlawfully terminated.

As explained in Plaintiff's opposition to Defendant's motion to dismiss, in *Harris v. Forklift Systems*, the Supreme Court identified a number factors to consider when examining the totality of the circumstances, including: "(1) the frequency of the alleged discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work

10

performance." 510 U.S. 17, 17 (1993). Here, the frequency, severity, threatening and humiliating nature, and interference with Plaintiff's work performance all weigh in favor of a finding that the harassment was severe and pervasive to create a hostile work environment:

- **Frequency:** First, the frequency of conduct supports a finding that the hostile work environment was severe and pervasive. Plaintiff alleged that just two weeks after she started in her managerial role, she learned of a false rumor that she engaged in a sexual affair with Mr. Pickett to attain her job position. Compl. at ¶ 12. The rumor spread throughout the warehouse, making the workplace increasingly hostile. *Id.* at ¶¶ 16-17. For example, the rumor was discussed at a meeting for all warehouse employees, at which Mr. Moppins slammed the door in Ms. Parker's face, did not allow her to participate, and publicly humiliated her. *Id.* at ¶¶ 19-22. Then, Mr. Moppins reprimanded her for raising her concerns with him and told her that she would not advance at the company as a result, causing Plaintiff to fear for loss of her job, *id.* at ¶¶ 23-26, and later lost his temper and screamed at Plaintiff, stating that he should have fired her, *id.* at ¶ 27.

- **Severity/Physically Threatening:** Second, the conduct was severe, physically threatening, and humiliating. For example, as alleged in the Complaint, Mr. Moppins physically slammed the door in Plaintiff's face, humiliating her in front of all of her coworkers, and screamed and lost his temper at her. *Id.* at ¶¶ 20-21, 27. Plaintiff also alleged that Mr. Jennings engaged in threatening and abusive conduct by "direct[ing] long stares," smirking, and laughing at her. *Id.* at ¶ 33.

- **Interference with Work Performance:** Finally, the hostile work environment unreasonably interfered with Ms. Parker's work performance by impacting her supervisory duties of other employees. *Id.* at ¶ 17. Additionally, Plaintiff was not permitted to attend a mandatory meeting for all warehouse staff, and was humiliated in front of employees she was in charge of supervising, undermining her authority. *Id.* at ¶¶ 19-22. Further, Mr. Jennings interfered with Ms. Parker's performance by distracting employees under her supervision during working hours. *Id.* at ¶ 33. Plaintiff was also told she would not advance in the company after raising her concerns with Mr. Moppins. *Id.* at ¶ 24. From a subjective and objective standard, the environment was abusive and crippled Ms. Parker's performance and advancement, ultimately resulting in her termination.

Critically, the severity and pervasiveness of the harassment Ms. Parker was subjected to would not be changed or affected by the number of months for which she endured the disparate treatment. The fact that Ms. Parker was unlawfully fired as a result of an unlawful hostile work environment and gender-based discrimination does not lessen its severity or pervasiveness.

11

Accordingly, the Court erred in finding that Plaintiff did not suffer from severe and pervasive harassment, and Plaintiff respectfully requests that the Court reconsider its dismissal of Plaintiff's Complaint and permit Plaintiff to offer evidence in support of her claims.

### 3. *The Complaint Properly Alleges that Ms. Parker Engaged in Protected Activity When She Opposed a Hostile Work Environment She Reasonably Believed to Exist*

The Court's dismissal of Ms. Parker's retaliation claim is also based on an error and mistake. In its dismissal of Ms. Parker's retaliation claim, the Court failed to properly consider the reasonableness of Ms. Parker's good faith belief that the employment action she opposed was unlawful. The Court determined that it was impossible for Ms. Parker to have had an objectively reasonable belief that RSCI acted or was acting unlawfully, solely because the Court determined that none of the alleged matter was discriminatory. Hrg. Tr. at 36: 17-21. Instead, the Court should have determined whether the Complaint properly alleges that Ms. Parker's good faith belief was objectively reasonable and therefore could support a retaliation claim, even if the underlying conduct was determined not to be discriminatory.

To give rise to a prima facie case of retaliation under Title VII, Ms. Parker is required to plead the following elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events. *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). "A 'protected activity' may fall into two categories, opposition and participation." *EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005); *see also* Title VII Sec. 2000(e)(3). "Employees engage in protected oppositional activity when, *inter alia*, they 'complain[] to their superiors about suspected violations of Title VII.'" *Boyer-Liberto v. Fontainebleau Corp*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc*, 333 F.3d 536, 543-44 (4th Cir.

2003). "The Title VII violation may be complete, or it may be in progress." *Boyer-Liberto*, 786 F.3d at 281. In other words, "an employee['s opposition] is protected from retaliation . . . when she reasonably believes that a hostile work environment is in progress, with no requirements for additional evidence that a plan is in motion to create such an environment or that such an environment is likely to occur." *Id.* at 284.

Additionally, courts have recently found that an employee's opposition is a protected activity if the employee had an objectively reasonable and good faith belief, in light of all the circumstances, that the practice she opposed constituted a violation to Tile VII. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 340-41 (4th Cir. 2006). For example, in *E.E.O.C. v. Navy Federal Credit Union*, the Fourth Circuit "recognized that section 704(a) [of Title VII] protects activity in opposition not only to employment actions actually unlawful under Title VII[,] but also employment actions an employee *reasonably believes* to be unlawful." 424 F.3d 397, 406 (4th Cir. 2005) (emphasis added); *see also Sumner v. United States Postal Serv.*, 899 F.2d 203, 208-09 (2d. Cir. 1990) ("to prove that activity is protected under Title VII, "a plaintiff need not prove the merit of his underlying claim, but only that he was acting in good faith"); *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d. Cir. 1989) (employee only need show good faith reasonable belief that violation existed, not an actual violation); *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1155 (8th Cir. 1989) (to prove that plaintiff engaged in protected activity, plaintiff need not establish that conduct he opposed was in fact discriminatory).

In *Berg v. La Cross Cooler Co.*, the Seventh Circuit further explained that requiring the opposed action to be illegal would:

> undermine[] Title VII's central purpose, the elimination of employment discrimination by informal means; destroy[] one of the chief means of achieving

13

that purpose, the frank and non-disruptive exchange of ideas between employers and employees; and serve[] no redeeming statutory or policy purposes of its own. [The opposition clause] is designed to encourage employees to call to their employers' attention discriminatory practice of which the employer may be unaware or which might result in protracted litigation to determine their legality if they are not voluntarily changed.

612 F.2d 1041, 1045 (7th Cir. 1980); *see also Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) ("[Limiting the opposition clause's protection] to cases where the employer has in fact engaged in an unlawful employment practice . . . would not only chill the legitimate assertion of employee rights under Title VII[,] but would tend to force employees to file formal charges rather than seek conciliation or informal adjustment of grievances.").

As alleged in the Complaint, Ms. Parker engaged in a protected activity when she opposed RCSI's "employment actions [she] reasonably believe[d] to be unlawful." *Navy Federal Credit Union*, 424 F.3d at 406. Ms. Parker reasonably believed that unlawful discrimination occurred or at least was in progress. *See, e.g.*, Compl. at ¶ 17 ("As the rumor spread, Ms. Parker's work environment became increasingly hostile. She was treated with open resentment and disrespect from a number of her co-workers…."); *id.* at ¶ 26 ("Mr. Moppins's harsh comments and failure to listen to Ms. Parker's side of the story not only aggravated the hostile work environment to which she was subjected, but put her in fear of losing her job."); *id.* at ¶ 28 ("[I]t became clear to Ms. Parker that Mr. Moppins had no intention of fairly and appropriately handling the issues caused by the rumor or disciplining any of the employees who were perpetuating the rumor," and thus she "went to MS. Cathy Price, RCSI's Human Resources Manager, to file a sexual harassment complaint against Mr. Moppins and Mr. Jennings.").

Based upon the totality of the circumstances, the Complaint adequately alleges that Ms. Parker had an objectively reasonable belief that the she was being subjected to a hostile work environment, or that, at the very least, a hostile work environment was forming, when she

14

complained to the Human Resources Department.  Therefore, the Court should have recognized her opposition action as a protected activity under Title VII, even if (for the sake of argument) the opposed of action was not discriminatory in nature (it was) or was not severe or pervasive (it was).  Hrg. Tr. at 33:9-13, 36:17-21; *cf. Boyer-Liberto*, 786 F.3d at 281, 284 ("an employee['s opposition] is protected from retaliation . . . when she reasonably believes that a hostile work environment is in progress, with no requirements for additional evidence that a plan is in motion to create such an environment or that such an environment is likely to occur.").

Accordingly, the Court's dismissal of Ms. Parker's retaliation claim was based on a clear error of law and Plaintiff respectfully requests the Court reconsider its dismissal and permit Plaintiff to offer evidence in support of her claims.

## IV.    IN THE ALTERNATIVE, PLAINITFF MOVES TO VACATE THE JUDGMENT TO PERMIT PLAINTIFF TO FILE AN AMENDED COMPLAINT

In the event the Court believes that sufficient allegations do not yet exist to adequately allow the Court to reconsider its dismissal of the Complaint, Ms. Parker moves to vacate the judgment pursuant to Rule 60(b)(1) to permit the filing of an amended complaint pursuant to Rule 15(a)(2).

### A.    **Legal Standard**

Except in the situations set forth in Rule 15(a)(1), a plaintiff may amend her complaint only by leave of court or by written consent of the defendant.  Fed. R. Civ. P. 15(a)(2).  Federal Rule of Civil Procedure 15(a), which governs the amendment of pleadings, "directs that leave to amend 'shall be freely given when justice so requires.'"  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quoting Fed. R. Civ. P. 15(a)(2)).  In light of this "liberal rule," the Fourth Circuit has held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving

15

party, or the amendment would have been futile." *Id*. (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).  Delay alone "is an insufficient reason to deny the plaintiff's motion to amend" and, "[f]or this reason, a district court may not deny such a motion simply because it has entered judgment against the plaintiff."  *Id*. at 427 (citations omitted).

One critical difference exists between a post-judgment and pre-judgment motion to amend: the district court may not grant a post-judgment motion to amend unless the judgment has been vacated pursuant to Federal Rule of Civil Procedure 59(e) or 60(b).  *Id*.  In determining whether vacatur is warranted, however, the court "need not concern itself with either [Rule 59(e) or Rule 60(b)]'s legal standards."  *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).  Rather, "[t]he court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to [Rule] 15(a)."  *Id*.  The district court should therefore "evaluate a postjudgment motion to amend the complaint 'under the same legal standards as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility.'"  *Id*. (quoting *Laber*, 438 F.3d at 427).

B.     **Argument**

As described above in Section III, the Complaint contains sufficient allegations to warrant reconsideration of the Court's dismissal of this civil action.  If the Court believes that additional allegations describing the unlawful gender stereotyping described above should be more squarely pled, however, Plaintiff respectfully requests that the Court vacate its dismissal and grant Plaintiff leave to file the Proposed Amended Complaint, attached as Exhibit B to this memorandum.  The Proposed Amended Complaint merely clarifies that the alleged harassment was impermissibly grounded in three traditional female stereotypes: (1) that women who advance in the workplace rely on their sexuality and promiscuity to do so; (2) that women should

16

be submissive and non-assertive in the workplace; and (3) that when women do complain, they do so because they are overly emotional, dramatic, or hysterical.  As this would be Plaintiff's first amendment of her complaint, permitting such amendment is consistent with Rule 15(a) of the Federal Rules of Civil Procedure and this Circuit's case law interpreting the liberal standard courts should apply in determining whether to permit amendments to complaints.  *See, e.g.*, *Katyle*, 637 F.3d at 471; *Laber*, 438 F.3d at 426.

## V.	**CONCLUSION**

For the foregoing reasons, the Court should grant the Plaintiff's motion for reconsideration or, in the alternative, vacate the judgment and permit Plaintiff to amend the Complaint.

Dated:  January 4, 2018	Respectfully submitted,

By:	*/s/ Dennis A. Corkery*
Matthew K. Handley (Bar. No. 18636)
Dennis A. Corkery (Bar. No. 19076)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
11 Dupont Circle NW, Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010

Andrew R. Kopsidas (Bar No. 16057)
Daniel Tishman (*admitted pro hac vice*)
Min Suk Huh (*admitted pro hac vice*)
**FISH & RICHARDSON P.C.**
The McPherson Building
901 15th Street N.W., 7th Floor
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

*Counsel for Plaintiff Evangeline J. Parker*

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO VACATE THE JUDGMENT AND PERMIT PLAINTIFF TO FILE AN AMENDED COMPLAINT** served by means of the Court's CM/ECF system to all counsel of record who have consented to electronic service on this the 4th day of January, 2018.

*/s/ Dennis A. Corkery*
Dennis A. Corkery