# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

EVANGELINE J. PARKER,            Civil No.  RWT-17-01648

          Plaintiff,

     v.                         Greenbelt, Maryland

REEMA CONSULTING SERVICES,      December 7, 2017
INC.,
          Defendant.            1:30 p.m.

-------------------------/

                TRANSCRIPT OF MOTIONS HEARING
            BEFORE THE HONORABLE ROGER W. TITUS
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:      Fish and Richardson PC
                        By: DANIEL A. TISHMAN, ESQUIRE
                            MIN SUK HUH, ESQUIRE
                        901 15th Street NW
                        Seventh Floor
                        Washington, D.C. 20005

                        Washington Lawyers Committee for
                        Civil Rights and Urban Affairs
                        By: DENNIS A. CORKERY, ESQUIRE
                        11 Dupont Circle NW
                        Suite 400
                        Washington, D.C. 20036

For the Defendant:      Wright Constable & Skeen, LLP
                        By: DONALD J. WALSH, ESQUIRE
                        Seven Saint Paul Street
                        18th Floor
                        Baltimore, Maryland 21202

Court Reporter          Lisa K. Bankins RMR FCRR
                        United States District Court
                        6500 Cherrywood Lane
                        Greenbelt, Maryland 20770


Proceedings recorded by mechanical stenography,
transcript produced by notereading.

1

P R O C E E D I N G S

THE CLERK:  The matter now pending before this Court is Civil Case Number RWT-17-1648, Evangeline Parker versus Reema Consulting Services, Inc.  The matter comes before this Court for a motions hearing.  Counsel, please identify yourselves for the record.

MR. WALSH:  Don Walsh on behalf of Reema Consulting Services.

MR. TISHMAN:  Daniel Tishman on behalf of the plaintiff, Ms. Parker.  With me is my colleague, Mr. Min Suk Huh from Fish and Richardson as well and Mr. Dennis Corkery from the Washington Lawyers Committee.

THE COURT:  Good afternoon.  First, I apologize for starting this late today.  I had an unanticipated visit for the morning with a dentist.  So if I look pained, it's not because I don't like your arguments.  I'm having pain.  But I'll do the best I can to get through it.

We are here on the defense motion to dismiss. I'll be glad to hear from you, sir.

MR. WALSH:  Thank you Your Honor.  Your Honor, we filed a motion to dismiss this particular complaint, which is a relatively simple complaint that has been made somewhat complicated through the response of the plaintiffs in the motions.  They are basically three

counts.  Count One is for hostile work environment, discrimination as a result of a hostile work environment.  Count Two is retaliation.  And then Count Three is a discrimination claim that arises out of a policy alleged to exist at Reema Consulting.

I want to kind of deal with these in reverse order only because it's a question of brevity.  Count Three is one that we raised the issue that it should be dismissed for the simple reason that it was never raised with the EEOC.  You have to exhaust your administrative remedies long before you can come to the court.  The issue --

THE COURT:  Well, her termination was raised with the EEOC, was it not?

MR. WALSH:  The termination was.  That's it, Your Honor.  But there was -- we're not even close to notice pleadings.  So in paragraph 39 of the complaint, which feeds into Count Three, it said on information and belief, Reema had a three strikes rule under which employees are subject to termination after receiving three written warnings.

To Ms. Parker's knowledge, that rule was disparately enforced such that male employees were generally not fired even after receiving three or more warnings.  While some female employees were terminated

without three warnings or with all three warnings being issued at once.  Well, those are the only facts --

THE COURT:  You're telling me that that allegation of a practice or policy of the company not being enforced in a gender neutral manner was never raised before the EEOC.

MR. WALSH:  Absolutely, Your Honor.  And so we attached to the motion to dismiss the actual EEOC charge that was filed and that EEOC charge only addresses the issues that Ms. Parker had with respect to the rumors circulating around her conduct.  The entire charge itself that we attached talks about how she's been subjected to discrimination as a result of these rumors that were alleged, that's relative to the conduct that came out of these rumors.  There's nothing even remotely close to suggest that there was some sort of policy that we had failed to adhere to.  Consequently, it was never even addressed at the EEOC level because that was something that nobody brought up.  Nobody had raised it before.  So it's very easy to dismiss it based on that fact alone.

In addition to that, obviously, one of the other arguments that we've made with respect to Count One is the idea you have to have some factual predicate.  You have to have facts that show, not merely did allege, but facts that actually show.

4

The only allegation as to this particular policy is in this paragraph 39 that says on information and belief, there was some policy. She doesn't say where the policy was. She doesn't suggest that it was in a handbook. That it was unwritten, written. And then she said to her knowledge, it was disparately enforced. But she doesn't give any examples of anybody that it was disparately enforced with.

So there's really -- not only the fact that it wasn't raised at EEOC, there's a complete derth of allegations that would support that claim in any way, shape or form. So because of that, it should be easy to claim that that particular count itself should be dismissed. That would be Count Three.

With respect to Counts One and Two, they both come off of this issue that Ms. Parker has raised that there were -- alleged that there was a rumor to which subjected her to a variety of different disparate treatment that she believes existed that gives her the right to go to the EEOC, gives her the right to come to court to claim that she was discriminated against.

The problem is is that her complaint completely centers on the fact that there was a rumor that was started by a subordinate employee that even she admits in her complaint was jealous of her success. What she claims

was this particular employee started a rumor that she was have an affair with a supervisor.  The entire complaint focuses on her conduct.  It doesn't focus on her gender.  And she doesn't allege any facts.  She certainly doesn't show any facts either consistent with the standards under Bass v. Dupont with the concept that in fact her gender is what led to the ultimate discrimination that she complains of.

Even if we accept her belief that this rumor led to all these conducts, led to her being subjected to different treatment by her supervisors, led to the fact that the company may have done different things with her, the reality is that is related to conduct, not related to gender.

One of the fundamental elements that has to be demonstrated in a Title VII case is you have to show that it's related to gender, sex or age.  She's clearly not claiming that it was related in any way -- I'm sorry.  Gender, race or age.  It's clearly not related in any way to race.  She hasn't alleged that it's related in any way to age.  All she said was that I have a claim based on gender.  But the substance of the claim based on gender is entirely based on this particular rumor.

She's given us no evidence.  She's demonstrated no facts.  She's alleged no facts that suggests that any

other female employee was subjected to the same sort of concept.

She tells us that her employment at Reema -- she went through six promotions before this rumor started. That she was there for 18 months.  She promoted.  She was a good employee, performed well, went up six times.  She's identified other female managers, including in-house counsel in her complaint and she doesn't make any allegations at all that either one of them were submitted to the same sort of rumor mill that would suggest that this rumor generates because of someone's gender, not because of conduct that occurs in this particular case.

On top of that, she's abundantly clear that the gentleman who started -- that she believes started this particular rumor was jealous of her success.  She doesn't say that he raised this rumor or he started this rumor because I was a woman.  He said that he was in fact jealous of her success.

And I believe, Your Honor, just to point it out, it was paragraph 25 of the complaint actually.  It says Ms. Parker explained to Mr. Moppins that the rumor was untrue and that it had been started by a co-worker who was jealous of her success at the company.

It's not that he started the rumor because she was a female and none of the facts that she's alleged deal

with the concept that she was in fact female and that's the reason why she was treated this way. All of the conduct that she alleges goes back to the concept that you were treated this way because of certain conduct in which you engaged. You may have engaged in an extramarital affair. Even if you believe that that's what happened in this particular case. And again at this standard, I understand in testing the complaint, we are measuring whether in fact she's alleged sufficient facts. In this case, there are no facts that said my gender. She identifies other women. She identifies other managers. But she doesn't identify anybody who was treated differently as a result of the same kind of rumor. There's no men who are suddenly treated differently. The only other person in this particular rumor that was involved was her supervisor. So obviously he wasn't about to be treated in any different way. There was nothing more that could be done from that standpoint.

So had she come to the court and alleged that in fact there were plenty of rumors floating and they were always about the female employees and that it was always the male employee on the other side, nothing happened to him, we'd have a whole different story. We don't have that in this particular case. All we have is a situation where Ms. Parker has identified that the particular

complaint here is that a rumor.

Then you get into the issue about whether it's sufficiently severe and pervasive and that's a whole other issue, Your Honor. But in this particular case, Ms. Parker identifies that she's the one that was kept spreading the rumor. She was the one that kept trying to talk to people about it. I think that she pointed out she was the one that was going out trying to get explanations out of people and trying to basically set the record straight. As a result of all that, the company is not the one that created the severe and pervasive nature of this.

What happened, if anything, in this case is that Ms. Parker was upset about a rumor that was started by somebody that she seemed to identify exactly who it was. And I'm not saying that she shouldn't be upset. I understand that is upsetting that somebody would allege something that could be untrue. But the problem was it wasn't about her sex. And because it wasn't about her sex and it wasn't severely and pervasively propagated in any way, shape or form by the company, it can't form the legal basis for a Title VII action.

So we're in a situation where even accepting her complaint, she certainly was subjected to some uncivil conduct, something that was distasteful, maybe callously spread around by other employees. But it certainly isn't

the kind of thing that would give rise to a severe and pervasive claim based on her gender.

On top of that, Your Honor, the third element of a Title VII claim is that the company has to have not appropriately addressed it.  They had to have been negligent somehow in the way in which they tried to handle or tamp down the hostile work environment.

In this particular case, she hasn't alleged facts that show that the company did anything wrong.  She identified several different managers that were involved, in-house counsel that were involved.  Ultimately, she was dismissed and terminated, but she doesn't say that the company didn't investigate further, the company didn't stop the rumors or couldn't stop the rumors in some other fashion.  She doesn't even focus on the company's conduct at all in order to show that in any way, shape or form, they actually were unreasonable in how they handled this particular situation.

So because of that, Your Honor, we also cited in our brief dozen of cases -- well, I shouldn't say dozens.  That's a little bit of exaggeration.  About ten cases or so that have come along over the past 10, 15 years, a variety of jurisdictions, all dealing with this exact same issue.  All people, mixed couples who are alleged to have committed adultery or alleged to have been involved in

affairs in a variety of way, in all those cases, the court have come back and said no, we're not going to find that that's sufficient to find a Title VII hostile work environment claim.  We are dealing with a situation that you may have been subjected to, untoward comments related to your conduct.  They have nothing to do with the gender in those particular situations.

There is only one case I think maybe that we've identified or that has been identified back in 1990.  I believe the plaintiff's name was Jew.  She was a faculty member at a college.  And in that particular case, the court made it clear that she was subjected to 13 years, 13 years of abuse by other faculty members by the school.  They sent slurs her way.  They would post cartoons about sexual activity.  They wrote in the bathroom about -- it was horrendous back in 1990.  Apparently, that had gone on for almost a decade before that point in time.

The situation we're dealing with is not that way at all.  We're dealing with a situation where Ms. Parker identifies that this particular rumor came up during a very brief period of time where she was trying to stop the rumor or trying to get to the bottom of it and there was a variety of different treatment that went on.  But none of that can be identified or traced back to her gender.  Because of that, Your Honor, we believe that Counts One

and Two would also fall.

Count Two is the retaliation claim and in order for a retaliation claim, there has to be -- you can be wrong on the facts, but you have to be right on the law. So if the law does not support the notion that this would be a hostile work environment, then you don't even have a retaliation claim at that point in time.

So in light of the idea that Title 1 -- I'm sorry -- Count One for the Title VII discrimination of hostile work environment, we believe that legally is insufficient.  That would also suffice to dismiss Count Two as well.  Thank you, Your Honor.

THE COURT:  All right.  Thank you very much. Let me hear from the plaintiff.

MR. TISHMAN:  Good afternoon, Your Honor.  May it please the Court.  I forgot to introduce Ms. Parker. Ms. Parker is here with us in the courtroom today.

THE COURT:  Glad to have you with us, ma'am.

MR. TISHMAN:  Your Honor, this case is about unlawful gender based harassment, which began, but did not end with the false rumor that Mr. Walsh talked about.  And I'm going to talk about the rumor a bit.  But I want to stress that this case is not just about the rumor.  It's about a series of escalating hostilities that undermine Ms. Parker's position and her job and it undermined her

12

standing with her subordinate employees.  It's about Ms. Parker, an exemplary employee, who did the reasonable thing in this situation and raised her concerns with the company.  But it's also about a company that acted unreasonable in response to the situation and ultimately Ms. Parker was fired.

The workplace hostilities in this case began, but did not end with Mr. Donte Jennings starting a rumor that Ms. Parker advanced in the company because of a sexual affair.  Mr. Walsh talked about conduct, but as alleged in the complaint, this rumor is absolutely false.  And it's also important to note that the rumor if true would in and of itself be a civil rights violation, a quid pro quo.  But it's not just about the rumor, Your Honor.  But I do want to stress that the rumor is absolutely gender based.  Unfortunately --

THE COURT:  How is it gender based?

MR. TISHMAN:  Unfortunately, we live in a society that this type of rumor disparately impacts women in the workplace.  I think the Jew case addresses it head on and in that case, as to the issue of whether it was gender based, the court said it would not likely -- were the plaintiff not a woman, it would not likely have been rumored that she gained favor with the department head by a sexual relationship with him.  Here, too, the situation

is the same.  Were Ms. Parker not a woman, this rumor would have never started in the first place, that she had gained her promotion --

THE COURT:  Well, I've had cases before me of a male who was promoted and it was rumored that it was because he had a sexual relationship with the female supervisor.  I mean is that gender discrimination, too?

MR. TISHMAN:  Your Honor, I think we need to look at things differently and in the light of the complaint as pled with inferences drawn in Ms. Parker's favor that the rumor absolutely was gender based.  And we'd submit that in this male-dominated environment where Ms. Parker worked, this rumor would not have started were she not a woman.  And it's not just a rumor about jealousy of Ms. Parker's success.  It's a rumor about jealousy of Ms. Parker's success because as a female, she advanced more rapidly than her colleagues who started at the same time as her.  So it absolutely is a gender-based rumor.

Mr. Walsh talked quite a bit about the fact that in-house counsel, for example, was a woman.  In-house counsel, Ms. Reema-Vora, the daughter of the president of the company, Your Honor.  She bears the company's name, Reema-Vora.  So there's no element to a gender-based discrimination claim that requires that similarly situated women experienced the same type of hostile work

environment.  This is a fact dependent inquiry that should focus on Ms. Parker's hostile work environment that she experienced.

So I'll address each of the claims.  The hostile work environment based on sexual harassment we talked about a bit and I'll talk about a bit more of the different elements.  The second claim is a retaliatory termination and the third is a discriminatory termination.

The hostile work environment claim as Mr. Walsh said there are four elements.  That Ms. Parker experienced unwelcomed harassment, that the harassment was based on her gender and that the harassment was severe and pervasive and that there's a basis for imposing liability on the employer.  So most of the dispute relates to the second and third factors, whether it was based on gender, whether it was severe and pervasive.

On the based on gender factor, we've already talked about that a bit.  But I want to stress that Reema's efforts to distinguish the Jew case are just not on the point of whether or not the rumor was gender based.  Reema talked about the fact that the rumor lasted for nearly a decade and that the hostilities lasted for nearly a decade.  There were cartoons and slurs used against Dr. Jew.  That has nothing to do with whether the rumor and the hostilities were gender based.  And unfortunately,

Ms. Parker was not allowed to endure this for ten years because she was fired after just three short months.

And we also addressed the Allen v. TV One case in our brief and Reema addressed that in a footnote in their reply. But I think on the point of whether the harassment was gender based, there's nothing to distinguish and this case is just like that. Where the court found -- the District of Maryland found that there was nothing gender neutral about the harassment and but for her status as a woman in the workplace, the plaintiff would not have been subjected to the harassment by her supervisors and so this presents the same situation as Allen.

In the cases that Mr. Walsh talked about, they did cite quite a few cases in their reply brief, none of those involved a female plaintiff with false rumors of an affair used to gain a promotion and where the plaintiff was absolutely qualified for the position. Many of the cases involved motion for summary judgment rather than a motion to dismiss as well, Your Honor.

Mr. Walsh talked a bit about the severity and the pervasiveness. But as I listened to his argument, he focused really on who started it and he alleges that Ms. Parker kept starting the trouble by raising her concerns and talking about the rumor. He didn't really address the

severity and pervasiveness.  We submit that that's a factual intensive inquiry that should be addressed after the facts have been brought out through discovery.

The basis for imposing liability, the Vance versus Ball State University case that Reema cited in their brief states in it directly, if the supervisor -- in cases in which a harasser is a supervisor, different rules apply.  If the supervisor's harassment culminates in tangible employment action, the employer is strictly liable.  So this is a situation where Mr. Moppins was also involved in spreading the rumor and he was also involved in the hostile work environments that Ms. Parker had to endure in her workplace.

THE COURT:  Where did you allege that Moppins spread the rumor?  What paragraph?

MR. TISHMAN:  This is in paragraph 16.  As to the rumor, the paragraphs that follow that relate to the subsequent hostile work environment that continued as a result of Mr. Moppins' actions and the other actions within the company.  So Mr. Moppins was the highest up manager in the company and he was involved in spreading and increasing the hostilities that Ms. Parker experienced at her workplace.

So this is a situation where a supervisor is involved.  We've also alleged facts that even when Ms.

Parker did the reasonable thing by raising her concerns with the company through informal means by going directly to Mr. Moppins and eventually by raising it with H.R., they didn't act reasonably.

First, when she raised the issue with Mr. Moppins, he screamed at her and he told her that he should have fired her.  He even told her that because of the rumor, he would no longer recommend her for promotions.  So Mr. Moppins, the supervisor, absolutely contributed to the hostile work environment, but also he didn't act reasonably when she raised her concerns with him, nor did H.R., who merely asked the three managers to apologize to one other.

Which brings me to the next count, which is our retaliation count and that has to do with the fact that when Ms. Parker did raise her concerns, she was fired.  And Mr. Walsh talked about the fact that there is no liability for retaliation claim if the law doesn't support the underlying complaint or the underlying issue.  But in this case, the law does support the underlying issue of Ms. Parker had a reasonable belief that there was unlawful sexual harassment based on her gender.  And when she complained of that --

THE COURT:  She has to be right on the law.  I mean she may be wrong on the facts.  But doesn't she have

18

to be right on the law.  And your opposing counsel argues forcefully that this rumor is not dealing with her gender, it's dealing with conduct.  And you keep on saying, it's all about gender, but it can work both ways.  You can have a male who gets promoted by a female supervisor.  You can have a male who gets promoted by a same sex, but romantic relationship.  You can have all kinds of situations in which somebody can allege that a sexual relationship was the real reason for a promotion that doesn't look like it was based on merit.  How do you convert that into a gender claim and legally?

MR. TISHMAN:  Ms. Parker has alleged that she believed that she was harassed based on her gender.  So that --

THE COURT:  Believing you're harassed based on your gender is not enough.  What she's complaining about is that she received what she considered to be a legitimately, well-deserved promotion and I'll assume that for purposes of discussion and that somebody tried to undermine the benefits of her merit-based promotion by suggesting it was done because she had sexual relations with the person who promoted her.  How is that as a matter of law, gender-based discrimination, assuming that it happened?

MR. TISHMAN:  Your Honor, we submit that the

19

rumor would not have happened but for her gender.  This is just like the Jew case.  And, you know, that is alleged in the complaint and with the inferences drawn in Ms. Parker's favor that the rumor was absolutely based on her gender.  But the retaliation claim, she needed to have a reasonable belief that the rumor was based on her gender and that the subsequent activities were based on her gender.

The Boyer-Liberto case from 2015 in the Fourth Circuit says that an employee is protected from retaliation when she opposes a hostile work environment that although not fully formed is in progress.  So even if the underlying activity did not raise to the level of unlawful activity, she's protected when she complains of something she reasonably believes is unlawful.

And where Reema gets the argument of you have to be right on the law, they cite the McGruder case and the facts here are entirely different from the McGruder case. In that case, the plaintiff complained that if the plaintiff were to terminate a subordinate based on poor performance, it would look like the plaintiff were discriminating based on race.  So in that situation, the plaintiff was entirely wrong on the law.

In this situation, it's unlawful to discriminate against somebody based on their gender and to give them a

hostile work environment and sexual harassment based on their gender.  Ms. Parker had a reasonable belief that she was subjected to a hostile work environment based on her gender.

As for the last count, the third count, the discriminatory determination, Your Honor, Ms. Parker adequately discharged her administrative remedies --

THE COURT:  How?  How?  I mean I read her complaint to the EEOC.  There's not a word in there -- unless I'm misreading it -- about a three-strikes policy being applied differently based upon gender.  So where is that in her --

MR. TISHMAN:  For --

THE COURT:  I mean the whole purpose of requiring that matters go to the EEOC is because of the wisdom that the EEOC has in trying to help parties reach a resolution of a complaint without needing to go to court and it's a centerpiece of EEOC law that you need to go and say what it is you're complaining about.  So then the EEOC with its mediation efforts can attempt to address it.  And if something is not in the complaint and then suddenly ends up in a complaint in court, there's a problem, isn't there?

MR. TISHMAN:  Your Honor, she raised enough to allow the EEOC to adequately investigate this situation --

THE COURT:  The usual standard for this is and it's fairly liberal in the sense that it's not designed to be a trap for the unwary is when the matter is raised -- and as inarticulate as they may have been because most of these are not done by lawyers -- would a reasonable investigation as the matters that are set forth in this have led to a discussion about this?  And I don't see that here at all and unless you are going to tell me that, you know, you were there and it was brought up and discussed that there was this three strikes and you're out and it's not applied uniformly, I don't understand how this is not a failure to exhaust in this count.

MR. TISHMAN:  Well, Your Honor, she's alleged in her EEOC charge that she was terminated because of her gender.

THE COURT:  Was she represented by counsel in the mediation before the EEOC?

MR. TISHMAN:  Your Honor, that's getting beyond the motion to dismiss standard.

THE COURT:  Well, I'm trying to understand whether there's a basis to conclude that this complaint -- I'm trying to help you.  I mean if you are going to tell me that it was in fact raised and discussed with the EEOC and they looked into and investigated the three strikes policy, then there's not much of a problem.  But if the

three strikes policy and it's gender based in application in certain cases is not in here and wasn't in fact discussed in mediation, don't we have a problem?

MR. TISHMAN:  Your Honor, the types of cases where claims are dismissed for failure to raise and adequately raise an issue at the EEOC have to do with things like where you're alleging a race based discrimination, later where you alleged gender-based discrimination at the EEOC.  So the courts look to whether the type of discrimination is the same.  In this case, sex.  She alleges she was terminated because of her sex, female and the people involved.  So she alleged the underlying facts that are necessary to allow for an investigation.  But Your Honor, as Your Honor noted, she's not a lawyer.  So she wrote the EEOC charge and the framework is designed to not hold her to a higher standard that would be expected of a lawyer.  She's a nonlawyer. She drafted the EEOC charge and that's what the law requires.

So the case that we've cited in our brief, High versus R & R Transportation goes through the types of situations where cases are found to be insufficient at the EEOC level and this doesn't fit with any of those factors that the court examined in that case.

So we submit that by alleging that the

23

discrimination and that the firing was based on her gender, that's all that's required at this stage.  Unless there are any other questions, Your Honor, that concludes --

THE COURT:  All right.  Let me hear from the defense.

MR. WALSH:  I'll be very brief, Your Honor.  I just want to touch on a couple of quick things.  I'll sort of start in reverse order.  Getting to that Count Three and the EEOC.  What I just heard was that the two things that need to be alleged before the EEOC are the type and people involved.  Well, when we're talking in the complaint about this policy that we don't even know where it exists and we're talking about all these people who are treated differently under this policy that we don't know where it exists, there's certainly not enough information even remotely close in that EEOC charge that would give us enough information to suggest that the people involved or this policy was involved in any fashion.  I will proffer to the Court that I was involved on Reema's behalf and certainly that issue was not raised before the EEOC.  It was not something that we had responded to or were even aware of until the complaint was filed.

THE COURT:  Well, I mean their complaint is -- their response would be, well, we complained about

24

termination and isn't that enough to lead an inquiry into the reasons for the termination and whether they were based on gender or retaliation.

MR. WALSH:  And that would be one thing, Your Honor.  To suggest that there is a policy that other people are impacted by and that other people are actually being subject to systemic discrimination as a result of that, that's a whole other issue and that's what's being raised in that particular paragraph of the complaint. That paragraph of the complaint doesn't say that just Ms. Parker was subjected to this policy.  It suggests that the variety of employees were subjected to this exact same policy.  What that paragraph, that bald paragraph with absolutely no other facts, no other substance to it is merely a means of trying to go after discovery that has absolutely nothing to do with what her actual termination or her complaints were.

So from that standpoint, we believe that that clearly was not raised with the EEOC and is clearly dismissed at this point.

Just briefly with respect to the other two counts, Your Honor.  What we have always talked about, what has always existed in the law under Title VII is that it is not a general code of civility.  The courts are not here to make sure that everybody plays nice in the sand

box and that everybody is friendly with each other.

I have no doubt that when Ms. Parker was going through this particular circumstances, that it was offensive to her, that it was troubling to her. I haven't questioned that at all. I'll even accept that as part of the complaint. The reality though is just because you are upset by something doesn't give you the right to sue your employer to say that you guys maintained a hostile work environment.

The rumor that upset her was not something that can substantiate a Title VII hostile work environment claim. It is dealing with her behavior. It doesn't deal with her gender. The Jew case is horribly enlightening. It is a horrible case.

If you actually read the facts for a period of through the '70s and all through the '80s, this poor professor was subjected to just a string of awful incidents where she was called a variety of names, they posted things, she was yelled at down the hallway. It was horrible. That's not the situation we have here at all. And that not to mention, Your Honor, was 27 years ago. I'd like to believe that the country has come a far way and that the law has evolved in how it views relationships at this point in time. That we're not necessarily assuming that women are disparately impacted by the fact

that there's a rumor going on in any particular situation. It is a rumor about two people.  It was a rumor about Ms. Parker and it was a rumor about the particular supervisor that she was alleged to have done this with.

They've suggested somehow that Mr. Moppins propagated this rumor, spread this rumor.  The only allegation in the complaint is that he asked Mr. Pickett is this true.  That's the only thing he did, which frankly, would be what he would be required to do as an employer and as a supervisor anyway.  That's not the kind of thing that suddenly he can ask about it and say, oh, you've been spreading the rumor.  That would turn around and flip on the company in an untoward way that would be completely inequitable and unfair.

The only other thing that I thought was appropriate to mention in here is that the plaintiff seem to suggest somehow that this was a male-dominated company and that's not even supported in the complaint.  In fact not only was Reema in-house counsel identified as being one of the people involved who looked into this as a female, Ms. Wallace was identified in there as well as a manager who was subjected.

If in fact Ms. Parker believed that all women who moved up the ladder at Reema were subjected to the same types of rumors, she certainly didn't allege that and

27

she certainly didn't support it in the complaint in any way in reference to at least two other managerial or supervisory employees that existed there.  In fact, she didn't identify anybody else who had a similar thing to suggest that this rumor was gender based.  Your Honor, we continue to believe that the complaint should be dismissed.  Thank you.

THE COURT:  On May 15th of this year, the plaintiff in this case, Evangeline J. Parker, filed a complaint against the defendant, Reema Consulting Services, Inc., in the United States District Court for the Eastern District of Virginia.  That case was later transferred to this court by an order signed by Judge O'Grady on June 16th and the case then arrived in this district.

In response to the complaint, the defendant on June 28th filed a motion to dismiss with a supporting memorandum and attachments.  The response has been filed and a reply as well and the matter has come before the Court for argument today.

The facts of the case as set forth in the complaint which I have to accept as true and give all reasonable inferences in favor of the plaintiff with regard to those factual allegations are that the plaintiff between December of 2014 and May of 2016 worked for the

defendant and she was quite successful.  Over that fairly short period of time, she enjoyed a number of promotions though last of which is what has created the issues that are before the Court today.

In March of 2016, she alleges that she was given a promotion to the position of Assistant Operations Manager.  Following that promotion, which appears to have been richly deserved, she alleges that a rumor was circulated that she had gained her promotion by having sexual relations with the company's CEO and she contends that that created a difficult environment in which to work and that the employer through its managers did nothing to stifle the rumor.  And when she went to the Human Resources officials of the company to complain, the person who she claims started the rumor filed a complaint against her for creating a hostile work environment.  So there were dueling as it were complaints about a hostile work environment.  Ultimately, she was terminated.  And in response, she filed a complaint that I just mentioned in the Eastern District of Virginia that was transferred to this court.

In her complaint, she asserts three claims in the three counts of the complaint.  That first is the hostile work environment of gender-based harassment.  Second is retaliatory termination and, three is

discriminatory termination.

Let me start with the third count because that's the way the arguments were presented to me and I'll just address them in that order.  The third count alleges that -- and I'm quoting from paragraph 39 on page 8 of the complaint -- that on information and belief, the defendant has a three strikes rule under which employees are subject to termination after receiving three written warnings.  And she alleges that to her knowledge that rule was disparately enforced such that male employees were generally not fired even after receiving three or more warnings while some female employees were terminated without three warnings or with all three warnings being issued at once.  The defendant complains that this is not a matter that was raised in the complaint filed by Ms. Parker with the EEOC and that it should be precluded from being considered by this Court unless and until she does so.

In this case, the plaintiff filed her charge of discrimination with the Virginia Division of Human Rights on a referral basis with the EEOC and set forth what it was she was complaining about.  She complained about discrimination based on sex, retaliation and other.  I have read carefully her -- the language she put into her complaint.  And I recognize that since this was not

prepared by a lawyer, I'm going to give it a very generous reading as to what it is that she's complaining about.

As I mentioned in colloquy with counsel, the purpose of the requirement that one go first to the EEOC before going to court is to allow the EEOC to use its good offices and its professional expertise to try to bring people together and reach a solution that will eliminate any discriminatory conduct.

The corollary to that is that if somebody does not raise something in a complaint filed before the EEOC, they cannot go forward in court with that same allegation if they've not given the EEOC a chance to work its magic and try to resolve the matter.

Giving all benefit to the status of the plaintiff as a lay person in filling this out, it is entirely premised upon the alleged false rumor of her having a relationship with a person who brought about her promotion.  And it has factual allegations, but nowhere in these factual allegations is there anything indicating that there was such a policy.  Nowhere in here is there any mention that to the extent that there was such a policy, it was applied disparately based upon gender or that the reason for her termination was the gender-based mis-application or non-application of this policy in the case of certain genders.

Accordingly, I believe that Count Three of the complaint simply cannot stand and I will grant the motion to dismiss as to that count without prejudice. Assuming that she is not otherwise time barred, she certainly has the right to take that complaint to the EEOC if there's a factual basis for it and if there is no time bar and to refile asserting that. So I'm not dismissing that count with prejudice.

That brings us around to Counts one and Two. Count One is a complaint alleging a hostile work environment. In order to make a claim for hostile work environment, a plaintiff must allege and ultimately prove that she experienced unwelcomed harassment, that the harassment was based on her gender, race or age. In this case, she's alleging gender. Third, that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere and, four, there is some basis for imposing liability on the employer.

Now I will second what both sides have said is that it would be truly offensive to me or anybody else to have someone spread a rumor that I or any other person received a promotion because of sexual favors or having sexual relations with the person who made the decision. That goes right to the core of somebody's merit as a human

being to suggest that they were promoted and the promotion was not based upon merit, but rather was based upon the giving of sexual favors. And so I would condemn as I think any reasonable person would in the strongest possible terms that making a rumor like that and spreading it is vial, vulgar behavior, which is alleging that somebody's conduct has been totally unacceptable and inappropriate.

The problem for Ms. Parker is that her complaint as to the establishment and circulation of this rumor is not based upon her gender, but rather based upon her alleged conduct, which was defamed by, you know, statements of this nature. Clearly, this woman is entitled to the dignity of her merit-based promotion and not to have it sullied by somebody suggesting that it was because she had sexual relations with a supervisor who promoted her. But that is not a harassment based upon gender. It's based upon false allegations of conduct by her. And this same type of a rumor could be made in a variety of other context involving people of the same gender or different genders alleged to have had some kind of sexual activity leading to a promotion. But the rumor and the spreading of that kind of a rumor is based upon conduct, not gender. And therefore, with regard to the count alleging harassment based upon gender, I find that

there's simply not based upon gender, but based upon improper allegations of her conduct.

As the courts have repeatedly said, the civil rights laws are not a workplace civility code.  They are not designed to assure that every employee have a tranquil employment environment.  They are not intended to deal with the slights and insults that are unfortunately the part of daily life in a variety of different context.  But here, I conclude that the harassment claim fails because it is not alleging harassment based upon gender.

Even if she were to satisfy the element of harassment being based upon gender, I conclude that she's also failed to allege that it was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere.  She alleges that it was frequent, but the temporal element here is very short in terms of how long this rumor was in circulation.  Just a matter of a few weeks.  And a few slights that she's referenced here do not rise up to the level that would suffice for it being severe and persuasive.  Accordingly, I find that Count One of the complaint fails to state a claim and I will dismiss that count.

The second count is alleging retaliatory termination.  In order to assert a viable claim for retaliatory termination, a plaintiff must allege and, of

course, ultimately prove that she engaged in a protected activity. The employer took an adverse employment action against her and, third, that a causal connection exists between the protected activity and the asserted adverse action.

That first element has two categories, opposition and participation and I believe here that the appropriate focus is on the opposition aspect, which includes utilizing informal grievance procedures as well as staging informal protests and voicing opinions and that is I think where this protected activity falls in this case.

With regard to the protected activity, it has both a subjective and objective component. The employee must believe -- have beliefs concerning the unlawful practice and it must be -- those beliefs must be subjectively and objectively reasonable.

Here, I have little doubt that Ms. Parker was offended and legitimately so by the rumors that she complains of in this case. The problem here is that I have concluded rightly or wrongly that what took place in this case with respect to the circulation of a rumor does not amount to gender discrimination such that a harassment claim can survive and I think that the comments by the Fourth Circuit in the Coleman case are apropos.

In that case, the court after reciting the basic requirement that the plaintiff have a good faith belief that the employer is engaging in an unlawful employment practice and that the belief is objectively reasonable in light of the facts.  Here, the legal question is whether spreading a rumor or circulating a rumor that somebody's promotion was based upon the providing of sexual favors is not gender-based discrimination.  It is conduct based rumor mongering, for the sake of a better word, and it could apply without regard to gender as has happened in other cases that I have had before me.

Here, the unhappy and unfortunate circumstances that took place at this place of employment were not terribly civil for everybody involved.  But the rumor, just the existence or circulation of a rumor of that nature without more is only relating to someone's conduct, not to gender.  And because the complaint fails to establish that the matters alleged in Count One were discriminatory, she has failed to establish, therefore, that her belief was objectively reasonable and, therefore, she cannot establish a prima facie case of retaliation.

Accordingly, I conclude that Count Two of the complaint must also be dismissed.  For those reasons, I will enter an order granting the defense motion to dismiss the case and will direct the clerk to close it.  Thank you

very much.

MR. WALSH:  Thank you, Your Honor.

(Proceedings concluded.)

CERTIFICATE OF REPORTER

I, Lisa K. Bankins, an Official Court Reporter for the United States District Court for the District of Maryland, do hereby certify that I reported, by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the motions hearing in the case of the Evangeline Parker versus Reema Consulting Services, Inc., Civil Action Number RWT-17-1648, in said court on the 7th day of December, 2017.

I further certify that the foregoing 37 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, together with the backup tape of said proceedings to the best of my ability.

In witness whereof, I have hereto subscribed my name, this 25th day of December, 2017.


Lisa K. Bankins

Lisa K. Bankins
Official Court Reporter

MR. TISHMAN: [13] 2/8 12/14 12/18 13/17 14/7 17/15 19/11 19/24 21/12 21/23 22/12 22/17 23/3
MR. WALSH: [7] 2/6 2/20 3/14 4/6 24/6 25/3 37/1
THE CLERK: [1] 2/1
THE COURT: [18] 2/12 3/12 4/2 12/12 12/17 13/16 14/3 17/13 18/23 19/14 21/7 21/13 21/25 22/15 22/19 24/4 24/23 28/7

**'**

'70s [1] 26/16
'80s [1] 26/16

**0**

01648 [1] 1/3

**1**

10 [1] 10/22
11 [1] 1/17
13 [2] 11/12 11/12
15 [1] 10/22
15th [2] 1/13 28/8
16 [1] 17/16
1648 [2] 2/3 38/9
16th [1] 28/14
18 [1] 7/5
18th [1] 1/20
1990 [2] 11/9 11/16
1:30 [1] 1/7

**2**

20005 [1] 1/14
20036 [1] 1/18
2014 [1] 28/25
2015 [1] 20/9
2016 [2] 28/25 29/5
2017 [3] 1/6 38/10 38/16
20770 [1] 1/23
21202 [1] 1/21
25 [1] 7/20
25th [1] 38/16

27 [1] 26/21
28th [1] 28/17

**3**

37 [1] 38/11
39 [3] 3/17 5/2 30/5

**4**

400 [1] 1/17

**6**

6500 [1] 1/23

**7**

7th [1] 38/10

**9**

901 [1] 1/13

**A**

ability [1] 38/14
about [50]
absolutely [10] 4/7 13/11 13/15 14/11 14/18 16/18 18/9 20/4 25/14 25/16
abundantly [1] 7/13
abuse [1] 11/13
abusive [2] 32/17 34/15
accept [3] 6/9 26/5 28/22
accepting [1] 9/22
Accordingly [3] 32/1 34/20 36/22
act [2] 18/4 18/10
acted [1] 13/4
action [5] 9/21 17/9 35/2 35/5 38/9
actions [2] 17/19 17/19
activities [1] 20/7
activity [8] 11/15 20/13 20/14 33/22 35/2 35/4 35/11 35/13
actual [2] 4/8 25/16
actually [5] 4/25 7/20 10/17 25/6 26/15
addition [1] 4/21
address [4] 15/4 16/25 21/20 30/4

addressed [5] 4/18 10/5 16/3 16/4 17/2
addresses [2] 4/9 13/20
adduced [1] 38/7
adequately [3] 21/7 21/25 23/6
adhere [1] 4/17
administrative [2] 3/10 21/7
admits [1] 5/24
adultery [1] 10/25
advanced [2] 13/9 14/16
adverse [2] 35/2 35/4
affair [4] 6/2 8/6 13/10 16/17
affairs [2] 1/16 11/1
after [8] 3/20 3/24 16/2 17/2 25/15 30/8 30/11 36/1
afternoon [2] 2/13 12/15
again [1] 8/7
against [6] 5/21 15/23 20/25 28/10 29/15 35/3
age [4] 6/17 6/19 6/21 32/14
ago [1] 26/21
all [26] 4/1 6/10 6/21 7/9 8/2 8/24 9/10 10/16 10/23 10/24 11/1 11/19 12/13 19/4 19/7 22/8 24/2 24/5 24/14 26/5 26/16 26/20 27/23 28/22 30/13 31/14
allegation [4] 4/4 5/1 27/7 31/11
allegations [7] 5/11 7/9 28/24 31/18 31/19 33/18 34/2
allege [9] 4/24 6/4 9/16 17/14 19/8 27/25 32/12 34/13 34/25
alleged [24] 3/4 4/14 5/17 6/20 6/25 7/25 8/9 8/19 10/8 10/24 10/25 13/11 17/25 19/12 20/2 22/13 23/8 23/12 24/11 27/4 31/16 33/12 33/21 36/18
alleges [8] 8/3 16/23

**A**

**alleges... [6]** 23/11 29/5 29/8 30/4 30/9 34/15
**alleging [8]** 23/7 23/25 32/10 32/15 33/6 33/25 34/10 34/23
**Allen [2]** 16/3 16/13
**allow [3]** 21/25 23/13 31/5
**allowed [1]** 16/1
**almost [1]** 11/17
**alone [1]** 4/20
**along [1]** 10/22
**already [1]** 15/17
**also [12]** 10/19 12/1 12/11 13/4 13/12 16/3 17/10 17/11 17/25 18/10 34/13 36/23
**alter [2]** 32/16 34/14
**although [1]** 20/12
**always [4]** 8/21 8/21 25/22 25/23
**amount [1]** 35/23
**any [21]** 5/7 5/11 6/4 6/5 6/18 6/19 6/20 6/25 7/8 8/17 9/19 10/16 23/23 24/3 24/19 27/1 28/1 31/8 31/21 32/22 33/4
**anybody [4]** 5/7 8/12 28/4 32/21
**anything [3]** 9/12 10/9 31/19
**anyway [1]** 27/10
**apologize [2]** 2/13 18/12
**Apparently [1]** 11/16
**APPEARANCES [1]** 1/11
**appears [1]** 29/7
**application [3]** 23/1 31/24 31/24
**applied [3]** 21/11 22/11 31/22
**apply [2]** 17/8 36/10
**appropriate [2]** 27/16 35/8
**appropriately [1]** 10/5
**apropos [1]** 35/25
**are [35]** 2/19 2/25 3/20 4/2

8/8 8/10 8/14 10/24 11/4 15/10 15/19 20/18 22/5 22/6 22/8 22/22 23/5 23/13 23/22 24/3 24/11 24/14 25/6 25/6 25/24 26/6 26/25 28/24 29/4 30/7 34/4 34/4 34/6 34/7 35/25
**argues [1]** 19/1
**argument [3]** 16/22 20/16 28/20
**arguments [3]** 2/16 4/22 30/3
**arises [1]** 3/4
**around [4]** 4/11 9/25 27/12 32/9
**arrived [1]** 28/14
**as [49]**
**ask [1]** 27/11
**asked [2]** 18/12 27/7
**aspect [1]** 35/8
**assert [1]** 34/24
**asserted [1]** 35/4
**asserting [1]** 32/7
**asserts [1]** 29/22
**Assistant [1]** 29/6
**assume [1]** 19/18
**assuming [3]** 19/23 26/25 32/3
**assure [1]** 34/5
**atmosphere [2]** 32/17 34/15
**attached [2]** 4/8 4/12
**attachments [1]** 28/18
**attempt [1]** 21/20
**aware [1]** 24/23
**awful [1]** 26/17

**B**

**back [5]** 8/3 11/2 11/9 11/16 11/24
**backup [1]** 38/14
**bald [1]** 25/13
**Ball [1]** 17/5
**Baltimore [1]** 1/21
**Bankins [4]** 1/22 38/3 38/19 38/20

**bar [1]** 32/6
**barred [1]** 32/4
**based [61]**
**basic [1]** 36/1
**basically [2]** 2/25 9/9
**basis [7]** 9/21 15/13 17/4 22/21 30/21 32/6 32/18
**Bass [1]** 6/6
**bathroom [1]** 11/15
**be [39]**
**bears [1]** 14/22
**because [28]** 2/16 3/7 4/18 5/12 7/11 7/12 7/17 7/24 8/4 9/18 10/19 11/25 13/9 14/6 14/16 16/2 18/7 19/21 21/15 22/4 22/14 23/11 26/6 30/2 32/23 33/16 34/9 36/17
**been [15]** 2/23 4/12 7/22 10/5 10/25 11/5 11/9 13/23 16/11 17/3 22/4 27/12 28/18 29/8 33/7
**before [17]** 1/9 2/2 2/5 3/11 4/6 4/19 7/4 11/17 14/4 22/17 24/11 24/21 28/19 29/4 31/5 31/10 36/11
**began [2]** 12/20 13/7
**behalf [3]** 2/7 2/9 24/20
**behavior [2]** 26/12 33/6
**being [12]** 4/1 4/5 6/10 21/11 25/7 25/8 27/19 30/13 30/17 33/1 34/12 34/20
**belief [10]** 3/19 5/3 6/9 18/21 20/6 21/2 30/6 36/2 36/4 36/20
**beliefs [2]** 35/15 35/16
**believe [11]** 7/19 8/6 11/10 11/25 12/10 25/18 26/22 28/6 32/1 35/7 35/15
**believed [2]** 19/13 27/23
**believes [3]** 5/19 7/14 20/15
**Believing [1]** 19/15
**benefit [1]** 31/14

**B**

**benefits [1]** 19/20
**best [2]** 2/17 38/14
**better [1]** 36/9
**between [2]** 28/25 35/4
**beyond [1]** 22/18
**bit [7]** 10/21 12/22 14/19 15/6 15/6 15/18 16/21
**both [4]** 5/15 19/4 32/20 35/14
**bottom [1]** 11/22
**box [1]** 26/1
**Boyer [1]** 20/9
**Boyer-Liberto [1]** 20/9
**brevity [1]** 3/7
**brief [7]** 10/20 11/21 16/4 16/15 17/6 23/20 24/7
**briefly [1]** 25/21
**bring [1]** 31/6
**brings [2]** 18/14 32/9
**brought [4]** 4/19 17/3 22/9 31/17

**C**

**called [1]** 26/18
**callously [1]** 9/24
**came [2]** 4/14 11/20
**can [13]** 2/17 3/11 11/24 12/3 19/4 19/4 19/5 19/7 19/8 21/20 26/11 27/11 35/24
**can't [1]** 9/20
**cannot [3]** 31/11 32/2 36/21
**capacity [1]** 38/6
**carefully [1]** 30/24
**cartoons [2]** 11/14 15/23
**case [46]**
**cases [12]** 10/20 10/21 11/1 14/4 16/14 16/15 16/19 17/7 23/2 23/4 23/22 36/11
**categories [1]** 35/6
**causal [1]** 35/3
**centerpiece [1]** 21/18

**centers [1]** 5/23
**CEO [1]** 29/10
**certain [3]** 8/4 23/2 31/25
**certainly [8]** 6/4 9/23 9/25 24/16 24/21 27/25 28/1 32/4
**CERTIFICATE [1]** 38/1
**certify [2]** 38/5 38/11
**chance [1]** 31/12
**charge [8]** 4/8 4/9 4/11 22/14 23/15 23/18 24/17 30/19
**Cherrywood [1]** 1/23
**Circle [1]** 1/17
**Circuit [2]** 20/10 35/25
**circulated [1]** 29/9
**circulating [2]** 4/11 36/6
**circulation [4]** 33/10 34/17 35/22 36/15
**circumstances [2]** 26/3 36/12
**cite [2]** 16/15 20/17
**cited [3]** 10/19 17/5 23/20
**civil [7]** 1/3 1/16 2/3 13/13 34/3 36/14 38/9
**civility [2]** 25/24 34/4
**claim [24]** 3/4 5/11 5/13 5/21 6/21 6/22 10/2 10/4 11/4 12/2 12/3 12/7 14/24 15/7 15/9 18/18 19/11 20/5 26/12 32/11 34/9 34/21 34/24 35/24
**claiming [1]** 6/18
**claims [5]** 5/25 15/4 23/5 29/15 29/22
**clear [2]** 7/13 11/12
**clearly [5]** 6/17 6/19 25/19 25/19 33/13
**clerk [1]** 36/25
**close [4]** 3/16 4/15 24/17 36/25
**co [1]** 7/22
**co-worker [1]** 7/22
**code [2]** 25/24 34/4
**Coleman [1]** 35/25
**colleague [1]** 2/10

**colleagues [1]** 14/17
**college [1]** 11/11
**colloquy [1]** 31/3
**come [8]** 3/11 5/16 5/20 8/19 10/22 11/2 26/22 28/19
**comes [1]** 2/4
**comments [2]** 11/5 35/24
**committed [1]** 10/25
**Committee [2]** 1/15 2/12
**company [19]** 4/4 6/12 7/23 9/10 9/20 10/4 10/9 10/13 10/13 13/4 13/4 13/9 14/22 17/20 17/21 18/2 27/13 27/17 29/14
**company's [3]** 10/15 14/22 29/10
**complain [1]** 29/14
**complained [4]** 18/23 20/19 24/25 30/22
**complaining [4]** 19/16 21/19 30/22 31/2
**complains [4]** 6/7 20/14 30/14 35/20
**complaint [48]**
**complaints [2]** 25/17 29/17
**complete [1]** 5/10
**completely [2]** 5/22 27/14
**complicated [1]** 2/24
**component [1]** 35/14
**concept [4]** 6/6 7/2 8/1 8/3
**concerning [1]** 35/15
**concerns [5]** 13/3 16/24 18/1 18/11 18/16
**conclude [4]** 22/21 34/9 34/12 36/22
**concluded [2]** 35/21 37/3
**concludes [1]** 24/4
**condemn [1]** 33/3
**conditions [2]** 32/17 34/14
**conduct [20]** 4/11 4/14 6/3 6/13 7/12 8/3 8/4 9/24 10/15 11/6 13/10 19/3 31/8 33/7 33/12 33/18 33/24

## C

**conduct... [3]** 34/2 36/8 36/16
**conducts [1]** 6/10
**connection [1]** 35/3
**Consequently [1]** 4/17
**considered [2]** 19/17 30/17
**consistent [1]** 6/5
**Constable [1]** 1/19
**constitute [1]** 38/12
**CONSULTING [6]** 1/6 2/4 2/8 3/5 28/10 38/8
**contends [1]** 29/10
**context [2]** 33/20 34/8
**continue [1]** 28/6
**continued [1]** 17/18
**contributed [1]** 18/9
**convert [1]** 19/10
**core [1]** 32/25
**CORKERY [2]** 1/16 2/12
**corollary [1]** 31/9
**could [4]** 8/18 9/17 33/19 36/10
**couldn't [1]** 10/14
**counsel [9]** 2/5 7/8 10/11 14/20 14/21 19/1 22/16 27/19 31/3
**count [29]** 3/1 3/3 3/3 3/7 3/18 4/22 5/13 5/14 12/2 12/9 12/11 18/14 18/15 21/5 21/5 22/12 24/9 30/2 30/4 32/1 32/3 32/7 32/10 33/25 34/21 34/22 34/23 36/18 36/22
**country [1]** 26/22
**counts [6]** 3/1 5/15 11/25 25/22 29/23 32/9
**couple [1]** 24/8
**couples [1]** 10/24
**course [1]** 35/1
**court [30]** 1/1 1/22 1/22 2/3 2/5 3/11 5/21 8/19 11/1 11/12 12/16 13/22 16/8 21/17 21/22 23/24 24/20

28/11 28/13 28/20 29/4 29/21 30/17 31/5 31/11 36/1 38/3 38/4 38/9 38/20
**courtroom [1]** 12/17
**courts [3]** 23/9 25/24 34/3
**create [2]** 32/17 34/14
**created [3]** 9/11 29/3 29/11
**creating [1]** 29/16
**culminates [1]** 17/8

## D

**D.C [2]** 1/14 1/18
**daily [1]** 34/8
**DANIEL [2]** 1/12 2/9
**daughter [1]** 14/21
**day [2]** 38/10 38/16
**deal [4]** 3/6 7/25 26/12 34/6
**dealing [7]** 10/23 11/4 11/18 11/19 19/2 19/3 26/12
**decade [3]** 11/17 15/22 15/23
**December [4]** 1/6 28/25 38/10 38/16
**December of [1]** 28/25
**decision [1]** 32/24
**defamed [1]** 33/12
**defendant [7]** 1/7 1/19 28/10 28/16 29/1 30/6 30/14
**defense [3]** 2/19 24/6 36/24
**demonstrated [2]** 6/16 6/24
**DENNIS [2]** 1/16 2/11
**dentist [1]** 2/15
**department [1]** 13/24
**dependent [1]** 15/1
**derth [1]** 5/10
**deserved [2]** 19/18 29/8
**designed [3]** 22/2 23/16 34/5
**determination [1]** 21/6
**did [13]** 4/24 10/9 12/20

13/2 13/8 16/15 17/14 18/1 18/11 18/16 20/13 27/8 29/12
**didn't [8]** 10/13 10/13 16/25 18/4 18/10 27/25 28/1 28/4
**different [12]** 5/18 6/11 6/12 8/17 8/23 10/10 11/23 15/7 17/7 20/18 33/21 34/8
**differently [5]** 8/13 8/14 14/9 21/11 24/15
**difficult [1]** 29/11
**dignity [1]** 33/14
**direct [1]** 36/25
**directly [2]** 17/6 18/2
**discharged [1]** 21/7
**discovery [2]** 17/3 25/15
**discriminate [1]** 20/24
**discriminated [1]** 5/21
**discriminating [1]** 20/22
**discrimination [17]** 3/2 3/4 4/13 6/7 12/9 14/7 14/24 19/23 23/8 23/9 23/10 24/1 25/7 30/20 30/23 35/23 36/8
**discriminatory [5]** 15/8 21/6 30/1 31/8 36/19
**discussed [3]** 22/9 22/23 23/3
**discussion [2]** 19/19 22/7
**dismiss [11]** 2/19 2/22 4/8 4/20 12/11 16/20 22/19 28/17 32/3 34/22 36/24
**dismissed [7]** 3/9 5/14 10/12 23/5 25/20 28/7 36/23
**dismissing [1]** 32/7
**disparate [1]** 5/18
**disparately [7]** 3/23 5/6 5/8 13/19 26/25 30/10 31/22
**dispute [1]** 15/14
**distasteful [1]** 9/24
**distinguish [2]** 15/19 16/7
**district [11]** 1/1 1/1 1/10 1/22 16/8 28/11 28/12

## D

**district... [4]** 28/15 29/20 38/4 38/4

**DIVISION [2]** 1/2 30/20

**do [11]** 2/17 11/6 13/15 15/24 18/15 19/10 23/6 25/16 27/9 34/19 38/5

**does [5]** 12/5 18/20 30/17 31/9 35/22

**doesn't [18]** 5/3 5/4 5/7 6/3 6/4 6/4 7/8 7/15 8/12 10/12 10/15 18/18 18/25 19/9 23/23 25/10 26/7 26/12

**dominated [2]** 14/12 27/17

**Don [1]** 2/7

**don't [8]** 2/16 8/23 12/6 22/7 22/11 23/3 24/13 24/15

**DONALD [1]** 1/19

**done [5]** 6/12 8/18 19/21 22/5 27/4

**Donte [1]** 13/8

**doubt [2]** 26/2 35/18

**down [2]** 10/7 26/19

**dozen [1]** 10/20

**dozens [1]** 10/20

**Dr. [1]** 15/24

**Dr. Jew [1]** 15/24

**drafted [1]** 23/18

**drawn [2]** 14/10 20/3

**dueling [1]** 29/17

**Dupont [2]** 1/17 6/6

**during [1]** 11/20

## E

**each [2]** 15/4 26/1

**Eastern [2]** 28/12 29/20

**easy [2]** 4/20 5/12

**EEOC [34]** 3/10 3/14 4/6 4/8 4/9 4/18 5/10 5/20 21/9 21/15 21/16 21/18 21/19 21/25 22/14 22/17 22/23 23/6 23/9 23/15 23/18

23/23 24/10 24/11 24/17 24/21 25/19 30/16 30/21 31/4 31/5 31/10 31/12 32/5

**efforts [2]** 15/19 21/20

**either [2]** 6/5 7/9

**element [5]** 10/3 14/23 34/11 34/16 35/6

**elements [3]** 6/15 15/7 15/10

**eliminate [1]** 31/7

**else [2]** 28/4 32/21

**employee [9]** 5/24 6/1 7/1 7/6 8/22 13/2 20/10 34/5 35/14

**employees [11]** 3/20 3/23 3/25 8/21 9/25 13/1 25/12 28/3 30/7 30/10 30/12

**employer [8]** 15/14 17/9 26/8 27/10 29/12 32/19 35/2 36/3

**employment [8]** 7/3 17/9 32/17 34/6 34/14 35/2 36/3 36/13

**end [2]** 12/21 13/8

**ends [1]** 21/22

**endure [2]** 16/1 17/13

**enforced [5]** 3/23 4/5 5/6 5/8 30/10

**engaged [3]** 8/5 8/5 35/1

**engaging [1]** 36/3

**enjoyed [1]** 29/2

**enlightening [1]** 26/13

**enough [5]** 19/16 21/24 24/16 24/18 25/1

**enter [1]** 36/24

**entire [2]** 4/11 6/2

**entirely [4]** 6/23 20/18 20/23 31/16

**entitled [1]** 33/14

**environment [25]** 3/1 3/2 10/7 11/4 12/6 12/10 14/12 15/1 15/2 15/5 15/9 17/18 18/10 20/11 21/1 21/3 26/9 26/11 29/11 29/16 29/18 29/24 32/11 32/12 34/6

**environments [1]** 17/12

**escalating [1]** 12/24

**ESQUIRE [4]** 1/12 1/13 1/16 1/19

**establish [3]** 36/18 36/19 36/21

**establishment [1]** 33/10

**EVANGELINE [4]** 1/3 2/3 28/9 38/8

**even [20]** 3/16 3/24 4/15 4/17 5/24 6/9 8/6 9/22 10/15 12/6 17/25 18/7 20/12 24/13 24/17 24/22 26/5 27/18 30/11 34/11

**eventually [1]** 18/3

**every [1]** 34/5

**everybody [3]** 25/25 26/1 36/14

**evidence [1]** 6/24

**evolved [1]** 26/23

**exact [2]** 10/23 25/12

**exactly [1]** 9/14

**exaggeration [1]** 10/21

**examined [1]** 23/24

**example [1]** 14/20

**examples [1]** 5/7

**exemplary [1]** 13/2

**exhaust [2]** 3/10 22/12

**exist [1]** 3/5

**existed [3]** 5/19 25/23 28/3

**existence [1]** 36/15

**exists [3]** 24/14 24/16 35/3

**expected [1]** 23/17

**experienced [5]** 14/25 15/3 15/10 17/22 32/13

**expertise [1]** 31/6

**explained [1]** 7/21

**explanations [1]** 9/8

**extent [1]** 31/21

**extramarital [1]** 8/5

## F

**facie [1]** 36/21

**fact [20]** 4/20 5/9 5/23 6/6 6/11 7/17 8/1 8/9 8/20

## F

**fact...** [11]  14/19 15/1 15/21 18/15 18/17 22/23 23/2 26/25 27/18 27/23 28/3
**factor** [1]  15/17
**factors** [2]  15/15 23/23
**facts** [21]  4/2 4/24 4/24 6/4 6/5 6/25 6/25 7/25 8/9 8/10 10/9 12/4 17/3 17/25 18/25 20/18 23/13 25/14 26/15 28/21 36/5
**factual** [6]  4/23 17/2 28/24 31/18 31/19 32/6
**faculty** [2]  11/10 11/13
**failed** [3]  4/17 34/13 36/19
**fails** [3]  34/9 34/21 36/17
**failure** [2]  22/12 23/5
**fairly** [2]  22/2 29/1
**faith** [1]  36/2
**fall** [1]  12/1
**falls** [1]  35/11
**false** [5]  12/21 13/11 16/16 31/16 33/18
**far** [1]  26/22
**fashion** [2]  10/15 24/19
**favor** [4]  13/24 14/11 20/4 28/23
**favors** [3]  32/23 33/3 36/7
**FCRR** [1]  1/22
**feeds** [1]  3/18
**female** [13]  3/25 7/1 7/7 7/25 8/1 8/21 14/6 14/16 16/16 19/5 23/12 27/21 30/12
**few** [3]  16/15 34/18 34/18
**filed** [11]  2/22 4/9 24/23 28/9 28/17 28/18 29/15 29/19 30/15 30/19 31/10
**filling** [1]  31/15
**find** [4]  11/2 11/3 33/25 34/20
**fired** [6]  3/24 13/6 16/2 18/7 18/16 30/11
**firing** [1]  24/1

**first** [6]  2/13 14/2 18/5 29/23 31/4 35/6
**Fish** [2]  1/12 2/11
**fit** [1]  23/23
**flip** [1]  27/13
**floating** [1]  8/20
**Floor** [2]  1/14 1/20
**focus** [4]  6/3 10/15 15/2 35/8
**focused** [1]  16/23
**focuses** [1]  6/3
**follow** [1]  17/17
**Following** [1]  29/7
**footnote** [1]  16/4
**forcefully** [1]  19/2
**foregoing** [1]  38/11
**forgot** [1]  12/16
**form** [4]  5/12 9/20 9/20 10/16
**formed** [1]  20/12
**forth** [3]  22/6 28/21 30/21
**forward** [1]  31/11
**found** [3]  16/8 16/8 23/22
**four** [2]  15/10 32/18
**Fourth** [2]  20/9 35/25
**framework** [1]  23/16
**frankly** [1]  27/9
**frequent** [1]  34/15
**friendly** [1]  26/1
**fully** [1]  20/12
**fundamental** [1]  6/15
**further** [2]  10/13 38/11

## G

**gain** [1]  16/17
**gained** [3]  13/24 14/3 29/9
**gender** [67]
**gender-based** [7]  14/18 14/23 19/23 23/8 29/24 31/23 36/8
**genders** [2]  31/25 33/21
**general** [1]  25/24
**generally** [2]  3/24 30/11
**generates** [1]  7/11
**generous** [1]  31/1
**gentleman** [1]  7/14

**get** [4]  2/17 9/2 9/8 11/22
**gets** [3]  19/5 19/6 20/16
**getting** [2]  22/18 24/9
**give** [7]  5/7 10/1 20/25 24/17 26/7 28/22 31/1
**given** [3]  6/24 29/5 31/12
**gives** [2]  5/19 5/20
**giving** [2]  31/14 33/3
**glad** [2]  2/20 12/18
**go** [7]  5/20 21/15 21/17 21/18 25/15 31/4 31/11
**goes** [3]  8/3 23/21 32/25
**going** [10]  9/8 11/2 12/22 18/2 22/8 22/22 26/2 27/1 31/1 31/5
**gone** [1]  11/16
**good** [5]  2/13 7/6 12/15 31/5 36/2
**grant** [1]  32/2
**granting** [1]  36/24
**Greenbelt** [2]  1/5 1/23
**grievance** [1]  35/9
**guys** [1]  26/8

## H

**H.R** [2]  18/3 18/12
**had** [23]  2/14 3/19 4/10 4/16 4/19 7/22 8/19 10/5 11/16 14/2 14/4 14/6 17/12 18/21 19/21 21/2 24/22 28/4 29/9 33/16 33/21 36/11 38/6
**hallway** [1]  26/19
**handbook** [1]  5/5
**handle** [1]  10/6
**handled** [1]  10/17
**happened** [6]  8/6 8/22 9/12 19/24 20/1 36/10
**harassed** [2]  19/13 19/15
**harasser** [1]  17/7
**harassment** [21]  12/20 15/5 15/11 15/11 15/12 16/6 16/9 16/11 17/8 18/22 21/1 29/24 32/13 32/14 32/15 33/17 33/25 34/9 34/10 34/12 35/23

**H**

**has [27]** 2/23 5/16 6/15 8/25 10/4 11/9 12/3 15/24 18/15 18/24 19/12 21/16 25/15 25/23 26/22 26/23 28/18 28/19 29/3 30/7 31/18 32/4 33/7 35/6 35/13 36/10 36/19
**hasn't [2]** 6/20 10/8
**have [60]**
**haven't [1]** 26/4
**having [4]** 2/17 29/9 31/17 32/23
**he [22]** 7/16 7/16 7/17 7/17 7/24 8/16 14/6 16/22 16/23 16/25 17/11 17/21 18/6 18/6 18/6 18/7 18/8 18/10 27/7 27/8 27/9 27/11
**head [2]** 13/20 13/24
**hear [3]** 2/20 12/14 24/5
**heard [1]** 24/10
**hearing [3]** 1/9 2/5 38/7
**help [2]** 21/16 22/22
**her [94]**
**here [19]** 2/19 9/1 12/17 13/25 20/18 22/8 23/2 25/25 26/20 27/16 31/20 34/9 34/16 34/18 35/7 35/18 35/20 36/5 36/12
**hereby [1]** 38/5
**hereto [1]** 38/15
**High [1]** 23/20
**higher [1]** 23/16
**highest [1]** 17/20
**him [3]** 8/23 13/25 18/11
**his [1]** 16/22
**hold [1]** 23/16
**Honor [31]** 2/21 2/21 3/16 4/7 7/19 9/4 10/3 10/19 11/25 12/12 12/15 12/19 13/14 14/8 14/22 16/20 19/25 21/6 21/24 22/13 22/18 23/4 23/14 23/14 24/3 24/7 25/5 25/22 26/21 28/5 37/2

**HONORABLE [1]** 1/9
**horrendous [1]** 11/16
**horrible [2]** 26/14 26/20
**horribly [1]** 26/13
**hostile [23]** 3/1 3/2 10/7 11/3 12/6 12/10 14/25 15/2 15/4 15/9 17/12 17/18 18/10 20/11 21/1 21/3 26/8 26/11 29/16 29/17 29/24 32/10 32/11
**hostilities [5]** 12/24 13/7 15/22 15/25 17/22
**house [5]** 7/7 10/11 14/20 14/20 27/19
**how [10]** 4/12 10/17 13/17 19/10 19/22 21/8 21/8 22/11 26/23 34/17
**HUH [2]** 1/13 2/11
**human [3]** 29/13 30/20 32/25

**I**

**I'd [1]** 26/22
**I'll [9]** 2/17 2/20 15/4 15/6 19/18 24/7 24/8 26/5 30/3
**I'm [11]** 2/16 6/18 9/15 12/8 12/22 21/10 22/20 22/22 30/5 31/1 32/7
**I've [1]** 14/4
**idea [2]** 4/23 12/8
**identified [8]** 7/7 8/25 10/10 11/9 11/9 11/24 27/19 27/21
**identifies [4]** 8/11 8/11 9/5 11/20
**identify [4]** 2/6 8/12 9/14 28/4
**impacted [2]** 25/6 26/25
**impacts [1]** 13/19
**important [1]** 13/12
**imposing [3]** 15/13 17/4 32/18
**improper [1]** 34/2
**in-house [5]** 7/7 10/11 14/20 14/20 27/19
**inappropriate [1]** 33/8

**inarticulate [1]** 22/4
**INC [4]** 1/6 2/4 28/11 38/9
**incidents [1]** 26/18
**includes [1]** 35/9
**including [1]** 7/7
**increasing [1]** 17/22
**indicating [1]** 31/19
**inequitable [1]** 27/14
**inferences [3]** 14/10 20/3 28/23
**informal [3]** 18/2 35/9 35/10
**information [5]** 3/18 5/2 24/16 24/18 30/6
**inquiry [3]** 15/1 17/2 25/1
**insufficient [2]** 12/11 23/22
**insults [1]** 34/7
**intended [1]** 34/6
**intensive [1]** 17/2
**introduce [1]** 12/16
**investigate [2]** 10/13 21/25
**investigated [1]** 22/24
**investigation [2]** 22/6 23/14
**involved [17]** 8/16 10/10 10/11 10/25 16/16 16/19 17/11 17/11 17/21 17/25 23/12 24/12 24/18 24/19 24/20 27/20 36/14
**involving [1]** 33/20
**is [117]**
**isn't [3]** 9/25 21/22 25/1
**issue [13]** 3/8 3/12 5/16 9/2 9/4 10/24 13/21 18/5 18/19 18/20 23/6 24/21 25/8
**issued [2]** 4/2 30/14
**issues [2]** 4/10 29/3
**it [98]**
**it's [24]** 2/16 3/7 4/20 6/17 6/19 6/20 7/24 9/2 12/23 13/1 13/4 13/12 13/14 14/14 14/15 19/3 19/3 20/24 21/18 22/2 22/2

**I**

it's... [3]  22/10 23/1 33/18
its [5]  21/20 29/12 31/5
 31/6 31/12
itself [3]  4/11 5/13 13/13

**J**

jealous [4]  5/25 7/15 7/18
 7/23
jealousy [2]  14/14 14/15
Jennings [1]  13/8
Jew [6]  11/10 13/20 15/19
 15/24 20/2 26/13
job [1]  12/25
JUDGE [2]  1/10 28/13
judgment [1]  16/19
June [2]  28/14 28/17
June 16th [1]  28/14
June 28th [1]  28/17
jurisdictions [1]  10/23
just [18]  7/19 12/23 13/14
 14/14 15/19 16/2 16/7 20/2
 24/8 24/10 25/10 25/21
 26/6 26/17 29/19 30/3
 34/17 36/15

**K**

keep [1]  19/3
kept [3]  9/5 9/6 16/24
kind [6]  3/6 8/13 10/1
 27/10 33/21 33/23
kinds [1]  19/7
know [5]  20/2 22/9 24/13
 24/15 33/12
knowledge [3]  3/22 5/6
 30/9

**L**

ladder [1]  27/24
Lane [1]  1/23
language [1]  30/24
last [2]  21/5 29/3
lasted [2]  15/21 15/22
late [1]  2/14
later [2]  23/8 28/12
law [13]  12/4 12/5 18/18

18/20 18/24 19/1 19/23
20/17 20/23 21/18 23/18
25/23 26/23
laws [1]  34/4
lawyer [3]  23/15 23/17
 31/1
lawyers [3]  1/15 2/12 22/5
lay [1]  31/15
lead [1]  25/1
leading [1]  33/22
least [1]  28/2
led [5]  6/7 6/9 6/10 6/11
 22/7
legal [2]  9/20 36/5
legally [2]  12/10 19/11
legitimately [2]  19/18
 35/19
Let [3]  12/14 24/5 30/2
level [4]  4/18 20/13 23/23
 34/19
liability [4]  15/13 17/4
 18/18 32/18
liable [1]  17/10
liberal [1]  22/2
Liberto [1]  20/9
life [1]  34/8
light [3]  12/8 14/9 36/5
like [8]  2/16 16/7 19/9 20/2
 20/21 23/7 26/22 33/5
likely [2]  13/22 13/23
Lisa [4]  1/22 38/3 38/19
 38/20
listened [1]  16/22
little [2]  10/21 35/18
live [1]  13/18
LLP [1]  1/19
long [2]  3/11 34/17
longer [1]  18/8
look [5]  2/15 14/9 19/9
 20/21 23/9
looked [2]  22/24 27/20

**M**

ma'am [1]  12/18
machine [2]  38/5 38/13
made [5]  2/23 4/22 11/12

32/24 33/19
magic [1]  31/12
maintained [1]  26/8
make [3]  7/8 25/25 32/11
making [1]  33/5
male [8]  3/23 8/22 14/5
 14/12 19/5 19/6 27/17
 30/10
male-dominated [2]  14/12
 27/17
manager [3]  17/21 27/22
 29/7
managerial [1]  28/2
managers [5]  7/7 8/11
 10/10 18/12 29/12
manner [1]  4/5
Many [1]  16/18
March [1]  29/5
MARYLAND [6]  1/1 1/5
 1/21 1/23 16/8 38/5
matter [8]  2/2 2/4 19/22
 22/3 28/19 30/15 31/13
 34/17
matters [3]  21/15 22/6
 36/18
may [8]  6/12 8/5 11/5
 12/15 18/25 22/4 28/8
 28/25
May 15th [1]  28/8
maybe [2]  9/24 11/8
McGruder [2]  20/17 20/18
me [12]  2/10 4/3 12/14
 14/4 18/14 22/8 22/23 24/5
 30/2 30/3 32/21 36/11
mean [6]  14/7 18/25 21/8
 21/14 22/22 24/24
means [2]  18/2 25/15
measuring [1]  8/8
mechanical [1]  1/25
mediation [3]  21/20 22/17
 23/3
member [1]  11/11
members [1]  11/13
memorandum [1]  28/18
men [1]  8/14
mention [3]  26/21 27/16

**M**

**mention... [1]** 31/21
**mentioned [2]** 29/19 31/3
**merely [3]** 4/24 18/12 25/15
**merit [5]** 19/10 19/20 32/25 33/2 33/14
**merit-based [2]** 19/20 33/14
**mill [1]** 7/10
**MIN [2]** 1/13 2/10
**mis [1]** 31/24
**mis-application [1]** 31/24
**misreading [1]** 21/10
**mixed [1]** 10/24
**mongering [1]** 36/9
**months [2]** 7/5 16/2
**Moppins [8]** 7/21 17/10 17/14 17/20 18/3 18/6 18/9 27/5
**Moppins' [1]** 17/19
**more [6]** 3/24 8/18 14/17 15/6 30/11 36/16
**morning [1]** 2/15
**most [2]** 15/14 22/4
**motion [9]** 2/19 2/22 4/8 16/19 16/20 22/19 28/17 32/2 36/24
**motions [4]** 1/9 2/5 2/25 38/7
**moved [1]** 27/24
**Mr [6]** 2/10 7/21 18/5 18/17 27/5 27/7
**Mr. [13]** 2/11 12/21 13/8 13/10 14/19 15/9 16/14 16/21 17/10 17/19 17/20 18/3 18/9
**Mr. Dennis [1]** 2/11
**Mr. Donte [1]** 13/8
**Mr. Moppins [4]** 17/10 17/20 18/3 18/9
**Mr. Moppins' [1]** 17/19
**Mr. Walsh [6]** 12/21 13/10 14/19 15/9 16/14 16/21
**Ms [25]** 2/10 7/21 8/25

12/25 13/6 13/9 14/1 14/15 14/16 14/21 15/2 15/10 16/1 16/23 17/12 17/22 17/25 20/3 21/2 21/6 25/10 26/2 27/21 27/23 30/15
**Ms. [17]** 3/22 4/10 5/16 9/5 9/13 11/19 12/16 12/17 13/2 14/10 14/13 18/16 18/21 19/12 27/3 33/9 35/18
**Ms. Parker [15]** 4/10 5/16 9/5 9/13 11/19 12/16 12/17 13/2 14/13 18/16 18/21 19/12 27/3 33/9 35/18
**Ms. Parker's [2]** 3/22 14/10
**much [3]** 12/13 22/25 37/1
**must [6]** 32/12 34/25 35/15 35/16 35/16 36/23
**my [6]** 2/10 8/10 38/6 38/13 38/14 38/15

**N**

**name [3]** 11/10 14/22 38/16
**names [1]** 26/18
**nature [3]** 9/11 33/13 36/16
**nearly [2]** 15/22 15/22
**necessarily [1]** 26/24
**necessary [1]** 23/13
**need [3]** 14/8 21/18 24/11
**needed [1]** 20/5
**needing [1]** 21/17
**negligent [1]** 10/6
**neutral [2]** 4/5 16/9
**never [4]** 3/9 4/5 4/17 14/2
**next [1]** 18/14
**nice [1]** 25/25
**no [14]** 1/3 6/24 6/25 6/25 8/10 8/14 11/2 14/23 18/8 18/17 25/14 25/14 26/2 32/6
**nobody [2]** 4/19 4/19
**non [1]** 31/24
**non-application [1]** 31/24

**none [3]** 7/25 11/23 16/15
**nonlawyer [1]** 23/17
**not [83]**
**note [1]** 13/12
**noted [1]** 23/14
**notereading [1]** 1/25
**notes [1]** 38/13
**nothing [9]** 4/15 8/17 8/22 11/6 15/24 16/6 16/9 25/16 29/12
**notice [1]** 3/17
**notion [1]** 12/5
**now [2]** 2/2 32/20
**nowhere [2]** 31/18 31/20
**number [3]** 2/3 29/2 38/9
**NW [2]** 1/13 1/17

**O**

**O'Grady [1]** 28/14
**objective [1]** 35/14
**objectively [3]** 35/17 36/4 36/20
**obviously [2]** 4/21 8/16
**occurs [1]** 7/12
**off [1]** 5/16
**offended [1]** 35/19
**offensive [2]** 26/4 32/21
**offices [1]** 31/6
**official [4]** 38/3 38/6 38/12 38/20
**officials [1]** 29/14
**oh [1]** 27/11
**once [2]** 4/2 30/14
**one [23]** 3/1 3/8 4/21 4/22 5/15 6/15 7/9 9/5 9/6 9/8 9/11 11/8 11/25 12/9 16/3 18/13 25/4 27/20 31/4 32/9 32/10 34/21 36/18
**only [12]** 3/7 4/2 4/9 5/1 5/9 8/15 11/8 27/6 27/8 27/15 27/19 36/16
**Operations [1]** 29/6
**opinions [1]** 35/10
**opposes [1]** 20/11
**opposing [1]** 19/1
**opposition [2]** 35/7 35/8

**O**

**order [9]** 3/7 10/16 12/2 24/9 28/13 30/4 32/11 34/24 36/24
**other [27]** 4/21 7/1 7/7 8/11 8/11 8/15 8/22 9/3 9/25 10/14 11/13 17/19 18/13 24/3 25/5 25/6 25/8 25/14 25/14 25/21 26/1 27/15 28/2 30/23 32/22 33/20 36/11
**otherwise [1]** 32/4
**our [4]** 10/20 16/4 18/14 23/20
**out [9]** 3/4 4/14 7/19 9/7 9/8 9/9 17/3 22/10 31/15
**over [2]** 10/22 29/1

**P**

**p.m [1]** 1/7
**page [1]** 30/5
**pages [1]** 38/11
**pain [1]** 2/17
**pained [1]** 2/16
**paragraph [10]** 3/17 5/2 7/20 17/15 17/16 25/9 25/10 25/13 25/13 30/5
**paragraphs [1]** 17/17
**PARKER [37]** 1/3 2/3 2/10 4/10 5/16 7/21 8/25 9/5 9/13 11/19 12/16 12/17 13/2 13/6 13/9 14/1 14/13 15/10 16/1 16/24 17/12 17/22 18/1 18/16 18/21 19/12 21/2 21/6 25/11 26/2 27/3 27/23 28/9 30/16 33/9 35/18 38/8
**Parker's [7]** 3/22 12/25 14/10 14/15 14/16 15/2 20/4
**part [2]** 26/5 34/8
**participation [1]** 35/7
**particular [21]** 2/22 5/1 5/13 6/1 6/23 7/12 7/15 8/7 8/15 8/24 8/25 9/4 10/8

**parties [1]** 21/16
**past [1]** 10/22
**Paul [1]** 1/20
**PC [1]** 1/12
**pending [1]** 2/2
**people [13]** 9/7 9/9 10/24 23/12 24/12 24/14 24/18 25/6 25/6 27/2 27/20 31/7 33/20
**performance [1]** 20/21
**performed [1]** 7/6
**period [3]** 11/21 26/15 29/2
**person [8]** 8/15 19/22 29/14 31/15 31/17 32/22 32/24 33/4
**persuasive [1]** 34/20
**pervasive [7]** 9/3 9/11 10/2 15/13 15/16 32/16 34/14
**pervasively [1]** 9/19
**pervasiveness [2]** 16/22 17/1
**Pickett [1]** 27/7
**place [4]** 14/2 35/21 36/13 36/13
**plaintiff [21]** 1/4 1/12 2/10 12/14 13/23 16/10 16/16 16/17 20/19 20/20 20/21 20/23 27/16 28/9 28/23 28/24 30/19 31/15 32/12 34/25 36/2
**plaintiff's [1]** 11/10
**plaintiffs [1]** 2/25
**plays [1]** 25/25
**pleadings [1]** 3/17
**please [2]** 2/5 12/16
**pled [1]** 14/10
**plenty [1]** 8/20
**point [7]** 7/19 11/17 12/7 15/20 16/5 25/20 26/24
**pointed [1]** 9/7
**policy [18]** 3/4 4/4 4/16 5/1 5/3 5/4 21/10 22/25

10/18 11/7 11/11 11/20 25/9 26/3 27/1 27/3 27/5 23/1 24/13 24/15 24/19 25/5 25/11 25/13 31/20 31/22 31/24
**poor [2]** 20/20 26/16
**position [3]** 12/25 16/18 29/6
**possible [1]** 33/5
**post [1]** 11/14
**posted [1]** 26/19
**practice [3]** 4/4 35/16 36/4
**precluded [1]** 30/16
**predicate [1]** 4/23
**prejudice [2]** 32/3 32/8
**premised [1]** 31/16
**prepared [1]** 31/1
**presented [1]** 30/3
**presents [1]** 16/12
**president [1]** 14/21
**prima [1]** 36/21
**pro [1]** 13/14
**problem [7]** 5/22 9/17 21/22 22/25 23/3 33/9 35/20
**procedures [1]** 35/9
**proceedings [5]** 1/25 37/3 38/6 38/12 38/14
**produced [1]** 1/25
**professional [1]** 31/6
**professor [1]** 26/17
**proffer [1]** 24/19
**progress [1]** 20/12
**promoted [7]** 7/5 14/5 19/5 19/6 19/22 33/1 33/17
**promotion [14]** 14/3 16/17 19/9 19/18 19/20 29/6 29/7 29/9 31/18 32/23 33/1 33/14 33/22 36/7
**promotions [3]** 7/4 18/8 29/2
**propagated [2]** 9/19 27/6
**protected [6]** 20/10 20/14 35/1 35/4 35/11 35/13
**protests [1]** 35/10
**prove [2]** 32/12 35/1
**providing [1]** 36/7
**purpose [2]** 21/14 31/4

## P

**purposes [1]** 19/19
**put [1]** 30/24

## Q

**qualified [1]** 16/18
**question [2]** 3/7 36/5
**questioned [1]** 26/5
**questions [1]** 24/3
**quick [1]** 24/8
**quid [1]** 13/13
**quite [3]** 14/19 16/15 29/1
**quo [1]** 13/14
**quoting [1]** 30/5

## R

**race [5]** 6/19 6/20 20/22
23/7 32/14
**raise [5]** 18/16 20/13 23/5
23/6 31/10
**raised [18]** 3/8 3/9 3/13
4/5 4/19 5/10 5/16 7/16
13/3 18/5 18/11 21/24 22/3
22/23 24/21 25/9 25/19
30/15
**raising [3]** 16/24 18/1 18/3
**rapidly [1]** 14/17
**rather [3]** 16/19 33/2
33/11
**reach [2]** 21/16 31/7
**read [3]** 21/8 26/15 30/24
**reading [1]** 31/2
**real [1]** 19/9
**reality [2]** 6/13 26/6
**really [3]** 5/9 16/23 16/25
**reason [4]** 3/9 8/2 19/9
31/23
**reasonable [11]** 13/2 18/1
18/21 20/6 21/2 22/5 28/23
33/4 35/17 36/4 36/20
**reasonably [3]** 18/4 18/11
20/15
**reasons [2]** 25/2 36/23
**received [2]** 19/17 32/23
**receiving [4]** 3/20 3/24
30/8 30/11

**reciting [1]** 36/1
**recognize [1]** 30/25
**recommend [1]** 18/8
**record [2]** 2/6 9/9
**recorded [1]** 1/25
**REEMA [16]** 1/6 2/4 2/7
3/5 3/19 7/3 14/21 14/23
15/21 16/4 17/5 20/16
27/19 27/24 28/10 38/8
**Reema's [2]** 15/19 24/20
**Reema-Vora [2]** 14/21
14/23
**reference [1]** 28/2
**referenced [1]** 34/18
**referral [1]** 30/21
**refile [1]** 32/7
**regard [4]** 28/24 33/24
35/13 36/10
**relate [1]** 17/17
**related [7]** 6/13 6/13 6/17
6/18 6/19 6/20 11/5
**relates [1]** 15/14
**relating [1]** 36/16
**relations [4]** 19/21 29/10
32/24 33/16
**relationship [5]** 13/25
14/6 19/7 19/8 31/17
**relationships [1]** 26/23
**relative [1]** 4/14
**relatively [1]** 2/23
**remedies [2]** 3/11 21/7
**remotely [2]** 4/15 24/17
**repeatedly [1]** 34/3
**reply [3]** 16/5 16/15 28/19
**reported [1]** 38/5
**Reporter [4]** 1/22 38/1
38/3 38/20
**represented [1]** 22/16
**required [2]** 24/2 27/9
**requirement [2]** 31/4 36/2
**requires [2]** 14/24 23/19
**requiring [1]** 21/15
**resolution [1]** 21/17
**resolve [1]** 31/13
**Resources [1]** 29/14
**respect [5]** 4/10 4/22 5/15

25/21 35/22
**responded [1]** 24/22
**response [6]** 2/24 13/5
24/25 28/16 28/18 29/19
**result [6]** 3/2 4/13 8/13
9/10 17/19 25/7
**retaliation [11]** 3/3 12/2
12/3 12/7 18/15 18/18 20/5
20/11 25/3 30/23 36/21
**retaliatory [4]** 15/7 29/25
34/23 34/25
**reverse [2]** 3/6 24/9
**Richardson [2]** 1/12 2/11
**richly [1]** 29/8
**right [11]** 5/20 5/20 12/4
12/13 18/24 19/1 20/17
24/5 26/7 32/5 32/25
**rightly [1]** 35/21
**rights [4]** 1/16 13/13 30/20
34/4
**rise [2]** 10/1 34/19
**RMR [1]** 1/22
**ROGER [1]** 1/9
**romantic [1]** 19/6
**rule [4]** 3/19 3/22 30/7
30/9
**rules [1]** 17/7
**rumor [73]**
**rumored [2]** 13/24 14/5
**rumors [9]** 4/10 4/13 4/15
8/20 10/14 10/14 16/16
27/25 35/19
**RWT [3]** 1/3 2/3 38/9
**RWT-17-01648 [1]** 1/3
**RWT-17-1648 [2]** 2/3 38/9

## S

**said [13]** 3/18 5/6 6/21
7/17 8/10 11/2 13/22 15/10
32/20 34/3 38/9 38/12
38/14
**Saint [1]** 1/20
**sake [1]** 36/9
**same [15]** 7/1 7/10 8/13
10/23 14/1 14/17 14/25
16/12 19/6 23/10 25/12

## S

**same... [4]** 27/25 31/11 33/19 33/20
**sand [1]** 25/25
**satisfy [1]** 34/11
**say [8]** 5/3 7/16 10/12 10/20 21/19 25/10 26/8 27/11
**saying [2]** 9/15 19/3
**says [3]** 5/2 7/20 20/10
**school [1]** 11/13
**screamed [1]** 18/6
**second [5]** 15/7 15/15 29/25 32/20 34/23
**see [1]** 22/7
**seem [1]** 27/16
**seemed [1]** 9/14
**sense [1]** 22/2
**sent [1]** 11/14
**series [1]** 12/24
**SERVICES [5]** 1/6 2/4 2/8 28/11 38/8
**set [4]** 9/9 22/6 28/21 30/21
**Seven [1]** 1/20
**Seventh [1]** 1/14
**several [1]** 10/10
**severe [8]** 9/3 9/11 10/1 15/12 15/16 32/16 34/13 34/20
**severely [1]** 9/19
**severity [2]** 16/21 17/1
**sex [7]** 6/17 9/18 9/18 19/6 23/11 23/11 30/23
**sexual [16]** 11/15 13/10 13/25 14/6 15/5 18/22 19/8 19/21 21/1 29/10 32/23 32/24 33/3 33/16 33/22 36/7
**shape [3]** 5/12 9/20 10/16
**she [109]**
**she's [19]** 4/12 6/17 6/24 6/24 6/25 7/6 7/13 7/25 8/9 9/5 19/16 20/14 22/13 23/14 23/17 31/2 32/15

**34/12 34/18**
**short [3]** 16/2 29/2 34/16
**shorthand [2]** 38/6 38/13
**should [8]** 3/8 5/12 5/13 15/1 17/2 18/6 28/6 30/16
**shouldn't [2]** 9/15 10/20
**show [6]** 4/24 4/25 6/5 6/16 10/9 10/16
**side [1]** 8/22
**sides [1]** 32/20
**signed [1]** 28/13
**similar [1]** 28/4
**similarly [1]** 14/24
**simple [2]** 2/23 3/9
**simply [2]** 32/2 34/1
**since [1]** 30/25
**sir [1]** 2/20
**situated [1]** 14/24
**situation [17]** 8/24 9/22 10/18 11/4 11/18 11/19 13/3 13/5 13/25 16/12 17/10 17/24 20/22 20/24 21/25 26/20 27/1
**situations [3]** 11/7 19/7 23/22
**six [2]** 7/4 7/6
**Skeen [1]** 1/19
**slights [2]** 34/7 34/18
**slurs [2]** 11/14 15/23
**so [38]** 2/15 3/17 4/7 4/19 5/9 5/12 8/16 8/19 9/22 10/19 10/22 12/5 12/8 14/18 14/23 15/4 15/14 16/12 17/10 17/20 17/24 18/9 19/13 20/12 20/22 21/11 21/19 23/9 23/12 23/15 23/20 23/25 25/18 29/16 30/18 32/7 33/3 35/19
**society [1]** 13/19
**solution [1]** 31/7
**some [9]** 3/25 4/16 4/23 5/3 9/23 10/14 30/12 32/18 33/21
**somebody [7]** 9/14 9/16 19/8 19/19 20/25 31/9

**33/15**
**somebody's [3]** 32/25 33/7 36/6
**somehow [3]** 10/6 27/5 27/17
**someone [1]** 32/22
**someone's [2]** 7/11 36/16
**something [9]** 4/18 9/17 9/24 20/15 21/21 24/22 26/7 26/10 31/10
**somewhat [1]** 2/24
**sorry [2]** 6/18 12/9
**sort [4]** 4/16 7/1 7/10 24/8
**SOUTHERN [1]** 1/2
**spread [4]** 9/25 17/15 27/6 32/22
**spreading [7]** 9/6 17/11 17/21 27/12 33/5 33/23 36/6
**stage [1]** 24/2
**staging [1]** 35/10
**stand [1]** 32/2
**standard [4]** 8/7 22/1 22/19 23/16
**standards [1]** 6/5
**standing [1]** 13/1
**standpoint [2]** 8/18 25/18
**start [2]** 24/9 30/2
**started [14]** 5/24 6/1 7/4 7/14 7/14 7/16 7/22 7/24 9/13 14/2 14/13 14/17 16/23 29/15
**starting [3]** 2/14 13/8 16/24
**state [2]** 17/5 34/21
**statements [1]** 33/13
**states [6]** 1/1 1/10 1/22 17/6 28/11 38/4
**status [2]** 16/10 31/14
**stenography [1]** 1/25
**stifle [1]** 29/13
**stop [3]** 10/14 10/14 11/21
**story [1]** 8/23
**straight [1]** 9/10
**Street [2]** 1/13 1/20
**stress [3]** 12/23 13/15

**S**

**stress... [1]** 15/18
**strictly [1]** 17/9
**strikes [6]** 3/19 21/10 22/10 22/24 23/1 30/7
**string [1]** 26/17
**strongest [1]** 33/4
**subject [3]** 3/20 25/7 30/7
**subjected [14]** 4/12 5/18 6/10 7/1 9/23 11/5 11/12 16/11 21/3 25/11 25/12 26/17 27/22 27/24
**subjective [1]** 35/14
**subjectively [1]** 35/17
**submit [4]** 14/12 17/1 19/25 23/25
**submitted [1]** 7/9
**subordinate [3]** 5/24 13/1 20/20
**subscribed [1]** 38/15
**subsequent [2]** 17/18 20/7
**substance [2]** 6/22 25/14
**substantiate [1]** 26/11
**success [6]** 5/25 7/15 7/18 7/23 14/15 14/16
**successful [1]** 29/1
**such [5]** 3/23 30/10 31/20 31/21 35/23
**suddenly [3]** 8/14 21/21 27/11
**sue [1]** 26/7
**suffice [2]** 12/11 34/19
**sufficient [2]** 8/9 11/3
**sufficiently [3]** 9/3 32/16 34/13
**suggest [8]** 4/16 5/4 7/10 24/18 25/5 27/17 28/5 33/1
**suggested [1]** 27/5
**suggesting [2]** 19/21 33/15
**suggests [2]** 6/25 25/11
**Suite [1]** 1/17
**SUK [2]** 1/13 2/11
**sullied [1]** 33/15

**summary [1]** 16/19
**supervisor [11]** 6/2 8/16 14/7 17/6 17/7 17/24 18/9 19/5 27/4 27/10 33/16
**supervisor's [1]** 17/8
**supervisors [2]** 6/11 16/12
**supervisory [1]** 28/3
**support [5]** 5/11 12/5 18/18 18/20 28/1
**supported [1]** 27/18
**supporting [1]** 28/17
**sure [1]** 25/25
**survive [1]** 35/24
**systemic [1]** 25/7

**T**

**take [1]** 32/5
**taken [1]** 38/13
**talk [3]** 9/7 12/22 15/6
**talked [10]** 12/21 13/10 14/19 15/5 15/18 15/21 16/14 16/21 18/17 25/22
**talking [3]** 16/25 24/12 24/14
**talks [1]** 4/12
**tamp [1]** 10/7
**tangible [1]** 17/9
**tape [1]** 38/14
**tell [2]** 22/8 22/22
**telling [1]** 4/3
**tells [1]** 7/3
**temporal [1]** 34/16
**ten [2]** 10/21 16/1
**terminate [1]** 20/20
**terminated [6]** 3/25 10/12 22/14 23/11 29/18 30/12
**termination [14]** 3/13 3/15 3/20 15/8 15/8 25/1 25/2 25/16 29/25 30/1 30/8 31/23 34/24 34/25
**terms [2]** 33/5 34/16
**terribly [1]** 36/14
**testimony [1]** 38/7
**testing [1]** 8/8
**than [2]** 14/17 16/19

**Thank [6]** 2/21 12/12 12/13 28/7 36/25 37/2
**that [374]**
**that's [19]** 3/15 4/14 8/1 8/6 9/3 10/21 11/3 17/1 22/18 23/18 24/2 24/2 25/8 25/8 26/20 27/8 27/10 27/18 30/2
**their [7]** 16/5 16/15 17/6 20/25 21/2 24/24 24/25
**them [3]** 7/9 20/25 30/4
**then [8]** 3/3 5/5 9/2 12/6 21/19 21/21 22/25 28/14
**there [33]** 3/16 4/16 5/3 5/17 5/17 5/23 7/5 8/10 8/17 8/20 11/8 11/22 12/3 15/10 15/23 16/8 18/17 18/21 21/9 21/23 22/9 22/10 24/3 25/5 27/21 28/3 29/16 31/19 31/20 31/20 31/21 32/6 32/18
**there's [15]** 4/15 5/9 5/10 8/14 14/23 15/13 16/6 21/9 21/22 22/21 22/25 24/16 27/1 32/5 34/1
**therefore [3]** 33/24 36/19 36/20
**these [7]** 3/6 4/13 4/15 6/10 22/5 24/14 31/19
**they [22]** 2/25 5/15 8/20 10/5 10/6 10/17 10/17 11/6 11/14 11/14 11/15 16/14 18/4 20/17 22/4 22/24 25/2 26/18 31/11 33/1 34/4 34/6
**they've [2]** 27/5 31/12
**thing [8]** 10/1 13/3 18/1 25/4 27/8 27/11 27/15 28/4
**things [6]** 6/12 14/9 23/7 24/8 24/10 26/19
**think [8]** 9/7 11/8 13/20 14/8 16/5 33/4 35/11 35/24
**third [8]** 10/3 15/8 15/15 21/5 30/2 30/4 32/15 35/3
**this [101]**
**those [8]** 4/2 11/1 11/7 16/16 23/23 28/24 35/16

## T

**those... [1]** 36/23
**though [2]** 26/6 29/3
**thought [1]** 27/15
**three [26]** 2/25 3/3 3/8
3/18 3/19 3/20 3/24 4/1 4/1
5/14 16/2 18/12 21/10
22/10 22/24 23/1 24/9
29/22 29/23 29/25 30/7
30/8 30/11 30/13 30/13
32/1
**three-strikes [1]** 21/10
**through [10]** 2/17 2/24 7/4
17/3 18/2 23/21 26/3 26/16
26/16 29/12
**time [8]** 11/17 11/21 12/7
14/18 26/24 29/2 32/4 32/6
**times [1]** 7/6
**TISHMAN [2]** 1/12 2/9
**Title [8]** 6/16 9/21 10/4
11/3 12/8 12/9 25/23 26/11
**TITUS [1]** 1/9
**today [4]** 2/14 12/17 28/20
29/4
**together [2]** 31/7 38/13
**told [2]** 18/6 18/7
**too [2]** 13/25 14/7
**took [3]** 35/2 35/21 36/13
**top [2]** 7/13 10/3
**totally [1]** 33/7
**touch [1]** 24/8
**traced [1]** 11/24
**tranquil [1]** 34/5
**transcript [3]** 1/9 1/25
38/12
**transferred [2]** 28/13
29/20
**Transportation [1]** 23/21
**trap [1]** 22/3
**treated [6]** 8/2 8/4 8/12
8/14 8/17 24/15
**treatment [3]** 5/19 6/11
11/23
**tried [2]** 10/6 19/19
**trouble [1]** 16/24

**troubling [1]** 26/4
**true [3]** 13/12 27/8 28/22
**truly [1]** 32/21
**try [2]** 31/6 31/13
**trying [9]** 9/6 9/8 9/9 11/21
11/22 21/16 22/20 22/22
25/15
**turn [1]** 27/12
**TV [1]** 16/3
**two [12]** 3/3 5/15 12/1
12/2 12/12 24/10 25/21
27/2 28/2 32/9 35/6 36/22
**type [5]** 13/19 14/25 23/10
24/11 33/19
**types [3]** 23/4 23/21 27/25

## U

**ultimate [1]** 6/7
**ultimately [5]** 10/11 13/5
29/18 32/12 35/1
**unacceptable [1]** 33/7
**unanticipated [1]** 2/14
**uncivil [1]** 9/23
**under [5]** 3/19 6/5 24/15
25/23 30/7
**underlying [5]** 18/19
18/19 18/20 20/13 23/13
**undermine [2]** 12/24
19/20
**undermined [1]** 12/25
**understand [4]** 8/8 9/16
22/11 22/20
**unfair [1]** 27/14
**unfortunate [1]** 36/12
**unfortunately [4]** 13/16
13/18 15/25 34/7
**unhappy [1]** 36/12
**uniformly [1]** 22/11
**UNITED [5]** 1/1 1/10 1/22
28/11 38/4
**University [1]** 17/5
**unlawful [7]** 12/20 18/21
20/14 20/15 20/24 35/15
36/3
**unless [4]** 21/10 22/8 24/2
30/17

**unreasonable [2]** 10/17
13/5
**until [2]** 24/23 30/17
**untoward [2]** 11/5 27/13
**untrue [2]** 7/22 9/17
**unwary [1]** 22/3
**unwelcomed [2]** 15/11
32/13
**unwritten [1]** 5/5
**up [8]** 4/19 7/6 11/20
17/20 21/22 22/9 27/24
34/19
**upon [17]** 21/11 31/16
31/22 33/2 33/2 33/11
33/11 33/17 33/18 33/23
33/25 34/1 34/1 34/10
34/12 36/7 38/7
**upset [4]** 9/13 9/15 26/7
26/10
**upsetting [1]** 9/16
**Urban [1]** 1/16
**us [6]** 6/24 7/3 12/17
12/18 24/17 32/9
**use [1]** 31/5
**used [2]** 15/23 16/17
**usual [1]** 22/1
**utilizing [1]** 35/9

## V

**Vance [1]** 17/4
**variety [8]** 5/18 10/23 11/1
11/23 25/12 26/18 33/20
34/8
**versus [4]** 2/4 17/5 23/21
38/8
**very [7]** 4/20 11/21 12/13
24/7 31/1 34/16 37/1
**viable [1]** 34/24
**vial [1]** 33/6
**views [1]** 26/23
**VII [7]** 6/16 9/21 10/4 11/3
12/9 25/23 26/11
**violation [1]** 13/13
**Virginia [3]** 28/12 29/20
30/20
**visit [1]** 2/15

**V**

voicing [1] 35/10
Vora [2] 14/21 14/23
vulgar [1] 33/6

**W**

Wallace [1] 27/21
WALSH [9] 1/19 2/7 12/21 13/10 14/19 15/9 16/14 16/21 18/17
want [5] 3/6 12/22 13/15 15/18 24/8
warnings [8] 3/21 3/25 4/1 4/1 30/8 30/12 30/13 30/13
was [151]
Washington [4] 1/14 1/15 1/18 2/12
wasn't [6] 5/10 8/16 9/18 9/18 9/19 23/2
way [17] 5/11 6/18 6/19 6/20 8/2 8/4 8/17 9/20 10/6 10/16 11/1 11/14 11/18 26/22 27/13 28/2 30/3
ways [1] 19/4
we [30] 2/19 2/22 3/8 4/7 4/12 4/16 6/9 8/8 8/23 8/24 10/19 11/4 11/25 12/10 13/18 14/8 15/5 16/3 17/1 19/25 23/3 23/25 24/13 24/15 24/22 24/25 25/18 25/22 26/20 28/5
we'd [2] 8/23 14/12
we're [8] 3/16 9/22 11/2 11/18 11/19 24/12 24/14 26/24
we've [5] 4/22 11/8 15/17 17/25 23/20
weeks [1] 34/18
well [17] 2/11 3/13 4/2 7/6 10/20 12/12 14/4 16/20 19/18 22/13 22/20 24/12 24/24 24/25 27/21 28/19 35/9
well-deserved [1] 19/18
went [4] 7/4 7/6 11/23

29/13
were [34] 3/23 3/25 4/13 5/17 7/9 8/4 8/20 8/20 10/10 10/11 10/17 13/22 14/1 14/13 15/23 15/25 20/7 20/20 20/21 22/9 24/22 25/2 25/12 25/17 27/24 29/17 29/17 30/3 30/10 30/12 33/1 34/11 36/13 36/18
what [20] 5/25 6/7 8/6 9/12 17/15 19/16 19/17 21/19 23/18 24/10 25/13 25/16 25/22 25/23 27/9 29/3 30/21 31/2 32/20 35/21
what's [1] 25/8
when [11] 17/25 18/5 18/11 18/16 18/22 20/11 20/14 22/3 24/12 26/2 29/13
where [21] 5/3 8/25 9/22 11/19 11/21 14/12 16/7 16/17 17/10 17/14 17/24 20/16 21/11 23/5 23/7 23/8 23/22 24/13 24/16 26/18 35/11
whereof [1] 38/15
whether [12] 8/9 9/2 13/21 15/15 15/16 15/20 15/24 16/5 22/21 23/9 25/2 36/5
which [20] 2/23 3/18 3/19 5/17 8/4 10/6 12/20 17/7 18/14 18/14 19/8 27/8 28/22 29/3 29/7 29/11 30/7 33/6 33/12 35/8
while [2] 3/25 30/12
who [23] 7/14 7/22 8/12 8/14 9/14 10/24 13/2 14/5 14/17 16/23 18/12 19/5 19/6 19/22 24/14 27/20 27/22 27/24 28/4 29/15 31/17 32/24 33/16
whole [4] 8/23 9/3 21/14 25/8
why [1] 8/2

will [7] 24/19 31/7 32/2 32/20 34/22 36/24 36/25
wisdom [1] 21/16
within [1] 17/20
without [6] 4/1 21/17 30/13 32/3 36/10 36/16
witness [1] 38/15
woman [7] 7/17 13/23 14/1 14/14 14/20 16/10 33/13
women [5] 8/11 13/19 14/25 26/25 27/23
word [2] 21/9 36/9
work [26] 3/1 3/2 10/7 11/3 12/6 12/10 14/25 15/2 15/5 15/9 17/12 17/18 18/10 19/4 20/11 21/1 21/3 26/8 26/11 29/11 29/16 29/17 29/24 31/12 32/10 32/11
worked [2] 14/13 28/25
worker [1] 7/22
workplace [6] 13/7 13/20 16/10 17/13 17/23 34/4
would [31] 5/11 5/14 7/10 9/16 10/1 11/14 12/1 12/5 12/11 13/13 13/22 13/23 14/2 14/13 16/11 18/8 20/1 20/21 22/5 23/17 24/17 24/25 25/4 27/9 27/9 27/12 27/13 32/21 33/3 33/4 34/19
Wright [1] 1/19
written [3] 3/21 5/5 30/8
wrong [4] 10/9 12/4 18/25 20/23
wrongly [1] 35/21
wrote [2] 11/15 23/15

**Y**

year [1] 28/8
years [5] 10/22 11/12 11/13 16/1 26/21
yelled [1] 26/19
you [42]
you're [5] 4/3 19/15 21/19

# Y

**you're... [2]** 22/10 23/7

**you've [1]** 27/12

**your [37]** 2/16 2/21 2/21 3/10 3/16 4/7 7/19 9/4 10/3 10/19 11/6 11/25 12/12 12/15 12/19 13/14 14/8 14/22 16/20 19/1 19/16 19/25 21/6 21/24 22/13 22/18 23/4 23/14 23/14 24/3 24/7 25/4 25/22 26/7 26/21 28/5 37/2

**yourselves [1]** 2/6