**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt)**

EVANGELINE J. PARKER           *

    Plaintiff                 *

v.                        *     Civil Action No. 8:17-CV-01648 RWT

REEMA CONSULTING SERVICES, INC. *

    Defendant               *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM IN SUPPORT OF**
**<u>RESPONSE TO MOTION FOR RECONSIDERATION</u>**

Reema Consulting Services, Inc. ("RCSI"), by its undersigned attorneys, submits this memorandum in support of its Response to the Motion for Reconsideration. As is argued below, Plaintiff, Evangeline Parker ("Parker") has failed to substantiate a legal or factual rationale supporting her Motion. She alleges no new facts or arguments and simply restates all of the arguments previously presented in response to the Motion to Dismiss and at the hearing on the Motion.[1] Even accepting her allegations as true, Parker has not and cannot allege that her meager allegations are sufficient for a reasonable jury to find that she was mistreated by RCSI based on her gender.

**Legal Standards**

Rule 59(e) allows a party to file a motion to alter or amend a judgment no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e). One purpose of Rule 59(e) is to "permit a district court to correct its own errors, 'sparing the parties and the appellate courts the

---

[1]    In further support of this Motion, RCSI adopts and incorporates its previous Motion to Dismiss and Reply to the Response of Parker where all of these issues were previously argued and briefed in full.

burden of unnecessary appellate proceedings." Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d

396, 403 (4th Cir. 1998).  However, "reconsideration of a judgment after its entry is an

extraordinary remedy which should be used sparingly." Id. 148 F.3d at 403 (citation omitted);

Vance v. CHF Int'l, 914 F. Supp. 2d 669, 687 (D. Md. 2012). A Rule 59(e) motion "may not be

used to relitigate old matters, or to raise arguments or present evidence that could have been

raised prior to the entry of judgment." Pac Ins. Co., (citation omitted). "[M]ere disagreement"

with the court's ruling does not support a motion to alter or amend the judgment. Hutchinson v.

Staton, 994 F.2d 1076, 1082 (4th Cir. 1993). "Were it otherwise, then there would be no

conclusion to motions practice, each motion becoming nothing more than the latest installment in

a potentially endless serial that would exhaust the resources of the parties and the court—not to

mention its patience." Pinney v. Nokia, Inc., 402 F.3d 430, 453 (4th Cir. 2005) (quoting Potter v.

Potter, 199 F.R.D. 550, 553 (D. Md. 2001)).

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that

a judgment may be amended in only three circumstances: "(1) to accommodate an intervening

change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct

a clear error of law or prevent manifest injustice." Pac. Ins. Co., 148 F.3d at 403 (citing EEOC v.

Lockheed Martin Corp., Aero & Naval Sys., 116 F.3d 110, 112 (4th Cir.1997); Hutchinson, 994

F.2d at 1081; Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 411 (4th Cir. 2010). Most

importantly, Rule 59(e) does not permit a party to "raise arguments which could have been raised

prior to the issuance of the judgment," nor does it enable a party to "argue a case under a novel

legal theory that the party had the ability to address in the first instance." Pac. Ins. Co., 148 F.3d

at 403.

> Where a party seeks reconsideration on the basis of clear error, the earlier
> decision cannot be "just maybe or probably wrong; it must ... strike us as wrong

with the force of a five-week old, unrefrigerated dead fish." <u>TFWS, Inc. v. Franchot</u>, 572 F.3d 186, 194 (4th Cir.2009) (quoting <u>Bellsouth Telesensor v. Info. Sys. & Networks Corp .,</u> Nos. 92–2355, 92–2437, 1995 WL 520978 at *5 n. 6 (4th Cir. Sept. 5, 1995)). "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." <u>Id.</u> (internal citations and quotation marks omitted).

<u>Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship</u>, No. CIV.A. RDB-11-1864, 2013 WL 5274356, at *3 (D. Md. Sept. 17, 2013), <u>aff'd,</u> 594 F. App'x 798 (4th Cir. 2014).

Although not cited in Parker's Motion, to support a motion for relief from an Order under Rule 60(b), the moving party must show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." <u>Hale v. Belton Assoc., Inc.</u>, 305 Fed. Appx. 987, 988 (4th Cir. 2009) (quoting Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993)). Assuming these threshold requirements are met, the moving party must then show: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b). "Rule 60(b) provides extraordinary relief and may only be invoked under 'exceptional circumstances.' " <u>Mines v. United States</u>, 2010 WL 1741375, at *2 (D. Md. April 28, 2010) (quoting <u>Compton v. Alton Steamship Co., Inc.</u>, 608 F.2d 96, 102 (4th Cir. 1982)).

## Argument

In Parker's Motion, she offers no new evidence which could not have been previously raised and she has identified no new law which was decided or unavailable before the hearing on December 7.  Importantly, the only basis under which Parker can and does seek a new trial is on the basis that she seeks "to correct a clear error of law or prevent manifest injustice." Solely

through an effort to more vociferously argue her point, Parker insists that the Court made a clear error in finding that the allegations were insufficient to demonstrate a hostile work environment existed at RCSI. Parker asserts that she should have the opportunity to go to trial to present expert and other testimony that the allegations were sex based. Her Motion presents no new arguments and certainly offers no reasons why her arguments are any different from what was previously presented. Given this absence, her position was already properly rejected by the Court and this Motion should be denied.

Parker's Motion only rehashes and reorganizes her Complaint's allegations. She now argues that it is premised on her belief that certain stereotypes of women exist, that she is a woman and that all of the actions of RCSI must therefore be based on her gender. Parker continues to simply assume that all actions were taken against her because she was a woman without ever effectively alleging that they were taken because she was a woman. Parker's belief that these stereotypes and gender biases continue in society does not relieve her of her fundamental burden of demonstrating the actions taken here were because of such gender based motives. Importantly, Parker never denies that the rumor is premised on the conduct of her having an affair. Parker also makes no effort to argue that an allegation that someone is having an affair is offensive and is gender neutral. Despite these observations, Parker continues to utterly fail to demonstrate how this limited rumor or the actions of RCSI were based on her gender, was an example of what all women at RCSI suffered or even that men employed at RCSI were not subject to the same treatment.

As the Court repeatedly noted, the conduct of an alleged affair is certainly not conduct which could be attributed solely to a female and is not conduct which can be assumed to be wrongfully alleged solely because of her gender. Parker certainly made no claim that only

women who had or were alleged to have affairs at RCSI were promoted.  To the contrary, she identified other women employees and managers and made no effort to indicate they went through similar tribulations.  Nor did she allege that any of the other women managers with whom she interacted were in those positions because they engaged in conduct while male managers did not.  Even Parker notes that her alleged partner in the affair, Mr. Pickett, "suffered . . . a derogative question from his superior" about the affair. Motion at 5-6.  Parker certainly doesn't allege that this "derogative question" was premised on Pickett's being a male; it was based on his alleging to have been engaged in unflattering conduct.

Furthermore, despite Parker's efforts at recharacterizing her allegations as being premised on assumed stereotypes, she makes no effort to allege in her Complaint that these stereotypes actually existed at RCSI or that any action was taken premised on them isolated from any allegation about her conduct.  The entire genesis of her Complaint is a rumor about her conduct which she found personally offensive.  Accepting Parker's belief that the rumors existed, she is unable to effectively allege that the actions taken by RCSI were motivated or undertaken based on her gender and not by offense at the conduct attributed to her.

As Parker is well aware, the Court is not bound to accept Parker's legal conclusion that all activities were gender based simply because she has claimed so.  Courts are never required to accept unsupported legal allegations, Revene v. Charles County Commissioners, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions disguised or couched as factual allegations, Papasan v. Allain, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir.1979).  Parker is required to make a "showing" in her complaint rather than blanket assertions of at least "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and alteration omitted).

Construing inferences in Parker's favor does not equate to jumping to legal conclusions that the rumor and the hostility of which she claims emanated from this rumor are related to her gender. Even Plaintiff concedes that this rumor was started by a coworker who was jealous "because she advanced more quickly in the company" than he had. She has not suggested that he was upset that she was a female or that she was undeserving of the raise because of her gender; according to Plaintiff he started the rumor because "he was jealous of her career advancement." Jealousy of a coworker's advancement is a far cry from gender bias.

The entire premise for Parker's suit is her incredible leap that everything done at RCSI subsequent to the rumor was premised on her gender. She claims the door was shut in her face, she was yelled at and she claims that Mr. Jennings submitted an unsupported claim against her and then directed long stares, smirking and laughing at her. She makes no suggestion that any of these indignities were suffered by other females. Even as Parker claims the rumor spread, she notes that she was "treated with open resentment and disrespect from a number of her co-workers," but she fails to indicate that only the male co-workers were doing this, that other female managers were treated with similar disrespect or that any male employee indicated that this derisive conduct was premised upon her being a woman.

Not even the fact that Mr. Moppins would not "listen to her side of the story" leads to the conclusion that his treatment of her was related in any fashion to her gender. In fact, the only conclusion which can be reached from this statement is that he did not care to discuss the rumor

of her conduct.  Parker has not argued that Mr. Moppins listened to or engaged in discussions with males who were accused of having affairs.  In fact, she said he used a "derogative question" in questioning Pickett about the same affair.

As pointed out in RCSI's Motion to Dismiss and Reply through the citations of numerous similar cases, the courts are not easily convinced that rumors of extramarital affairs in the workplace or other sexual conduct are gender based and not conduct based.[2]  Unlike the horrific incidents detailed in Jew v. University of Iowa, 749 F. Supp. 946 (S.D. Iowa 1990), which were endured in the 70's and 80's, the progress of society in recognizing legal equality in women and the gay community reflect that a plaintiff can no longer rest on a supposed presumption of gender biased conduct or the prevalence of stereotypes simply based on accusations of an illicit affair.  Although the presumption could be that someone is an "opportunist," it is no longer valid without some demonstration of evidence to assume that any negative treatment after a rumored affair is based on the person's gender.  Despite Parker's insistence, there is no required conclusion that rumors of extramarital affairs are gender based and can support a gender based harassment claim.[3]

Parker is also wrong in arguing that she has satisfied the elements of showing severe and pervasive conduct. Her complaints that a rumor was being spread around the workplace by unknown persons about her may have been annoying, however, that rumor played no part in the

---

[2]    Similar flimsy allegations were recently raised and rejected in Martin v. Covestro LLC, No. 16-1099, 2017 WL 4711426, at *4 (W. Va. Oct. 20, 2017) ("She also does not provide any information regarding whether rumors of a sexual nature were ever spread around the plant regarding male co-workers. Therefore, she has failed to show that she 'adduced evidence to show that but for the fact of her sex, she would not have been the object of harassment.'").

[3]    It cannot go without saying that all of these cases were decided well before Parker's suit was even filed and there is no reason why any of these decisions could not be presented to the Court in Parker's Response to the Motion or at argument.

employment decisions of RCSI or how it was treating her.  Similar to other women, she was promoted several times to managerial positions.  She has identified no substantively severe conduct which impeded any of this work advancement.  According to Parker, this alleged rumor also only led to limited impact in the workplace.  None of this conduct is sufficient to support a finding of the kind of gender-biased, offensive environment which courts have previously found actionable.  Parker was not subjected to different working conditions, she was not impeded in accomplishing her tasks and she was not otherwise limited in the opportunities available to her because she was a woman.  Her situation is no different from past rejected allegations.  See, e.g., Bass, 324 F.3d at 765 ("Even viewed in the light most favorable to Bass, the facts she alleges merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her supervisors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim"); Buchhagen v. ICF Int'l, Inc., 545 Fed. Appx. 217, 219 (4th Cir. 2013) (holding that supervisor making "snide comments" to plaintiff, "playing favorites with employees," "repeatedly harping" on plaintiff's mistake, and "unfairly scrutinizing and criticizing" plaintiff failed to state hostile work environment claim); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 276 (4th Cir. 2000) (holding that complaint premised on "a routine difference of opinion and personality conflict with her supervisor" insufficiently stated actionable facts for a hostile work environment claim); Averette v. Diasorin, Inc., 2011 WL 3667218, at *3 (W.D.N.C. 2011) ("All of Plaintiff's allegations of 'harassment' do nothing more than establish that she did not get along with her co-workers....").

Similar to the failures of her other regurgitated arguments, Parker has failed to meet the test necessary to support a valid retaliation claim.  Plaintiff has utterly failed to plead a viable cause of action for retaliation.  Foremost, as argued before, she was not harassed.  Since she was

mistaken that a legal conclusion could be reached that she was the victim of any sexual harassment, she cannot rely on this conduct to support her claim for retaliation.

Beyond her complaint of the propagation of rumors about her conduct which cannot objectively support a retaliation claim, Parker's only other causal link to a retaliation claim is the notion that she was terminated three weeks after she filed a harassment claim against Mr. Moppins, her supervisor.  This claim, however, was again premised on the existence of the rumors and her desire to discuss them with Moppins who refused to do so.  Much like her failure to state a viable claim for harassment, the house of cards upon which her retaliation claim is built similarly crumbles.  Moppins' alleged yelling at her, refusal to discuss the rumor and even slamming the door in her face are all premised on her allegations that she was being illegally harassed because of the existence of the rumors that she wanted stopped.  Therefore, her retaliation claims must be dismissed.

Finally, Parker seeks this Court's permission to file an Amended Complaint.  Putting aside the rules of whether an amendment should even be permitted at this time consistent with F.R. Civ. Proc. 15, the amendments which Parker has proposed provide no new facts.  They are limited to two changes which provide only legal conclusions as to the reasons why she believes certain conduct was taken.  Parker seeks to allege in two different places in the Complaint that the "rumor was premised Ms. Parker's gender and the fact that she—a female—advanced more quickly than her male counterparts. But for Ms. Parker's gender and female stereotypes regarding sexuality, Ms. Parker would not have been subjected to this false rumor or the hostilities that followed as a result of the false rumor."

Given the fact that no new facts are attempting to be alleged and only legal conclusions, the proposed Amendment should be rightfully rejected.  Regardless of the wording of the

allegations by a plaintiff, the courts are never required to accept legal conclusions disguised or couched as factual allegations or conclusory factual allegations devoid of any reference to actual events.  The amendment here would be futile and should be easily rejected on this basis alone.

Even if the Court entertained the notion of opening the judgment and permitting these legal conclusions to be made, Parker has to demonstrate that the amendment is justified by some notion of "justice."  She makes no effort to explain why these amendments could not have been filed before the Court entered judgment dismissing the case, how this omission was inadvertent or how she would be prejudiced if she failed to raise them below.  They do not add to the stoy Parker seeks to tell.  They are also not inconsistent with any argument she has made before, any fact she has presented before this point and she cannot claim she was unaware of these conclusions. The request to amend must be denied.  Williams v. Lewis, 342 F.2d 727 (4th Cir. 1965), cert. denied, 382 U.S. 814 (motion for leave to file another amended complaint upon grounds which district court concluded were substantially the same as those asserted in previous complaints was properly denied).

## Conclusion

Parker's attacks of the Court's previous decision do not even come remotely close to striking "with the force of a five-week old, unrefrigerated dead fish."  For the reasons noted above and as previously argued in RCSI's Motion to Dismiss and Reply, Plaintiff's Motion for Reconsideration must be denied.

>        */s/ Donald J. Walsh*
>        Donald J. Walsh
>        Wright, Constable & Skeen, LLP
>        7 Saint Paul Street, 18th Floor
>        Baltimore, Maryland 21202
>        Telephone: (410) 659-1320
>        dwalsh@wcslaw.com
>
>        Attorneys for Reema Consulting Services, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of January, 2018, a copy of the Response to

the Motion for Reconsideration was sent to those counsel identified via the Court's ECF system.


>        */s/ Donald J. Walsh*