**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────────

**No. 18-1206**

─────────────────

EVANGELINE J. PARKER,

        Plaintiff - Appellant,

    v.

REEMA CONSULTING SERVICES, INC.,

        Defendant - Appellee.

------------------------------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; NATIONAL WOMEN'S LAW CENTER; A BETTER BALANCE; AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO; AMERICAN ASSOCIATION OF UNIVERSITY WOMEN; AMERICAN SEXUAL HEALTH ASSOCIATION; BLACK WOMEN'S ROUNDTABLE; NATIONAL COALITION ON BLACK CIVIC PARTICIPATION; CALIFORNIA WOMEN LAWYERS; CHAMPION WOMEN; DISTRICT OF COLUMBIA COALITION AGAINST DOMESTIC VIOLENCE; END RAPE ON CAMPUS; EQUAL RIGHTS ADVOCATES; FAMILY VALUES @ WORK; FEMINIST MAJORITY FOUNDATION; GENDER JUSTICE; GIRLS FOR GENDER EQUITY; HADASSAH, THE WOMEN'S ZIONIST ORGANIZATION OF AMERICA, INC.; HARVARD LAW SCHOOL GENDER VIOLENCE PROGRAM; LAWYERS CLUB OF SAN DIEGO; LEAGUE OF WOMEN VOTERS OF THE UNITED STATES; LEGAL AID AT WORK; LEGAL MOMENTUM, THE WOMEN'S LEGAL DEFENSE AND EDUCATION FUND; LEGAL VOICE; MAINE WOMEN'S LOBBY; MEDICAL STUDENTS FOR CHOICE; NATIONAL ASIAN PACIFIC AMERICAN WOMEN'S FORUM; NATIONAL ALLIANCE TO END SEXUAL VIOLENCE; THE NATIONAL CRITTENTON FOUNDATION; NATIONAL EMPLOYMENT LAW PROJECT; NATIONAL EMPLOYMENT LAWYERS ASSOCIATION; NATIONAL ORGANIZATION FOR WOMEN (NOW) FOUNDATION; NATIONAL PARTNERSHIP FOR WOMEN AND FAMILIES; NATIONAL WOMEN'S

POLITICAL CAUCUS; OKLAHOMA COALITION FOR REPRODUCTIVE JUSTICE; PEOPLE FOR AMERICAN WAY FOUNDATION; SERVICE EMPLOYEES INTERNATIONAL UNION; SISTERREACH; SOUTHWEST WOMEN'S LAW CENTER; STOP SEXUAL ASSAULT IN SCHOOLS; THE NATIONAL URBAN LEAGUE; WOMEN'S LAW CENTER OF MARYLAND, INCORPORATED; WOMEN EMPLOYED; WOMEN'S BAR ASSOCIATION OF THE DISTRICT OF COLUMBIA; WOMEN'S BAR ASSOCIATION OF THE STATE OF NEW YORK; WOMEN'S LAW PROJECT,

Amici Supporting Appellant.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge.  (8:17-cv-01648-RWT)

---

Argued: October 31, 2018                    Decided: February 8, 2019

---

Before NIEMEYER, AGEE, and DIAZ, Circuit Judges.

---

Affirmed in part, reversed in part by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee joined in full and Judge Diaz joined except as to Part IV. Judge Diaz wrote a separate opinion concurring in part and dissenting in part.

---

**ARGUED:** Dennis A. Corkery, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C., for Appellant.  Donald James Walsh, WRIGHT, CONSTABLE & SKEEN, LLP, Baltimore, Maryland, for Appellee.  Julie Loraine Gantz, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus United States Equal Employment Opportunity Commission.  **ON BRIEF:** Andrew R. Kopsidas, Daniel Tishman, Min Suk Huh, FISH & RICHARDSON, P.C., Washington, D.C.; Tiffany Yang, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS & URBAN AFFAIRS, Washington, D.C., for Appellant.  Gregory P. Currey, WRIGHT, CONSTABLE & SKEEN, LLP, Baltimore, Maryland, for Appellee.  James L. Lee, Deputy General Counsel, Jennifer S. Goldstein, Associate General Counsel, Anne Noel Occhialino, Acting Assistant General Counsel, Office of General Counsel, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus United States Equal Opportunity Commission.  Kathleen R. Hartnett, Ann O'Leary, Palo Alto, California, Melissa Shube, Brent Nakamura, BOIES, SCHILLER, FLEXNER, LLP, Washington, D.C.; Fatima Goss Graves, Emily Martin,

2

Sunu Chandy, Sarah David Heydemann, NATIONAL WOMEN'S LAW CENTER, Washington, D.C., for Amici National Women's Law Center, et al.

NIEMEYER, Circuit Judge:

In this appeal, the central question presented is whether a false rumor that a female employee slept with her male boss to obtain promotion can ever give rise to her employer's liability under Title VII for discrimination "because of sex." We conclude that the allegations of the employee's complaint in this case, where the employer is charged with participating in the circulation of the rumor and acting on it by sanctioning the employee, do implicate such liability. Therefore, we reverse the district court's order dismissing Count I of the complaint, which makes a claim on that basis, as well as Count II, which alleges retaliation for complaining about such a workplace condition. We affirm, however, the court's dismissal of Count III because the employee failed to exhaust that claim before the Equal Employment Opportunity Commission.

I

The facts before us are those alleged in the complaint. And, in the present procedural posture where the district court granted the defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept those facts as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). They show the following.

From December 2014 until May 2016, Evangeline Parker worked for Reema Consulting Services, Inc., ("RCSI") at its warehouse facility in Sterling, Virginia. While she began as a low-level clerk, she was promoted six times, ultimately rising to Assistant Operations Manager of the Sterling facility in March 2016.

4

About two weeks after Parker assumed that position, she learned that "certain male employees were circulating within RCSI" "an unfounded, sexually-explicit rumor about her" that "falsely and maliciously portrayed her as having [had] a sexual relationship" with a higher-ranking manager, Demarcus Pickett, in order to obtain her management position. The rumor originated with Donte Jennings, another RCSI employee, who began working at RCSI at the same time as Parker and in the same position. Because of her promotions, however, Parker soon became Jennings' superior, making him jealous of and ultimately hostile to her achievement.

The highest-ranking manager at the warehouse facility, Larry Moppins, participated in spreading the rumor. In a conversation with Pickett, Moppins asked, "hey, you sure your wife ain't divorcing you because you're f--king [Parker]?" As the rumor spread, Parker "was treated with open resentment and disrespect" from many coworkers, including employees she was responsible for supervising. As she alleged, her "work environment became increasingly hostile."

In late April 2016, Moppins called a mandatory all-staff meeting. When Parker and Pickett arrived a few minutes late, Moppins let Pickett enter the room but "slammed the door in Ms. Parker's face and locked her out." This humiliated Parker in front of all her coworkers. Parker learned the next day that the false rumor was discussed at the meeting.

The following day, Parker arranged a meeting with Moppins to discuss the rumor, and at that meeting Moppins blamed Parker for "bringing the situation to the workplace." He stated that he had "great things" planned for Parker at RCSI but that "he could no

5

longer recommend her for promotions or higher-level tasks because of the rumor." He added that he "would not allow her to advance any further within the company."

Several days later, Parker and Moppins met again to discuss the rumor. Moppins again blamed Parker and said that he should have terminated her when she began "huffing and puffing about this BS rumor." During the meeting, Moppins "lost his temper and began screaming" at Parker.

Later that same day, Parker filed a sexual harassment complaint against Moppins and Jennings with RCSI's Human Resources Manager.

Several weeks later, in mid-May, Jennings submitted a complaint to the Human Resources Manager, alleging that Parker "was creating a hostile work environment against him through inappropriate conduct," and Parker was then instructed, based on Jennings' complaint, to have no contact with Jennings. While she asserts that Jennings' complaint was false, she followed the instruction. Supervisors, however, permitted Jennings to spend time in Parker's work area talking to and distracting employees she managed. On these occasions, Jennings stared at Parker at length and smirked and laughed at her. Parker raised this situation with her supervisor and the Human Resources Manager, but neither addressed it, allegedly exacerbating Parker's experience of a hostile work environment.

On May 18, 2016, Parker was called to a meeting with Moppins, the Human Resources Manager, and RCSI's in-house counsel, and at that meeting, Moppins simultaneously issued Parker two written warnings and then fired her. One warning was based on Jennings' complaint against Parker, and the other asserted that Parker had poor

6

management ability and was insubordinate to Moppins.  In her complaint, Parker alleges

that both warnings were unfounded.  She also alleges that RCSI failed to follow its "three

strikes" rule under which employees are subject to termination only "after receiving three

written warnings."  She had received no prior warnings.  She alleges further that the rule

"was disparately enforced such that male employees were generally not fired even after

three or more warnings, while some female employees were terminated without three

warnings or with all three warnings being issued at once."

Based on these facts, Parker alleges, in Count I, a hostile work environment claim

for discrimination because of sex, in violation of 42 U.S.C. § 2000e-2; in Count II, a

retaliatory termination claim under § 2000e-3; and in Count III, a discriminatory

termination claim alleging that RCSI terminated her employment contrary to its three-

warnings rule, in violation of § 2000e-2.

By order dated January 19, 2018, the district court granted RCSI's motion to

dismiss Parker's complaint for failure to state a claim.  The court explained its reasoning

from the bench, stating with respect to Count I:

> [I]t would be truly offensive to me or anybody else to have someone spread
> a rumor that I or any other person received a promotion because of sexual
> favors or having sexual relations with the person who made the decision.
> That goes right to the core of somebody's merit as a human being to
> suggest that they were promoted and the promotion was not based upon
> merit, but rather was based upon the giving of sexual favors.
>
> *     *     *
>
> The problem for Ms. Parker is that her complaint as to the establishment
> and circulation of this rumor is not based upon her gender, but rather based
> upon her alleged conduct, which was defamed by, you know, statements of
> this nature.  Clearly, this woman is entitled to the dignity of her merit-based

7

promotion and not to have it sullied by somebody suggesting that it was because she had sexual relations with a supervisor who promoted her. But that is not a harassment based upon gender. It's based upon false allegations of conduct by her. And this same type of a rumor could be made in a variety of other context[s] involving people of the same gender or different genders alleged to have had some kind of sexual activity leading to a promotion. But the rumor and the spreading of that kind of a rumor is based upon conduct, not gender.

The court also concluded that the alleged harassment was not severe or pervasive. In dismissing Count II, the retaliatory termination claim, the court stated that "because the complaint fail[ed] to establish that the matters alleged in Count [I] were discriminatory, [Parker] has failed to establish, therefore, that her belief was objectively reasonable and, therefore, she cannot establish a prima facie case of retaliation." Finally, in dismissing Count III, the discriminatory termination claim, the court gave as its reason that Parker had not exhausted the claim with the EEOC.

From the district court's order of dismissal, Parker filed this appeal.

II

The core reason given by the district court to dismiss Count I was that the harassment Parker suffered was "not . . . harassment based upon *gender*. It [was] based upon false allegations of *conduct* by her." (Emphasis added). In addition, the court concluded that the harassment was not sufficiently severe or pervasive to have altered the conditions of Parker's employment because "the temporal element here [was] very short in terms of how long this rumor was in circulation. Just a matter of a few weeks. And a few slights that she [has] referenced here do not rise up to the level that would suffice for

8

it being severe and pervasive." For these reasons, the court concluded that Count I failed to state a claim under Title VII for a hostile work environment based on sex.

Title VII provides that it is an unlawful employment practice "to discharge . . . or otherwise to discriminate" against an employee "with respect to . . . conditions . . . of employment, because of such individual's . . . sex . . .; or to limit, segregate, or classify [such] employee[] . . . in any way which would deprive or tend to deprive [the employee] of employment opportunities or otherwise adversely affect [the employee's] status as an employee, because of such [employee's] . . . sex." 42 U.S.C. § 2000e-2(a). An employee claiming a severe or pervasive hostile work environment because of her sex can obtain relief under Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a claim under Title VII for a hostile work environment because of sex, the plaintiff must allege workplace harassment that (1) was "unwelcome"; (2) was based on the employee's sex; (3) was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) was, on some basis, imputable to the employer. *Bass v. E.I. du Pont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313–14 (4th Cir. 2008).

In this appeal, only the requirements that the harassment be based on sex and that it be sufficiently severe or pervasive are at issue. We address each in order.

A

RCSI contends first, as the district court concluded, that its actions toward Parker were taken not because she was a female but rather because of her rumored conduct in

9

sleeping with her boss to obtain promotion. It argues that this rumor was not "gender specific" but rather was "solely about [Parker's] conduct and insufficient to support claims of an illegal hostile work environment for women." Because "[t]here is no dispute that Parker believes that the rumor was started 'by a co-worker who was jealous of her success at the company' and not because she was a woman," it thus contends that because "there is no doubt that his rumor was solely about her conduct" and could have been levelled against a man, it is insufficient to support a claim of discrimination based on sex.

We conclude, however, that RCSI's argument fails to take into account all of the allegations of the complaint, particularly those alleging the sex-based nature of the rumor and its effects, as well as the inferences reasonably taken from those allegations, which must be taken in Parker's favor, as required at this stage of the proceedings. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

As alleged, the rumor was that Parker, a female subordinate, had sex with her male superior to obtain promotion, implying that Parker used her womanhood, rather than her merit, to obtain from a man, so seduced, a promotion. She plausibly invokes a deeply rooted perception — one that unfortunately still persists — that generally women, not men, use sex to achieve success. And with this double standard, women, but not men, are susceptible to being labelled as "sluts" or worse, prostitutes selling their bodies for gain. *See McDonnell v. Cisneros*, 84 F.3d 256, 259–60 (7th Cir. 1996) (concluding that rumors of a woman's "sleeping her way to the top" "could constitute a form of sexual harassment"); *Spain v. Gallegos*, 26 F.3d 439, 448 (3d Cir. 1994) (concluding that a rumor that a woman gained influence over the head of the office because she was

10

engaged in a sexual relationship with him was sufficient to allow a reasonable jury to conclude the a woman suffered the harassment alleged because she was a woman); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51, 258, 272–73 (1989) (plurality and concurring opinions) (noting that gender stereotypes can give rise to sex discrimination in violation of Title VII).

The complaint not only invokes by inference this sex stereotype, it also explicitly alleges that males in the RCSI workplace started and circulated the false rumor about Parker; that, despite Parker and Pickett's shared tardiness, Parker as a female, not Pickett as a male, was excluded from the all-staff meeting discussing the rumor; that Parker was instructed to have no contact with Jennings, her male antagonist, while Jennings was not removed from Parker's workplace, allowing him to jeer and mock her; that only Parker, who complained about the rumor, but not Jennings, who also complained of harassment, was sanctioned; and that Parker as the female member of the rumored sexual relationship was sanctioned, but Pickett as the male member was not.

In short, because "traditional negative stereotypes regarding the relationship between the advancement of women in the workplace and their sexual behavior stubbornly persist in our society," and "these stereotypes may cause superiors and coworkers to treat women in the workplace differently from men," it is plausibly alleged that Parker suffered harassment because she was a woman. *Spain*, 26 F.3d at 448; *see also Price Waterhouse*, 490 U.S. at 250–51, 258, 272–73 (plurality and concurring opinions); *McDonnell*, 84 F.3d at 259–60; *cf. Passananti v. Cook Cty.*, 689 F.3d 655, 665–66 (7th Cir. 2012) (noting that use of the word "bitch" to demean a female can

support a sexual discrimination claim even though the word may sometimes be directed at men); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th Cir. 2010) (en banc) (same); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 47 (1st Cir. 2009) (finding actionable the denial of a promotion because the employee was a working *mother* with young children); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119–21 (2d Cir. 2004) (same).

Thus, the dichotomy that RCSI, as well as the district court, purports to create between harassment "based on gender" and harassment based on "conduct" is not meaningful in this case because the *conduct* is also alleged to be gender-based. We conclude that, in overlooking this, the district court erred.

B

RCSI also contends that the harassment Parker alleged in the complaint was not sufficiently severe or pervasive to create a hostile work environment. And the district court adopted this view, noting that the rumor circulated for only "a few weeks" and involved only "a few slights." Parker argues, on the other hand, that her complaint alleges harassment that was severe or pervasive, as it was "frequent," "maliciously designed," "humiliating," "permeated throughout her workplace," and caused "open resentment and disrespect" from her coworkers. Indeed, she maintains that her harassment even had a physical component.

In determining whether the harassment alleged was sufficiently severe or pervasive, we must "look[] at all the circumstances," including the "frequency of the

12

discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the] employee's work performance." *Harris*, 510 U.S. at 23.

We conclude that the complaint's allegations and the inferences that may reasonably be drawn from them support Parker's claim that the harassment she experienced was severe or pervasive such that it altered the conditions of her employment and created an abusive atmosphere.

The complaint alleges that, over the period from Parker's promotion to Assistant Operations Manager in March 2016 until she was fired on May 18, 2016, the rumor and its adverse effects harmed Parker. The frequency alleged in the complaint was greater than what the district court characterized as "a few slights." Indeed, the harassment was continuous, preoccupying not only Parker, but also management and the employees at the Sterling facility for the entire time of Parker's employment after her final promotion.

The harassment began with the fabrication of the rumor by a jealous male workplace competitor and was then circulated by male employees. Management too contributed to the continuing circulation of the rumor. The highest-ranking manager asked another manager, who was rumored to be having the relationship with Parker, whether his wife was divorcing him because he was "f--king" Parker. The same manager called an all-staff meeting, at which the rumor was discussed, and excluded Parker. In another meeting, the manager blamed Parker for bringing the rumor into the workplace. And in yet another meeting, the manager harangued Parker about the rumor, stating he should have fired her when she began "huffing and puffing" about it. During this period,

Parker was also told that because of the rumor, she could receive no further promotions in the company. She then faced a false harassment complaint launched by the male employee who started the rumor and was sanctioned based on that complaint — first, with the instruction to stay away from the rumormonger and second, with the termination of her employment. If we are to take the allegations from the complaint and the reasonable inferences therefrom as true, as we must, the harassment related to the rumor was all-consuming from the time the rumor was initiated until the time Parker was fired.

The harassment emanating from the rumor also had physically threatening aspects, even though harassment need not be physically threatening to be actionable. At an all-staff meeting at which the rumor was discussed, the warehouse manager slammed the door in Parker's face, and at another meeting, he screamed at Parker as he lost his temper while blaming Parker for the rumor. That this harassment came from Parker's supervisor made it all the more threatening. *See Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 763 (1998) ("[A] supervisor's power and authority invests his or her harassing conduct with a particularly threatening character").

In addition, the harassment related to the rumor was humiliating. As the district court rightly noted, it "goes right to the core of somebody's merit as a human being" to suggest they were promoted not on worth but for sexual favors. The rumor and its consequences thus entailed "open resentment and disrespect from her coworkers," including those she was responsible for supervising.

Finally, the harassment interfered with Parker's work. She was blamed for bringing the controversy to the workplace; she was excluded from an all-staff meeting;

14

she was humiliated in front of coworkers; she was adversely affected in her ability to carry out management responsibility over her subordinates; she was restrained in where she could work, being told to stay away from the rumormonger; and she was told she had no future at RCSI because of the rumor. In addition, she alleges that her employment was terminated because of the rumor and, as stated by management, because of the rumormonger's complaint. In short, RCSI's management's entire relationship with Parker, as well as Parker's employment status, was changed substantially for the worse.

Thus, based on the allegations of Parker's complaint and the reasonable inferences flowing therefrom, we conclude that Parker adequately alleges the severe or pervasive element of illegal harassment. *See Harris*, 510 U.S. at 22.

Accordingly, because Parker's complaint plausibly alleges a hostile work environment claim under Title VII for discrimination because of sex, we reverse the district court's ruling dismissing Count I.

### III

The district court also dismissed Parker's retaliatory termination claim alleged in Count II, holding that "because the complaint fails to establish that the matters alleged in [Count I] were discriminatory, [Parker] has failed to establish . . . that her belief [that she was subject to gender discrimination] was objectively reasonable and, therefore, she cannot establish a prima facie case of retaliation." Because we conclude that the complaint does indeed allege a plausible claim of a hostile work environment based on sex, in violation of Title VII, we reverse the dismissal of Count II alleging a retaliatory

15

termination claim. *See Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 285 (4th Cir. 2015) (en banc) (holding that because alleged harassment met elements of hostile work environment claim, complaining about such harassment was necessarily protected activity for purpose of retaliation claim).

IV

Finally, the district court dismissed the discriminatory termination claim alleged in Count III, concluding that Parker had not exhausted this claim with the EEOC. Specifically, the district court held that the allegations of RCSI's disparate enforcement of its three-strikes policy, as described in Parker's complaint, were absent in her EEOC charging document. We agree with the court.

Parker must exhaust her claims with the EEOC by including them in charges filed with the agency. In determining whether she exhausted her claims, we give her credit for charges stated in her administrative charging document, as well as "charges that would naturally have arisen from an investigation thereof." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). But when the claims in her court complaint are broader than "the allegation of a discrete act or acts in [the] administrative charge," they are procedurally barred. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508–10 (4th Cir. 2005).

In this case, Parker's EEOC charge made no reference to the need to receive warnings or a violation of RCSI's three-strikes policy. She did not refer to the policy or the allegation that RCSI treated men and women differently in applying the policy. She merely asserted sex-based termination based on the facts relating to the rumor and the

16

conduct that followed from it.  Accordingly, RCSI was not "afforded ample notice of the allegations against it" with respect to Count III.  *Sydnor v. Fairfax County*, 681 F.3d 591, 595 (4th Cir. 2012).  We thus affirm the dismissal of the discriminatory termination claim alleged in Count III, as it alleges a broader pattern of misconduct than is stated in the administrative charging document.

*    *    *

In sum, we reverse the district court's order dismissing Counts I and II and affirm its order dismissing Count III.

AFFIRMED IN PART, REVERSED IN PART

DIAZ, Circuit Judge, concurring in part and dissenting in part:

After Evangeline Parker gained six promotions in just over a year, reaching a post few women at her company had ever occupied, a false rumor started that she owed her rise not to hard work and skill, but to a sexual affair. Adding injury to this insult, Parker's supervisor then disciplined her more harshly than the male coworker who spread the rumor and treated her less respectfully than the male manager she supposedly slept with. These facts in combination—the spreading of a rumor rooted in base stereotypes about female professionals, plus Parker's disparate treatment compared with members of the opposite sex—fairly permit the inference that Parker was treated with less dignity because she is a woman. I am therefore pleased to join the portions of Judge Niemeyer's opinion holding that Parker has alleged harassment based on her sex and reversing the dismissal of Parker's hostile work environment and retaliation claims.

I write separately, however, because I would also reverse the district court's dismissal of Parker's wrongful termination claim. Respectfully, I cannot agree that Parker's failure to mention a "three-strikes" policy in her EEOC paperwork bars her from asserting this claim. The majority's approach to exhaustion, in my view, demands more specificity and foresight from an EEOC claimant than our precedents or good sense require.

In enforcing the requirement that a Title VII plaintiff first file charges with the EEOC, our cases strike a careful balance between Title VII's administrative framework and judicial remedies. *See Stewart v. Iancu*, 912 F.3d 693, 707 (4th Cir. 2019). On the one hand, we want employers and the EEOC to know about alleged discrimination so that

18

they may, if possible, resolve matters before a slow and expensive lawsuit becomes necessary. *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).[*] Allowing plaintiffs to conjure new claims and allegations in federal court would undermine this congressionally designed system.

Yet we've also been mindful that "laypersons, rather than lawyers," are expected to begin this remedial process. *Sydnor*, 681 F.3d at 594 (quoting *Fed. Express Corp. v. Holowecki*, 522 U.S. 389, 402–03 (2008)). Administrative charges typically aren't completed by lawyers. (Parker, for instance, filled hers out herself.) Courts thus "construe them liberally," *Chacko*, 429 F.3d at 509, lest exhaustion become a "tripwire for hapless plaintiffs" or erect "insurmountable barriers to litigation out of overly technical concerns." *Sydnor*, 681 F.3d at 594.

Accordingly, an EEOC charge outlines—but does not rigidly fix—the shape of litigation. As long as a plaintiff's claims in her judicial complaint "are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," she may advance them in court. *Id.* (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). This permissive approach reconciles competing concerns about employer notice, agency administration, and fairness to (often pro se) EEOC claimants. It also, not unimportantly, reflects the EEOC's considered

---

[*] *Sydnor* was an Americans with Disabilities Act case, but that statute incorporates Title VII's enforcement scheme. *See Sydnor*, 681 F.3d at 593.

19

policy that an adequate charge is one precise enough to "identify the parties" and "describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b).

Our cases thus tolerate some discrepancy between the EEOC charge and the formal lawsuit.  For instance, in *Smith*, we held that a Title VII complaint was reasonably related to the plaintiff's EEOC charge where the legal claim (retaliatory termination) didn't change though the form of alleged retaliation (threatened termination versus reassignment and withheld job opportunities) varied.  202 F.3d at 248; *accord Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) ("[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint." (quotation omitted)).  Likewise, in *Chisholm v. U.S. Postal Service*, we said that an EEOC charge generally alleging discrimination in promotions notified the employer that "the entire promotional system was being challenged," not just aspects specifically noted in the charge.  665 F.2d 482, 491 (4th Cir. 1981).  And in *Sydnor*, we again excused discrepancies between the EEOC document and lawsuit because both "involved the same place of work and the same actor" and "focused on the same type of discrimination."  681 F.3d at 594–96; *accord Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." (citation omitted)).

We should be similarly accommodating in this case.  Although Parker's lawsuit differs from her EEOC charge in mentioning the three-strikes policy, our precedents suggest the two are similar enough to be reasonably related.  As in *Sydnor*, Parker's charge and complaint involve the same place and actors (RCSI, Parker, Moppins, and the

20

rest) and the same type of discrimination (Moppins firing Parker allegedly because of her sex). And as in *Smith*, Parker's complaint alleges the same type of discrimination as her charge but adds greater detail: the charge alleges a firing based on the rumor and its aftermath, and the complaint says it also involved a disparately enforced three-strikes policy. Both involve the same parties, the same event, and the same type of discrimination.

In contrast, when we have previously dismissed Title VII claims, the plaintiff's EEOC papers "reference[d] different time frames, actors, and discriminatory conduct" than the judicial complaint. *Chacko*, 429 F.3d at 506. Parker, however, did not allege discrimination based on a different protected trait or assert a different category of unlawful conduct. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (no exhaustion where charge mentioned only race discrimination, but lawsuit also alleged discrimination based on sex and skin tone); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009) (same when complaint alleged unlawful discrimination, but charge mentioned only retaliation). She didn't recast a single gripe about uneven discipline into a full-scale assault on her professional history with her employer. *Dennis v. County of Fairfax*, 55 F.3d 151, 153, 156 (4th Cir. 1995). Nor did her lawsuit allege a decades-long saga of discriminatory harassment when her EEOC charge described only three specific incidents. *Chacko*, 429 F.3d at 511.

Instead, Parker's EEOC charge described her termination by RCSI based on sex, and her formal complaint just provides a fuller factual story of how and why it came about. In my view, the charge gave RCSI ample notice that the circumstances of Parker's

21

termination were under scrutiny. Reasonable investigation of that firing would have uncovered the facts alleged in her complaint—including the fact that her firing allegedly involved two written warnings instead of three.

I would therefore let Parker seek judicial relief for her allegedly discriminatory termination. Accordingly, I join all but Part IV of Judge Niemeyer's opinion.