

Fish & Richardson P.C.
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024

202 783 5070 main
202 783 2331 fax

June 23, 2020

The Honorable Gina L. Simms
United States District Court for
The District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

**Daniel A. Tishman**
Principal
tishman@fr.com
202 626 7725  direct

Re:    *Parker v. Reema Consulting Services, Inc.*, CA No. TDC-17-1648

Dear Judge Simms:

I write on behalf of Plaintiff Evangeline Parker in response to the June 15, 2020 letter of Defendant Reema Consulting Services, Inc. ("RCSI") and Olgoonik Development, LLC ("Olgoonik"), ECF No. 94, seeking leave to file a motion to quash Plaintiff's subpoena to Olgoonik seeking the employment records of Mr. Larry Moppins.  Mr. Moppins is one of the key individuals alleged to have been directly responsible for the hostile work environment that Ms. Parker suffered based on her gender (and for her termination).  The subpoena to Olgoonik seeks information that is nonprivileged, relevant to Plaintiff's claims, and proportional to the needs of the case.  RCSI's and Olgoonik's request to file a motion to quash should therefore be denied.

**The requested records are relevant.**  Ms. Parker seeks Mr. Moppins's employment records from Olgoonik because the U.S. State Department informed Plaintiff's counsel that Olgoonik terminated Mr. Moppins from his position as a project manager for harassment.  When RCSI informed Plaintiff's counsel that it had not preserved its IT infrastructure (including emails) after relinquishing it to the State Department months after this lawsuit was initiated (potentially in violation of its duty to preserve relevant documents), Plaintiff's counsel contacted the State Department to obtain the missing documents (at RCSI's suggestion).  A representative of the State Department informed counsel that Mr. Moppins was recently terminated by Olgoonik due to harassment.  Plaintiff's counsel explained this to RCSI and Olgoonik, contrary to their assertions that "no evidence has been provided to confirm or deny whether Mr. Moppins engaged in any improper conduct while at Olgoonik," ECF No. 94 at 1, and that "Plaintiff's counsel provided no explanation as to how these requests are relevant . . . ," *id.* at 2.

**Relevance is the touchstone for discoverability—not admissibility.**  Despite RCSI's invocation of F.R. EVID. 404, the requested records are relevant to demonstrate a pattern of harassing behavior by Mr. Moppins, his state of mind (and potential hostility) towards women, and his intent in terminating Ms. Parker from her position.  Mr. Moppins's intent and attitude toward women are particularly relevant given that he was a decision-maker regarding Ms. Parker's termination.  RCSI's 30(b)(6) witness testified that, after Ms. Parker filed a complaint of harassment against Mr. Moppins, HR prepared an investigative report and held a meeting on May 17, 2016, in which Mr. Moppins participated along with Mr. Vora, the owner of RCSI, and RCSI's in-house counsel.  The meeting is documented in the HR investigative report as the



Honorable Gina L. Simms
June 23, 2020
Page 2

concluding step in RCSI's investigation of Ms. Parker's complaint.  Ms. Parker was fired the following day, May 18, 2016.[1]

Further, evidence of Mr. Moppins's hostility toward women is not only relevant, but will be admissible at trial.  In *Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536 (S.D.N.Y. 2005), the court noted that, generally, evidence of a manager's discriminatory treatment of other employees is "*relevant and admissible* under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination."  *Id*. at 544 (quoting *Becker v. ARCO Chem. Co*., 207 F.3d 176 (3d Cir. 2000) (emphasis added)).  This is true because "it is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group."  *Id*. (quoting *Heyne*, 69 F.3d at 1479).  The *Zubulake* court explained that the "common thread" between sexual harassment experienced by another employee and the adverse employment action against plaintiff was based on "[manager's] non-performance based reaction to individuals based on their gender and they both degrade individuals because of their sex, albeit in different ways," and ruled the evidence of sexual harassment to be admissible.  *Id*. at 544.  The same logic applies here: Ms. Parker should be permitted to discover evidence of the discriminatory intent and state of mind of a manager involved in her harassment and termination.

**The requested documents do not seek to harass Mr. Moppins.**  Plaintiff strongly disputes the suggestion of any impropriety in the requested discovery, and the explicit accusation of bad faith.  *See* ECF No. 94 at 2.  The requested discovery is relevant and proportional to the needs of the case, in which Mr. Moppins is a central figure.  The September 3, 2019 order granting Plaintiff's motion to compel, ECF No. 80, did not rule that discovery into Mr. Moppins's employment records after May 18, 2016 are not relevant.  Instead, Plaintiff willingly narrowed the requests for production at issue by time and subject matter as a compromise to address RCSI's objections

---

[1] "The Supreme Court has held that wide evidentiary latitude must be granted to those attempting to prove discriminatory intent and that 'the trier of fact should consider all the evidence.'" *Demers v. Adams Homes of Nw Fla., Inc.*, 321 F. App'x 847, 853 (11th Cir. 2009) (citing *U.S. Postal Serv. v. Aikens*, 460 U.S. 711, 714 n.3 (1983) (testimony of former employees regarding discriminatory actions by same manager is admissible "in order to, among other things, demonstrate the racial intent of a common decisionmaker")).  "Because hostility against women underlies decisions to discharge or to refuse to hire women because of their gender, evidence of sexual harassment often will be relevant to claims of gender-based employment discrimination." *EEOC v. Farmer Brothers*, 31 F.3d 891, 898 (9th Cir. 1994); *see also Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995) (allowing introduction of evidence that defendant harassed other employees to prove motive / intent in firing plaintiff: "the sexual harassment of others . . . is relevant and probative of the [manager's] general attitude of disrespect toward his female employees.").



Honorable Gina L. Simms
June 23, 2020
Page 3

based on breadth and burden.  This willing narrowing was prior to depositions and further investigation that reveal an apparent pattern of harassing behavior by Mr. Moppins.[2]

**Plaintiff's counsel complied with its obligations to meet and confer.**  RCSI's assertion that Plaintiff "refused to discuss limiting the scope of discovery with counsel for RCSI" is incorrect. Plaintiff's counsel willingly discussed the subpoena with RCSI's counsel, but suggested that it would be more efficient to address scope with counsel for Olgoonik on the line, as RCSI's counsel do not represent either Olgoonik or Mr. Moppins, and are unaware of the manner in which the records at issue are stored.  However, Plaintiff's counsel explained the relevance of Mr. Moppins's employment records as demonstrating a pattern of harassing behavior to both RCSI and to Olgoonik, and offered RCSI's counsel an opportunity to further discuss the matter.

**The protective order can address Olgoonik's privacy concerns.**  Notably, Olgoonik does not complain of burden (and never met and conferred with Plaintiff about scope or relevance), but rather focuses on privacy.  Prior to Olgoonik's letter, Plaintiff's counsel conferred with Olgoonik's counsel and directed them to the protective order in this case.  Plaintiff's counsel further expressed a willingness to discuss any additional protections Olgoonik may request.  The protective order in this case should be more than sufficient to address Olgoonik's privacy concerns.  *See* ECF No. D86 ¶¶ 1(a) (defining "CONFIDENTIAL" information as including "sensitive personal information"), 1(c)-(f) (limiting disclosure).  Plaintiff would not oppose a reasonable motion for an additional protective order, should Olgoonik request one.  See *id.* ¶ 3 (allowing the parties to move for additional protection).  Given Plaintiff's cooperation with Olgoonik and willingness to address additional privacy measures, Olgoonik's letter comes as a surprise (particularly where Olgoonik never complained of relevance).

In sum, the requested discovery is relevant, tailored to the facts, and proportional to the needs of the case.  RCSI and Olgoonik's request for leave to file a motion to quash should be denied. Thank you for your attention to this matter.

Respectfully submitted,

Daniel A. Tishman

---

[2] RCSI's suggestion of bad faith in seeking such records is surprising in light of discovery it has sought (and that Plaintiff has not opposed), including subpoenas to Ms. Parker's former employers seeking, *inter alia*, the "entire employment or personnel file created, prepared, or maintained . . . for Evangeline Parker," and a subpoena to T-Mobile for all "documents and records, including but not limited to, all cell incoming and outgoing records, calling logs, text identifiers and text messages" for the male subject of the rumor at issue "for the time period of January 1, 2016 through and including the present date" (years after her termination).