UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EVANGELINE J. PARKER                     *

    Plaintiff                              *

v.                                       *      Case No. 8:17-CV-01648-TDC

REEMA CONSULTING SERVICES, INC.  *

    Defendant                             *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

REEMA CONSULTING SERVICES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE*
TO EXCLUDE CERTAIN EVIDENCE

Defendant, Reema Consulting Services, Inc., ("RCSI"), pursuant to this Court's Pretrial

Scheduling Order, respectfully submits this Memorandum of Points and Authorities

("Memorandum") in support of its Motion *In Limine* to Exclude Certain Evidence.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Plaintiff, Evangeline Parker, ("Parker") alleges that she was subjected to a hostile work

environment under Title VII and that Defendant, Reema Consulting Services, Inc. ("RCSI")

terminated her employment because of her sex.  Parker claims that the hostile work environment

was caused by the circulation of an  rumor which portrayed her as having a sexual relationship

with RCSI manager, Damarcus Pickett.  Parker attempts to point the finger at several RCSI

employees for spreading the rumor, including, among others, 'Parker's co-worker Donte

Jennings and Larry Moppins, the contract's subject matter expert, during the relevant time period

when Parker was employed at RCSI.

In her attempt to prove her claims, Parker intends to introduce evidence based on speculation, inadmissible hearsay, matters which are irrelevant, improper character evidence, and evidence which will unfairly prejudice RCSI well beyond any possible probative value, confuse the jury , as well as matters in which neither she nor the witness have personal knowledge.  As explained in more detail below, this Court must exclude from trial these facts and statements which are inadmissible.

### B.  Procedural Background

On August 24, 2016, Parker filed a formal Charge of Discrimination with the United States Equal Employment Opportunity Commission. On May 15, 2017, Parker filed the Complaint in this case, asserting claims of a hostile work environment based on sex, discriminatory termination, and retaliatory termination, in violation of Title VII [ECF No. 1].  On December 7, 2017, the United States District Court for the District of Maryland (Titus, J.) dismissed all of Parker's claims [ECF No. 39].

On February 8, 2019, the United States Court of Appeals for the Fourth Circuit affirmed in part and reversed in part the District Court's order granting dismissal of all claims [ECF No. 48-1].  The Fourth Circuit concluded where an employer is charged with participating in the circulation of a false rumor that a female employee slept with her male boss to obtain a promotion and the employer acts on it by sanctioning the employee, liability may be implicated to the employer under Title VII for discrimination "because of sex."

The Fourth Circuit reversed the order dismissing Count I and Count II of Parker's complaint and remanded back to this District Court.[1]  Count I alleges RCSI created a hostile work environment "based on sex" and Count II alleges RCSI retaliated against Parker for her

---

[1] On October 7, 2019, the United States Supreme Court denied RCSI's petition for a writ of certiorari [ECF No. 85].

opposition of what she reasonably believed to be a violation of Title VII's prohibition on sexual harassment.[2]

Upon remand and after the parties completed discovery, RCSI moved for summary judgment on both Counts I and II which was denied on May 17, 2021. [ECF No. 122].  RCSI and Parker are now in trial posture with a jury trial date set for December 6, 2021.

## II.  EVIDENCE TO EXCLUDE AT TRIAL

A pre-trial motion *in limine* "seeks 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'"  *Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce v. United States,* 469 U.S. 38, 40 n. 2 (1984). "Such motions are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'"  *Id.,* at 745 ((citing *Louzon v. Ford Motor Co.,* 718 F.3d 556, 561 (6th Cir.2013) (quoting *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1069 (3d Cir.1990)).

### A.  Statements made by others about the rumor to Parker must be excluded as inadmissible hearsay.

Parker will testify that RCSI's former employee, Romaine Thompson, told Parker that Donte Jennings, another RSCI employee, was spreading rumors about Parker.  In paragraph 13 of her complaint, Parker alleges, "The rumor originated with one RCSI employee, Mr. Donte Jennings . . . Ms. Parker was informed by Ms. Romain (sic) Thompson, a former employee of FCSI, that Mr. Jennings was the source of the rumors." [ECF No. 1].  In her deposition, Parker testified that Ms. Thompson told her this "at a kickball game."  [Parker Dep. 136:11–13].  Parker continues, "If Romaine is telling Pickett that Donte is saying this, Mr. Pickett can go back to the conversation with Donte of, well, what do I need to do to get

---

[2] The Fourth Circuit affirmed the District Court's dismissal of Count III (discriminatory termination).

promoted or whatever.  That was like, okay, so Donte is the one who said something to Romaine and now Larry – I mean, Larry is saying something to me." [Parker Dep. 137:11–17].  Parker further stated, "And she stated, you know, I didn't – I just – you weren't there.  After I talked to Donte – and you know she explained to me that Donte is, in fact the person who told her that I was pretty much advanced because I was sleeping with Pickett." [Parker Dep. 143:5–10].

In addition, in the all-hands meeting from which Parker claims she was excluded, she claims that she spoke with employees in the meeting after it was over and, according to Parker, they said she and the rumor were discussed.

It is anticipated that Parker might also seek to introduce as evidence information and statements she was told from others in support of her claims that rumors were being spread about her having an affair with Pickett.

### 1. The proffered testimony is inadmissible hearsay.

The proffered out of court statements are inadmissible hearsay.  *See* Fed. R. Evid. 802. Hearsay is any assertion which was not made while testifying at the current trial or hearing, that the party offers in evidence to prove the truth of the matter asserted therein. Fed. R. Evid. 801. Parker's statement that she was told by Ms. Thompson that Mr. Jennings relayed a rumor is rank hearsay.  Indeed, there is double hearsay, or hearsay within hearsay, within Parker's statement since she is relaying both Mr. Jennings purported statements to Ms. Thompson, and then Ms. Thompson's statement to Parker.   When there is hearsay within hearsay, it is "only admissible if 'each part of the combined statements conforms with an exception' to the rule against hearsay." *Doali-Miller v. SuperValu, Inc.*, 855 F. Supp. 2d 510, 513 (D. Md. 2012) (quoting *Jacobsen v. Towers Perrin Forster & Crosby, Inc.,* No. RDB–05–2983, 2008 WL 782477, at *7 (D.Md. Mar.

20, 2008) ("Hearsay within hearsay ... refers to a hearsay statement that includes within it a further hearsay statement. Such statements are subject to the same evidentiary rules as one-level hearsay statements.").  Neither Mr. Jennings' statement to Ms. Thompson, nor Ms. Thompson's statements to Parker fall within an exception to the hearsay rule and must be excluded.

Parker is offering the assertion from Ms. Thompson that Mr. Jennings is the source of the rumor to prove that Mr. Jennings, an RCSI employee, was, in fact, the source of the rumor.  Ms. Thompson was not an agent or employee of RCSI when she made these alleged statements and therefore her statements to Parker remain inadmissible.  *See* Fed. R. Evid. 801(2)(D).  Therefore, proffered testimony from Parker, that Ms. Thompson told her that Mr. Jennings was the source of the rumor is inadmissible hearsay and the Court must exclude it from evidence.

Similarly, any evidence from Parker of what she was told by others employees about what was discussed in a meeting where she was not present would also be inadmissible hearsay Parker has deposed several people present at the meeting and none of them has supported the notion that the rumor was the subject of the meeting or discussed at the meeting.  Both Messrs. Moppins and Pickett further explained that conversations with other employees about either of them having a relationship with Parker were discussed in private meetings involving those employees and Mr. Moppins and Mr. Pickett. .

Parker cannot be permitted to claim that the meeting involved her or the rumor which is solely reliant on hearsay testimony.  Even permitting her to claim that it is shown for the effect on the hearer is prejudicial because the trustworthiness of the comments is crucial to the issues involved in the case through which she seeks to hold RCSI liable.  Permitting her to testify about hearsay comments untethered to any witness at trial goes beyond the pale of reliable evidence.

**2.  The proffered testimony is more prejudicial than probative**.

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.  The probative value of the proffered testimony is substantially outweighed by the danger of unfair prejudice.  Rule 403 serves as a balancing test, to which the trial court is given broad discretion in application.  *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008); *United States v. Ramirez-Noyola*, 145 F. App'x 807, 808 (4th Cir. 2005). Furthermore, when applying the balancing test, the Court should consider the proffered evidence in a cumulative context. *Ramirez-Novaloa,* 145 F. App'x at 808 (citing *United States v. Burgos,* 94 F.3d 849, 863 (4th Cir.1996)).

Neither Romaine Thompson nor any of the employees which Ms. Parker claims provided her information about the all-hands meeting have not been identified by Parker as a trial witness. *See* Plaintiff's Witness List in the parties' Joint Pre-Trial Statement.  If the court allows Parker to testify or admit evidence that Romaine Thompson, a non-testifying witness, told her that Mr. Jennings, an RCSI employee, was the source of the rumors, it will unfairly prejudice RCSI. Among other things, the jury could improperly assume that Mr. Jennings made these statements or that he made these statements in his capacity as RCSI's agent. Parker testified that Mr. Jennings denied creating or discussing the rumor.  Parker's statement does not reveal or even suggest the circumstances surrounding how Ms. Thompson allegedly came to learn from Mr. Jennings of the rumor.  The jury should not be left to speculate and speculative evidence has no probative value and should be excluded.  *See Steves & Sons, Inc. v. JELD-WEN, Inc.,* No. 3:16CV545, 2018 WL 359479, at *4 (E.D. Va. Jan. 10, 2018) ("the probative value of speculative evidence is non-existent, or at best, minimal."); see *CSX Transp., Inc. v. Gilkison*,

No. 5:05CV202, 2013 WL 85253, at *12 (N.D.W. Va. Jan. 7, 2013) (granting a motion *in limine* to preclude admission of a memo into evidence where the meaning of a memo is speculative, stating the "evidence is barred by the Rule 403's balancing test.").

As an element of her claim, Parker must prove that the alleged hostile work environment "was, on some basis, imputable to the employer." *Parker,* 915 F.3d at 302. This standard for imputing liability depends on the status of the harasser, a co-worker or a supervisor. *Vance v. Ball State Univ.,* 570 U.S. 421, 424 (2013). If the harasser is the victim's supervisor, the employer may be vicariously liable to a victimized employee for a hostile work environment created by a supervisor. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). However, "[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance*, 133 S.Ct. at 2439. "[T]he employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003) (citing *Spicer v. Commonwealth of Va. Dep't of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995); *Ellerth*, 524 U.S. at 759).

Mr. Jennings is not a supervisor to Parker, and, in fact, he was inferior to her in the chain of command. Liability could only be imputed to RCSI if the rumor was communicated in controlling working conditions. *Vance*, 133 S.Ct. at 2439. But, per Parker's testimony the jury would be forced to speculate as to whether Mr. Jennings allegedly communicated the rumor in controlling working conditions since we don't have those details and Ms. Thompson is not being called to testify. Therefore, considering the cumulative effect of the proffered evidence the probative value is substantially outweighed by the dangers of unfair prejudice and the Court should exclude it.

**B.  All references to a "rumor" which do not specify the substance of the rumor or who communicated the rumor should be excluded from evidence.**

The Court must exclude any reference to a "rumor" without first establishing what the rumor was or identifying from whom he or she heard the rumor.  Absent these foundational details of what was heard and who was the source, the reference to a stand-alone "rumor" is misleading and not relevant since the "rumor" could be anything and not necessarily limited to the circumstances alleged in this case that there was a particular rumor that Parker was having an affair with Mr. Picket.  All such references to just a "rumor" should further be excluded as being irrelevant, because its probative value is substantially outweighed by the dangers of unfair prejudice, and because it confuses issues and misleads the jury.

**1.  A bare reference to a "rumor" is irrelevant and unfairly prejudicial**.

As noted above, where a proffered statement is speculative, it has little to no probative value, and should be excluded per FRE 403.  The issue in this case is quite specific.  Parker is alleging that RCSI, through the acts of its employees, participated in the circulation of a particular rumor which portrayed her as having a sexual relationship with Mr. Pickett to obtain a promotion.  Therefore, it is essential that Parker prove 1) the substance of the alleged rumor; and 2) who communicated the rumor.  If a witness testifies that he or she  "heard a rumor," the fact finder is forced to speculate as to the substance of the rumor as it is unknown to the jury what was the content.  If the witness testifies that he "heard a rumor" but cannot remember or does not know who communicated the rumor to the witness, then the fact finder must speculate as to who communicated the alleged rumor, leaving it open-ended as to whether it originated at RCSI or elsewhere.  Speculative evidence is not relevant or reliable, and should, therefore, be excluded.  Additionally, this forced speculation is highly prejudicial to RCSI as the fact finder is likely going to assume that the substance of the "rumor" was that Parker was having a sexual

relationship with Mr. Pickett in order to obtain promotion because that is what Parker will argue. Similarly, this forced speculation is highly prejudicial to RCSI as the fact finder is free to speculate that the origin of the rumor was a RCSI employee, which might not be the case and is Plaintiff's burden of proof.

Furthermore, RCSI will be unfairly prejudiced by generic statements about hearing a rumor as this evidence does not allow the RCSI the opportunity to confirm the substance of the rumor or the source of the rumor. In this way, RCSI is essentially chasing a ghost, and has no meaningful opportunity to rebut the speculation that will be introduced to the fact finder. Without the opportunity to confirm the substance of the alleged rumors or identify the source, RCSI is unfairly prejudiced.

Therefore, the probative value of admitting into evidence ambiguous testimony or evidence that a generic "rumor" was heard or communicated by an unknown source, is substantially outweighed by the dangers of unfair prejudice and the Court must exclude such evidence under FRE 403.

**2. The proffered evidence will confuse the issue and/or mislead the jury**.

In this case the central issue is whether a false rumor that a female employee slept with her male boss to obtain promotion has given rise to her employer's liability under Title VII for discrimination because of sex. The Fourth Circuit found "where the employer is charged with participating in the circulation of the rumor and acting on it by sanctioning the employee, liability would be implicated on the employer." *Parker*, 915 F.3d at 300. Therefore, the specifics of the rumor are important. Parker must prove not just that a rumor existed, but prove the contents of the alleged rumor, who allegedly spread it and that RCSI took action based on that rumor. If Parker does this, then RCSI has the opportunity to 1) examine the rumor's

veracity, and 2) identify the source of the rumor to who circulated it. The issue is not whether there was a rumor; rather, the issue is for the jury is whether the rumor that she was having an affair to obtain promotions created a hostile work environment for Parker. Thus, a bald reference to a "rumor" would confuse the jury and be misleading.

If a witness were able to testify that he "heard rumors about Parker and Pickett," the jury would be left to speculate as to what the alleged rumors were. The inference that "Parker was sleeping with Pickett," is quite different from "Parker was sleeping with Pickett and sleeping her way to the top." This distinction is significant to the matter as a rumor suggesting one employee slept with another is not discriminatory on its face. As the Fourth Circuit explained, for discrimination to have occurred there must be an element of the rumor that suggests the complainant is using the sex to further her career. Testimony that an employee or former employee "heard a rumor about Employee #1 and Employee #2," does not identify the rumor contents, origination, or circulation but may mislead the jury into thinking they do know the contents of the rumor. Even use of the term "rumor" in this context suggests to the jury that the rumor is sexually/romantically based and is false. However, the jury has no evidence which to base the contents of rumor or its veracity. Therefore, this extremely ambiguous testimony would mislead the jury.

### C. Evidence of Larry Moppins' employment post working with RCSI and any allegations of improper conduct should be excluded.

Parker intends to introduce evidence that Larry Moppins was terminated by contractor, Olgoonik Development, LLC for issues relating to improper conduct, specifically having to do with allegations of sexual harassment. This was a subsequent employer and his termination occurred after Mr. Moppins worked as a contractor for RCSI and after the Plaintiff was terminated by RCSI. As explained below, this evidence is improper character evidence offered

to prove conformity therewith, is irrelevant because there is no allegation that Mr. Moppins

sexually harassed Parker, and any probative value substantially outweighed by the dangers of

unfair prejudice and confusion of issues.

### 1.  The evidence is improper character/propensity evidence.

The Federal Rules against the admission of propensity evidence are well established.

Evidence of a person's character or character trait is not admissible to prove that on a particular

occasion the person acted in accordance with the character or trait.  Fed. R. Evid. 404(a)(1).

Evidence of any other wrong or act is not admissible to prove a person's character in order to

show on a particular occasion the person acted in accordance with the character.  Fed. R. Evid.

404(b)(1).  While there are exceptions for criminal cases, in 2006, the rule was "amended to

clarify that in a civil case, evidence of a person's character is never admissible to prove that the

person acted in conformity with the character trait.  The amendment resolves the dispute in the

case law over whether the exceptions in subdivisions (a)(1) and (2) permit the circumstantial use

of character evidence in civil cases." Fed. R. Evid. 404 advisory note.

Any evidence that Mr. Moppins was fired, disciplined, or engaged in improper conduct

while working for another employer, post his time with RCSI, must be excluded.  This evidence

would be offered to improperly suggest that because Mr. Moppins was accused of engaging in

some harassing conduct in the work place, then he acted in accordance with that same character

as proof that he improperly participated in the circulation of a rumor and/or retaliated against

Parker.  *See* FRE 401(a)(1).  It might also be offered by Parker to suggest that because there is

evidence Mr. Moppins was alleged to have been a harasser elsewhere, he must have harassed

Parker in his treatment of Parker. In either circumstance, this is exactly the type of character

evidence that Rule 404 does not allow.  *See Goff v. Baltimore Cty*., No. SKG-08-557, 2009 WL

10709529, at *2 (D. Md. Jan. 29, 2009) (Court granted motion to exclude evidence of witness' history of resisting arrest and assault to bolster the proposition that the witness was the first aggressor, based on the inadmissibility of character evidence under FRE 404).

### 2. The evidence will confuse the issue and cause undue delay.

Parker will contend that Moppins was her supervisor and was an agent of RCSI. In this case is where it is alleged that RCSI is liable under Title VII for discrimination "because of sex" if the Plaintiff introduces evidence that Mr. Moppins was engaged in improper conduct or was terminated by Olgoonik, this case would be consumed by a "mini-trial" as to whether Mr. Moppins did, in fact, commit sexual harassment, and/or was rightfully terminated by his subsequent employer. This case does not require the fact finder to make such a finding and allowing a mini-trial of events and people unrelated to this trial or RCSI and would serve only to confuse the issue, and therefore, the Court should exclude it from evidence under FRE 403. *See Cleary v. Fager's Island, Ltd.,* No. 17-CV-02252-JMC, 2020 WL 5500166, at *3 (D. Md. Sept. 10, 2020) (where plaintiff sought to admit evidence of a prior incident which was similar in facts to the plaintiff's instant case, the court held, "admitting this evidence will necessarily involve a "mini trial" of the details of the prior accident which, in the Court's view, will confuse the issues, mislead the jury and waste time."); *In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.,* 810 F.3d 913, 922 (4th Cir. 2016) ("In other words, having a 'mini-trial' could easily inflate the perceived importance of compliance and distract the jury from the central question before it.").

### 3. Evidence of Larry Moppins' employment history is not relevant.

Mr. Moppins' subsequent employment history, to include any disciplinary actions, are wholly irrelevant to the current action. Any suggestion that he was terminated by another

employer for having been accused of sexual harassment would not be relevant to this case alleging discrimination based on sex. *See* FRE 401. The allegations of Parker are that Mr. Moppins spread a rumor and took action based on a rumor about Parker. The notion that he may have had difficulties with other employees for a subsequent employer is irrelevant to the issues here. *See id*.

### D. Evidence pertaining to Larry Moppins' behavior or comments, to include but not limited to jokes with a perceived sexual connotation or related to his genitalia must be excluded.

The Court must exclude evidence of Mr. Moppins' comments to witnesses other than Parker which referenced through innuendo sexual acts or his genitals. In particular, the Court should exclude any evidence that Mr. Moppins' made any comments to other individuals would offer others to come meet his "lobster" after the close of business.

During DaMarcus Pickett's deposition, Mr. Pickett testified that Mr. Moppins made comments to some employees that contained sexual innuendo. At times, Mr. Moppins told others that they could come to the parking lot after 4:30 p.m. to meet his "lobster" which was allegedly a reference to Mr. Moppins' genitalia [Picket Dep. 221: 7–22]. Mr. Pickett specifically testified that he had no recollection that these comments were made or directed to women [Picket Dep. 222:1–6]. Kenton Birgans, another witness, testified at his deposition that Mr. Moppins made similar statements whereby he told others to meet his "lobster" at 4:31 pm [Birgans Dep. 32: 24–25, 33: 1–20]. As explained below, these statements must be excluded as they are irrelevant, are intended to incite the jury, cause confusion of the issues and would be misleading, and would constitute improper character evidence.

### 1. Improper Character/Propensity Evidence.

As noted above, the Federal rules against the admission of propensity evidence are well established and there are no exceptions in civil cases. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait. Fed. R. Evid. 404(a)(1). Evidence of any other wrong or act is not admissible to prove a person's character in order to show on a particular occasion the person acted in accordance with the character. Fed. R. Evid. 404(b)(1).

Parker contends that Mr. Moppins caused or created the hostile work environment by spreading a rumor about her and then taking action based on that rumor. It is not alleged that Mr. Moppins sexually harassed Parker in any other manner, nor is it alleged that he directed any comments to Parker about his genitals. If the Court were to permit the introduction of evidence of Mr. Moppins' alleged statements which were not directed at Parker, it would become improper character evidence offered to show conformity therewith, i.e., that Mr. Moppins says inappropriate things to RCSI employees, lacks proper judgment, is crass, etc., and therefore he must have acted inappropriately in his interactions with Parker, and/or that because Mr. Moppins made comments to RCSI employees that purportedly referenced his genitals or a sexual act, he must have been in involved in the spread of rumors involving Parker and Mr. Pickett engaging in sexual activity. In either circumstance, this is exactly the type of improper character evidence that Rule 404 is designed to exclude. *See Goff v. Baltimore Cty.*, No. SKG-08-557, 2009 WL 10709529, at *2 (D. Md. Jan. 29, 2009) (Court granted motion to exclude evidence of witness' history of resisting arrest and assault to bolster the proposition that the witness was the first aggressor, based on the inadmissibility of character evidence under FRE 404).

### 2. The evidence is not relevant.

Mr. Moppins' statements, even if true, were not directed at Parker. There is no evidence in the record she was aware of these comments before this lawsuit and Parker did not identify them as having been said to her in her deposition. Whether Mr. Moppins told other employees to come meet his "lobster" has no tendency to make any fact of consequence to this action, i.e., whether there was a rumor circulating that Parker had an affair with Pickett to gain a promotion, more or less probable. Mr. Moppins' alleged comments, which witnesses purport to be about his genitalia, similarly do not make it more likely that he was involved in circulating a rumor about Parker and Pickett's alleged affair, nor that he acted on that rumor by retaliating against Parker. Therefore, these statements by Moppins are irrelevant and inadmissible. Fed. R. Evid. 402.

### 3. The evidence is more prejudicial than probative.

RCSI would be unfairly prejudiced if the above evidence was admitted, as its purpose would be solely to inflame the jury against Mr. Moppins and RCSI. The purpose of relying on any of Mr. Moppins' comments would be to solely to establish that they were offensive, immature, or inappropriate when not otherwise related to any of Parker's claims since there is no allegation here that the hostile work environment arose based off inappropriate jokes or sexually explicit conduct. Thus, these comments would, in turn, result in unfair prejudice of RCSI.

### E. Any evidence that suggests Romaine Thompson or any other employees were harassed while working at RCSI is inadmissible and must be excluded.

In her deposition, Parker testified that, supposedly, Romaine Thompson had her own harassment issue while she had been employed at RCSI [Parker Dep. 177: 21–22, 178:1–2]. According to Parker, Ms. Thompson claimed there were some comments made by an employee for the State that were of a sexual nature and she felt uncomfortable [Parker Dep. 178: 4–10]. Parker further testified that, thereafter, Ms. Thompson reported this incident to RCSI's HR department, but later retracted her statement and ended up resigning from her employment

[Parker Dep. 178: 13–14].  This Court must exclude from trial any reference to this alleged report from Romaine Thompson for the reasons outlined below.

### 1.  The evidence is not relevant.

Any evidence which suggests Mr. Thompson, or any other employee, endured harassment or a hostile work environment at RCSI is irrelevant. This case is about the Plaintiff's experience at RCSI, not any other employee's experience.  The actions of an unidentified federal customer employee who was not an RCSI employee are not relevant to this case and must be excluded.  The fact that another employee might have claimed or reported a situation of feeling uncomfortable that was later retracted is not relevant to whether RCSI participated in spreading rumors that Parker was sleeping with Mr. Pickett to advance her career and/or retaliated against her.

### 2.  A witnesses' testimony that another employee was "harassed" is hearsay.

This evidence is inadmissible hearsay.  Parker is seeking to introduce statements from Ms. Thompson made to Parker about this purported harassing conduct of which Parker lacks any personal knowledge.  Evidence that others reported an incident of alleged harassment would be offered to prove the truth of the matter asserted, i.e., that the harassment indeed occurred, and, therefore, must be excluded as hearsay.  *See* Fed. R. Evid. 803.

### 3.  Parker does not have personal knowledge that Ms. Thompson was harassed.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  RCSI objects to the introduction of evidence relating to another employees' personal experiences at RCSI where the witness has failed to prove personal knowledge of the alleged treatment. Specific to

the above proffered testimony, Parker states her knowledge of Ms. Thompson's alleged "harassment" is "based off of what she told me," not based on her personal knowledge [Parker Depo. 178:7–8]. Therefore, the Court must exclude such evidence.

**4. Such testimony is an improper lay witness opinion.**

Where a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: 1) rationally based on the witness's perception; 2) helpful to clearly understanding the witness's testimony or determining a fact at issue; and 3) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. In the above testimony, Parker's opinion that Ms. Thompson was "harassed" is based on hearsay that: 1) some comments were made by one of the government's employees that were of a "sexual nature"; 2) "a whole bunch of laughter and things"; 3) that Ms. Thompson allegedly felt uncomfortable, all three of which Parker states Ms. Thompson retracted [Parker Depo. 178:7–14]. It is not rational for Parker to conclude that based on the above retracted comments that Ms. Thompson was harassed. Additionally, this testimony will not help the jury understand a fact at issue. Finally, the opinion that Ms. Thompson was harassed, calls for specialized knowledge and/or a legal conclusion as to what constitutes "harassment." It is the jury's roll, not the witness' role to reach legal conclusions. Therefore, the proffered testimony is an improper opinion and must be excluded.

**5. The probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issue**.

There is very little probative value to evidence that other employees were harassed at RCSI except to show that because others were harassed, that Parker, too, was harassed and/or was valid in her belief that she had been. Such evidence would only serve to inflame the jury

and consequently cause the jury to be prejudiced against RCSI.  As stated, the issue in the instant case involves RCSI alleged participation in the circulation of rumors involving Parker and its alleged actions relating to those rumors.  The issue is not whether other employees experienced harassment at RCSI. The probative value of this evidence is substantially outweighed by the issue of confusing the issue.

**F.  All reference to the procedural history of the case, to include the Fourth Circuit's decision, the Supreme Court's denial of petition for a writ of certiorari, the U.S. District Court's Motion for Summary Judgment Opinion, or the U.S. District Court's rulings on Discovery Disputes must be excluded**.

**1.  The probative value is substantially outweighed by the danger of unfair prejudice and confusing the issue**.

It would be unfairly prejudicial for Parker to introduce to the existence of the Fourth Circuit's ruling and opinion issued in *Parker v. Reema Consulting Services, Inc*, 915 F.3d 297 (4th. Cir. 2019).  While a reported opinion, that was a decision in response to the granting of the Motion to Dismiss and was limited to only the allegations set forth in the pleading.  The Fourth Circuit did not have the benefit of reviewing the evidence in the record following discovery.  The jury must not be misled in that regard, and, moreover, any reference to the Fourth Circuit or its opinion would, likewise, be misleading as it would imply this case had already been decided.

Likewise, it would be unfairly prejudicial for RCSI to introduce evidence or argument that the Fourth Circuit affirmed the dismissal of Count III of Parker's Complaint or reversed any part of the trial court's decision in the instant case, or that RCSI's petition for writ of certiorari was denied [EFC No.55].  Similarly, it would be unfairly prejudicial for Parker to introduce evidence or argument pertaining to this Court's decisions regarding discovery disputes and motion for summary judgement opinion [EFC No. 122].  If such evidence is permitted, the jury may interpret the Fourth Circuit, the Supreme Court, or this Court's prior rulings to mean that the

Plaintiff has a strong case or has already proven her case, that the appellate or trial court has "sided" or agrees with Parker, or that Parker's allegations are credible and the jury should consider her allegations as facts. Any of these inferences or assumptions from the jury would result in unfair prejudice to RCSI. Furthermore, the noted specific references to prior court decisions are not probative to the instant case; therefore, the Court should exclude any such evidence.

If any of the above evidence or argument is permitted, there is also substantial danger that the jury may confuse the issue. If the jury is informed that the Fourth Circuit specifically reversed the trial court's decision in this case, the jury may interpret that to mean the appellate court has already found that discrimination or retaliation occurred in the instant case, or that the jury should automatically assign credibility to Parker's allegations and consider her allegations as facts. However, as explained above, the Fourth Circuit's decision has not found that discrimination occurred in this instant case or that Parker's allegations are true. This distinction may be muddled to the jury, causing confusion as to what the issue is or the jury's role in deciding the issue. The same argument holds for the introduction of evidence or argument pertaining to this Court's decisions regarding discovery disputes and motions for summary judgement and the Supreme Court's petition for a writ of certiorari denial. Therefore, such evidence should be excluded.

### G. Testimony from Demarcus Pickett that Cathy Price spread unrelated rumors or was part of any rumor involving others who are not Parker must be excluded.

Mr. Pickett testified that Cathy Price was "part of a rumor about two other employees that wasn't true." [Picket Depo. 104:19—21].  Mr. Pickett elaborated stating:

A: Again, Ms. Price said that Kenton's Birgans and Brandy Winston were having a sexual relationship, and that Kenton's wife found out about it, and now Kenton, his wife was

bringing him to work. She actually worked at a hospital not too far from us. So she made that –

she made that rumor, and she made it to her HR clerk, who happens to be best friends with

Brandy. So she was like "Oh, Yo, Ms. Price just said this about you" . . . . You know, I wasn't

there during the confrontation, but Brandy was pretty pissed off that Ms. Price, the HR lady, is

gossiping and starting rumors at the warehouse."

[Picket, Depo. 202:7—22, 203:1].

### 1. The testimony is improper character evidence.

As noted above, character evidence is not permitted in civil matters. *See* Fed. R. Evid.

404; Fed. R. Evid. 404 advisory note. Evidence that Ms. Price allegedly spread a rumor in one

instance would only be relevant to prove that because Ms. Price has spread one rumor, she must

have spread a rumor that Plaintiff was sleeping with her boss in this instance. This is a clear

violation of FRE 404(b)(1) as evidence of an act is not admissible to prove a person's character

in order to show that on a particular occasion the person acted in accordance with the character.

Therefore, the Court must exclude this evidence.

### 2. The testimony is irrelevant.

Outside of its use as character evidence, which is not permitted, evidence that Ms. Price

has spread another rumor or generally "spreads rumors," does not make it more likely than not

that RCSI was involved in the circulation of any alleged rumor or acted on that rumor by

sanctioning Parker. Therefore, the evidence is inadmissible.

### 3. The probative value is outweighed by the dangers of unfair prejudice.

RSCI will be unfairly prejudiced if the above testimony is admitted. Such evidence

invites the jury to make assumptions that Ms. Price regularly spreads rumors and is a poor

human resources employee. Therefore, such testimony should be excluded, this point is

particularly highlighted given that Mr. Pickett alleges Ms. Price "spreads rumors at the warehouse," yet his testimony is limited to one example.

### 4. Mr. Pickett lacks personal knowledge.

No foundation has been created that Mr. Picket has personal knowledge that Ms. Price spreads rumors. Mr. Pickett admits that he did not personally witness or hear Ms. Price spread rumors.  Instead, Mr. Pickett obtained his information from an unidentified nontestifying source. Therefore, his testimony should be excluded.

### 5. Mr. Pickett's testimony is based on hearsay.

Since Mr. Pickett lacks personal knowledge of the alleged rumors, he is relaying information he heard from another declarant.  The assertion that Ms. Price said something about Brandy is being offered to prove that in fact, Ms. Price "said something" about Brandy. Therefore, the assertion must be excluded from evidence.

## III. CONCLUSION

For the reasons stated above, RCSI respectfully asks this Court to grant the corresponding Motion *in Limine* and exclude all evidence identified in this memorandum.

*/s/ Donald J. Walsh*_____
Donald J. Walsh (Bar #09384)
dwalsh@wcslaw.com
Marie J. Ignozzi (Bar #29762)
mignozzi@wcslaw.com
Alanna Casey (Bar #21818)
acasey@wcslaw.com
Wright, Constable & Skeen, L.L.P.
7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Telephone: (410) 659-1300
Facsimile: (410) 659-1350

*Attorneys for Reema Consulting Services, Inc.*
