UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

EVANGELINE J. PARKER,

  Plaintiff,

  v.

REEMA CONSULTING SERVICES, INC.,

  Defendant.

Civil Action No. TDC-17-1648

**REEMA CONSULTING SERVICES, INC.'S**
**RESPONSE TO MOTION IN LIMINE OF PLAINTIFF**

Defendant Reema Consulting Services, Inc. ("RCSI") respectfully submits this Memorandum in response to Plaintiff's Motion *In Limine* to Exclude Certain Evidence.

**I. Presentation of the *Faragher/Ellerth* Defense**

Although Reema understands the Court's ruling on the inapplicability of the *Faragher/Ellerth* defense because the Court has found that Reema took tangible employment action, Parker's request to this Court goes well beyond that ruling seeking to exclude evidence presented for other purposes. Parker seeks from this Court the preclusion of "offering the *Faragher/Ellerth* defense at trial, either explicitly or implicitly."

Parker agrees in her motion that the defense includes two components, the employer "(a) exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." By suggesting that Reema should be precluded from arguing the *Faragher/Ellerth* defense "implicitly", it is obvious that Parker seeks to limit the presentation of any evidence suggesting that Reema had

1

methods in place to prevent and correct any sexually harassing behavior or that Parker was dilatory in acting to take action to prevent or seek the assistance of Reema in taking corrective action. Although Reema may be precluded from using the defense as an absolute bar to Parker's claim, it is not precluded from introducing evidence falling within each of these elements which may ultimately lead a jury to challenge the veracity of Parker's complaint, whether there was a hostile work environment and in assessing any damages.

To be actionable, "the conduct in question must be judged by both an objective and a subjective standard: [t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993). In determining the existence of a hostile work environment, the court must examine the totality of the circumstances, which may include (1) the frequency of the alleged discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Harris*, 510 U.S. at 17. No single factor is dispositive.

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted).

As will be shown at trial, evidence will be presented that all employees have gone through sexual harassment training, that all were provided with copies of Reema's sexual harassment policies as well as the availability and accessibility of HR, in-house counsel and the

president of the company at Reema.  In addition, Parker was well aware of RCSI's policies and of how to file a discrimination claim identifying what she perceived as inappropriate conduct and had filed one at her previous employer.  This evidence is undeniably relevant to the issue of whether a severe and hostile work environment existed.  Given Parker's understanding of how to file a complaint and knowing that such an avenue was available to her goes to the heart of whether this was a hostile work environment and what damages should be assessed.

In addition, there exists significant question of the origin of this rumor and whether the hostility in the workplace was genuine and not caused by Parker who took it upon herself to challenge her coworkers.  As the Court will recall and as was argued in the Summary Judgment Motion, before Parker elected to go to HR or management about the presence of a rumor interfering with her job, the employees were complaining about Parker's behavior.  Parker only went to HR after she was in two meetings with Larry Moppins where she screamed at him and lost control such that another employee had to escort her out of each meeting.  Even Parker agreed that she was insubordinate.

As Parker conceded in her deposition, between the time that she learned of the rumor until late April 2016, she heard nothing about the rumor from any colleagues and she only suspected that it was being discussed.  The timing of Parker's complaint on the heels of engaging in insubordinate conduct questions the genuiness and veracity of her complaints about the rumor especially given that she was informed in February that a question was raised involving her and Mr. Pickett (as opposed to a rumor) and, beyond attacking her coworkers demanding that "if they wanted to know who she was fucking, to just ask her", she took no action in February or March and only went to HR to complain after she screamed at Mr. Moppins in late April.

The infrequency of the alleged conduct prevents Parker from using it to establish a hostile work environment claim.  The Fourth Circuit has routinely held that isolated comments, no matter how odious, are not severe or pervasive enough to be actionable.  *See, e.g., Irani v. Palmetto Health,* 767 Fed. Appx. 399, 417 (4th Cir. 2019) (holding that two isolated comments, including referring to plaintiff as "Achmed the terrorist," were insufficient to establish a hostile work environment).  Only after Parker learned that her subordinates had complained about her management style and she erupted in insubordinate conduct at Mr. Moppins, did Parker complain about the alleged rumor to Cathy Price, RCSI's Human Resources Director on April 25, 2016.

When Ms. Price received Parker's complaint, she immediately initiated an investigation and directed employees not to discuss the alleged rumors or her investigation. Ms. Price also conducted a meeting with Parker and the managers in which they exchanged apologies and accelerated annual sexual harassment retraining for the entire staff. RCSI's prompt action through Ms. Price was sufficient to suggest this alleged rumor was of the legal magnitude necessary to pursue relief under Title VII.  "An employer is only liable for sexual harassment committed by its employees if no adequate remedial action is taken ... [and employers] cannot be held to a standard under which they are liable for any and all inappropriate conduct of their employees." *Spicer v. Com. of Va., Dep't of Corr.,* 66 F.3d 705, 710-11 (4th Cir. 1995).

> There is no "exhaustive list" or "particular combination" of remedial measures or steps that an employer need employ to insulate itself from liability.  Among other things, we have considered the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective.

*E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011) (internal citations omitted.). Given this brief, two-month period and the actions undertaken by RCSI, there is no genuine dispute of

material fact that the situation was never severe and pervasive enough to confer liability. This is insufficient to support a finding of the kind of gender-biased, offensive environment which courts have previously found actionable. The Fourth Circuit has routinely held that isolated comments, no matter how odious, are not severe or pervasive enough to be actionable. *See, e.g., Irani v. Palmetto Health,* 767 Fed. Appx. 399, 417 (4th Cir. 2019)(holding that two isolated comments, including referring to plaintiff as "Achmed the terrorist" were insufficient to establish a hostile work environment).

Although Reema cannot escape liability through the use of the *Faragher/Ellerth* affirmative defense, there is no basis for precluding evidence challenging the claims of Parker that this was a hostile work environment which was severe and pervasive. Parker's motion to preclude evidence "implicitly" within the scope of the *Faragher/Ellerth* defense should be denied.

## II.   Preclusion of any Argument or Evidence that Defendant Is Not Liable Because any Unwelcome Conduct Was Based on Conduct Rather than Sex

Parker seeks to preclude Reema from making the argument which the district Court initially accepted and which was reversed by the Fourth Circuit Court of Appeals. Parker has requested to preclude Reema from "introducing any argument or evidence suggesting that such a rumor is not 'based on sex' at trial." Reema has not made such an argument since the Fourth Circuit Court's decision. Parker, however, has yet to recognize that she must still demonstrate that the hostility in the workplace she claims existed as well as her termination were gender based and "because of" sex. This is an essential element of her burden of proof in establishing her Title VII claim. Since the Fourth Circuit's remand, Reema has not argued that the rumor is harmless or could not form the basis for a hostile work claim. Reema has, however, insisted that the rumor, regardless of how offensive Parker may now insist it was, was not caused or perpetuated by Reema but was spread

5

by Parker, was not offensive to her while employed, was not severe and pervasive, and was certainly not the basis for her termination. These are defenses to the underlying claim of Parker.

In addition, the entire basis of Parker's claim in this case is that a rumor existed. A rumor by definition is the spreading of false information. If the jury disbelieves Parker's contention that the rumor was false and that she and Mr. Pickett were engaged in a relationship, the entire premise for this suit and Parker's claims are eliminated. Just as Parker is permitted to state at trial that she was not sleeping with Mr. Pickett, evidence calling that premise into question is fair game and the jury is entitled to question the veracity of this statement. Parker cannot simply take a position at trial and then insist that it cannot be challenged in any fashion.

Reema has accepted the ruling that the rumor is evidence of a gender-based bias and is not solely a rumor of conduct. Beyond that acceptance, it is free to attack the veracity of the rumor and force Parker to demonstrate her termination was based on this rumor and her gender.

### III.    Preclusion of Plaintiff's Sexual History

Again, seeking to avoid any true test of her allegations, Parker requests this Court preclude "any argument or evidence regarding Ms. Parker's sexual history that is unrelated to the false rumor of an affair with Mr. Pickett." Reema indicated that it had no intention of getting into Parker's sexual history, however, extremely relevant and appropriate to this case is for the jury to assess whether, in fact, there is a "false rumor". As noted above, if there is evidence which questions Parker's veracity in claiming this was a "false rumor" including the observations of coworkers, the investigation's conclusion that Parker had confessed to employees that she had feelings for Mr. Pickett, and the countless phone conversations between Parker and Mr. Pickett during and after her employment, the jury is entitled to consider the evidence.

6

In addition, as several witnesses testified, there were numerous rumors swirling around the warehouse about all manner of things and described the warehouse environment as being similar to a schoolhouse.  Assuming the Court permits testimony of nonspecific hearsay rumors into the trial, the presence of such rumors and those specifically about Parker are undeniably relevant to her claims.  Parker insists that other rumors have "no fact of consequence in this litigation," however, their presence goes to the issue of whether in fact the rumor argued by Parker actually led to a hostile work environment as Parker has claimed.  If there are numerous rumors to which Parker took no offense or objection when she angrily confronted coworkers, the jury is entitled to measure her reactions in response to the claimed rumor here.  The presence of these other rumors is relevant and is appropriately considered and weighed in assessing the severity and pervasiveness of this particular rumor and Parker's conduct.

There is nothing irrational about the jury concluding that the rumor was not in fact a rumor or concluding that this rumor did not lead to a hostile work environment.

**IV.    Preclusion of Plaintiff's Prior Criminal History and/or Arrest(s)**

Reema agreed that Plaintiff's prior criminal history and conviction for disorderly conduct in Maryland in 2005 is irrelevant to any issue in this case and inadmissible under the Federal Rules of Evidence.

**V.    Preclusion of any Argument or Evidence Regarding Alleged Deletion of Data from Company-Provided Cell Phone**

Plaintiff seeks to exclude from evidence at trial the fact that she intentionally removed all data from RCIS's company cell phone that had been issued to her during her employment. Plaintiff takes the position that because she reset the phone after she had been fired, this could not have been the basis for her termination, and she, improperly, believes this to be an attempt by

RCSI at obtaining a discovery sanction. Plaintiff relies on FRE 401, 402, and 403 that this evidence is not relevant and lacks probative value. (Memo, at 11).

It is undisputed that Parker performed a factory reset on the company-issued cell phone after she had been instructed to return the phone that RCSI provided to her while she had been employed. When she returned the phone, she had removed and deleted all data on that phone, notwithstanding that the data was rightfully RCSI's property, and not Parker's. Among other things, the phone was to be used to take photographs of warehouse property and shipments essential to Reema's contract. As a manager, Parker knew why she was issued the phone and that deleting this information was in violation of RCSI's company policy that prohibits destruction of RCSI's property.

Parker contends she was wrongfully terminated due to circulating rumors that she had been having an office affair with Mr. Pickett and did so to earn promotions. RCSI is permitted to introduce evidence to defend against Parker's claims of discrimination and hostile work environment based on sex. Although the timing of the knowledge of the reset is not clear, RCSI is not offering the phone reset as the sole basis for Parker's termination. Rather, it is further evidence that Parker did not adhere to company policy and was insubordinate, which was the basis for her termination. Evidence that Parker knowingly violated a company policy when she deleted the cell phone data is relevant to RCSI's defense that it did not discriminate against her. Evidence that Parker, a manager, knowingly destroyed company-owned property is also directly relevant to RCSI's defense that Parker was insubordinate and ignored company policies and procedures.

Parker also claims that this evidence is unfairly prejudicial. However, Parker will testify at trial and is able to offer any explanation as to her reasoning for resetting the phone before

returning it a week after she was fired.  By the time she had been terminated, Parker had already learned of the rumors circulating that she had been having an affair with Pickett and had already reported what she claimed to be a hostile work environment.  During her deposition, Parker testified that all of her communications with Pickett, whether verbal or in text message, were exchanged via the company phone RCSI gave to her.  She knew, at the time that she returned the phone, that the data on that phone could be used to identify the volume of her communications with Pickett, and the date, time, and substance thereof.  The fact that she purposefully deleted that data gives rise to a basis for RCSI to claim destruction of evidence, and for RCSI to request a spoliation instruction that because Parker did so, the jury can infer that information would have been detrimental to her claims of discrimination based on sex raised in this case.  *See Ziemkiewicz v. R+L Carriers, Inc.*, 996 F.Supp.2d 378, 391-92 (D. Md. 2014) (elements of spoliation); *Charter Oak Fire Ins. Co. v. Marlow Liquors, LLC*, 908 F.Supp.2d 673, 683 (D. Md. 2012) ("lost or destroyed evidence is relevant if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.") (internal citations omitted).

Ostensibly, those communications between Parker and Picket would have shed some light on the veracity as to whether there had been an affair or other inappropriate communications which would have undermined Parker's claims.  Spoliation is not limited to a discovery sanction, but, rather, occurs when a person knowingly destroys information once it has notice of a claim.  Indeed, it leads to the natural inference that Parker knew there was something contained in those text messages and/or data surrounding her phone calls with Pickett that was unfavorable to Parker and deleted it so that those communications would never be unearthed as she already planned to assert a claim for wrongful termination.  However, RCSI is not limited in

its use of this information solely to seek spoliation since it will rely on this evidence as its substantive defense to the claims of discrimination based on sex.  *See Marlow Liquors,* 908 F.Supp.2d at 683.

Parker's request must be denied.

### VI.    Preclusion of Argument or Evidence Regarding Statements from Carlos Carter Provided by Kenton Birgans

Plaintiff seeks to exclude from trial statements made by Mr. Carlos Carter which include his observations and declarations made by Mr. Kenton Birgans.  Specifically, Plaintiff identified a written statement by Mr. Carter which Plaintiff seeks to exclude, which had been marked for identification purposes only as Exhibit 19 ("Exhibit 19"), as reproduced below. Dkt. 120-1 at 583 (JR581).  Plaintiff relies on FRE 802 (The Rule Against Hearsay), FRE 805 (Hearsay Within Hearsay), and FRE 602 (Need for Personal Knowledge).  (Memo, at 14).

16-May-2016

On 13-May-16, I Carlos Carter was witness to a statement given by Mr. Kenton Birgans.

Mr. Moppins asked Mr. Birgans, had he witness an incident between Donte Jennings and Evangeline Parker.

Mr. Birgans did not want say anything about the situation. He wanted to stay out of the situation. Mr. Birgans said that he and Van were standing in the receiving area when Donte came up to thank Mr. Birgans for finishing a task that he asked him (Kenton) to assist him with. Kenton said that as Donte was walking away when Van made negative facial expressions and body movements towards Donte.

Kenton could not understand why she would make these body movement like that. He said that it was like she trying to chastise him, or belittle him.

To me, it sounded like Van had issues with Donte and this was her way to show it without saying what the real problem actually was.

Carlos Carter Sr.
Sr, Operations Manager

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Planmatics, Inc. v. Showers,* 137 F.Supp.2d 616, 620 (D.Md.2001) (quoting *United States v. Lis,* 120 F.3d 28, 30 (4th

Cir. 1997) (emphasis omitted) (internal quotation marks omitted), *aff'd,* 30 F.App'x 117 (4th Cir. 2002).   A statement is not hearsay if it is offered to prove knowledge or show the effect on the listener or listeners' state of mind. *United States v. Safari,* 849 F.2d 891, 894 (4th Cir.1988).

> Statements offered to show the effect on the listener of the statement, statements that have independent legal significance simply because they were made, regardless of their literal truth or falsity ('legally operative facts'), and statements offered as circumstantial evidence of the declarant's state of mind, or motive, are some instances in which out-of-court declarations are not hearsay.

*Moore v. Loney*, No. CIV.A. GLR-11-2638, 2014 WL 671446, at *3 (D. Md. Feb. 19, 2014) (citing *Lorraine v. Markel Am. Ins. Co.,* 241 F.R.D. 534, 565–66 (D.Md.2007)). "[W]hen a statement is used to show notice, knowledge, or effect on the listener," the statement is not hearsay. *City of Huntington v. AmerisourceBergen Drug Corp.,* No. CV 3:17-01362, 2021 WL 1382379, at *2 (S.D.W. Va. Apr. 12, 2021); *Bland v. Fairfax Cty., Va.*, No. 1:10CV1030 JCC/JFA, 2011 WL 2490995, at *4 (E.D. Va. June 20, 2011).

Where evidence of complaints by another employee against a plaintiff are offered not for the truth of the matter asserted—that the plaintiff actually did the things complained of—but offered to show that plaintiff's employer was on notice of the complaints, the statements are not hearsay. *Dixon v. Int'l Fed'n of Accountants*, No. 09cv2839, 2010 WL 1424007, at *2 n.4 (S.D.N.Y. Apr. 9, 2010).  Similarly, where a witness' statements are made to employer representatives regarding a plaintiff's job performance to show the state of mind of the representatives, the witness statements are not hearsay. *Pope v. Vilsack*, No. 1:11CV946, 2013 WL 2468348, at *4 (M.D.N.C. June 7, 2013) ("To the extent that Defendant contends it is not offering the statements made regarding Plaintiff's prior work performance for the truth of the matter asserted, but rather to show what effect, if any, such statements had on the person who

heard them, the challenged statements would not constitute hearsay under the Federal Rules of

Evidence.") (citing Fed. R. Evid. 801; *United States v. Guerrero–Damian,* 241 Fed. App'x. 171,

173 (4th Cir.2007) ("A statement is not hearsay if it is offered to prove knowledge, or show

the effect on the listener or listener's state of mind.")); *see also McMichael v. James Island*

*Charter Sch.*, 840 F. App'x 723, 730 (4th Cir. 2020) (holding witness statements about whether

plaintiff posed a threat were not hearsay where the statements were offered not for their truth, but

to show whether the witness' concerns gave the employer a reason to act to ensure the school's

safety) (citing *Graves v. Lioi*, 930 F.3d 307, 325 n.15 (4th Cir. 2019), *cert. denied sub*

*nom. Robinson v. Lioi*, 140 S. Ct. 1118 (2020) (citing *United States v. Safari*, 849 F.2d 891, 894

(4th Cir. 1988), for the proposition that "a statement is not hearsay if it is offered ... to show

the effect on the listener").

As the Supreme Court and Fourth Circuit have stated, it is proper and reasonable for an

employer to rely on hearsay and personal credibility determinations in deciding what was

actually said or what events transpired.

> But employers, public and private, often do rely on hearsay, on past similar conduct, on their personal knowledge of people's credibility, and on other factors that the judicial process ignores. Such reliance may sometimes be the most effective way for the employer to avoid future recurrences of improper and disruptive conduct. What works best in a judicial proceeding may not be appropriate in the employment context. If one employee accuses another of misconduct, it is reasonable for a government manager to credit the allegation more if it is consistent with what the manager knows of the character of the accused. Likewise, a manager may legitimately want to discipline an employee based on complaints by patrons that the employee has been rude, even though these complaints are hearsay.

*Waters v. Churchill*, 511 U.S. 661, 676 (1994). "[E]mployers are free to rely on allegations of

misconduct in making termination decisions, so long as their reliance is reasonable and in good

faith. *Trent v. Constellation Energy Grp., Inc.*, No. CIV. A. CCB-08-1271, 2009 WL 2044130,

at *5 (D. Md. July 8, 2009) (citing *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 216–17

(4th Cir.2007) (upholding termination of employee where decisionmaker "honestly believed that [the employee] deserved to be discharged" for threatening another employee, 'regardless of whether [the employee] did in fact issue the threats"); *Waters v. Churchill,* 511 U.S. 661, 676, 114 S.Ct. 1878 (1994) (in making employment decisions, "employers ... often do rely on hearsay, on past similar conduct, on their personal knowledge of people's credibility, and on other factors that the judicial process ignores.  Such reliance may sometimes be the most effective way for the employer to avoid future recurrences of improper and disruptive conduct."); *see also Calef v. Budden*, 361 F. Supp. 2d 493, 498–99 (D.S.C. 2005).

In the instant case, all statements by Mr. Carter are being offered not for their truth but for the effect on the listener, to show notice, or to show knowledge.  The statements are being offer to show why Cathy Price took the actions she did throughout her investigation, and ultimately helps explain why Parker was terminated – i.e., effect on the listener.  During her deposition Ms. Price was asked if she recognized the Mr. Carter's statement, identified as Exhibit 19.  Ms. Price stated that she did.  Price Dep. 233:17–20.  Ms. Price explained that she had asked Mr. Carter to provide a statement regarding any knowledge he had of the inappropriate facial expressions and gestures Mr. Jennings claimed Parker had made towards him.  Price Dep. 234:13–25, 235:18.

Mr. Carlos statements help explain why Mr. Price involved Mr. Birgans in her investigation and why Parker was issued a written warning.  Price Dep. 265:13-18.  Ms. Price testified that Mr. Carter's statement was one of several factors used to substantiate a written warning later received by Parker. Price Depo. 247:12-25, 149:1-6.  Ms. Price explained that she relied on Mr. Carter's statement to reach her conclusion regarding her investigation into Parker's alleged inappropriate conduct towards Mr. Jennings.  Price Depo. 21-24.  Ms. Price's reasonable

13

reliance on Mr. Carter's statement is being offered to show the effect on the listener, notice to RCSI of Parker's actions, and knowledge RCSI had prior to making its decision to terminate Parker.

Plaintiff also argues Mr. Carter's statements were inadmissible as hearsay within hearsay, as Mr. Carter's statement includes information about statements from Mr. Birgans.  Once again, the statement from Mr. Birgans to Mr. Carter is not being offered for its truth.  The statement is being offered to show that Mr. Carter had knowledge of Mr. Birgans' observations and Parker's actions.  Furthermore, the statement is being offered to show its effect on the listener – i.e., Mr. Carter's later statement, "To me, it sounded like [Parker] has issues with Donte and this was her way to show it without saying what the real problem actually was."

Finally, Plaintiff argues Mr. Carter's statement, "To me, it sounded like [Parker] has issues with Donte and this was her way to show it without saying what the real problem actually was," should be excluded for lack of personal knowledge.  In *Pope*, similar to Plaintiff's challenge, the *Pope* plaintiff challenged portions of multiple declarants' statement to an employer's committee members on the grounds the declarant lacked personal knowledge of the facts set forth in his statement. *Pope*, No. 1:11CV946, 2013 WL 2468348, at *3.  The *Pope* plaintiff argued the declarations relied only on consisted only of what the declarant's heard about the plaintiff's prior work history from third parties. *Id.* at *4.  The *Pope* court explained, although the committee members ultimately may not have observed the plaintiff in her work setting, the evidence in the record shows that the declarant statements about the plaintiff's work performance were made to the Committee members.  "Therefore, the evidence shows that each person present had personal knowledge of any statements made or discussions had at that meeting." *Id*.  The court continued, "Moreover. . . to the extent that references to the challenged

statements are being offered to show the effect on the listener and not for the truth of the matter asserted, no present hearsay problem exists. *Id.*

Similarly, Ms. Price testified that she read Mr. Carter's statements, giving her personal knowledge of the statements. Likewise, Mr. Carter's statement on Exhibit 19 begins with, "On 13-May-16, I Carlos Carter was witness to a statement given by Mr. Kenton Birgans." Therefore, Mr. Carter had personal knowledge of the statements Mr. Birgans made. The record further establishes this as Mr. Moppins and Mr. Birgans both testified that Mr. Moppins, Mr. Birgans, and Mr. Carter did have a conversation in which Mr. Birgans was asked about a warehouse incident between Mr. Jennings and Parker. Moppins Dep. 92:19–25, 93:1–20; Birgans Depo. 19:11–25, 20:1–4. Therefore, the evidence shows Mr. Carter had personal knowledge of Mr. Birgans' statements. Moreover, the statement is not being offered for its truth, but to show knowledge, and effect on the listener.

For the above reasons, RCSI asks the Court to deny Plaintiff's MIL No. 6.

### VII.    Preclusion of Argument or Evidence Regarding other Discrimination Actions, Legal Complaints, or Lawsuits Initiated by Ms. Parker

Parker seeks to have this Court exclude from evidence the fact that she previously filed a discrimination claim against her previous employer. Reema has no desire to get into the substance of the previous claim nor does it seek to suggest that Parker has a propensity for filing claims. The fact that Parker filed a previous claim is directly relevant to the fact that Parker is fully aware of how to complain and the steps necessary for seeking a remedy to stop behavior she finds offensive.

As noted above and which is undisputed in this case, Parker was aware of what she now claims are offensive rumors in February and did nothing to complain about them in February or in March. In April, she took it upon herself to aggressively confront her coworkers and then still said nothing to HR until after she lost control yelling at Mr. Moppins in late April. The fact that Parker

took so long to complain about such behavior is directly relevant to whether a hostile workplace existed and about whether the rumor was severe and pervasive.

Parker is simply incorrect in her efforts to preclude this evidence.

### VIII.    Preclusion of any Argument or Evidence Regarding Damages, Costs, or Fees Not to Be Decided by the Jury

Parker seeks to preclude any argument to the jury regarding damages to be decided by the Court.  Although Reema agrees that such issues are not decided by the jury, evidence of Parker's post-employment efforts to find new employment and whether she made more money at her new job than she made at Reema is relevant to her state of mind, any emotional distress which Parker may have claimed and is relevant to her obligation to mitigate her damages.

*/s/ Donald J. Walsh*
Donald J. Walsh (Bar #09384)
dwalsh@wcslaw.com
Marie Ignozzi (Bar #29762)
mignozzi@wcslaw.com
Wright, Constable & Skeen, L.L.P.
7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Telephone: (410) 659-1300
Facsimile: (410) 659-1350

*Attorneys for Reema Consulting Services, Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of November, 2021, a copy of the foregoing Response to Motion in Limine was served on all counsel of record via the Court's electronic filing system and via email.

*/s/ Donald J. Walsh*
Donald J. Walsh

16