**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

|  |  |
|---|---|
| EVANGELINE J. PARKER,<br><br>       Plaintiff,<br><br>v.<br><br>REEMA CONSULTING SERVICES, INC.<br><br>       Defendant. | Civil No. 8:17-cv-01648-RWT<br><br>Jury Trial Demanded |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

I.     Statements made by others about the rumor to Ms. Parker; ............................................... 1

II.    References to a "rumor" which do not specify the substance of the rumor or who
       communicated the rumor. ............................................................................................... 1

       A.    This Court Has Already Held That Testimony Regarding The Rumor is
             Not Hearsay ......................................................................................................... 2

       B.    Evidence of the Rumor Is Highly Probative ........................................................... 4

       C.    RCSI Has Not Carried Its Burden to Prove that the Probative Nature of the
             Evidence Is Substantially Outweighed by the Risk of Unfair Prejudice ............... 6

             1.    RCSI's Own Deposition Designations Bely Its Claims of Prejudice ......... 6

             2.    The Jury Will Not Be Misled By Slight Variations In Testimony
                   About the Rumor That This Court Already Deemed Probative ................ 7

             3.    RCSI Cannot Manufacture Prejudice By Failing to Call Witnesses........... 9

             4.    RCSI's Generalized Fears of Prejudice Due To "Speculation" Are
                   Themselves Speculative.............................................................................. 10

             5.    RCSI's Mistaken Statements Of The Law Do Not Create Prejudice ....... 11

III.   Larry Moppins's employment post working with RCSI.................................................. 13

IV.    Evidence pertaining to Larry Moppins's behavior or comments, to include but not
       limited to jokes with a perceived sexual connotation or related to his genitalia ............. 13

V.     Any evidence that suggests Romaine Thompson or any other employees were
       harassed while working at RCSI.................................................................................... 16

VI.    All reference to the procedural history of the case. ........................................................ 17

VII.   Testimony from Mr. DaMarcus Pickett that Ms. Cathy Price spread unrelated
       rumors or was part of any rumor involving others who are not Ms. Parker. .................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cauvel v. Schwan's Home Serv.*,
    458 Fed. Appx. 131 (3d Cir. 2012) .........................................................................................4

*Crowley v. L.L. Bean, Inc.*,
    303 F.3d 387 (1st Cir. 2002) ................................................................................................12

*CSX Transp., Inc. v. Gilkison*,
    2013 U.S. Dist LEXIS 2143 (N.D. Va. 2013) .......................................................................10

*Demers v. Adams Homes of Nw Fla., Inc.*,
    321 F. App'x 847 (11th Cir. 2009) .......................................................................................14

*EEOC v. Cent. Wholesalers, Inc.*,
    573 F.3d 167 (4th Cir. 2009) .................................................................................................9

*EEOC v. Farmer Brothers*,
    31 F.3d 891 (9th Cir. 1994) .................................................................................................14

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ........................................................................................................15, 17

*Goff v. Baltimore Cty.*,
    No. SKG-08-557, 2009 WL 10709529 (D. Md. Jan. 29, 2009) ...........................................16

*Heyne v. Caruso*,
    69 F.3d 1475 (9th Cir. 1995) ...............................................................................................14

*Large v. Mobile Tool, Inc.*,
    Civ. No. 1:02-cv-177, 2008 U.S. Dist. LEXIS 69287 (N.D. Ind. 2008) ...........................9, 10

*Nigro v. Sears, Roebuck & Co.*,
    784 F.3d 495 (9th Cir. 2015) .................................................................................................4

*O'Rourke v. City of Providence*,
    235 F.3d 713 (1st Cir. 2001) ................................................................................................12

*Robinson v. Dean Foods Co.*,
    654 F. Supp. 2d 1268 (D. Co. 2009) ......................................................................................3

*Tinoco v. Thesis Painting, Inc.*,
    GJH-16-752, 2018 U.S. Dist. LEXIS 163830 (D. Md. 2018) .................................................8

*United States v. Hadaway*,
   681 F. 2d 214 (4th Cir. 1982) .................................................................................5

*United States v. Queen*,
   132 F. 3d 991 (4th Cir. 1997) .................................................................................8

*United States v. Stahmer*,
   755 Fed. Appx. 214 (4th Cir. 2018).......................................................................6

*Vance v. Ball State Univ.*,
   133 S. Ct. 2434 (2013).....................................................................................11, 12

*Weller v. Titanium Metals Corp.*,
   361 F. Supp. 2d 712 (S. D. Ohio 2005) ..................................................................3

*Willinghan v. Town of Stonington*,
   847 F. Supp. 2d 164 (D. Me. 2012) ........................................................................3

*Zubulake v. UBS Warburg LLC*,
   382 F. Supp. 2d 536 (S.D.N.Y. 2005)..............................................................14, 15

Plaintiff Evangeline J. Parker, by and through her attorneys, respectfully opposes Defendant RCSI's motions *in limine* (Dkt. 143-1, "RCSI MILs").

**I.      Statements made by others about the rumor to Ms. Parker;**

**and**

**II.      References to a "rumor" which do not specify the substance of the rumor or who communicated the rumor.**

Plaintiff was unlawfully subjected to a hostile work environment on the basis of her gender, and was unlawfully terminated from her employment with RCSI for complaining about harassment and retaliation in violation of Title VII of the Civil Rights Act. The crux of Ms. Parker's hostile work environment claim is the existence of a false rumor that she engaged in a sexual relationship with a supervisor in order to obtain a promotion, and the unwanted conduct she experienced as a result of the rumor. Defendant now improperly seeks to exclude Plaintiff's relevant, admissible, and highly probative evidence regarding the rumor.

The Court should deny Defendant's motion as it relates to statements made by others about the rumor to Ms. Parker, and references to a rumor which do not specify the substance of the rumor or who communicated the rumor for two primary reasons.

***First***, the testimony about the rumor that Defendant seeks to exclude is not hearsay at all, as this Court found in its summary judgment opinion. The evidence is not being offered for the truth of the matter asserted but instead for other, permissible reasons — including the fact that it was said, and Defendant's notice and awareness of the rumor. Dkt. 122 at 14 (citing FED. R. EVID. 801(c)). Further, many statements about the rumor are statements of an opposing party because they are offered against RCSI, and were made by employees within the scope of their employment, and therefore are not hearsay. FED. R. EVID. 802(d).

1

***Second***, the testimony about the rumor is highly probative as it forms the backbone of both Ms. Parker's hostile work environment and retaliation claims — namely, that there existed a rumor about her; that it, in addition to other unwelcome conduct, created an abusive work atmosphere; and that she was fired for opposing it. Conversely, Defendant has failed to prove that what little risk of prejudice exists, if any, substantially outweighs the probative nature of the evidence. Thus, the Court should deny both of Defendant's motions *in limine* to exclude evidence of the rumor.

### A. This Court Has Already Held That Testimony Regarding The Rumor is Not Hearsay

As this Court has already determined, testimony regarding the rumor is not hearsay. Dkt. 122 at 14. Hearsay is a statement that the declarant does not make while testifying at trial, and which a party offers in evidence to ***prove the truth of the matter asserted*** in the statement. FED. R. EVID. 801(c) (emphasis added). This evidence is admissible because, as this Court ruled at summary judgment, Ms. Parker is not offering statements about the rumor to prove that the rumor was true. Dkt. 122 at 14. In fact, ***the exact opposite is the case here*** — both Ms. Parker and DaMarcus Pickett, a supervisor and male subject of the rumor, insist that the rumor was patently false. Dkt. 120-1 at 44 (JR420), Parker Dep.; *id.* at 238 (JR236), Pickett Dep. As this Court explained, "[t]he statements by Moppins, Pickett, and Birgans that they heard others tell them of these rumors would constitute admissible evidence, since the fact that these statements were made, not the truth of the rumors, is the probative evidence." Dkt. 122 at 14 (citing FED. R. EVID. 801(c)).

Instead of seeking to prove the truth of the matter asserted, Plaintiff will offer any out-of-court statements regarding the rumor for other permissible purposes. For example, the statement by Mr. Pickett to Ms. Parker that he had learned of the rumor would be "admissible evidence, since ***the fact that the statement[] [was] made*** . . . is the probative evidence." Dkt. 122 at 14 (emphasis added). The fact that the statement was made, and the fact that the rumor was spreading at the

company, is probative because it demonstrates that the unwelcome conduct experienced by Ms. Parker was sufficiently "severe or pervasive" to create a hostile work environment. *See id*. at 10 (legal standard for "severe or pervasive").

The statement by Ms. Thomson to Mr. Pickett identifying Mr. Jennings as the source of the rumor will be offered for the fact that it was said, for the fact that the rumor was spreading, as well as the statement's effect on the hearer, Ms. Parker. "The hearsay rule does not apply to statements offered merely to show that they were made or had some effect on the hearer." *Weller v. Titanium Metals Corp*., 361 F. Supp. 2d 712, 722 n.10 (S. D. Ohio 2005) (statements by employees to manager were admissible because they were offered for effect on manager and manager's reliance on them, not for the truth). The effect of Ms. Thomson's statement on Ms. Parker is probative because Ms. Parker was humiliated that a male employee who had not advanced at the company as quickly as she had was spreading a false rumor about her, and as this Court has noted, "Ms. Parker's humiliation reinforces the severity" of the hostile work environment she experienced. Dkt. 122 at 13.

Further, other statements will be introduced for the permissible purpose of demonstrating the awareness of various RCSI employees, including RCSI's Human Resources Manager, of the rumor. *See, e.g.*, *Willinghan v. Town of Stonington*, 847 F. Supp. 2d 164, 168 n.4 (D. Me. 2012) (statements about medical history are not hearsay when offered to demonstrate employer's notice of plaintiffs' back condition); *Robinson v. Dean Foods Co*., 654 F. Supp. 2d 1268, 1274 n.5 (D. Co. 2009) (statements regarding job duties employee was asked to perform are admissible not for the truth, but to show that employee was on notice of them). For example, Mr. Moppins's statement that Mr. Jennings was "constantly telling Cathy Price" about the rumor, Dkt. 120-1 at 167 (JR165), is offered not for the truth, but to show that RCSI's Human Resources Manager was aware of the

3

rumor. Ms. Price's awareness of the rumor is probative because RCSI is liable if the harasser was Ms. Parker's co-worker and RCSI "knew or should have known about the harassment and failed to take effective action to stop it." Dkt. 122 at 17 (citing *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333-34 (4th Cir. 2003) (en banc)).

RCSI's contention that these statements constitute "double hearsay" is incorrect for the same reasons. For example, Ms. Parker's testimony that she heard the rumor from Mr. Pickett, who had learned it from Romaine Thompson, is admissible because Ms. Thompson's statement to Mr. Pickett is not hearsay, and Mr. Pickett's statement to Ms. Parker is also not hearsay. As explained above, neither of these statements are offered for the truth of the matter asserted.

Moreover, much of the testimony about the rumor is not hearsay because it is an opposing party's statement. An opposing party's statement is a statement offered against an opposing party and which was made by the party's agent or employee on a matter within the scope of that relationship while it existed. FED. R. EVID. 801(d)(2). Plaintiff's evidence about the rumor will be offered against RCSI, and in the form of statements made by RCSI employees[1] regarding an employment-related matter. Such evidence, including statements by Mr. Pickett, Mr. Moppins, Ms. Price, and others at RCSI, are therefore non-hearsay. *See, e.g.*, *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 498 (9th Cir. 2015) (employee's supervisor's testimony that district manager had said he was "done with" employee was admissible as party admission); *Cauvel v. Schwan's Home Serv.*, 458 Fed. Appx. 131, 133-34 n.3 (3d Cir. 2012) (workers' statements regarding conditions of plaintiff's continuation of employment were non-hearsay admissions of party opponent).

**B.    Evidence of the Rumor Is Highly Probative**

---

[1] The exception is Ms. Romaine Thomson, who was not an employee at the relevant time. As noted above, Ms. Thomson's statements will be offered for permissible purposes, not for the truth of the matter asserted.

Evidence of the rumor's existence and spread are undoubtedly of the highest probative value. The probative value of evidence is "defined as its relevance, necessity, and reliability." *United States v. Hadaway*, 681 F. 2d 214, 217 (4th Cir. 1982). In its motion, RCSI makes no argument assailing the reliability, relevance, or necessity of this evidence, impliedly conceding its probative nature. *See* Dkt. 143-1 at 5-10. Nor could RCSI make such an argument, because the evidence forms the backbone of both Ms. Parker's hostile work environment and retaliation claims — namely, that there existed a rumor about her; that it, in addition to other unwelcome conduct, created an abusive work atmosphere; and that she was fired for opposing it.  In its summary judgment order, this Court recognized the probative nature of, *inter alia*, the following statements about the rumor, noting that they contributed to pervasiveness and severity of the hostile work environment that Ms. Parker experienced at work:

- Mr. Pickett's testimony that in February 2016, Mr. Moppins asked him if he was "fucking" Parker, Dkt. 122 at 11;

- Mr. Pickett's testimony that Romaine Thompson, a former RCSI employee, asked him if he was having an affair with Ms. Parker, Dkt. 122 at 11;

- Ms. Parker's testimony that Mr. Moppins told her that statements were made at an April 22, 2016 staff meeting about the rumor, and that Mr. Moppins had separate conversations with Ms. Ferguson and Mr. Jennings after the meeting during which Mr. Ferguson informed him of the rumor, Dkt. 122 at 11;

- Mr. Birgans's testimony that he overheard the rumor a couple of times from a few different people, Dkt. 122 at 14.

This Court noted that these statements, as well as other unwelcome conduct, supports Ms. Parker's hostile work environment claim because the "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships." *Id.* at 10 (quoting *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)). Statements made about the rumor are highly probative because they are central to the claims at issue.

**C.     RCSI Has Not Carried Its Burden to Prove that the Probative Nature of the Evidence Is Substantially Outweighed by the Risk of Unfair Prejudice**

Evidence may be excluded under Rule 403 only if its probative value is substantially outweighed by a danger of, among other things, confusing the issues or misleading the jury. FED. R. EVID. 403. Relevant evidence "should only be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Stahmer*, 755 Fed. Appx. 214, 218 (4th Cir. 2018) (quoting *United States v. Hassan*, 742 F. 3d 104, 132 (4th Cir. 2014)). Here, RCSI falls far short of identifying any substantial risks of prejudice.

**1.     RCSI's Own Deposition Designations Bely Its Claims of Prejudice**

RCSI's deposition designations undercut the basis of its motion to exclude evidence of the rumor. In its portions of the Pretrial Order, RCSI has designated testimony from Ms. Parker that is the subject of its motion *in limine*. For example, RCSI has designated the following exchange:

> Q What did he tell you Ms. Thomson said?
>
> A I just stated he said that Ms. Thomson came in, like, real silly like, "Ooh, I heard something." And then she eventually told him that she heard that he and I had something going on.
>
> Q Okay. Other than hearing that you and he had something going on, did she say anything else?
>
> A I don't know what else was discussed, but that's what he informed me.

Parker Dep. at 121:13-19 (Dkt. 120-1 at 38 (JR36)).  RCSI also designated the following exchange:

> Q Okay. And what did Mr. Pickett tell you about that conversation between him and Donte?
>
> A Donte asked him what does he need to do to get a raise or management position.
>
> Q And what did Mr. Pickett say?

6

A He didn't elaborate on what he said. He was just putting it all together for me for that rumor conversation. It was kind of like, hey, so, you know, Romaine just took her silly self out of my office talking about some ooh, whatever, whatever.

Parker Dep. at 134:8-17 (Dkt. 120-1 at 42 (JR40)). Given that RCSI seeks to retain the right to rely on this deposition testimony in its own defense, it cannot also claim prejudice from the introduction of such testimony at trial. RCSI's inconsistent positions demonstrate the flaw in its claims of prejudice.

> ### 2.    The Jury Will Not Be Misled By Slight Variations In Testimony About the Rumor That This Court Already Deemed Probative

RCSI cannot claim that the jury will be misled by introduction of testimony that contains reasonable variations as to the content of the rumor about Ms. Parker. In its motion, RCSI argues that "for discrimination to have occurred there must be an element of the rumor that suggests the complainant is using sex to further her career," Dkt. 143-1 at 10, and seeks to exclude *all* evidence of the rumor that does not contain this promotions-related "element." RCSI seeks to re-litigate an argument this Court already rejected, simply by re-tooling its earlier argument that this evidence is not relevant to a claim that it is misleading. The Court already ruled at summary judgment that:

> RCSI nevertheless argues that Parker has not established this element because she has not produced sufficient evidence to show that the rumor was that Parker "was having an affair with her supervisor *in order to obtain promotions*. Although *the Fourth Circuit*, in reversing the dismissal of Parker's Complaint, characterized the rumor as one that "Parker, a female subordinate, had sex with her male superior to obtain promotion," *it did not limit its conclusion that such harassment based on a rumor is "based on sex" to scenarios in which the rumor explicitly referenced sex in exchange for promotions*. Here, where Pickett had been a supervisor to Parker and was at a higher level of the organization, Parker had received several promotions during a short period of time, and Ferguson had worked at RCSI significantly longer than Parker but ended up working under her, a reasonable jury could conclude that the spreading of the rumor implicitly questioned whether Parker had used sex to attain career advancement within RCSI.
>
> Moreover, *even if the rumor was not directly linked to Parker's promotions, it still constituted harassment "based on sex" because its impact derived from a sex-based double standard under which women believed to have engaged in an office affair are treated differently than similarly situated men*. Indeed, the record

7

establishes that Pickett, the other primary target of the rumor, did not experience the type of harassment faced by Parker . . . Thus, the evidence supports the conclusion that of the various individuals in these events, only Parker, the female' manager targeted by the rumor, endured hostility from Moppins and subordinates and was punished with termination.

Dkt. 122 at 15-17 (emphases added) (internal citations omitted); *see also Tinoco v. Thesis Painting, Inc.*, GJH-16-752, 2018 U.S. Dist. LEXIS 163830 at *3, 20-21 (D. Md. 2018) (false rumors that Plaintiff was "having sexual relations" with a foreman and "would perform sexual favors for $100" were "because of her status as a woman"). The Court's opinion highlights the fact that reasonable variations on the rumor about Ms. Parker, such as the variation that Ms. Parker and Mr. Pickett had an office affair, can constitute harassment based on sex. *Id*. As a result, testimony that "Parker was sleeping with Pickett," Dkt. 143-1 at 10, is not, as RCSI contends, misleading to the jury. A jury may properly conclude that a false rumor about an office affair between Mr. Pickett and Ms. Parker created a hostile work environment for Ms. Parker. Because such testimony is not misleading to the jury, RCSI suffers no prejudice if a specific piece of proffered evidence about the rumor does not explicitly contain the verbiage of "to obtain a promotion."

Further, even if the Court had not already rejected RCSI's argument at summary judgment, RCSI's argument that jurors will be misled by variations in testimony about the rumor is illogical as a practical matter. There exists no requirement in the law that each witness at trial recite a set of magic words or testify using a specific formulation. *See United States v. Queen*, 132 F. 3d 991, 997-8 (4th Cir. 1997) (rules of evidence "require[e] only a 'plus value' to make [evidence] admissible . . . evidence need not "produce persuasion by its sole and intrinsic force but merely needs to be worth consideration by the jury") (citing Wigmore on Evidence § 58.2 at 1215 (Tiller Rev. 1983)). It is the nature of trial testimony for accounts of witnesses to contain differences. It is also the very nature of a rumor to be spread by word of mouth, often in a fragmented manner,

8

and to be understood by various recipients in differing ways. For example, Ms. Price, RCSI's HR manager, understood the rumor to be ". . . the statement that Ms. Parker was sleeping with Mr. Pickett to get her promotion." Dkt. 120-1 at 372 (JR370), Price Dep. at 155:13-17. Mr. Kenton Birgans heard a variation that Ms. Parker "and Demarcus [Pickett] were having a relationship outside of work." *Id.* at 640 (JR638), Birgans Dep. at 24:2-4. For his part, Mr. Pickett put together different aspects of the rumor when Romaine Thompson told him she had heard that he "was messing with Ms. Parker," which was similar to a question Mr. Moppins had asked him earlier — whether he was "fucking" Ms. Parker. *Id.* at 235-38 (JR233-36), Pickett Dep. 88:17-89:2, 96:12-97:7. Each of these statements forms just one piece of the puzzle for the jury's understanding of all the circumstances of Ms. Parker's work environment. Taken together, these puzzle pieces go to the severity or pervasiveness of the harassment Ms. Parker experienced. *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009). These statements are not misleading and do not create a substantial risk of prejudice.

### 3.   RCSI Cannot Manufacture Prejudice By Failing to Call Witnesses

RCSI cannot complain that it will suffer prejudice from its own failure to call witnesses at trial. *See, e.g., Large v. Mobile Tool, Inc.*, Civ. No. 1:02-cv-177, 2008 U.S. Dist. LEXIS 69287 at * 34 (N.D. Ind. 2008)(denying motion to strike on the basis that movant's "problems are . . . of its own making" and a result of its own litigation decisions). In its motion, RCSI protests that Ms. Parker's decision not to call Ms. Romaine Thompson or Mr. Jennings[2] means the jury will "make improper assumptions" and will be "left to speculate" about issues such as whether Mr. Jennings

---

[2] Mr. Jennings failed to appear for his deposition after Ms. Parker had served a subpoena on him to do so. Plaintiff is not aware of any subpoenas that RCSI has attempted to serve on either Mr. Jennings or Ms. Thompson.

made statements about the rumor "in his capacity as RCSI's agent." RCSI MILs at 6. Notably, RCSI has also decided not to include these witnesses in its own list, and made no effort to depose them earlier in the case — decisions over which Plaintiff has no control. RCSI will have ample opportunity to cross-examine Ms. Parker's witnesses, and introduce its own evidence on its noted issues of concern, including Mr. Jennings's authority. RCSI's attempt to exclude evidence of the rumor due to alleged prejudice manufactured by its own litigation strategy is improper and must be rejected.

### 4.      RCSI's Generalized Fears of Prejudice Due To "Speculation" Are Themselves Speculative

RCSI's nonspecific references to "speculation" and the allegedly prejudicial nature of its "cumulative effect" are untethered from any tangible way in which this Court could conclude that RCSI will be prejudiced at trial.  A case relied upon by RCSI in its motion, *Steve & Sons Inc. v. Jeld-Wen Inc*., shows why RCSI's claims are unfounded.[3] Testimony is speculative, and may be excluded, if it is based on "'hypothetical facts' of which the witnesses lack personal knowledge." *Steves & Sons Inc. v. Jeld-Wen*, Inc., No. 3:16cv545, 2018 U.S. Dist. LEXIS 5061 at *10 (E.D. Va. 2018). The court in *Steve & Sons* ruled that it would exclude certain testimony about future profits estimates if it was not based on past experience, but instead future (and unknowable) events in the doorskin industry that affect the witnesses' expectations. *Id*. at *9-10.

The testimony that RCSI seeks to exclude here is far from speculative. For example, Ms. Parker testified in her deposition that she first heard about the rumor from Mr. Pickett. Dkt. 120-1

---

[3] RCSI relies on one other case, *CSX Transp., Inc. v. Gilkison*, 2013 U.S. Dist LEXIS 2143 (N.D. Va. 2013), for the proposition that a court granted a motion *in limine* to preclude admission of a memo into evidence where the meaning of the memo was speculative. Dckt. 143-1 at 6-7. However, the court opinion in *CSX Transp*. contains neither the word "speculative" nor "memo" and does not address any arguments regarding the speculative nature of any evidence.

10

at 38-39 (JR36-37), Parker Dep. at 120:7-122:3. Mr. Pickett testified that Mr. Moppins had asked him if he was "fucking" Parker, and then Ms. Romaine Thomson told him she had heard that Mr. Pickett was "messing with" Ms. Parker. Dkt. 120-1 at 235-38 (JR233-36), Pickett Dep. at 88:17-89:2, 96:12-97:7. All of this testimony is based on the witnesses' personal knowledge of conversations they had and their past experience of working at RCSI, and not on hypothetical facts. While RCSI raises the spectre that Ms. Parker will introduce evidence of a "generic 'rumor' [] heard or communicated by an unknown source," such a claim is unfounded in any of the record evidence. RCSI's claims of prejudice based on alleged "speculation" must be rejected.

### 5.    RCSI's Mistaken Statements Of The Law Do Not Create Prejudice

RCSI's motion contains incorrect statements regarding the parties' obligations at trial. First, RCSI argues that Plaintiff will have "the burden of proof" to establish that "the origin of the rumor was a RCSI employee," RCSI MILs at 9, and that RCSI "is unfairly prejudiced" "[w]ithout the opportunity . . . to identify the source" of the rumor, *id.* at 9. This is incorrect; Ms. Parker need only establish the elements of her hostile work environment and retaliation claims, none of which require her to prove the origin of the rumor. *See generally* Dkt. 122 at 8 (legal standard for hostile work environment claim), 21 (legal standard for retaliation claim). As this Court held in its summary judgment opinion, a jury could believe that Ms. Parker meets these elements by proving that the rumor existed and, along with other unwanted conduct, created an abusive or hostile atmosphere, *see generally* Dkt. 122; and the jury may reasonably reach this conclusion without either Party definitively identifying which person started the rumor.

Second, RCSI misconstrues Supreme Court case law when it argues that liability may only be imputed "if the rumor was communicated in controlling working conditions." RCSI MILs at 7. It is unclear whether Defendant's "controlling working conditions" phrase is meant to refer to the holding in *Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013), which states that an employer is liable

11

if the harasser was a co-worker and the employer "was negligent in controlling working conditions." *Id.* at 2439. *Vance* imposes liability when the employer acted with negligence, as RCSI did here, by *failing to control* the work environment. It appears, however, that RCSI may be using the term "controlling working conditions," as a noun or term of art indicating a type of work environment.[4] This noun or term of art does not appear in *Vance* nor other relevant case law. RCSI's suggestion that Ms. Parker must somehow prove that the rumor was communicated within its fabricated concept of "controlling working conditions" has no basis in the law.

Even if RCSI's argument is charitably construed as an attempt to posit that a comment by Mr. Jennings is inadmissible because it was made outside of the workplace, such an argument fails. "Courts . . . permit evidence of non-workplace conduct to help determine the severity and pervasiveness of the hostility in the workplace as well as to establish that the conduct was motivated by gender." *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 409 (1st Cir. 2002) (finding that plaintiff's encounters with harasser at a bar and Christmas party were admissible and "help explain . . why his constant presence around her at work created a hostile work environment"); *see also O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001) (upholding jury verdict relying on evidence of crank phone calls received at home).

*     *     *

Based upon the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motions *in limine* precluding Plaintiff from introducing at trial (1) statements made by others about the rumor to Parker (2) references to a "rumor" which do not specify the substance of the rumor or who communicated the rumor.

---

[4] *See also* RCSI MILs at 7 ("[T]he jury would be forced to speculate as to whether Mr. Jennings allegedly communicated the rumor ***in controlling working conditions*** since we don't have those details and Ms. Thompson is not being called to testify." (emphasis added)).

12

III.     **Larry Moppins's employment post working with RCSI.**

Plaintiff agrees not to introduce evidence about Mr. Moppins's employment after working with RCSI, except in the form of background information about whether Mr. Moppins is currently employed by RCSI, and if not, whether he is employed and where.  Plaintiff will not inquire about the circumstances surrounding Mr. Moppins's termination from his employers after RCSI.

IV.     **Evidence pertaining to Larry Moppins's behavior or comments, to include but not limited to jokes with a perceived sexual connotation or related to his genitalia**

The Court should deny Defendant's motion *in limine* regarding "Larry Moppins' behavior or comments, to include but not limited to jokes with a perceived sexual connotation or related to his genitalia," RCSI MILs at 13-15.  Evidence pertaining to Larry Moppins's comments of a sexual nature in the workplace is relevant under Rule 402, not unduly prejudicial under Rule 403, and admissible under Rule 404(b), at least to show motive and intent.  FED. R. EVID. 402, 404.  Such evidence is also admissible for impeachment purposes.  FED. R. EVID. 607.

Despite Defendant's invocation of Rule 404, facts about how Mr. Moppins comports himself at work, especially as they pertain to inappropriate sexual behavior and comments, are relevant to demonstrate a pattern of harassing behavior by Mr. Moppins, his state of mind (and potential hostility) towards women, and his intent in terminating Ms. Parker from her position.  As such, the evidence of prior harassing conduct is permissible under Rule 404(b)(2).  FED. R. EVID. 404(b)(2) ("[E]vidence [of other crimes, wrongs, or acts] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").  Mr. Moppins's intent and attitude toward women are particularly

13

relevant given that he was a decision-maker regarding Ms. Parker's termination,[5] and Ms. Parker

must prove that there is a causal connection between her protected activity and her termination.

"The Supreme Court has held that wide evidentiary latitude must be granted to those attempting

to prove discriminatory intent and that 'the trier of fact should consider all the evidence.'" *Demers*

*v. Adams Homes of Nw Fla., Inc.*, 321 F. App'x 847, 853 (11th Cir. 2009) (citing *U.S. Postal Serv.*

*v. Aikens*, 460 U.S. 711, 714 n.3 (1983) (testimony of former employees regarding discriminatory

actions by same manager is admissible "in order to, among other things, demonstrate the racial

intent of a common decision-maker")). "Because hostility against women underlies decisions to

discharge or to refuse to hire women because of their gender, evidence of sexual harassment often

will be relevant to claims of gender-based employment discrimination." *EEOC v. Farmer*

*Brothers*, 31 F.3d 891, 898 (9th Cir. 1994); *see also Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995)

(allowing introduction of evidence that defendant harassed other employees to prove motive and

intent in firing plaintiff: "the sexual harassment of others . . . is relevant and probative of the

[manager's] general attitude of disrespect toward his female employees.").

Evidence of Mr. Moppins's hostility toward women is admissible at trial.  In *Zubulake v.*

*UBS Warburg LLC*, 382 F. Supp. 2d 536 (S.D.N.Y. 2005), the court noted that, generally, evidence

of a manager's discriminatory treatment of other employees is "***relevant and admissible*** under the

Federal Rules of Evidence to establish whether a defendant's employment action against an

employee was motivated by invidious discrimination." *Id*. at 544 (quoting *Becker v. ARCO Chem.*

---

[5] For example, after Ms. Parker filed a complaint of harassment against Mr. Moppins, HR prepared an investigative report and held a meeting in which Mr. Moppins participated.  The meeting is documented in the HR investigative report as the concluding step in RCSI's investigation of Ms. Parker's complaint. *See, e.g.*, Dkt. 120-1 at 553-54 (JR551-52), Investigation Report. Ms. Parker was fired the following day. *See id.* at 589 (JR587), May 18, 2016 Official Separation of Employment Notice.

14

*Co*., 207 F.3d 176 (3d Cir. 2000) (emphasis added)).  This is true because "it is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." *Id*. (quoting *Heyne*, 69 F.3d at 1479).  The *Zubulake* court explained that the "common thread" between sexual harassment experienced by another employee and the adverse employment action against plaintiff was based on "[manager's] non-performance based reaction to individuals based on their gender and they both degrade individuals because of their sex, albeit in different ways," and ruled the evidence of sexual harassment to be admissible.  *Id*. at 544.  The same logic applies to Plaintiff's hostile work environment and retaliation claims: the jury should be permitted to consider all evidence related to the discriminatory intent and state of mind of a manager (Mr. Moppins) against whom Ms. Parker made a complaint, and who was involved in her harassment and termination.

Moreover, evidence of Mr. Moppins's prior conduct is relevant to rebut RCSI's defenses. For example, if RCSI is permitted[6] to argue that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise," *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), evidence of other harassment is relevant to show that RCSI has not exercised reasonable care, because it would tend to show that RCSI does not have adequate systems in place to prevent harassing behavior.

Finally, the evidence is admissible for impeachment purposes.  FED. R. EVID. 404(a)(3), 607.  To the extent that Mr. Moppins (or RCSI) suggests that Mr. Moppins behaved appropriately

---

[6] Plaintiff maintains that Defendant should not be permitted to pursue this defense, as set forth in Plaintiff's motion *in limine*, Dkt. 144 at 2-4.

at the workplace, or that there were no other incidents of sexually inappropriate behavior at the workplace, Plaintiff should be permitted to impeach with evidence of Mr. Moppins's conduct.

Defendant's reliance on *Goff v. Baltimore City* is inapposite. In *Goff*, the plaintiff sought to rely on the exception for "defendant or victim in a criminal case" under Rule 404(a)(2). *See Goff v. Baltimore Cty.*, No. SKG-08-557, 2009 WL 10709529, at *2 (D. Md. Jan. 29, 2009). Here, however, Plaintiff is not relying on the exceptions under Rule 404(a)(2), which are limited to criminal cases, but rather relying on the exceptions of Rule 404(a)(3) (impeachment) and (b)(2) (evidence of prior wrongs or acts for a purpose such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").

Finally, Defendant's argument that evidence of Mr. Moppins's prior conduct would be used "solely to inflame the jury" such that it should be excluded under Rule 403, *see* RCSI MILS at 15, ignores the relevant nature of the evidence, as discussed above. Defendant's conclusory argument ignores the relevance, which outweighs any risk of inflaming the jury. In fact, Defendant notably designated deposition testimony in the pre-trial order related to the very comments that it seeks to exclude, including pages 220 through 222 of Mr. Pickett's deposition, *see* Dkt. 120-1 at 268-69 (JR266-67). Given that RCSI seeks to retain the right to rely on this deposition testimony in its own defense, it cannot also claim prejudice from the introduction of such testimony at trial.

RCSI's motion regarding Mr. Moppins's inappropriate behavior should be denied.

V.      **Any evidence that suggests Romaine Thompson or any other employees were harassed while working at RCSI.**

Plaintiff agrees not to introduce evidence of Ms. Thompson's alleged harassment, and does not oppose the motion to the extent that it relates to Ms. Thompson and the conduct identified in Defendant's brief, RCSI MILs at 15-18. To the extent that Defendant seeks to exclude evidence that "any other employees were harassed while working at RCSI," without specifying the evidence

in question, the motion is overbroad.  For example, if RCSI is permitted to put forth a defense that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise," *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), evidence of other harassment is relevant to show that RCSI has not exercised reasonable care.[7]  Moreover, harassment by Mr. Larry Moppins is relevant and admissible for the reasons discussed above.

**VI.    All reference to the procedural history of the case.**

Plaintiff agrees not to refer to the procedural history of the case, except that Plaintiff may seek leave to introduce information about the Fourth Circuit's opinion and/or this Court's summary judgment opinion to the extent necessary to cure any prejudice if Defendant seeks to re-litigate issues that are now the law of the case.  For example, as set forth in Plaintiff's MIL No. 1, Defendant will likely argue that the rumor about Ms. Parker and Mr. Pickett is about conduct, rather than sex.  *See* Dkt. 144 at 4-7.  Defendant has also proposed skewed instructions about what constitutes a hostile work environment, and what is considered severe and pervasive.  Defendant should not be permitted to violate the law of the case, and if it does, Plaintiff will seek permission to introduce evidence about the Fourth Circuit's opinion and/or this Court's summary judgment opinion in this case.

**VII.   Testimony from Mr. DaMarcus Pickett that Ms. Cathy Price spread unrelated rumors or was part of any rumor involving others who are not Ms. Parker.**

---

[7] Plaintiff maintains that Defendant should not be permitted to pursue this defense, as set forth in Plaintiff's motion *in limine*, Dkt. 144 at 2-4.

17

Plaintiff agrees not to elicit testimony from Mr. DaMarcus Pickett that Cathy Price spread unrelated rumors or was part of any rumor involving others who are not Ms. Parker. Although Plaintiff's counsel does not represent Mr. Pickett, Plaintiff will not inquire about such incidents.

Dated: November 8, 2021

Respectfully submitted,

By:  */s/ Andrew R. Kopsidas*
    Andrew R. Kopsidas (Bar No. 16057)
    Ahmed J. Davis (Bar No. 17812)
    Daniel A. Tishman (admitted *pro hac vice*)
    Taylor Burgener (admitted *pro hac vice*)
    Tracea Rice (admitted *pro hac vice*)
    **FISH & RICHARDSON P.C.**
    1000 Maine Avenue, SW
    Suite 1000
    Washington, DC 20024
    Telephone: (202) 783-5070
    Facsimile: (202) 783-2331

    Dennis A. Corkery (Bar. No. 19076)
    Joanna K. Wasik (Bar. No. 21063)
    **WASHINGTON LAWYERS' COMMITTEE**
    **FOR CIVIL RIGHTS AND URBAN AFFAIRS**
    700 14th Street NW, Suite 400
    Washington, DC 20036
    Telephone: (202) 319-1000
    Facsimile: (202) 319-1010

    *Counsel for Plaintiff Evangeline J. Parker*

18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of November 2021 true and correct

copies of the above and foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS

*IN LIMINE* have been filed and served through the Court's ECF system on the following:

Donald J. Walsh (Bar # 09384)
dwalsh@wcslaw.com
Marie J. Ignozzi (Bar # 29762)
mignozzi@wcslaw.com
Alanna C. Casey (Bar #21818)
acasey@wcslaw.com
**WRIGHT, CONSTABLE & SKEEN, LLP**
Attorneys for Defendant
7 St. Paul Street, 18th Floor
Baltimore, Maryland 21202
Telephone: (410) 659-1354
Facsimile: (410) 659-1350

/s/ Andrew R. Kopsidas
Andrew R. Kopsidas (Bar No. 16057)
kopsidas@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

19