**IN THE UNITED STATES DISTRICT COURT**
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

|  |  |
|---|---|
| EVANGELINE J. PARKER, | |
| Plaintiff | |
| v. | Civil Action No. 8:17-CV-01648-TDC |
| REEMA CONSULTING SERVICES, INC., | |
| Defendants. | |

**JOINT PROPOSED PRE-TRIAL ORDER**

a. **A brief statement of facts that each plaintiff proposes to prove in support of that plaintiff's claims, together with a listing of the separate legal theories relied upon in support of each claim.**

Plaintiff's Statement of Facts

*Ms. Parker had a promising career at RCSI.*

Ms. Evangeline Parker began working at Reema Consulting Services, Inc. (RCSI) in December 2014, when she was hired to work as an inventory control clerk at RCSI's warehouse facility in Sterling, Virginia. RCSI provides logistics, warehouse, operations, and administrative support services to the government.

During her employment, Ms. Parker rapidly rose through the ranks at RCSI, earning several merit-based promotions over her first fifteen months of employment, including most recently a promotion to Assistant Warehouse Operations Manager, beginning in early April 2016. Mr. Larry Moppins, the highest-ranking manager of operations at the warehouse who reported directly to the company's owner, Mr. Rajesh Vora, personally recommended each of her promotions, and she received excellent reviews throughout her time at RCSI.

*Ms. Parker's promising career was cut short due to a false, gender-based rumor, and a hostile work environment.*

{00446155v. (15424.00002)}                    1

As Ms. Parker entered her new role as a manager in the spring of 2016, a false rumor was beginning to circulate at RCSI that Ms. Parker gained her promotions because she was engaged in a sexual relationship with Mr. DaMarcus Pickett (another manager at RCSI). A number of employees, including Mr. Moppins, contributed to its dissemination. In February 2016, Mr. Moppins entered Mr. Pickett's office and asked him, "you f—ing Parker?," which offended Mr. Pickett and violated RSCI's Employee Handbook. Thereafter, the rumor spread throughout RCSI, including by Mr. Donte Jennings, a warehouse employee who had started as a warehouse clerk around the same time as Ms. Parker but remained in an entry level position while she advanced to a management position.

Shortly thereafter, Ms. Parker attempted to quell the false rumor by telling the employees she believed were spreading it to stop, in accordance with RCSI's Sexual Harassment Manual (which instructs employees who have experienced harassment to ask their harassers to stop before going to HR). After Ms. Parker asked employees to stop spreading the false rumor, the employees were upset, and complained to Mr. Moppins about her conduct.

On April 21, 2016, after the rumor had been circling at the company, Mr. Moppins held an all-hands meeting. Although Ms. Parker and Mr. Pickett arrived to the meeting together and a few minutes late, Mr. Moppins allowed Mr. Pickett to enter the meeting, while he slammed the door in Ms. Parker's face, humiliating her in front of all the warehouse employees. The rumor was perpetuated at the meeting, where employees discussed Ms. Parker's management and alleged that she used her "sexuality to get to the top," and complained that she approached subordinates about the alleged rumor.

> ***Ms. Parker's efforts to resolve the hostile work environment were met with resentment, hostility, and an inadequate investigation.***

Thereafter, Ms. Parker attempted to resolve the situation with Mr. Moppins.  First, she arranged a meeting with Mr. Moppins in an attempt to resolve the issue.  But rather than solve the problem, Mr. Moppins only exacerbated it.  He blamed Ms. Parker for making the rumor an issue in the workplace.  He stated he had "great things" planned for her, but now he would not allow her to advance any further.  On April 25, 2016, Ms. Parker was called to another meeting with Mr. Moppins where he remarked he "should have fired [her]" the day before when she came in "huffing and puffing" about the rumor.  He began screaming at Ms. Parker and lost his temper.

Because the meetings with Mr. Moppins failed to resolve the problem, Ms. Parker made a formal sexual harassment complaint against Mr. Moppins and Mr. Jennings that same day.  She provided her complaint to Ms. Price, RCSI's part-time HR manager.

After Ms. Parker submitted her HR complaint, Mr. Moppins stopped communicating with her and acted with hostility towards her.  For example, he would not answer her emails, and failed to include her in meetings.  Mr. Jennings and others also began to smirk and laugh at her.  On April 27, 2016, Ms. Price organized a meeting with Ms. Parker, Mr. Moppins, Mr. Pickett, and Ms. Wallace, at which Ms. Price encouraged Ms. Parker to apologize to Mr. Moppins (which she did).  When Ms. Price asked Mr. Moppins if he wanted to apologize, he responded: "Apology? . . . I already know what I'm going to do."  After the meeting, Ms. Price assured Ms. Parker her job was not in jeopardy.  That same day, Mr. Moppins sent Ms. Price an email explaining that, in February 2016, he approached Mr. Pickett and asked him if he was sleeping with Ms. Parker, and that he had learned of the rumor in mid-April.  This demonstrated that Mr. Moppins violated company prohibitions on talking about sex, and explained his role in the false rumor; yet Ms. Price took no specific action after receiving this email.

***Ms. Parker was terminated in retaliation for complaining of a hostile work environment.***

On May 12, 2016, while Ms. Parker was on a pre-approved vacation, Mr. Jennings emailed to Mr. Moppins a complaint alleging that Ms. Parker's conduct had created a hostile work environment against him, which Mr. Moppins sent to Ms. Price. Part of Mr. Jennings's complaint was that Ms. Parker "was approaching him about the rumor." Mr. Moppins took it upon himself to "inquire" or "investigate" the complaint of hostile work environment against Ms. Parker that Mr. Jennings had sent him. This investigation was both outside of his normal job duties, and unprecedented as Mr. Moppins had conducted no such investigation in response to Ms. Parker's complaint. Ms. Price also investigated Mr. Jennings's complaint.

When Ms. Parker reported back to work after her vacation, she was informed that she could not be in the section of the warehouse where Mr. Jennings worked because of Mr. Jennings's complaint. Although Ms. Parker complied with her given instructions to limit her interactions with Mr. Jennings, he was permitted to linger in her work area where he directed long stares, smirks, and laughs at her, and undermined her authority with the employees he was supervising.

Unbeknownst to Ms. Parker, while she was on vacation, Mr. Moppins sent an email to Ms. Price, Mr. Vora (the owner of RCSI), and Ms. Vora (in-house counsel for RCSI), with the subject "Evangeline Parker—misconduct." In that email, he complained that Ms. Parker "has threatened to file Sexual Harassment charge on [him] for supposedly starting rumors about her relationship with the Deputy PM," and asked to speak with Mr. and Ms. Vora "directly about Ms. Parker's attempt to hold [him] hostage from performing any disciplinary actions against her." Three days after sending this email, and upon Ms. Parker's return from her vacation, Mr. Moppins drafted two separate "written warnings," each of which states that Ms. Parker will be

terminated.  In one warning, Mr. Moppins's explanation of the termination references the fact that she was "going to press charges of sexual harassment." Ms. Price was not involved in the determination that these warnings would recommend termination; Mr. Moppins made those decisions directly to Mr. Vora in consultation with in-house counsel, Ms. Vora.

The next day, May 17, 2016, Mr. Moppins met with Mr. Vora, Ms. Vora, and Ms. Price, as requested in his May 13, 2016 email.

The same day, Ms. Price completed her report documenting her investigation of Ms. Parker's April 25 complaint against Mr. Moppins and Mr. Jennings, and presented its contents to the group in the meeting.  Ms. Price's investigation of and response to Ms. Parker's April 25 complaint was perfunctory and inadequate.  First, she did not take adequate action to quell the hostile work environment; she did not instruct Mr. Jennings to stop spreading the rumor, nor did she take action to stop Mr. Jennings from entering Ms. Parker's work area, smirking and laughing.  Second, she recommended no discipline for Mr. Moppins, Mr. Jennings, or any employee involved in perpetuation of the rumor.  Third, she took no steps to prevent Mr. Moppins from following through on his threats of retaliation against Ms. Parker.

The Investigation Report ultimately and incorrectly concluded that Ms. Parker's sexual harassment claim was unfounded and that Ms. Parker herself had started the rumor.  The Report recommended Ms. Parker be terminated "due to inappropriate behavior and misconduct (insubordination with superior)."

After the May 17 meeting between Mr. Moppins, Mr. Vora, Ms. Vora, and Ms. Price, Mr. Moppins emailed this group the warnings he had drafted, forming the basis of Ms. Parker's termination.

On May 18, 2016, RCSI terminated Ms. Parker's employment based on the two warnings written by Mr. Moppins.

<u>Hostile Work Environment</u>

Ms. Parker experienced unwelcome harassment based on her gender, and the harassment she suffered was sufficiently severe or pervasive to create an abusive atmosphere, in violation of Title VII.  The false rumor, as well as how it was handled by RCSI, constituted severe and pervasive hostility that altered Ms. Parker's work conditions.  There is a basis for imposing liability on RCSI because: (1) the hostile work environment that culminated in Ms. Parker's firing was created and maintained in part as a direct result of the actions of her direct supervisor (Mr. Moppins); and (2) RCSI was negligent in addressing Ms. Parker's complaints.

<u>Retaliation</u>

Ms. Parker was terminated because she complained of a hostile work environment, in violation of Title VII.  In fact, there is direct evidence of retaliation, including a written admission by Mr. Moppins that Ms. Parker's complaints served as a basis for his recommendation that Ms. Parker be fired.

**b.  A brief statement of facts that each defendant proposes to prove or rely upon as a defense thereto, together with a listing of the separate legal theories relied upon in support of each affirmative defense.**

Defendant, Reema Consulting Services, Inc. ("RCSI" or "Defendant") contends that despite Plaintiff's hostile work environment claim premised on a rumor, there is no genuine dispute that there was a rampant rumor nor can Parker prove that she was subjected to an actionable hostile work environment under Title VII. Plaintiff's own testimony demonstrates that the alleged rumor did not alter her working conditions, was only of an extremely limited duration, and was based only on her perceptions that it existed and not from her actually hearing

the rumor from anyone at RCSI.  The undisputed testimony from other witnesses at RCSI demonstrates that they were unaware of any rumor about Parker.  In fact, the record demonstrates that Plaintiff disseminated the rumor herself when she accused her subordinates of spreading the rumor.

Parker's subordinates complained about abusive conduct by Parker. When her supervisor attempted to discuss the subordinates' complaint with Parker, she became so combative that even she concedes her behavior was insubordinate. To avoid any further conflict, HR cautioned employees to not engage in rumors, RCSI reinforced its anti-harassment policies, and accelerated its annual facility-wide training.  Human Resources conducted investigations of the subordinates' claims as well as Parker's allegation regarding the rumor and concluded that the claims of the rumor could not be substantiated and, in fact, Parker herself was responsible for perpetuating the rumor when she accosted her subordinates to "set things straight."

During the investigations, Parker was also instructed to stay away from one employee (Donte Jennings) who Parker had accused of having started a rumor to avoid further conflict between her and Mr. Jennings.  Despite these efforts, a few days later Mr. Jennings complained to HR that Parker continued to confront him.  RCSI's Human Resources Director investigated Mr. Jennings' complaint and concluded that Parker had violated the directive to avoid Mr. Jennings and was further demonstrating a lack of managerial discretion.

At the conclusion of the investigation, HR recommended Parker's termination and the President of RCSI, Rajesh Vora, alone determined that Parker's abusive conduct towards her subordinates and her own admitted prior insubordination towards her supervisors warranted her termination.   She was terminated on May 18, 2016 not because of a hostile work environment

and not because RCSI was retaliating, but because Parker continued to refuse to follow directions and displayed gross disrespect for those employees working under her.

**c.  Similar statements as to any counterclaim, cross-claim, or third-party claim.**

N/A

**d.  Any amendments required of the pleadings.**

N/A

**e.  Any issue in the pleadings that is to be abandoned.**

Plaintiff can no longer pursue Count III (discriminatory termination).

**f.  Stipulations of fact or, if the parties are unable to agree, requested stipulations of fact.**

Plaintiff's Proposed Stipulations

| # | Proposed Stipulation | Agreed (Y/N) |
|---|---|---|
| 1 | Plaintiff is a female and a former employee of Defendant.  During her employment with Defendant, Plaintiff worked at Defendant's Sterling, Virginia facility. | Y |
| 2 | On December 1, 2014, Ms. Parker was hired by RCSI as an inventory control clerk to work at RCSI's Sterling, Virginia warehouse facility. She continued to work at that facility until her termination on May 18, 2016. | N |
| 3 | During the course of her employment, Ms. Parker received promotions, and held the following positions: (1) Shipping Supervisor, beginning February 2015; (2) Receiving Supervisor (Material Coordinator), beginning Mar. 16, 2015; (3) Assistant Inventory Control Manager, beginning May 16, 2015; (4) Quality Compliance Control, beginning in the summer of 2015; and (5) Assistant Warehouse Operations Manager, beginning in the spring of 2016. | N |
| 4 | In February 2016, Mr. Larry Moppins asked Mr. Pickett if he was "fucking" Ms. Parker. | N |
| 5 | In the spring of 2016, Ms. Parker was made aware of a rumor about her that portrayed her as having a sexual relationship with a co-worker, Mr. Damarcus Pickett, RCSI's Deputy Program Manager, in order to obtain her managerial position.  Mr. Pickett was a married, higher-ranking manager at RCSI. | N |
| 6 | Mr. Moppins was the highest-ranking manager at the warehouse facility. | N |
| 7 | Mr. Moppins reported directly to the company's owner, Mr. Rajesh Vora. | N |

| # | Proposed Stipulation | Agreed (Y/N) |
|---|---|---|
| 8 | Mr. Moppins had supervisory authority over Ms. Parker. | N |
| 9 | Mr. Moppins had authority to recommend that employees be promoted. | N |
| 10 | Ms. Romaine Thompson, a former RCSI employee, asked Mr. Pickett if he was sleeping with Ms. Parker and said that the "warehouse" was "talking." | N |
| 11 | Mr. Pickett informed Ms. Parker of these questions from Ms. Thompson and Mr. Moppins, and attributed the rumor to Mr. Donte Jennings, an entry-level RCSI employee who previously reported to Ms. Parker. | N |
| 12 | RSCI's Employee Handbook prohibits "verbal . . . conduct of a sexual nature" and "sexual suggestions and descriptions." | N |
| 13 | RCSI's Sexual Harassment Manual instructs employees to "keep conversations clean" and "avoid . . . talk about sex." | N |
| 14 | RCSI's Sexual Harassment Manual instructs employees who have experienced harassment to "inform the alleged harasser they were offended and they expect the behavior to stop immediately," to "put[] the person on notice." | N |
| 15 | RCSI's Sexual Harassment Manual states that only after confronting their harasser and telling them to stop should the complainant go to HR. | N |
| 16 | RCSI's Sexual Harassment Manual applied to all workers at RCSI, including Mr. Moppins. | N |
| 17 | RCSI's Employee Handbook applied to all workers at RCSI, including Mr. Moppins. | N |
| 18 | Ms. Parker confronted Mr. Jennings and other RCSI employees regarding the rumor. | N |
| 19 | On or about April 21, 2016, Mr. Moppins called a staff meeting. | N |
| 20 | Ms. Parker was running a few minutes late for the April 21, 2016 meeting, and she arrived at the conference room with Mr. Pickett. | N |
| 21 | When Ms. Parker and Mr. Pickett arrived at the April 21, 2016 meeting, Mr. Moppins allowed Mr. Pickett to enter, but closed the door and did not allow Ms. Parker to enter. | N |
| 22 | The April 21, 2016 meeting continued on without her, and Ms. Parker's management and alleged conduct was discussed at the meeting. | N |
| 23 | Ms. Parker experienced unwelcome conduct associated with the rumors that she was having a sexual relationship with Mr. Pickett. | N |
| 24 | The unwelcome conduct included: (a) discussions of the rumor that she was having a sexual relationship with Mr. Pickett; (b) exclusion from the April 21, 2016 meeting; (c) the decision to bar her from interacting with Mr. Jennings; and (d) the decision to terminate her. | N |
| 25 | On April 22, 2016, Ms. Parker arranged a meeting with Mr. Moppins. Ms. Angela Wallace, RCSI's Transportation Manager, attended that meeting as a witness. | N |

| # | Proposed Stipulation | Agreed (Y/N) |
|---|---|---|
| 26 | On April 25, 2016, Mr. Moppins arranged a meeting with Ms. Parker Mr. Pickett, and Ms. Wallace. | N |
| 27 | On April 25, 2016, Ms. Parker made a complaint of hostile work environment and retaliation to Ms. Price. | N |
| 28 | Ms. Parker's April 25, 2016 complaint was against Mr. Moppins and Mr. Jennings. | N |
| 29 | Ms. Price documented Ms. Parker's April 25, 2016 complaint, as well as Ms. Price's own notes, in an Investigation Questionnaire. | N |
| 30 | On April 27, 2016, a meeting took place involving Ms. Price, Ms. Parker, Mr. Moppins, and Mr. Pickett, during which Ms. Price encouraged the three managers to apologize to one another and instructed them to put the prior incidents behind them and move on. | N |
| 31 | Ms. Parker left for a pre-approved vacation from May 11, 2016, through May 16, 2016. | N |
| 32 | On May 12, 2016, Mr. Jennings submitted a complaint stating that Ms. Parker "filed a sexual harassment complaint against me; claiming that I had started a rumor about her," and that "[s]ince the time I was made aware of this complaint, Ms. Parker has been creating an uncomfortable work environment for me." | N |
| 33 | On May 13, 2016, Mr. Moppins emailed Mr. Vora and Ms. Price, stating that Ms. Parker "has threatened to file Sexual Harassment charge on me for supposedly starting rumors," noting that he had "been unable to counsel her without her repeatedly stating that I started unfavorable rumors." | N |
| 34 | Mr. Moppins is the author of the two written warnings dated May 16, 2016, which recommend Ms. Parker's termination. | N |
| 35 | Mr. Moppins drafted two written warnings to Ms. Parker on May 16, 2016: (1) one recounting various employees' grievances with Ms. Parker's management style and her manner of confronting them about the rumor, including statements that she allegedly made to Mr. Fergus and Mr. Jennings, criticizing the way she responded to him during their meetings, noting that Ms. Parker was "going to press charges of sexual harassment against [him] for spreading untrue rumors," and recommending Ms. Parker's termination; and (2) one noting that Ms. Parker was given instructions to not visit the work areas of subordinate employees she named in a harassment complaint, but stating that she made inappropriate gestures and expressions to Mr. Jennings, and recommending Ms. Parker's termination. | N |
| 36 | Ms. Price did not recommend what the "corrective action" in the written warnings should be. | N |
| 37 | Mr. Moppins discussed the "corrective action" in the written warnings with RCSI's in-house counsel. | N |
| 38 | Ms. Price prepared an Investigation Report documenting her investigation of Ms. Parker's April 25, 2016 complaint. | N |

| # | Proposed Stipulation | Agreed (Y/N) |
|---|---|---|
| 39 | A meeting was held on May 17, 2016, between Mr. Vora, Ms. Vora, Ms. Price, and Mr. Moppins, the purpose of which was to review the results and recommendations of the Investigation Report that had been prepared by Ms. Price. | N |
| 40 | Ms. Price shared the contents of her Investigation Report with the participants during the May 17, 2016 meeting. | N |
| 41 | On May 18, 2016, Ms. Parker was called to a meeting with Mr. Moppins, Ms. Price, and Ms. Reema Vora, RCSI's in-house counsel. | N |
| 42 | On May 18, 2016, Ms. Parker was given the two warnings drafted by Mr. Moppins, and was terminated. | N |
| 43 | RCSI's Employee Handbook states that RCSI engages in progressive discipline, meaning employees are given an opportunity to correct any issues, and employees are notified of alleged performance problems and permitted to improve performance. | N |
| 44 | Ms. Parker engaged in protected activity when she complained to Mr. Moppins and other employees about the unwelcome conduct she was experiencing. | N |
| 45 | Ms. Parker engaged in protected activity when she made her April 25, 2016 complaint to Ms. Price. | N |
| 46 | RCSI took a materially adverse action when it terminated Ms. Parker. | N |
| 47 | At the time of her termination, Ms. Parker's salary was $69,365 per year. | N |
| 48 | At the time of her termination, Ms. Parker's benefits package was worth $1,387.30 per year (2% of her salary). | N |

**g. The details of the damages claimed or any other relief sought as of the date of the pretrial conference.**

Plaintiff is seeking economic damages to compensate for the time of her unemployment, and the time during which she was employed at a lower-paying job, along with certain fees. Plaintiff requests that economic damages be determined by the Court, rather than the jury.

Plaintiff was wrongfully terminated on May 18, 2016. Plaintiff earned a salary of $69,365 per year plus a benefits package valued at $1,387.30 per year (2% of her salary), for a total compensation package of $70,752.30 per year, $1,360.62 per week. This amount is a measure of Plaintiffs' pay at the time of her termination.

Plaintiff was unemployed from May 18, 2016, until September 19, 2016: 123 days or 17.6 weeks. This yields a lost wages amount of $23,946.91 (17.6 weeks * $1,360.62 per week).

During her unemployment, she offset her lost wages by driving Ms. Parker drove for Lyft during her period of unemployment, earning a total of $795.44. Thus, during this period of time, Ms. Parker's lost wages are at least $23,151.47 (17.6 weeks * $1,360.62 per week = $23,946.91 - $795.44 = $23,151.47).

(Plaintiff received approximately $5,783.40 in unemployment benefits ($680.40 per for 3 weeks plus $340.20 per week for 11 weeks). She received no other benefits.)

Plaintiff began a new job at First Transit on September 19, 2016, earning a salary of $55,000 per year without benefits, amounting to $1,057.69 per week. She worked there until April 14, 2017: 30 weeks. During this period of time, Ms. Parker incurred lost wages at least in the amount of the difference between her ending compensation at RCSI and her compensation during this period of time: i.e., $9,087.90 (30 weeks * ($1,360.62 per week - $1,057.69 per week)).

Plaintiff began another job on April 17, 2017, earning a salary in excess of her salary at RCSI.

Plaintiff also incurred financial penalties following her unlawful termination and as a result of the termination (e.g., late fees for her rent, late fees for tuition payments, late fees for her health care premiums, etc.). Plaintiff estimates that these fees amounted to over $800.

Plaintiff is also entitled to interest at 6%, compounded annually. Six percent of Plaintiff's back pay ($23,151.47 + $9,087.90 = $32,239.37) compounded annually from a year after termination to 2021 (i.e., 4 years) amounts to $40,701.46. This is the amount Plaintiff will request that the Court award.

Plaintiff also seeks the full amount of non-economic damages allowed by law for the size of RCSI: $50,000, including compensatory damages to compensate Ms. Parker for her

humiliation, embarrassment, or mental and emotional distress, as well as punitive damages to punish Defendant for its willful, wanton, or reckless conduct and that would effectively deter Defendant from engaging in similar conduct in the future.  This amount will be determined by the jury.

The total amount of damages, therefore, is $90,701.49 (plus any post-judgment interest awarded by the Court).  Plaintiff is not aware of any relevant liens that would affect damages.

Ms. Parker also seeks recovery of the costs and fees of her attorneys, which encompass district court proceedings through completion of discovery, an appeal to the Fourth Circuit in which Plaintiffs prevailed on 2 of 3 issues, Plaintiffs' successful opposition to a petition for *certiorari* in front of the U.S. Supreme Court, Plaintiff's successful opposition of Defendant's motion for summary judgment, and preparation for this trial.  Plaintiff was also forced to seek assistance from the Court to resolve a discovery dispute, which resulted in RCSI being compelled to produce additional documents and discovery.  Plaintiff will request that the Court calculate an appropriate award of costs and fees.

h.  **A listing of each document or other exhibit, including summaries of other evidence, other than those expected to be used solely for impeachment, separately identifying those which each party expects to offer and those which each party may offer if the need arises. The listing shall indicate which exhibits the parties agree may be offered in evidence without the usual authentication. This requirement may be met by attaching an exhibit list to the pretrial order.**

Plaintiff's Exhibit List

| # | Description | S.J. Ex. # |
|---|---|---|
| 1 | Nov. 26, 2014 Offer Ltr. | 1 |
| 2 | Feb. 15, 2015 Performance Eval. (REEMA000358) | - |
| 3 | Mar. 16, 2015 Offer Ltr. | 2 |
| 4 | May 16, 2015 Offer Ltr. (REEMA000303) | 3 |
| 5 | Jun. 15 2015 Letter of Salary Adjustment (REEMA000302) | - |
| 6 | Sept. 1, 2015 Written Warning re "Process for Verifying Inventory" | 5 |
| 7 | Oct. 9, 2019 Performance Eval. (Price Dep. Ex. 9) | - |
| 8 | Jan. 22, 2016 Ltr. of Employment Verification | 26 |

| # | Description | S.J. Ex. # |
|---|---|---|
| 9 | Jan. 29, 2016 Performance Eval. (Price Dep. Ex. 8) | - |
| 10 | Feb. 23, 2016 Written Counseling – Probationary Letter of Concern | - |
| 11 | March 31, 2016 Performance Eval. | 27 |
| 12 | Apr. 7, 2016 Offer Ltr. (REEMA000281) | 4 |
| 13 | April 25, 2016 Investigation Questionnaire | 16 |
| 14 | Apr. 25, 2016 Email fr. Price to Parker | 17 |
| 15 | Apr. 27, 2016 Email fr. Moppins to Price | 13 |
| 16 | Apr. 27, 2016 Email fr. Price to Parker, Pickett, Moppins | 31 |
| 17 | May 12, 2016 Memorandum re Notif. of Hostile Work Environ. | 18 |
| 18 | May 13, 2016 Email fr. Moppins to Reema Vora, Rajesh Vora, Price | 33 |
| 19 | May 16, 2016 Written Warning re "Poor Management Performance" | 20 |
| 20 | May 16, 2016 Written Warning re "Failure to Follow Instructions" | 21 |
| 21 | May 17, 2016 Investigation Report | 12 |
| 22 | May 17, 2016 Ltr. fr. Parker to Price | 30 |
| 23 | May 17, 2016 email fr. Moppins to Vora, Price (RCSI000138) | - |
| 24 | May 18, 2016 Email fr. Parker to Price | 32 |
| 25 | May 18, 2020 Official Separation of Employment Notice | 22 |
| 26 | May 23, 2016 Stmt. fr. Wallace | 14 |
| 27 | Aug. 24, 2016 Charge of Discrimination | 24 |
| 28 | RCSI Sexual Harassment Policy Manual | 23 |
| 29 | RCSI Employee Handbook | 29 |
| 30 | 2016 U.S. Tax Forms (1 of 2), E. Parker (PARKER_000294) | - |
| 31 | 2016 U.S. Tax Forms (2 of 2), E. Parker (PARKER_000296) | - |
| 32 | Job Applications (PARKER_000305 - PARKER_000430) | - |
| 33 | Parker Notes (Parker Dep. Ex. 13) | - |
| 34 | Cathy Price Notes | 15 |
| 35 | Lyft Payment Statements | - |

| # | Description (Identification Only) | S.J. Ex. # |
|---|---|---|
| ID1 | E. Parker Deposition Transcript (Identification Only | 6 |
| ID2 | L. Moppins Deposition Transcript (Identification Only) | 7 |
| ID3 | D. Pickett Deposition Transcript (Identification Only) | 8 |
| ID4 | C. Price Deposition Transcript (1 of 2) (Identification Only) | 9 |
| ID5 | C. Price Deposition Transcript (2 of 2) (Identification Only) | 9 |
| ID6 | Rajesh Vora Deposition Transcript (Identification Only) | 10 |
| ID7 | A. Wallace Deposition Transcript (Identification Only) | 11 |
| ID8 | K. Birgans Deposition Transcript (Identification Only) | 28 |
| ID9 | Reema Vora Deposition Transcript (Identification Only) | 25 |

Defendant's Exhibit List

| # | Description |
|---|---|
| 100 | 2013.10.01 Larry Moppins Purchase Order Oct 2013 |
| 101 | 2014.11.20 Contingent Offer to Parker |

| 102 | 2014.11.26 Official Offer Letter to Parker |
|---|---|
| 103 | 2014.11.27 Handbook Acknowledgment Executed |
| 104 | 2015.03.16 Parker Performance Evaluation |
| 105 | 2015.06.11 Official Notice of New Compensation Package for Exempt Employees |
| 107 | 2015.07.08 Cell Phone Procedures Memorandum |
| 108 | 2015.10.13 Parker Performance Evaluation |
| 109 | 2016.03.02 Memo - Wallace to Price re Matthews counseling session |
| 110 | 2016.05.02 Harassment Policy Receipt Executed |
| 111 | 2016.05.02 Supervisory Sexual Harassment & EEO Compliance Training Workbook |
| 112 | 2016.05.16 Carlos Carter Witness Statement |
| 113 | 2016.05.18 Unauthorized Deletion of Government Data |
| 114 | 2016.05.23 EEOC Intake Questionnaire |
| 115 | 2016.05.24 RCSI HR Post Assessment Quiz and Training |
| 116 | 2019.05.30 Email re Wrap-Up Session |
| 117 | 2020.06.25 Pickett Letter to Judge Simms |
| 118 | Interpreting Call Detail Records |
| 119 | Cathy Price Notes Produced |
| 120 | T Mobile Records Produced |

i.   **A list for each party of the name, address, and telephone number of each witness, other than those expected to be called solely for impeachment, separately identifying those whom the party expects to present and those whom the party may call if the need arises.**

Plaintiff's Witness List

| Witness | Address | May Call / Will Call |
|---|---|---|
| Evangeline Parker | Contact through counsel | Will Call |
| Lynette Parker | 1705 Montana Ave. NE Washington, DC  20018 | May Call |
| DaMarcus Pickett | 7203 Friendship Road Clinton, MD 20735 | Will Call |
| Angela Wallace | 1428 Northgate Square Unit 21 Reston, VA 20190 | Will Call |
| Kenton Birgans | 17357 Legacy Terrace Round Hill, VA 20141 | May Call |
| Cathy Price | 8123 Heatherton Lane, Apt. 201 Vienna VA  22180 | Will Call |
| Rajesh Vora | 8106 Hallmark Pl. Gaithersburg, MD | Will Call |
| Reema Vora | 3320 Montgomery Dr., Apt. 422 Santa Clara, CA  95054 | May Call |

In addition, Plaintiff reserves the right to call any witness on Defendant's witness list, as well as the deposition designations listed below in Section k.

Defendant's Witness List

| Witness | Address | May Call / Will Call |
|---|---|---|
| Cathy Price | 8123 Heatherton Lane, Apt. 201<br>Vienna VA  22180 | Will Call |
| Larry Moppins | 10305 Lee's Crossing Lane<br>Fredericksburg, VA 22408 | Will Call |
| DaMarcus Pickett | 7203 Friendship Road<br>Clinton, MD 20735 | Will Call |
| Angela Wallace | 1428 Northgate Square<br>Unit 21<br>Reston, VA 20190 | Will Call |
| Rajesh Vora | 8106 Hallmark Pl.<br>Gaithersburg, MD | Will Call |
| Reema Vora | 3320 Montgomery Dr., Apt. 422<br>Santa Clara, CA  95054 | May Call |

As a courtesy to the witnesses, Plaintiff and Defendant have agreed that the scope of the examination of the witnesses may be expanded to avoid having to recall them to the stand.

**j.  A list for each party of the name and specialties of experts the party proposes to call as witnesses including hybrid fact/expert witnesses such as treating physicians.**

    N/A

**k.  A list of the pages and/or lines of any portion of a deposition to be offered in a party's case in chief or any counter-designations under Fed. R. Civ. P. 32(a)(4).**

Plaintiff's Deposition Designations and Defendant's Counter-Designations

| Witness | Designation | Counter-Designation |
|---|---|---|
| Price, Cathy | 17:15-18; 26:18-21; 27:20-25; 28:2-25; 29:2-25; 30:2-25; 31:2-25; 32:2-25; 33:3-25; 34:2-14; 35:9-25; 36:2-25; 37:2-25; 38:2-25; 39:2-25; 40:2-25; 41:2-12; 41:19-25; 42-:2-25; 43:2-3; 43:22-25; 44:2-25; 45:2-3; 48:4-7; 13-16; 49:5-25; 50:2-25; 51:2-14; 51:18-21; 51:22-23; 52:2-18; 53:24-25; 54:2-6; 54:17-25; 55:2-14; 56:18-25; 57:2-23; 58:2-12; 58:18-24; 59:9-25; 60:2-25; 61:2-25; 62:2-24; 63:13-21; 66:3-25; 67:2-25; 68:2-25; 69:2-5; 70:19-25; 71:2-25; 72:2-25; 73:2-22; 74:3-15; 76:24-25; 77:2-9; 77:11-25; 78:2-23; 80:4-22; 81:11-13; 82:15-20; 83:3-25; 84:2-25; 85:2-22; 92:7-12; 95:12-25; 96:2-25; 97:2-18; 97:23-25; 98:2-21; 99:3-19; 99:23-25; 100:2-16; 102:19-23; 103:17-25; 104:2-25; 105:2-25; 106:2-6; 106:15-25; 107:2-7; 109:11-16; 109:18-25; 110:2-25; 111:2-13; | Defendant's Counter-Designations are noted as its Designations below |

| Witness | Designation | Counter-Designation |
|---|---|---|
| | 112:4-10; 113:9-25; 114:2-13; 115:9-12; 116:4-14; 117:3-11; 117:20-25; 118:2-25; 119:2-25; 120:2-17; 120:23-25; 121:2-13; 122:2-4; 122:13-25; 123:2-25; 124:2-5; 126:13-25; 127:2-4; 127:10-22; 128:5-25; 129:2-6; 129:10-25; 130:2-13; 130:24-25; 131:2-3; 131:5-21; 131:23-25; 132:1-6; 132:12-25; 133:2-17; 133:24-25; 134:2-4; 134:14-25; 135:2-3; 137:18-25; 138:2-23; 140:2-5; 141:14-25; 142:2-10; 142:19-25; 143:2-3; 143:5-20; 144:21-25; 145:2-23; 149:14-17; 150:4-7; 150:9-25; 151:2-19; 155:13-17; 155:21-23; 156:2-25; 157:2-3; 157:14-25; 158:2-25; 159:2-19; 160:10-22; 161:8-14; 162:7-18; 164:3-7; 164:22-25; 165:2-11; 166:17-25; 167:3-17; 169:10-25; 170:2-8; 170:18-25; 171:2-19; 173:18-25; 174:2-25; 175:2-22; 176:11-25; 177:2-13; 179:2-9; 179:22-25; 180:2-24; 185:12-25; 186:2-25; 187:2-25; 188:2-20; 189:4-23; 189:25; 190:2-7; 190:12-21; 191:14-18; 191:22-25; 192:2-7; 192:21-25; 193:2-3; 193:17-25; 194:2-8; 194:21-25; 195:2-4; 195:25; 196:2-18; 197:5-25; 198:2-22; 199:2-25; 200:2-17; 201:4-8; 208:4-7; 209:6-11; 209:16-25; 210:2-25; 211:2-24; 215:3-17; 215:24-25; 216:2-21; 217:19-25; 218:2-5; 227:14-25; 228:2-7; 228:22-24; 229:25; 230:2-25; 231:2-13; 231:24-25; 232:2; 233:8-25; 234:2-25; 235:8-25; 236:2; 236:5-25; 237:2-25; 238:2-25; 239:2-9; 240:25; 241:2-7; 241:9-25; 242:2-25; 244:11-25; 245:2-5; 245:13-25; 246:2-25; 247:2-11; 248:21-25; 249:2-25; 250:2-13; 250:15-25; 252:15-17; 252:20-25; 253:2-4; 253:13-21; 255:3-8; 255:10-13; 256:3-5; 256:7-16; 258:7-24; 259:5-25; 260:2-9; 261:2-25; 262:2-25; 263:2-14; 264:3-9; 266:23-25; 267:2-25; 268:2-18; 270:5-22; 272:12-25; 273:2-25; 274:2-15; 274:25; 275:2-15; 276:24-25; 277:2-25; 278:2-25; 279:2-4; 281:8-25; 282:2-25; 283:2-15; 284:22-25; 285:2-24; 288:8-25; 289:2-8; 290:6-19; 290:24-25; 291:2-13; 292:9-17; 293:7-10; 294:10-23; 294:25; 295:2-9; 298:8-10; 301:19-25; 302:2-25; 303:2; 303:10-25; 304:4-23; 305:3-25; 306:2-17; 307:9-12; 309:19-21; 309:23; 310:4-6; 310:8-9; 310:11-12; 310:14-15; 310:17; 310:19; 310:21; 310:23; 310:25; 311:2-17; 314:8-14; 335:22-25; 337:16-25; 338:2-25; 339:2-25; 340:2-19; 353:12-25; 354:2-25 | |
| Moppins, Larry | 6:8-10; 17:18-18:5; 18:6-23; 18:24-19:12; 19:13-23; 20:2-10; 23:19-24:8; 24:11-25:20; 26:11-27:3; 28:9-17; 29:23-30:3; 32:9-11; 32:12-21; 33:5-18; 35:5-14; 37:10-17; 37:18-21; 37:22-38:2; 38:13-24; 38:25-39:9; 68:8-12; 76:11-13; 76:15-16; 78:2-25; 86:4-10; 95:14-18; 86:18-23; | Defendant's Counter-Designations are noted as its Designations below |

| Witness | Designation | Counter-Designation |
|---|---|---|
|  | 87:20-23; 88:4-89:6; 90:4-7; 95:19-96:6; 101:10-24; 101:25-102:6; 102:7-14; 102:15-20; 102:21-23; 106:4-8; 106:25-107:21; 111:6-15; 111:17-20; 112:11-18; 112:20; 103:16-24; 104:11-17; 129:8-130:7; 134:3-135:9; 135:15-136:3; 137:8-23; 139:11-25; 140:22-141:9; 141:16-142:11; 145:2-12; 145:13-18; 145:22-146:2; 166:6-24; 166:25-167:9 |  |
| Vora, Rajesh | 7:10-22; 9:7-12; 9: 18-22; 14:19-15:7; 15:14-21; 16:19-21; 17:13-18:2; 19:2-14; 31:17-32:7; 33:17-34:6; 34:16-35:16; 36:24-37:2; 38:5-13; 38:18-24; 39:14-16; 39:23-41:3; 41:9-11; 42:13-46:2; 46:12-18; 46:24-51:2; 51:17-53:2; 53:23-57:3; 58:7-63:9; 66:10-67:4; 67:14-18; 68:2-21; 71:19-21; 71:23-72:2; 72:12-25; 73:10-23; 73:25; 74:4-6; 74:8-17; 74:19-25; 75:3-24; 76:19-14; 76:16-77:6; 77:8-12; 77:14-79:15; 80:2-4; 80:6-22; 91:10-15; 93:3-94:15; 96:20-97:2; 100:6-101:15; 102:9-103:11; 103:21-104:11; 106:6-16; 106:18-107:9; 111:20-113:16; 113:17-115:14; 116:8-119:9; 119:21-121:12; 121:18-122:12, 122:17-123:9 | Defendant's Counter-Designations are noted as its Designations below |
| Vora, Reema | 6:3-11; 7:21-24; 12:2-21; 14:6-15:10; 26:20-27:4; 27:11-24; 31:8-17; 33:15-34:24; 41:12-42:2; 42:8-10; 43:11-44:12; 66:3-25; 68:8-16; 73:23-74:12 | Defendant's Counter-Designations are noted as its Designations below |
| Wallace, Angela | 7:14-8:2; 11:14-22; 12:15-20; 13:5-10; 14:7-12; 14:22-15:4; 16:21-17:10; 17:14-20; 18:10-19:16; 19:20-20:4; 20:10-12; 21:13-22:1; 22:3-22; 24:14-22; 25:15-18; 26:20-27:20; 37:8-15; 38:10-39:6; 40:22-41:14; 45:10-18; 46:7-10; 47:14-16; 47:19-48:22; 49:2-15; 50:4-6; 50:17-21; 51:9-18; 53:12-54:6; 55:16-56:7; 57:19-58:11; 61:4-9; 61:11-16; 63:5-14; 63:18-65:18; 66:3-7; 66:16-67:4; 71:9-72:2; 80:9-15; 81:5-9; 82:8-83:5; 84:16-21; 86:20-22; 87:4-6; 87:16-22; 88:5-20; 88:22-89:7; 89:14-90:2 | Defendant's Counter-Designations are noted as its Designations below |
| Birgans, Kenton | 8:14-9:4; 12:11-13:9; 13:15-14:11; 14:22-15:9; 15:11-24; 16:1-20; 16:21-25; 17:3-10; 19:1-7; 19:9-20:20; 22:25-23:17; 23:20-25:18; 25:19-26 :9; 26:10-25; 27:14-28:6; 28:18-30:9; 30:11-37:15; 38:7-11; 39:16-18; 41:10-42:16; 43:21-44:24 | Defendant's Counter-Designations are noted as its Designations below |
| Pickett, DaMarcus | 5:8-9; 15:9-12; 15:21-16:17; 19:14-21; 56:1-22; 58:2-60:5; 60:19-61:12; 63:8-10; 63:15-64:4; 64:20-65:7; 65:8-66:5; 66:6-67:9; 85:1-7; 86:1-12; 87:5-17; 88:17-89:2; 96:3-97:9; 97:10-98:3;  98:4-6; 99:5-100:15; 105:10-108:2; 108:19-109:19; 110:8-111:16; 161:20-162:8; 174:1-175:10; 176:8-18; 179:5-180:12; 200:13-201:4; 221:7-1; 238:7-240:17; 269:13-271:5 | Defendant's Counter-Designations are noted as its Designations below |

Plaintiff has indicated that the designations are identified only in the event the witness does not appear to testify.  Defendant reserves all objections as to the testimony at depositions as permitted under the Federal Rules of Civil Procedure and the Federal Rules of Evidence including objections as to form, relevancy and other inadmissibility.

Defendant's Deposition Designations and Plaintiff's Counter-Designations

| Witness | Designation | Counter-Designation |
|---|---|---|
| Parker, Evangeline | 10:16-18; 11:2-13; 12:20; 13:3-4, 12-14, 18-20; 14:7-22; 15:2-3, 8-10, 17-21; 22:5-10; 25:5-26:4; 26:16-19; 28:1-14, 17-21; 29:2-5, 9-17, 19-22; 31:2-12; 31:20-32:2; 32:21-33:15; 34:15-17; 34:21-35:1; 35:5-8; 37:9-19; 38:1-10; 39:15-22; 40:1-4; 41:3-6; 43:2-44:10; 45:9-17; 46:3-7; 47:5-12; 47:19-48:13; 51:3-17; 52:5-53:6; 55:4-18; 56:22-57:13; 57:17-58:18; 61:16-62:5; 62:9-63:17: 64:1-18; 66:13-67:6; 68:1-3; 70:1-71:4; 71:10-14; 72:3-22; 73:3-6; 73:13-22; 74:2-9; 76:8-18; 77:2-8; 79:5-80:20; 81:5-82:9; 82:16-84:5; 84:14-85:2; 85:20-86:20; 87:17-88:2; 88:7-9; 88:20-89:13; 90:7-18; 91:15-92:6; 92:15-93:22; 96:5-99:6; 100:14-101:18; 102:3-103:19; 105:221-106:7; 106:16-21; 107:22-108:22; 109:10-15; 110:16-111:5; 111:7-11; 111:16-112:4; 112:8-9, 12-15; 115:7-10; 115:15-116:10; 119:5-19; 120:7-121:3; 121:13-19; 121:21-122:10; 122:18-123:2; 123:17-124:1; 124: 7-125:20; 127:5-16; 128:7-18; 130:7-131:2; 131:6-11; 131:19-132:9; 132:15-133:22; 134:8-17; 136:6-16; 137:1-5; 137:10-138:1; 138:12-139:11; 140:17-141:1; 141:9-19; 142:4-17; 144:12-22; 145:21-146:3; 146:15-147:19; 148:1-8, 12-13; 148:16-149:10; 149:16-150:22; 151:6-153:9; 154:10-16; 155:1-156:15; 157:2-9, 17-19; 158:3-159:17; 160:8-15; 161:19-162:3; 162:12-163:3; 163:9-164:8; 164:12-16; 165:16-166:10; 168:5-22; 169: 9-170:2; 170:5-171:20; 172:1-17; 174:8-175:20; 176:13-177:20; 179:7-182:22; 183:4-18; 184:4-9, 13-14; 184:17-185:4; 185:13-20; 186:3-5; 186:14-22; 187:7-21; 188:6-14; 188:18-189:18; 190:12-191:10; 191:17-192:2; 193:1-21; 194:19-196:16; 197:3-8; 199:4-22; 200:13-22; 201:1-9; 201:19-202:12; 202:16-203:9; 204:17-205:3; 206:17-208:19; 209:8-210:11; | 10:13-15; 11:1; 12:17-19; 12:21; 15:1; 15:4-7; 25:1-4; 27:11-22; 29:6-8; 31:1; 35:2-4; 38:15-17; 38:18-39:5; 39:6-14; 42:12-43:1; 45:7-8;55:19-56:6; 56:11-13; 62:6-7; 66:3-6; 71:5-9; 82:10-15; 83:5-84:5; 84:12-85:2; 96:19-100:13; 101:19-102:9; 105:19-21; 106:8-15; 109:7-9; 111:6; 111:12-15; 112:5-7; 112:10-11; 117:11-17; 131:16-18; 134:18-135:3; 135:10-18; 142:18-144:4; 145:8-20; 147:20-22; 148:9-11; 149:11-15; 154:18-22; 156:16-157:1; 157:10-16; 159:18-160:7; 164:17-165:1; 172:18-174:7; 183:1-3; 185:5-12; 185:21-186:2; 187:1-6; 187:22-188:5; 189:19-190:11; 191:11-14; 192:3-12; 196:17-197:2; 200:6-12; 201:10-18; 204:10-16; 205:13-19; 211:1-2; 211:15-212:6; 212:9-19; 212:20-213:6; 213:17-214:2; 215:11-15; 215:21-22; 216:6-11; 216:12-17; 216:21-217:1; 219:15-20; 220:2-4; 220:10-15; 223:16-18225:18-226:8; 231:18-232:13; 233:2-235:3; 237:14-239:4; 240:13-14; 241:7-13; 247:7; 251:1-5; 253:6-10; 253:15-254:14; 257:11-18; 258:10-12; 259:12-18; 260:14-22; 261:5-262:21; 266:7-267:6; 268:21-269:8; 270:7-271:3; 272:9- |

| Witness | Designation | Counter-Designation |
|---|---|---|
| | 211:3-10; 212:7-8; 213:7-14; 214:13-215:6; 216:1-5, 18-20; 217:2-5; 218:2-6; 219:10-14; 220:5-;9; 221:3-222:20; 223:19-224:3; 225:2-14; 231:9-17; 232:14-20; 237:19-238:13; 239:17-240:7; 240:15-241:6; 241:14-21; 242:14-244:12; 245:18-246:18; 247:8-11, 15-21; 249:8-10; 250:6-22; 252:4-14; 253:3-5; 253:22-254:1; 254:15-7; 257:4-7; 257:19-258:9; 258:13-15; 258:21-259:11; 259:19-22; 265:17-266:6; 267:7-12; 269:9-10; 269:15-270:6; 271:4-272:8; 272:11-273:16; 274:10-18; 277:12-13; 278:4-6; 279:10-19; 284:6-17; 285:18-22; 287:9-12; 289:12-290:2; 291:9-20; 292:1-7; 293:4-6, 10-11; 293:18-294:1; 295:10-16; 296:9-15; 301:17-302:5; 302:18-21; 305:20-306:17; 306:20-307:14; 307:18-308:22; 309:4-18; 310:10-311:1; 311:12-17; 314:10-21; 315:1-16; 316:6-317:18; 318:6-15 | 10273:17-274:9; 274:19-22; 277:5-11; 277:14-278:2; 278:10-19; 280:2-17; 283:9-284:3; 286:7-287:8; 290:3-13; 290:14-291:2; 292:8-293:3; 293:9; 294:2-15; 295:17-296:8; 297:3-298:12; 301:15-16; 306:18-19; 311:2-11 |
| Price, Cathy | 21:24-22:2-7; 24:7-15; 25:3-26:4; 26:10-28:22; 29:6-21; 30:3-:31:22; 32:5-20; 33:18-21; 34:5-39:23; 40:22-41:9; 41:22-42:12; 42:18-43:3; 43:11-14; 44:11-47:12; 47:24-48:16; 50:6-5; 51:12-14; 52:12-22; 56:18-57:16; 57:24-59:3; 60:12-61:2; 61:18-24; 62:11-24; 65:2-16; 66:16-19; 67:2-68:6; 68:18-25; 71:7-20; 76:24-77:9; 79:24-80:22; 81:3-10; 82:8-13; 84:3-22; 85:19-66:5; 96:3-97:18; 104:3-15; 105:11-106:6; 109:15-110:15; 114:5-13; 114:24-115:20; 116:14-25; 117:20-118:7; 119:23-122:12; 122:16-123:2; 123:7-25; 124:6-125:24; 126:2-17; 127:8-128:4; 128:12-129:2; 129:10-130:2; 132:13-18; 133:8-134:2; 134:14-135:2 136:2-9; 139:4-9; 141:14-142:10; 143:17-20; 145:25-146:2; 146:7-12; 146:18-25; 148:2-6; 148: 22-149:13; 150:4-10; 151:8-25; 152:7-154:7; 154:11-20; 154:25-155:4; 155:13-156:22; 157:10-159:15; 159:20-160:4; 160:11-14; 160:19-161:22; 163, 5-7; 164:3-7; 165:19-166:14; 168:5-13; 169:10-170:8; 171:5-15; 172:23-173:13; 174:3-175:5; 176:2-16; 177:7-13; 178:12-18; 179:11-180:6; 180:12-181:4; 181:14-21; 184:20-185:5; 186:4-9; 186:18-187:13; 188:8-189:3; 189:7-18; 189:25-192:19; 194:21-195:7; 197:21-198:6; 199:13-200:8; 201:9-202:4; 203:5-16; | Plaintiff's Counter-Designations are noted as its Designations above, as well as the following: 13:17-141; 14:9-14; 21:4-23; 22:8-9; 24:6; 43:4-15; 56:17; 106:7-14; 109:10; 111:25-112:3; 113:5-8; 114-14-23; 117:2; 127:5-7; 145:24; 152:2-6; 168:4; 170:12; 172:18-22; 175:23-25; 178:11; 181:5-25; 192:20; 208:3; 209:5-25; 212:2; 212:20; 213:13-15; 219:4-8; 223:20-224:5; 226:15; 227:11-13; 228:8-9; 231:23; 233:6-7; 243:23-25; 244:9-10; 248:7-20; 259:4; 264:22; 266;22; 269:25-270:4; 270:23-271:3; 271:25-272:2; 289:9-14; 294:24; 301:8-18; 303:3-9; 304:24; 318:13 |

| Witness | Designation | Counter-Designation |
|---|---|---|
| | 204:3-205:4; 205:7-13; 210:2-23; 211:25-17; 212:21-213:4; 213:16-214:3; 215:2; 215:7-12; 215:24-216:121; 217:16-218:13; 219:9-220:21; 221:9-222:23; 223:14-19; 224:7-225:16; 226:16-227:7; 228:10-24; 233:9-12; 233:15-234:10; 234:21-25; 237:4-238:14; 239:5-240:25; 243:6-22; 244:21-246:6; 247:12-248:6; 249:13-24; 252:10-14; 252:24-254:2; 254:21-255:5; 255:15-17; 256:3-16; 257:9-21; 258: 16-24; 259:10-260:6; 260:10-25; 261:5-16; 261:24-262:13; 262:17-263:3; 263:8-14; 264:23-266:14; 267:7-268:18; 268:25-269:9; 270:5-22; 272:3-11; 272:19-273:13; 273:25-274:15; 274:21-275:9; 275:16-276:19; 277:8-23; 278:5-12; 278:23-279:4; 280:3-17; 282:20-283:15; 285:5:14; 285:25-286:5; 286:22-287:7289:15-25; 290:11-16; 291:2-13; 292:11-293:17; 294:10-19; 294:25-295:9; 296:19-297:17; 298:8-301:7; 304:4-23; 305:18-306:14; 307:9-12; 309:19-310:3; 310:11-23; 311:18-312:5; 314:8-16; 318:14-319:2; 319:25-320:20; 321:6-15; 351:22-357:6; 357:18-24; 358:5-8. | |
| Birgans, Kenton | 8:20-9:2; 12:15-22; 13:15-22; 14:3-8; 16:1-20; 18:6-25; 19:11-20:4; 20:11-13; 21:6-18; 22:12-21; 22:25-24:14; 24:19-25:18; 26:10-22; 29:4-19; 29:23-30:6; 30:13-14; 30:16-22; 30:24-31:11; 31:15-24; 32:21-23; 33:9-34:21; 35:12-23; 36:5-37:11; 37:22-38:13; 39:1-23; 41:10-14; 41:24-42:12; 42:24-43:13; 43:24-44:14 | Plaintiff's Counter-Designations are noted as its Designations above, as well as the following: 17:24-18:5 |
| Wallace, Angela | 10:6-14; 11:6-7, 11-13; 12:3-8, 15-22; 14:3-6; 23:1-14; 25:1-19; 28:12-19; 29:2-3; 29:8-14; 29:21-30:9; 31:6-32:2; 32:6-15; 33:6-9, 16-19; 34:3-35:3; 35:7-36:7; 39:15-21; 40:22-41:9; 42:1-4, 11-13; 43:2-17; 44:3-6, 15-20; 45:2-6, 10-12; 46:1-3; 47:14-22; 48:1-11; 49:2-22; 50:1-6; 50:22-52:4; 53:19-55:17; 55:16-22; 56:8-20; 57:20-58:1; 59:14-20; 61:4-16; 61:20-62:14; 62:22-63:1; 63:5-14; 63:18-64:2; 64:11-13; 64:21-66:2; 66:4-7, 11-15; 67:5-8; 68:5-7; 68-11-69:1; 69:8-71:1; 71:10-72:2; 72:11-21; 73:3-7; 73:11-17; 77:15-78:5; 7810-21; 7920-80:8; 82:8-19; 83:6-8; 88:21-89:9; 89:14-18; 91:20-92-14; 92:16-93:6 | Plaintiff's Counter-Designations are noted as its Designations above, as well as the following: 5:13-15; 11:4-5; 12:1-2; 23:15-24:13; 29:5-7; 29:15-20; 32:16-21; 35:4-6; 42:7-10; 44:21-45:1; 45:7-9; 56:21-57:1; 62:15-21; 66:8-10; 89:10 |

| Witness | Designation | Counter-Designation |
|---|---|---|
| Pickett, DaMarcus | 15:9-14; 15:21-16:1; 17:5-8; 18:22-19:13; 19:22-20:5; 21:1-19; 22:11-19; 26:2-5; 27:13-18; 27:22-19; 29:14-19; 33:1-10; 35:3-20; 36:2-11; 36:16-20; 37:3-18; 38:12-39:18; 42:16-21; 36:19-47:17; 47:22-49:10; 50:10-53:5; 56:1-57:19; 59:22-60:13; 60:21-61:9; 61:13-15; 62:4-15; 63:11-14; 64:11-19; 65:8-21; 67:1-7, 12-17; 68:1-6; 74:1-19; 75:18-77:18; 81:22-82:4; 82:16-21; 84:8-85:7; 86:1-19; 87:6-89:2; 89:10-17; 91:13-92:20; 95:9-20; 96:4-98:6; 99:1-100:22; 101:13-102:4; 102:16-22; 104:3-6; 105:10-107:16; 109:2-22; 110:8-11; 111:1-3, 11-13; 111:21-112:11; 112:17-113:5; 114:3-115:10; 115:12-16; 115:22-117:2; 118:8-10; 119:3-8; 121:13-17; 122:8-124:5; 124:11-125:20; 126:11-17; 126:20-127:19; 128:3-14; 129:2:16; 130:12-21; 131:8-13; 132:11-133:7; 133:11-135:10; 135:18-136:9; 137:3-138:1; 138:13-19; 139:7-140:8; 141:10-14; 141:18-142:16; 143:19-144:7; 145:8-17; 146:16-147:12; 150:11-151:9; 151:19-154:21; 162:9-15; 163:7-16; 165:7-13; 166:1-9; 167:9-12; 169:12-21; 180:19-181:2; 185:4-11; 186:16-187:15; 189:18-190:2; 193:5-194:12; 201:8-22; 203:6-9; 204:11-205:8; 206:14-20; 207:16-208:1; 211:5-16; 213:14-19; 217:15-22; 218:16-219:1; 219:13-15; 220:19-222:10; 227:1-5; 230:10-11; 231:12-14; 232:9-18; 233:1-9; 234:13-18; 35:16-23611; 238:7-241:4; 242:7-21; 243:6-12; 252:11:15; 252:21-256:13; 262:3-263:18; 267:10-22; 268:10-12; 268:16-269:12; 271:6-272:15; 273:9-274:1; 274:15-20; 275:2-20 | Plaintiff's Counter-Designations are noted as its Designations above, as well as the following: 17:9-21; 18:17-21; 28:13-19; 29:7-13; 31:3-12:12; 49:11-50:9; 91:7-12; 101:1-12; 103:1-11; 111:17-20; 117:7-10; 118:2-7; 118:11-119:2; 119:17-121:12; 122:5-7; 124:6-10; 126:18-19; 127:20-128:2; 130:22-131:7; 132:1-10; 141:15-17; 145:18-146:15; 151:10-18; 165:14-22; 167:1-8; 180:13-18; 184:6-185:3; 187:18-22; 194:13-22; 202:1-203:5; 204:3-10; 205:9-206:13; 207:3-15; 210:5-211:4; 212:16-213:13; 217:3-14; 219:2-12; 219:16-220:18; 222:11-21; 230:9; 230:12-231:11; 233:20-234:12; 235:7-15; 236:12-19; 241:5-18 |
| Moppins, Larry | 6:21-24; 16:19-24; 18:4-19; 18:24-25; 19:11-23; 20:2-10; 20:18-23; 22:20-23:10; 23:19-27:22; 28:9-29:11; 29:16-17; 29:23-30:3; 30:7-11; 30:21-25; 31:3-10, 14-16; 32:9-11; 33:15-34:5; 35:8-14; 36:2-24; 37:5-38:1; 38:5-39:9; 41:2-6; 41:14-20; 41:24-42:11; 43:5-7; 43:9-44:6; 44:13-16; 45:6-10; 46:7-24; 47:6-10; 47:14-48:3; 48:16-49:4; 49:24-51:22; 52:10-53:8; 53:16-20; 55:21-56:8; 57:2-7, 12-21; 58:11-17; 59:7-14; 60:22-61:5; 61:12-17; 63:7-12; 63:23-65:10; 66:19-67:16; 67:22-23; 68:8-69:14; 70:5-71:5; 71:21-72:5; 72:24-74:25; | Plaintiff's Counter-Designations are noted as its Designations above, as well as the following: 20:13-17; 20:24-25:8; 22:11-19; 29:18-22; 30:4-6; 30:12-20; 38:3-4; 41:7-12; 44:17-18; 45:21-46:6; 47:11-13; 48:4-15; 49:8-12; 57:8-9; 59:3-6; 60:21; 77:4-7; 90:19-21; 91:4-10; 91:22-92:4; 95:7-13; 100:16-17; 102:24-103:6; 104:18- |

| Witness | Designation | Counter-Designation |
|---|---|---|
| | 75:19-21; 76:3-77:3; 77:8-79:15; 79:23-83:12; 84:20-86:17; 87:20-88:3; 88:13-89:3; 89:22-90:18; 91:11-18; 92:5-95:6; 96:7-97:20; 97:25-98:4; 100:8-15; 100:23-101:4; 101:10-102:20: 103:7-104:10; 105:7-8; 106:25-107:16; 108:11-20; 109:5-14; 109:18-110:9; 110:17-23; 111:13-24; 112:8-20; 113:2-20; 115:8-16; 116:7-9; 116:12-118:25; 119:7-9, 12-24; 120:18-22; 121:5-15; 122:2-9; 123:20-124:16; 124:20-125:11; 125:14-17; 126:10-12; 126:16-127:9; 127:14-19; 128:11-18; 128:21-23; 129:12-15; 130:8-131:7; 131:12-132:20; 133:3-134:2; 134:9-13; 135:2-14; 135:24-136:6; 137:2-138:5; 138:12-17; 139:14-140:14; 140:24-141:11; 141:18-142:2; 142:18-145:18; 145:22-146:1; 146:6-10; 147:5-15; 147:21-148:7; 148:13-149:15; 150:4-151:5; 152:2-6; 153:10-155:9; 1582-159:15; 161:3-8; 162:11-163:16; 164:6-165:25; 166:20-173:7 | 105:6; 108:25-109:4; 109:15-17; 111:25-112:7; 115:17-116:6; 120:24-121:4; 121:16-25; 126:4-6; 127:10-13; 127:20-23; 128:19-20; 131:8-11; 136:7-11; 138:6-11; 141:12; 157:19-25 |
| Vora, Rajesh | 14:19-15:7; 15:22-16:8; 17:12-18:2; 18:11-19; 20:16-18; 21:7-13; 23:4-24; 27:8-28:4; 30:14-18; 30:23-31:6; 31:17-32:11; 32:21-22; 33:17-24; 34:16-35:16; 36:18-23; 38:11-12; 41:4-11; 43:17-25; 60:24-61:11; 61:21-62:3; 66:23-24; 67:9-18; 69:14-70:17; 71:19-72:2; 72:16-25; 73:10-74:12; 76:10-77:9; 78:21-79:15; 80:2-11; 81:2-3; 82:2-20; 82:24-83:3; 83:22-84:8; 86:16-25; 91:16-20; 92:11-24; 94:10-15; 96:20-97:2; 98:23-99:15; 99:21-24; 100:3; 100:10-16; 100:23-25; 103:9-17; 105: 12-25; 106:18-20; 108:10-15; 109:6-11; 110:4-6, 8-10, 14-20; 111:3-10; 112:19-22; 115:2-7; 116:13-24; 118:12-15; 118:23-119:14; 122:6-9 | Plaintiff's Counter-Designations are noted as its Designations above, as well as the following: 80:23-25; 81:16-25; 82:21-23; 84:9-10; 103:18-20; 106:2-5; 109:24-25; 110:2-3; 110:7; 110:11-13 |
| Vora, Reema | 13:17-15:25; 16:16-17:5; 18:3-19:10; 20:4-20; 21:-22:6; 22:16-18; 23:14-24:3; 25: 20-26:10; 27:22-28:4; 28:11-25; 30:11-24; 31:4-13; 31:18-20; 32:17-33:14; 34:21-24; 38:20-22; 39:10-13; 43:2-4; 43:11-25; 44:9-12; 46:12-47:11; 53:8-54:3; 57:10-24; 58:3; 59:19-22; 59:25-60:14; 61:16-24; 62:9-25: 68:8-25; 69:6-8; 72:2-12; 73:10- 19; 73:23-74:15 | Plaintiff's Counter-Designations are noted as its Designations above, as well as the following: 21:21; 29:11-25; 30:2-10; 30:25; 31:2-3; 31:21; 31:24-25; 32:2-16; 43:9; 71:8-25; 73:7-9 |

Defendant has indicated that the designations are identified only in the event the witness does not appear to testify. Plaintiff reserves all objections as to the testimony at depositions as permitted under the Federal Rules of Civil Procedure and the Federal Rules of Evidence

including objections as to form, relevancy and other inadmissibility.  By way of example, Plaintiff objects to incomplete designations, including those that include just an answer without the question, or partial answers.

**l.    Any other pretrial relief, including a reference to pending motions, which is requested.**

Plaintiff's Motions <em>in Limine</em>

| # | Motion |
|---|--------|
| 1 | Preclude Defendant from presenting the *Faragher*/*Ellerth* defense |
| 2 | Preclude any argument or evidence that Defendant is not liable because any unwelcome conduct was based on conduct rather than sex |
| 3 | Preclude any argument or evidence regarding Plaintiff's sexual history unrelated to the false rumor of an affair with Mr. Pickett |
| 4 | Preclude any argument or evidence regarding Plaintiff's prior criminal history and/or arrest(s) |
| 5 | Preclude any argument or evidence regarding alleged deletion of data from company-provided cell phone |
| 6 | Preclude any argument or evidence regarding testimony from Carlos Carter regarding alleged hearsay statements provided by Kenton Birgans |
| 7 | Preclude any argument or evidence regarding any other discrimination actions, legal complaints, or lawsuits initiated by Ms. Parker |
| 8 | Preclude any argument or evidence regarding damages, costs, or fees not to be decided by the jury |

Defendant's Motions <em>in Limine</em>

| # | Motion |
|---|--------|
| 1 | Exclude evidence offered of rumors by others outside of the workplace |
| 2 | Exclude all bald references to a rumor without the foundation of the substance of the rumor or who communicated the rumor |
| 3 | Exclude evidence of Larry Moppins' employment after RCSI and any allegations of improper conduct at any subsequent workplace |
| 4 | Exclude evidence of Larry Moppins' behavior or comments not heard by Plaintiff, to include, but not limited to, comments with a perceived sexual connotation and/or related to his genitals; |
| 5 | Exclude any evidence that suggests Romaine Thompson or any other employees were harassed while working at RCSI |
| 6 | Exclude all reference to the procedural history of this case, to include the Fourth Circuit's decision, the petition for writ of certiorari to the United States Supreme Court, this Court's Motion for Summary Judgment Opinion, and this Court's rulings on Discovery Disputes |
| 7 | Exclude evidence from witnesses suggesting that Cathy Price "spreads rumors" which were not part of any rumor involving the Plaintiff |

**m.  Any other matters added by the Court.**

<u>Defendant's Request for Pretrial Instruction on Hostile Work Environment</u>

Defendant desires to have the Court provide a Pretrial instruction to the jury which appropriately cautions the jury against confusing the colloquially used term "hostile work environment" with what is recognized under the law. The term is used frequently in the vernacular as a descriptor for a workplace which is difficult to work in for any variety of reasons from violence to abusive behavior and difficult personalities. Since lay witnesses are not permitted to provide a conclusion on the ultimate issues and this phrase is used so haphazardly, Defendant will be unfairly prejudiced if any witness uses the term and Defendant believes it is necessary to advise the jury at the beginning of the trial consistent with recognized court precedents as to what is *not* included as a hostile work environment.

Defendant would like the following instruction provided:

The phrase "hostile workplace" is used frequently in social media and in the public forum. The use of that phrase has a very peculiar meaning under the law as it relates to Title VII. The Supreme Court has made clear that not every slight, insult, or indignity provides a basis for liability under Title VII. Normally petty slights, minor annoyances, and simple lack of good manners are not the type of behavior rising to the level of deterring an individual from making or supporting a discrimination charge. The Supreme Court has cautioned that the standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.

Title VII not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory "conditions of employment."[1]

Plaintiff objects to this instruction in its entirety. First, the instruction is highly misleading and confusing by omission: while it focuses on what "is not" a hostile work environment, it omits Supreme Court case law that, for example, discusses the importance of enforcement of Title VII to eradicating discrimination in the American workplace. *See, e.g., Albermarle Paper Co. v. Moody*, 422 U.S. 405 (1975) ("It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination . . . The terms "complete justice" and "necessary relief" have acquired a clear meaning in such circumstances."); *see also Griggs v. Duke Power Co*., 401 U.S. 424 (1971) ("The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of [] employees over other employees.") Second, the references in this instruction to the Supreme Court are unduly misleading and prejudicial, in that they will

---

[1] *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

improperly suggest to the jury that the jury should give more weight to this instruction than other instructions. Third, Defendant has provided no reason for giving such an extraordinary instruction in this case, nor citations to any other cases in which such an instructions has been used. Fourth, this instruction does not contain the required citation of each sentence to legal authority as required by this Court's order. If Defendant's request for this instruction is granted, Plaintiffs requests an opportunity to craft a counter-veiling instruction based on *Albermarle* and other cases.

**n.  Attachments**

Pursuant to the Court's pre-trial scheduling order, attached hereto are: (1) the parties' joint proposed voir dire questions; (2) the parties' joint proposed verdict form; and (3) the parties joint proposed jury instructions.

Dated: November 8, 2021

By: /s/ Andrew R. Kopsidas
Andrew R. Kopsidas (Bar No. 16057)
Ahmed J. Davis (Bar No. 17812)
Joseph V. Colaianni (admitted *pro hac vice)*
Daniel A. Tishman (admitted *pro hac vice*)
Taylor Burgener (admitted *pro hac vice*)
Tracea L. Rice (admitted *pro hac vice*)
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Dennis A. Corkery (Bar. No. 19076)
Joanna K. Wasik (Bar. No. 21063)
**WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS**
700 14th Street NW, Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010

*Counsel for Plaintiff Evangeline J. Parker*

By: /s/ Donald J. Walsh
Donald J. Walsh (Bar No. 09384)
Marie J. Ignozzi (Bar No. 29762)
**WRIGHT, CONSTABLE & SKEEN, LLP**
7 St. Paul Street
18th Floor
Baltimore, Maryland 21202
Telephone: (410) 659-1320
Facsimile: (410) 659-1350

*Counsel for Defendant Reema
Consulting Services, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

EVANGELINE J. PARKER,

    Plaintiff,

    v.

REEMA CONSULTING SERVICES, INC.,

    Defendant.

Civil Action No. TDC-17-1648

**VOIR DIRE QUESTIONS**

**I.**    **General Questions**

1. This trial is estimated to take up to six days, ending no later than December 20, 2021. Is there any substantial reason that you cannot serve as a member of the jury in this case during this time period?

2. Do you have difficulty seeing or hearing, or have any physical condition, mental health condition, or any other medical issue that would prevent you from sitting as a juror in this case?

3. Do you have any difficulty understanding the English language to the extent that it would prevent you from following the testimony in this case?

4. Do you recognize anyone else in this courtroom today, including your fellow jurors?

5. Have you or a member of your immediate family ever been a party, as a plaintiff or defendant, in a civil lawsuit?

6. Have you ever served as a juror in a civil lawsuit? If so, is there anything about your experience that would prevent you from rendering a fair and impartial decision in this case?

{00446151v. (15424.00002)}

7.   Have you or a member of your immediate family attended law school or been employed in the legal profession?

## II.   Knowledge of the Case or Parties

8.   This case involves a Complaint filed by Evangeline Parker, who alleges that she was wrongfully terminated by Reema Consulting Services, Inc. ("RCSI") in 2016 based on rumors in the workplace.  Have you heard of this case or the facts of this case prior to today?

9.   The Plaintiff, the party bringing this lawsuit, is Ms. Evangeline Parker.  Do you know Ms. Parker or a member of her immediate family either socially, professionally, or otherwise?

10.   The Defendant in this case is Reema Consulting Services, Inc.  Have you or a member of your immediate family ever done business with or been employed in any capacity by Reema Consulting Services?

11.   The attorneys for Ms. Parker in this case are Andrew Kopsidas, Ahmed Davis, Joseph Colaianni, Daniel Tishman, Taylor Caldwell, and Tracea Rice from Fish & Richardson P.C., and Dennis Corkery, Joanna Wasik, and Naomi Rodriguez from the Washington Lawyers' Committee for Civil Rights and Urban Affairs. The attorneys for Reema Consulting Services are Donald Walsh, Marie Ignozzi, and Alanna Casey from Wright, Constable & Skeen, LLP.  Do you or a member of your immediate family know any of these attorneys, either personally or professionally, or ever been represented by one of these attorneys or their law firms?

12.   Do you or a member of your immediate family know any of the following individuals, who may be witnesses in this matter:

- Evangeline Parker of Oxon Hill, MD

- Lynette Parker of Washington, DC

- DaMarcus Pickett of Clinton, MD

- Angela Wallace of Reston, VA

- Kenton Birgans of Round Hill, VA

- Cathy Price of Vienna VA

- Rajesh Vora of Gaithersburg, MD

- Reema Vora of Santa Clara, CA

- Larry Moppins of Maryland

**III.    History with Issues in the Case**

13.    Have you or a member of your family ever pursued a claim for employment harassment or been accused of committing employment harassment (this may be internally with an employer, at the EEOC or with a State or other federal agency)?  If so, are you able to set aside any involvement you or your family member had in a harassment claim and assess this case based solely on the law and the facts as presented to you?

14.    Have you or a member of your immediate family ever been party to an employment harassment lawsuit?  If so, are you able to set aside any involvement you or your family member had in a harassment lawsuit and assess this case based solely on the law and the facts as presented to you? If so, are you able to set aside any involvement you or your family member had in the investigation and assess this case based solely on the law and the facts as presented to you?

15.    Have you or a member of your family ever been involved in a workplace harassment investigation?

16. Do any of you have any preconceived opinions or feelings, whether positive or negative, about women who claim gender discrimination at work? If so, are you able to set aside your pre-conceived views and assess this case based solely upon the law and facts as presented to you?

17. Have you or any family member been employed in a human resources position or other similar position that involved administration or application of the anti-discrimination laws?

18. Have you ever received training on harassment or discrimination from an employer or performed training on harassment or discrimination on behalf of an employer? If so, are you able to set aside anything you learned from such training and assess this case based solely on the law and facts presented to you in this case?

**IV.   Ability to be Fair and Impartial**

19. If you are selected as a juror in this case, is there any reason that you would not be able to render a verdict solely on the evidence presented at trial?

20. If you are selected as a juror in this case, is there any reason that you would not be able to follow my instructions on the law that applies in this case, even if you disagree with it?

21. Is there any other reason that I have not asked about that would prevent you from serving as a juror on this case in a fair and impartial manner?

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

EVANGELINE J. PARKER,

   Plaintiff

v.

REEMA CONSULTING SERVICES, INC.**,**

   Defendant.

Civil Action No. 8:17-CV-01648-TDC

<u>**VERDICT FORM**</u>

We, the Jury, unanimously find the following:

1.  Did Ms. Parker establish, by a preponderance of the evidence, that RCSI created a hostile work environment based on Ms. Parker's sex?

   _____ YES    _____ NO

2.  Did Ms. Parker establish, by a preponderance of the evidence, that RCSI illegally retaliated against Ms. Parker?

   _____ YES    _____ NO

3.  If you answered YES to either Questions 1, 2, or both, what amount, if any, do you award Ms. Parker as compensatory damages?

     AMOUNT: $_____

4.  Do you find that punitive damages should be assessed against RCSI?

   _____ YES    _____ NO

5.  If you answered "YES" to Question 5, what amount do you award in punitive damages?

     AMOUNT: $_____

DATED: December ___, 2021    _____
              Signature of the Foreperson

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

EVANGELINE J. PARKER,

    Plaintiff,

    v.

REEMA CONSULTING SERVICES, INC.,

    Defendant.

Civil Action No. TDC-17-1648

## JURY INSTRUCTIONS

{00446152v. (15424.00002)}

**TABLE OF CONTENTS**

I.     ROLE OF THE COURT AND JURY ................................................................ 1

       1.     Introduction ............................................................................................ 1

       2.     Role of the Court ................................................................................... 2

       3.     Jury to Disregard Court's View ............................................................ 3

       4.     Role of the Jury ..................................................................................... 4

       5.     All Parties Equal Before the Law ......................................................... 5

II.    Principles of Evaluation ..................................................................................... 6

       6.     Evidence ................................................................................................. 6

       7.     Inferences ............................................................................................... 8

       8.     Direct and Circumstantial Evidence ..................................................... 9

       9.     Witness Credibility ............................................................................. 10

       10.    Prior Inconsistent Statements ............................................................. 12

       11.    Interest in Outcome ............................................................................. 13

       12.    Burden of Proof ................................................................................... 14

III.   Liability ............................................................................................................ 16

       13.    Claims .................................................................................................. 16

       14.    Retaliation ........................................................................................... 17

       15.    [Parker: Protected Activity ................................................................. 20

       16.    [RCSI: Intent ....................................................................................... 21

       17.    Causation ............................................................................................. 22

       18.    Hostile Work Environment .................................................................. 23

       19.    Knew or Should Have Known About the Harassment ......................... 25

       20.    Severe or Pervasive to Alter Terms and Conditions ........................... 26

       21.    [RCSI: Whether Conduct is Severe and Hostile ................................. 28

       22.    Supervisor ............................................................................................ 30

       23.    Based on Sex ........................................................................................ 31

       24.    Prompt Remedial Action ...................................................................... 32

       25.    [RCSI: Spoliation ................................................................................ 33

IV.    Damages ............................................................................................................ 34

       26.    Consider Damages Only If Necessary ................................................. 34

       27.    Compensatory Damages ....................................................................... 35

28.    Punitive Damages ................................................................................... 37

V.    Jury Deliberations ................................................................................................ 39

29.    Deliberation and Verdict......................................................................... 39

## I.  ROLE OF THE COURT AND JURY

### 1.    Introduction

Ladies and gentlemen, now that all the evidence has been presented, let me thank you for your promptness in following our schedule, for your attention throughout this case, and for your patience when it has been necessary to have discussions out of your presence.  Before the attorneys deliver their closing arguments, I will now instruct you on the law that applies in this case.  The instructions should assist you in following the arguments and will be your guide as you conduct deliberations.

It has been clear to me and the attorneys that up to now, you have faithfully discharged your duty to listen carefully and observe each witness who testified.  I ask you to give me that same careful attention as I instruct you on the law. You will receive a written version of these instructions to take into the jury room, so you do not need to take notes.

## 2.    Role of the Court

As I mentioned at the outset of the trial, the functions of the judge and the jury are different. During the trial, it was my duty to decide what testimony and evidence is relevant under the law for your consideration. Now that you have heard all of the evidence in the case, it is my duty as the trial judge to instruct you as to the law that applies to this case. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

You are required to follow the law as I define it for you. If any attorney has stated or states a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room. You should not be concerned about the wisdom of any rule that I state.

Regardless of any opinion that you may have as to what the law may be—or ought to be— it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

### 3.    Jury to Disregard Court's View

Since you are the sole and exclusive judges of the facts, I do not have, and do not mean to convey, any opinion as to the facts or what your verdict should be.  Anything I have said during the trial, including the rulings I have made during the trial, are not any sign of any view of what your decision should be.  I have not expressed, and have not intended to offer, any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence.  If any expression of mine has seemed to convey an opinion relating to any of these matters, I instruct you to disregard it.

**4.      Role of the Jury**

As members of the jury, it is your duty to pass upon and decide the factual issues in this case.  You are the sole and exclusive judges of the facts.  You consider and weigh the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

In carrying out your function as judges of the facts, you must be fair and impartial, without bias or prejudice to any party, or sympathy for any party.  All parties to a civil lawsuit are entitled to a fair trial and a fair and impartial decision by the jury.  You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.  If you let bias, prejudice, or sympathy interfere with your clear thinking, there is a risk that you will not arrive at a just verdict.

**5.        All Parties Equal Before the Law**

During the course of the trial, you have heard references to the terms "plaintiff" and "defendant." The plaintiff is the person who starts a lawsuit and the defendant is the person or organization who is sued by the plaintiff.

During your deliberations, you must not attach any significance to the terms "plaintiff" and "defendant." The fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that the plaintiff's evidence is entitled to greater weight than the defendant's evidence.

In this case, one of the parties is a corporation.  All litigants are equal before the law, and a corporate entity is entitled to the same fair consideration as you would give any individual party.

## II.  PRINCIPLES OF EVALUATION

**6.       Evidence**

In determining the facts, you must rely upon your own recollection of the evidence.  You may consider not only the evidence referred to by the attorneys in their arguments, but also any evidence in this case which you may believe to be material, even if not referred to by the attorneys.

The evidence in this case consists of the sworn testimony of witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted by stipulation.  When the attorneys on both sides stipulate to the existence of a fact, the jury must accept the fact as proven.

You are to consider only the evidence presented, and you may not guess or speculate as to any fact not presented as evidence.   Let me remind you what is not evidence.

The fact that this lawsuit was filed is not evidence, and you may draw no inference from that fact.

What I may have said during the trial or what I may say in these instructions is not evidence.

What the lawyers have said in their opening statements and their closing arguments is not evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

Statements of the attorneys, including their objections and their questions, are not evidence.  A question put to a witness is never evidence; it is only the answer which is evidence.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true and asked the witness if the statement was true.  If the witness denied the truth of the statement, or if the question was not answered, or an objection to the question was sustained, then

you may not consider the fact to be true simply because it was contained in a lawyer's question.

Any answer that I directed you to disregard, or any evidence that I directed struck from the record is not evidence, and you must dismiss it from your mind, completely and entirely.  If I instructed you that certain evidence was admitted for one purpose only, you may not consider it for any other purpose.

From time to time I have been called upon to pass upon the admissibility of certain evidence, such as by ruling on objections to questions.  You should not be concerned with my rulings or the reasons for those rulings, and you are not to draw any inferences from them.  In admitting evidence to which an objection has been made, I did not determine what weight should be given to such evidence, nor did I pass judgment on the credibility of the evidence.  For any question to which I sustained an objection, you must not guess what the answer might have been, and you must not speculate as to the reason the question was asked or the reason for the objection. You should not speculate about the nature or effect of any discussions I had with counsel outside of your hearing or sight.

**7.      Inferences**

In your consideration of the evidence, you are not limited to the statements of the witnesses or the words in an exhibit.  In other words, you are not limited to what you see and hear as the witnesses testify.  You are permitted to draw, from facts which you find have been proved, such reasonable inferences as you find to be justified in light of your own experience.

Inferences are deductions or conclusions which reason and common sense lead the jury to draw from facts which have been established by the evidence in the case.

**8.    Direct and Circumstantial Evidence**

The role of inferences in your consideration of the evidence is illustrated by the difference between the two types of evidence from which a jury may properly find the truth as to the facts of a case:  direct evidence and circumstantial evidence. The law makes no distinction between direct and circumstantial evidence.  Circumstantial evidence is of no more or less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted. A case may be proven by direct evidence alone, circumstantial evidence alone, or a combination of the two.

Direct evidence is direct proof of a fact, such as testimony of an eyewitness as to what he or she saw, heard, or observed.  For example, if a witness came into this courtroom and testified that she had just been outside and saw that it was raining, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  To give an example, suppose that when you came into the courthouse today, the sun was shining and it was a nice day.  Then later, as you were sitting here, someone walked in with a dripping wet umbrella and wet raincoat.  Because you cannot look outside of the courtroom and cannot see whether or not it is raining, you have no direct evidence of that fact.  But from the combination of the facts you observed about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun to rain. That is all there is to circumstantial evidence.  Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact.  Please note that using circumstantial evidence, or more broadly, drawing inferences from facts in evidence, is not a matter of guesswork or speculation.  In drawing inferences, you should exercise your common sense and everyday experience.

**9.      Witness Credibility**

You should also use your common sense and everyday experience for another important part of your consideration of the evidence:  determining how believable each witness was in his or her testimony.  In order to find the facts in this case, you will need to make judgments about the testimony of the witnesses you have listened to and observed. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

You watched each witness testify.  Everything a witness said or did on the witness stand counts in your determination.  You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  Among the factors you should consider are:

1.      The witness's opportunity to see, hear, or know the facts about which he or she testified;

2.      The witness's memory and level of recall of the events;

3.      Whether the witness's recollection of the facts stands up in light of the other evidence in the case, whether it was consistent with or contradicted by other evidence;

4.      Whether the witness's testimony was consistent with other statements he or she made during testimony or at an earlier time;

5.      The witness's demeanor in testifying;

6.      Any relationship the witness may have with any party that may affect how he or she testified;

7.      Any interest, financial or otherwise, that the witness may have in the outcome of the case; and

8.      Any bias, prejudice, or hostility the witness may have for or against any party.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter when you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection. Always remember that you should use your common sense, your good judgment, and your own life experience.

You need not believe a witness even though the testimony is uncontradicted. You may believe all, part, or none of the testimony of any witness. The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence, but which witnesses and evidence appeal to your minds as being most accurate and otherwise trustworthy.

**10.    Prior Inconsistent Statements**

You have heard evidence that at some earlier time a witness has said or done something which counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability.  Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who may have contradicted him or herself.  If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**11.     Interest in Outcome**

In evaluating credibility of the witnesses, you should take into account any evidence that the witness who testified may benefit in some way from the outcome of this case.  Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.

This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely.  It is for you to decide to what extent, if at all, the witness's interest has affected or colored his or her testimony.

**12.    Burden of Proof**

Once you have considered all of the evidence, you will need to decide on a verdict.  In so doing, you must understand and apply the burden of proof.  In a civil action like this one, the plaintiff has the burden of proving her case by a preponderance of the evidence.

To prove a claim "by a preponderance of the evidence" means to prove that something is more likely than not.  In other words, a preponderance of the evidence means evidence that, when considered and compared with the evidence opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence—the party must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of evidence.

In determining whether a party has met the burden of proof, you should consider the quality of all of the evidence, regardless of who called the witness or introduced the exhibit, and regardless of the number witnesses and exhibits which one party or another may have produced.

If after considering all of the evidence you are satisfied that the plaintiff has carried the burden of proof on a particular claim, then you must find for the plaintiff on that claim.  If after

such consideration you find that the plaintiff has failed to sustain the burden of proof, you must

find for the defendant on that claim.

## III.    LIABILITY

**13.    Claims[1]**

[Parker: The plaintiff, Ms. Parker, claims that Reema Consulting Services, Inc. ("RCSI") retaliated against her in violation of the Civil Rights Act of 1964.  Ms. Parker also claims that she experienced a hostile work environment based on her sex in violation of the Civil Rights Act.

The issues that you must decide are whether:

1.    Ms. Parker has proven by a preponderance of the evidence that RCSI retaliated against her for complaining about sexual harassment when it terminated her in 2016; and

2.    Whether Ms. Parker has proven by a preponderance of the evidence that she experienced a hostile work environment based on her sex.

If you conclude that Ms. Parker has proved either of these two issues, or that she proved both of these two issues, you are to consider an award of compensatory damages to her.  If you conclude that Ms. Parker did not prove the retaliation claim and also did not prove the hostile work environment claim, you are to find for the defendant.]

---

[1] **Defendant:** This is not an instruction but just telling the jury about what claims Parker has and is confusing. There are instructions below on retaliation & hostile work environment making this duplicative.

**Plaintiff**: This preamble instruction correctly states the law and will help frame the issues for the jury.

{00446152v. (15424.00002)}                    16

14.    **Retaliation**

Ms. Parker claims that she was retaliated against by RCSI for engaging in activity protected by Title VII of the Civil Rights Act, [RCSI: that being that she was terminated from her employment after she reported to RCSI that there was rumor spread about her that she engaged in an office affair with another employee] [Parker: Ms. Parker claims that she filed a hostile work environment and retaliation complaint and verbally opposed the false rumor spread about her, and that RCSI retaliated against her by terminating her employment][2].

It is unlawful for an employer to retaliate against an employee for engaging in activity protected by Title VII.[3] To prove unlawful retaliation, Ms. Parker must prove by a preponderance of the evidence that:

1.    Ms. Parker engaged in protected activity by making a complaint of hostile work environment [RCSI: based on sex] [Parker: or retaliation, or otherwise opposing actions that Ms. Parker reasonably and in good faith believed were a hostile work environment or retaliation][4];

2.    [RCSI: That Ms. Parker reasonably and in good faith believed it was a hostile work environment based on sex];

---

[2] **Plaintiff**: Defendant's proposed instruction is written in a confusing manner. It also fails to adequately capture the full definition of protected activity under the law, which encompasses both reports to employers and also opposition to a hostile work environment in progress. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015).

[3] *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) ("an employee is protected from retaliation when she opposes a hostile work environment that, although not fully formed, is in progress."); *Okoli v. City of Baltimore*, 648 F.3d 216, 223-24 (4th Cir. 2011) (complaint to supervisors about harassment qualifies as protected activity); *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 248 (4th Cir. 2000).

[4] **Plaintiff**: *See generally Boyer-Liberto,* 786 F.3d 264; *see also* Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII-Retaliation). Defendant's instruction incorrectly deletes the term "or retaliation." The record in this case shows that Ms. Parker filed a complaint of hostile work environment and retaliation, as reflected by the testimony of Defendant's own 30(b) (6) witness and its record files. *See* Price Dep. 162:7-18; 187:18-25; Reema000232.

3.    [RCSI: Ms. Parker's reasonable belief must have been objectively reasonable that a hostile work environment existed];[5]

4.    RCSI terminated Ms. Parker's employment; and[6]

5.    [RCSI: RCSI's termination of Ms. Parker's employment was because of her protected activity and not simply a motivating factor] [Parker: RCSI terminated Ms. Parker's employment because of her protected activity].[7]

You need not find that the only reason for RCSI's decision was Ms. Parker's protected activity[8] [RCSI: and that the conduct she was complaining of was objectively hostile work environment],[9] but you must find that RCSI's decision to terminate Ms. Parker's employment would not have occurred in the absence of – "but for" – her protected activity.[10]

---

[5]**Defendant**: *Coleman v. Loudoun County Sch. Bd.*, 294 Fed. Appx. 778, 781 (4th Cir. 2008).
**Plaintiff**:  Plaintiff objects to this sentence because it is duplicative of the sentence above that says that the belief must be reasonable.  To the extent that the Court keeps this sentence, it should read "existed or was in the progress" in keeping with *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015).
[6] *See generally Boyer-Liberto,*786 F.3d 264; *see also* Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII-Retaliation).
[7] **Defendant:** *See Hill v. Lockheed Martin Log. Mgmt., Inc.*, 354 F. 3d 277, 285 (4th Cir. 2004) (en banc) (third element of retaliation claim is that the protected activity was a "but for" cause of her termination and not simply a "motivating factor.")
**Plaintiff**: Plaintiff objects to the inclusion of this language because it is confusing. Moreover, Defendant misquotes and misconstrues the case on which it relies. *Hill v. Lockheed* uses the term "motivating factor" in the context of a discrimination claim, not a retaliation claim. Regarding retaliation, *Hill* notes simply that "[t]o establish a prima facie case of retaliation, the employee must show (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal connection between the protected activity and the adverse employment action. " *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 298 (4th Cir. 2004) (en banc) (citing *King v. Rumsfeld*, 328 F. 3d 145, 150-51 (4th Cir. 2003).
[8] Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII-retaliation).
[9] **Defendant**: *See Hill* 354 F. 3d at 285.
**Plaintiff**: This language is confusing and difficult to understand as it is written. It is also repetitive, because this concept is already included in the definition of "protected activity." Further, *Hill v. Lockheed* does not discuss the objective standard for retaliation claims.
[10] Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII-retaliation).

[Parker: If you disbelieve the reason RCSI has given for its decision, you may, but are not required to, infer that RCSI would not have decided to terminate Ms. Parker's employment but for her engaging in the protected activity].[11]

[RCSI: In doing so, you must also consider any legitimate, nondiscriminate reason or explanation stated by RCSI for its decision.  If you find that RCSI had a valid, nondiscriminate reason for termination of Ms. Parker, then you must decide in favor of RCSI.[12]  Thus, you must find for RCSI and against Ms. Parker's claim of retaliation, if you find:

    i.       That Ms. Parker's assertion that the rumor was spread or perpetuated by RCSI was not objectively reasonable;[13] <u>OR</u>

    ii.     That Ms. Parker's termination was not because of the rumor.]

---

[11] **Plaintiff**: Plaintiffs' instruction is copied from the pattern instruction in Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII-retaliation).

[12] **Defendant**: *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007).
**Plaintiff**: Plaintiff objects to this sentence because "nondiscriminate reason" is confusing and misleading as written.

[13] **Plaintiff**: Plaintiff objects to this sentence because it is an incorrect statement of both the law and facts in this case. As a legal matter, Ms. Parker does not have a legal duty to prove that "the company spread the rumor" and that any "assertion" she makes was objectively reasonable. Ms. Parker needs to prove that she had an objectively reasonable and good faith belief that a hostile work envornment existed or was in progress. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015). Further, as a factual matter, Ms. Parker does not assert that "the rumor was spread or perpetuated by RCSI." She asserts that a false rumor was spread by RCSI employees, and that the hostile work environment she endured as a result of the rumor and other unwelcome conduct is imputable to RCSI.

15.    [**Parker: Protected Activity**[14]

Protected activity includes opposing an employment practice that the employee reasonably believes to be unlawful.[15] Ms. Parker need only prove that she reasonably believed that the conduct she opposed or complained about was unlawful.[16] Ms. Parker need not prove that the conduct was, in fact, unlawful.[17] You need not find that a hostile work environment actually existed in order for you to find that Ms. Parker engaged in protected activity.[18] You may find that Ms. Parker engaged in protected activity if it was reasonable for her to believe that a hostile work environment was in progress and could result in unlawful behavior if it continued.][19]

---

[14] **Defendant**: Defendant objects that this instruction is duplicative of previous instructions and fails to accurately state the law.
**Plaintiff**: Ms. Parker responds that it is important to instruct the jury on the meaning of "protected activity," given that it is not a concept with which lay people are familiar. Further, the instruction is an accurate statement of the law, as shows by the legal citations.
[15] *Boyer-Liberto v. Fontainbleu Corp.*, 786 F.3d at 281-85; Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII- Retaliation).
[16] Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII- Retaliation) (citing C*lark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)); *see also Boyer-Liberto v. Fontainbleu Corp.*, 786 F.3d at 282 ("in the context of element one of a retaliation claim, an employee is protected when she opposes "not only . . . employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful").
[17] *Id.*
[18] *Id.* ("In other words, an employee is protected from retaliation when she opposes a hostile work environment that, although not fully formed, is in progress.")
[19] *Id.*

16.    [**RCSI: Intent**

Ms. Parker must show that RCSI intentionally discriminated against her.  She is not required to produce direct evidence of intentional discrimination, but, rather, intent may be inferred from the existence of other facts.][20]

---

[20] **Plaintiff**: This instruction proposed by Defendant lacks any citation to case authority, as required by the Court's Order.  Further, this instruction is inapplicable, given that plaintiff's remaining claims are that of hostile work environment and retaliation, not gender discrimination. As Defendant has noted elsewhere, Plaintiff's claim of gender discrimination was dismissed.

{00446152v. (15424.00002)}                    21

17.    **Causation**

[RCSI: Ms. Parker must prove that RCSI would not have terminated her employment in the absence of discrimination based on her sex, i.e., that she is a woman. You may consider the timing of RCSI's actions in making this determination].[21]

[Parker: You may consider the timing of RCSI's actions in determining whether RCSI took action because of Ms. Parker's complaint of hostile work environment and retaliation.[22]  If you find that RCSI terminated Ms. Parker soon after she engaged in protected activity, you may, but are not required to, infer that RCSI terminated Ms. Parker because of Ms. Parker's protected activity.[23]]

---

[21] **Plaintiff**: Defendant's proposed instruction is an incorrect and highly misleading statement of the law. To win on her retaliation claim, Plaintiff must prove that she (1) engaged in protected activity, (2) the employer took a materially adverse action, and (3) there was a causal link between the two. *Parker v. Reema Consulting Services, Inc.*, Civ. No. 17-1648, ECF No. 122 at 21 (D. Md. 2021). Plaintiff does not also need to prove that the termination was gender-based.  Indeed, Defendant successfully sought dismissal of Plaintiffs' claim of gender discrimination claim.

[22] **Plaintiff:** *Parker v. Reema Consulting Services, Inc.*, Civ. No. 17-1648, ECF No. 122 at 15-16 (D. Md. 2021) (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (discussing cases finding causation when the materially adverse actions occurred four and six months after the protected activity); *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (complaint "just a month before [plaintiff] was terminated" "tends to show causation"); *King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (two-and-a-half month gap between protected activity and an adverse employment action "gives rise to a sufficient inference of causation")).

[23] **Plaintiff**: *Id.*

## 18.    Hostile Work Environment

Ms. Parker also claims that she experienced a hostile work environment based on her sex, and that her employer, RCSI, is responsible for [RCSI: creating the hostile work environment] [Parker: allowing the hostile work environment to occur].[24]

To establish  a hostile work environment, Ms. Parker must prove by a preponderance of the evidence one, [Parker: but not both],[25] of two things.[26]

First, you may find RCSI is liable for creating a hostile work environment if Ms. Parker proves the following about the conduct of RCSI employees against Ms. Parker:[27]

    A.  The RSCI employees' conduct was unwanted;[28]

    B.  The RSCI employees' conduct was sufficiently severe or pervasive to:[29]

        i.    Alter the conditions of Ms. Parker's employment; and

        ii.   Create a hostile or abusive work environment;

---

[24] *See* Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII- Supervisor Harassment – Hostile Work Environment).
**Plaintiff:** Plaintiff believes that "allowing the hostile work environment to occur" is a better phrasing of the law, given that an employer may be liable for a hostile work environment if the harasser was a co-worker and the employer "failed to take effective action" to stop the harassment. See *Parker v. Reema Consulting Services, Inc.*, Civ. No. 17-1648, ECF No. 122 at 17 (D. Md. 2021).
[25] **Defendant**: Defendant objects to this phrase.
**Plaintiff**: Plaintiff responds that this phrase is important for the jury's correct understanding of the law.
[26] *See* Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII- Supervisor Harassment – Hostile Work Environment); *see also* Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII- Coworker or Third Party Harassment – Hostile Work Environment – Negligence); *see also Parker v. Reema Consulting Services, Inc.*, Civ. No. 17-1648, ECF No. 122 at 17-20 (D. Md. 2021) ("Under Title VII, liability may be imputed to an employer in several circumstances. First, if the harasser is a supervisor . . . [second], it could still be liable for the harassment because there is sufficient evidence to show that RCSI was aware of the harassment and failed to take effective action to stop it.")
[27] *See* Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII- Coworker or Third Party Harassment – Hostile Work Environment - Negligence).
[28] *See id.*
[29] *See id.*

C.  [Parker: The RCSI employees'] [RCSI: RCSI's] conduct was because

Ms. Parker is a woman;[30]

D.  RCSI knew, or in the exercise of reasonable care should have known,

that Ms. Parker was being harassed; and[31]

E.  RCSI failed to take prompt remedial action to stop the harassment.[32]

Alternatively, you may find RCSI is liable for creating a hostile work environment if Ms.

Parker proves the following about the conduct of her supervisor:[33]

A.  Her supervisor engaged in conduct that was unwanted by Ms.

Parker;[34]

B.  The supervisor's conduct was sufficiently severe or pervasive to: [35]

i.  Alter the conditions of Ms. Parker's employment; and[36]

ii.  Create a hostile or abusive work environment; and[37]

C.  The conduct was because Ms. Parker is a woman.[38]

---

[30] *See id.*
[31] *See id.*
[32] *See id.*
[33] *See* Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII- Supervisor Harassment – Hostile Work Environment).
[34] *See id.*
[35] *See id.*
[36] *See id.*
[37] *See id. (*citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66–67 (1986)).
[38] *See id.*

{00446152v. (15424.00002)}                          24

**19.    Knew or Should Have Known About the Harassment**

To find that RCSI knew or should have known that Ms. Parker was being harassed, she must prove by a preponderance of the evidence that the harassment was witnessed by or communicated to a person who had the authority to address the harassment, or that the harassment was so open and obvious that RCSI would have known of it.[39]

---

[39] Diamond Modern Federal Jury Instructions- Civil 11.5 (Title VII- Coworker or Third Party Harassment – Hostile Work Environment - Negligence) (citing *Williamson v. City of Hous.,* 148 F.3d 462, 466 (5th Cir. 1998) and *Sharp v. City of Hous.,* 164 F.3d 923, 928–29 (5th Cir. 1999)).

{00446152v. (15424.00002)}                     25

**20.    Severe or Pervasive to Alter Terms and Conditions**

To determine whether the conduct in this case rises to a level that altered the terms or conditions of Ms. Parker's employment Ms. Parker must demonstrate that the conduct complained about is severe or persuasive enough to create an environment that a reasonable person would find hostile or abusive.[40]  [RCSI: Ms. Parker has a high burden to demonstrate that the conduct is severe or pervasive.[41] No matter how disrespectful the treatment, "cursing, yelling, and reprimanding" are insufficient to give rise to a hostile work environment claim.[42] Complaints premised on "a routine difference of opinion and personality conflict with her supervisor" do not support a hostile work environment claim.][43] You should consider all of the circumstances, including: the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with Ms. Parker's work performance.[44]  [Parker: There is no requirement that the conduct injured Ms.

---

[40] *Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993).

[41] **Defendant:** *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009).
**Plaintiff:** Plaintiff objects to this instruction because it is highly misleading. Plaintiff must prove each element of her claim by a preponderance of the evidene. It is misleading to suggest to a jury that Plaintiff's burden of proof is any higher, or different, than a preponderance of the evidence.

[42] **Defendant:** *Bass*, 324 F.3d at 765; *Chacko v. Patuxent Inst.*, 429 F.3d 505, 512, n. 3 (4th Cir. 2005)
**Plaintiff:** Plaintiff objects to this instruction because it contains an incorrect statement of the law, and because Defendant misquotes and misconstrues the cases on which it relies. Neither case cited by Defendant contains the language that Defendant quotes. A hostile work environment is highly fact-specific, and "no single factor is dispositive because the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships." *Parker v. Reema Consulting Services, Inc.*, Civ. No. 17-1648, ECF No. 122 at 15-16 (D. Md. 2021) (internal citations omitted). It is thus incorrect to state that "cursing, reprimanding, and yelling" are categorically insufficient to create a hostile work environment; "cursing, reprimanding, and yelling" could constitute a hostile work environment if a plaintiff were to prove that this unwelcome conduct was on account of the employee's protected characteristic.

[43] **Defendant:** *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000).
**Plaintiff:** Plaintiff objects to this instruction because it is confusing and misleading. There is no record evidence that Ms. Parker had a "routine difference of opinion" with a supervisor.

[44] Diamond Modern Federal Jury Instruction – Civil 11.2 (supervisor harassment – hostile work environment).

Parker psychologically].[45] No single factor is dispositive [RCSI:, but employment discrimination laws are not designed to create a general civility code for the workplace.][46]

In determining whether a hostile work environment existed, you must consider the perspective from a reasonable person.[47] First, you must find that Ms. Parker actually found the conduct offensive.[48] Next, you must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances.[49] You cannot view the evidence from the perspective of an overly sensitive person. Nor can you view the evidence from the perspective of someone who is never offended.[50] Rather, the alleged harassing behavior must be such that a reasonable person in the same or similar circumstances as Ms. Parker would find the conduct offensive[51] [RCSI: that it altered the terms or conditions of her employment].[52]

---

[45] **Plaintiff:** This instruction is modelled off of Diamond Modern Federal Jury Instruction – Civil 11.2 (supervisor harassment – hostile work environment). Plaintiff requests this instruction because it is a correct statement of the law, and is necessary to the jury's understanding of a hostile work environment.

[46] **Defendant:** *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008).

**Plaintiff:** Plaintiff objects to this language because it is misleading and confusing. The instruction is misleading because of its one-sided nature; it specifically instructs the jury on what Title VII is *not* designed to do, but does not instruct the jury on what Title VII *is* designed to do, namely to have broad remedial powers to eliminate discrimination from the workplace. If the Court gives this instruction, Plaintiffs request that the Court give a counterveiling instruction about Title VII's affirmative goals. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities").

[47] *Id. Boyer-Liberto v. Fontainebleau Corp.,* 783 F. 3d 264, 277 (2015).

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] **Plaintiff**: Plaintiff objects to this instruction because it is confusing. Adding the phrase "that it altered the terms…" to the end of the preceding sentence makes the sentence unclear and difficult to understand. This paragraph aims to explain the "reasonable person" standard, and Defenant's proposed addition detracts from this goal.

{00446152v. (15424.00002)}                    27

**21.**    **[RCSI: Whether Conduct is Severe and Hostile**

The phrase "hostile workplace" is used frequently in social media and in the public forum. The use of that phrase has a very peculiar meaning under the law as it relates to Title VII. The Supreme Court has made clear that not every slight, insult or indignity provides a basis for liability under Title VII. Normally petty slights, minor annoyances, and simple lack of good manners are not the type of behavior rising to the level of deterring an individual from making or supporting a discrimination charge. The Supreme Court has cautioned that the standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.

Title VII not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the

workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory "conditions of employment."]⁵³

---

[53] **Defendant**: *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

**Plaintiff**: Plaintiff objects to this instruction in its entirety.  First, the instruction is highly misleading and confusing by omission: while it focuses on what "is not" a hostile work environment, it omits Supreme Court caselaw that, for example, discusses the importance of enforcement of Title VII to eradicating discrimination in the American workplace. *See, e.g., Albermarle Paper Co. v. Moody*, 422 U.S. 405 (1975) ("It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination . . . The terms "complete justice" and "necessary relief" have acquired a clear meaning in such circumstances."); *see also Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) ("The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of [] employees over other employees.") Second, the references in this instruction to the Supreme Court are unduly misleading and prejudicial, in that they will improperly suggest to the jury that the jury should give more weight to this instruction than other instructions. Third, Defendant has provided no reason for giving such an extraordinary instruction in this case, nor citations to any other cases in which such an instructions has been used. Fourth, this instruction does not contain the required citation of each sentence to legal authority as required by this Court's order. If Defendant's request for this instruction is granted, Plaintiff requests an opportunity to craft a counterveiling instruction based on *Albermarle* and other cases.

**22.**    **Supervisor**

Ms. Parker contends that Mr. Moppins was her supervisor. RCSI denies that Mr. Moppins was Ms. Parker's supervisor.[54] To be a supervisor, an employee must have the power to make decisions about Ms. Parker that affect a significant change in her work status, such as hiring, firing, promoting, failing to promote, reassigning significant responsibilities, or decisions causing a significant change in benefits.[55]

An employer who limits decision-making authority to a few individuals who in turn rely on recommendations by other workers who interact with the employee may be held to have effectively delegated the power to make decisions that affect a significant change in work status to the worker on whose recommendation it relies.[56]

If you find that Mr. Moppins was not Ms. Parker's supervisor, you may consider whether Ms. Parker has proven by a preponderance of the evidence that RCSI limited decision-making to Mr. Vora or Ms. Vora who relied on recommendations by Mr. Moppins, and you may, but are not required to, find that RCSI delegated the power of a supervisor to Mr. Moppins.[57]

---

[54] Diamond Modern Federal Jury Instruction – Civil 11.2 (Supervisor Harassment – Hostile Work Environment).
[55] *Id*.
[56] *Id*. at n.4 ("If the case involves a defendant employer who concentrates decisionmaking authority in a few individuals, the instruction may include the following . . .) (citing *Vance v. Ball State Univ*., 570 U.S. 421, 446-7 (2013) ("if an employer concentrates all decisionmaking authority in a few individuals . . . the employer may have held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies.") and *Burlington Industries v. Ellerth*, 524 U.S. 742, 762 (1998)); *see also Hill v. Lockheed Martin Logistics Mgmt Inc*., 354 F.3d 277, 288-89 (4th Cir. 2004) (stating that the individual "acting pursuant to a discriminatory animus need not be the "formal decisionmaker" to impose liability upon an employer," so long as plaintiff presents sufficient evidence to establish that the subordinate was the one "principally responsible" for, or the "actual decisionmaker" behind, the action).
[57] *Id*.

23.    **Based on Sex**

A rumor that a female employee had engaged in an office affair with another employee to gain a promotion is evidence of conduct based on sex.[58] If you conclude that Ms. Parker has proven by a preponderance of the evidence that [RCSI: RCSI] [Parker: RCSI employees] created, perpetuated, or failed to take prompt remedial action to stop a rumor that she engaged in an office sexual affair with another employee to gain a promotion, then you may, but are not required to, find that she experienced harassment based on her sex.[59]

[Parker: Harassment may include extremely insensitive conduct based on sex. It need not be motivated by sexual desire.[60] Simple teasing, offhand comments, sporadic use of offensive language, occasional jokes related to sex, and isolated incidents (unless extremely serious) will generally not amount to discriminatory changes in the terms and conditions of employment.[61] But discriminatory intimidation, ridicule, or other verbal or physical conduct because of Ms. Parker's sex may be sufficiently extreme to alter the terms and conditions of employment.[62]]

---

[58] *Parker v. Reema Consulting Services, Inc.*, 915 F.3d 297, 302-3 (4th Cir. 2019) ("the rumor []that Parker . . . had sex with her male superior to obtain promotion" is gender-based); *Parker v. Reema Consulting Services, Inc.*, Civ. No. 17-1648, ECF No. 122 at 15-16 (D. Md. 2021) ("the spreading of the rumor implicitly questioned whether Ms. Parker used sex to attain career advancement within RCSI. Moreover, even if the rumor was not directly linked to Parker's promotions, it still constituted harassment "based on sex" because its impact derived from a sex-based double standard under which women believed to have engaged in an office affair are treated differently from similarly situated men.").

[59] *Id.*

[60] **Plaintiff**: Diamond Modern Federal Jury Instruction – Civil 11.2 (supervisor harassment – hostile work environment).

[61] **Plaintiff**: *Id*.

[62] **Defendant** objects to this language.
**Plaintiff**: *Id*. Plaintiff believes that this instruction is necessary in this case because this case does not involve sexual harassment based on sexual desire.

## 24.   Prompt Remedial Action

[RCSI: You must find for RCSI if you find that it has proved by a preponderance of the evidence that RCSI exercised reasonable care to prevent and correct promptly any harassing behavior.][63]

"Prompt remedial action" is conduct by the employer that is reasonably calculated to stop the harassment and remedy the situation.[64] Whether the employer's actions were prompt and remedial depends on the facts.[65] You may look at, among other things, the effectiveness of any actions taken, or the lack of effectiveness of any actions taken.[66] There is no exhaustive list or particular combination of remedial measures or steps that an employer need employ to insulate itself from liability.  Among other things, [RCSI: we have considered] [Parker: you may consider] the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective.[67]

---

[63] **Plaintiff:** Plaintiff objects to this instruction because it is an incorrect statement of the law. First, Plaintiff may prove the "imputable to the employer" prong of her hostile work environment claim in one of two ways: (i) if the harasser is a supervisor, the employer is strictly liable if the supervisor's actions culminated in a tangible employment action; (ii) if the harasser is the victim's co-worker, the employer may be liable if it knew or should have known about the harassment and failed to take "prompt remedial action" to stop it. *See Parker v. Reema Consulting Services, Inc.*, Civ. No. 17-1648, ECF No. 122 at 17 (D. Md. 2021). Defendant's proposed instruction is misleading by addressing only one of these two avenues of proof.  Second, to the extent that Defendant is attempting to shoe-horn the *Farragher Ellerth* defense into this instruction, Plaintiff has explained why the defense is inapplicable and incorporates those arguments here.  (*See* Dkt. 143-1 at  2-4.)  Further, even if the defense were applicable, Defendant's proposed instruction does not state all of the elements of the defense: where an employer needs to prove that "(a) exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).*
[64] Diamond Modern Federal Jury Instructions – Civil 11.2 (supervisor harassment – hostile work environment) and 11.4 (coworker or third party harassment – hostile work environment (negligence)).
[65] Diamond Modern Federal Jury Instructions – 11.4 (coworker or third party harassment – hostile work environment (negligence) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989)).
[66] *Id*.
[67] *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011) (internal citations omitted.)

25.     [**RCSI: Spoliation**[68]

If you find that Ms. Parker reset the company issued phone in her possession to eliminate evidence under her control and reasonably available to that her and not reasonably available to RCSI, then you may infer that the evidence is unfavorable to Ms. Parker who could have produced it and did not.][69]

---

[68] **Plaintiff**: Plaintiff objects to this instruction in its entirety.  It is too late for Defendant to request a spoliation instruction because it never moved for sanctions, such as an adverse inference instruction, based on spoliation during the discovery process. Plaintiff respectfully points this Court's attention to Plaintiff's Motion *in limine* on this issue and incorporates those arguments herein.  (*See* Dkt. 143-1 at 12-13).

[69] **Defendant:** 3 Fed. Jury Prac. & Instr. § 104:26 (6th ed.), 3 Fed. Jury Prac. & Instr. § 104:26 (6th ed.); Goodman v. Praxair Services, Inc., 632 F.Supp.2d 494 (D. Md. 2009).

## IV.      DAMAGES

### 26.      Consider Damages Only If Necessary

If you find that Ms. Parker has proven by a preponderance of the evidence that RCSI is liable on one or more of Ms. Parker's claims, then you must determine what amount, if any, in damages Ms. Parker is entitled.  However, you should not infer that Ms. Parker is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so you will have guidance should you decide that Ms. Parker is entitled to a recovery.

**27.    Compensatory Damages**[70]

If you find that RCSI is liable on one or more claims, then you must [RCSI: determine whether to make an award][71] to Ms. Parker such sum of money that you find by a preponderance of the evidence will fairly and justly compensate her for any damages you find she sustained as a direct result of RCSI's action.

The damages that you award must be fair compensation – no more and no less. These "compensatory damages" seek to make the plaintiff whole—that is, to compensate her for the damage suffered.  Compensatory damages may include compensation for any [RCSI:back pay],[72] pain, suffering, inconvenience, humiliation, mental anguish, emotional injury, or other emotional harm.[73]

You may award compensatory damages only for harms that Ms. Parker has proven were caused by the allegedly wrongful conduct.  The compensatory damages you award must be fair and reasonable, neither inadequate nor excessive. You may not award damages based on sympathy, speculation, or guesswork.  Computing damages may be difficult, but you must not let

---

[70] Plaintiff requests that the Court, not the jury, determine Ms. Parker's equitable relief, including backpay. *See Albermarle Paper Co. v. Moody*, 422 U.S. 405, 410-418 (1975) (holding that backpay is an equitable remedy under Title VII of the Civil Rights Act and discussing legislative purpose of backpay awards by district courts). Plaintiff requests that the jury determine only Ms. Parker's noneconomic damages, such as emotional distress damages. *See Mateti v. Activus Fin., LLC*, Civil Action No. WGC-08-540, 2010 U.S. Dist. LEXIS 155300, at *12-13 (D. Md. Apr. 22, 2010) ("garden variety emotional distress" asserted by Plaintiff is something ordinary individuals understand . . . triers of fact are [] experts in that.")

[71] **Plaintiff**: Plaintiff objects to this language in the instruction because it misstates the law.  If the jury believes that Plaintiffs is entitled to compensation then they must make an award of fair compensation.

[72] **Plaintiff:** Plaintiff objects to the inclusion of the words "back pay" because they provide an incorrect statement of the law. Back pay is expressly excluded from the statutory definition of compensatory damages. 42 U.S.C. § 1981a(b) (2).  Back pay is an equitable remedy to be decided by the Court.  *See Robinson v. Lorillard Corp.*, 444 F.2d 791, 802 (4th Cir. 1971) (citing *Johnson v. Georgia Highway Express, Inc.*, 417 F.3d 1122. 1125 (5th Cir. 1969); 42 U.S.C. § 2000e-5(g) (1).  Plaintiff also notes that the citations in the following footnote (FN 78) support the description of compensatory damages as "emotional pain, suffering, inconvenience, humiliation, mental anguish, emotional injury or other emotional harm," but do not support the inclusion of the term "back pay."

[73] *Garcia Hernandez v. Chipotle Mexican Grill*, Civ. No. 14-297, ECF No. 116 (D.D.C. 2016) (jury instructions regarding compensatory damages in case in which plaintiff brought claim of discrimination under Title VII of the Civil Rights Act); *see also Mateti v. Activus Fin., LLC*, Civil Action No. WGC-08-540, 2010 U.S. Dist. LEXIS 155300, at *12-13 (D. Md. Apr. 22, 2010) ("garden variety emotional distress" asserted by Plaintiff is something ordinary individuals understand . . . triers of fact are [] experts in that.")

that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a plaintiff to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

**28.    Punitive Damages**

Ms. Parker claims RCSI acted with malice or reckless indifference to her federally protected rights, so as to entitle her to an award of punitive damages in addition to compensatory damages.[74]

If you award compensatory damages, you may go on to consider an award for punitive damages. Punitive damages may be awarded for the purpose of punishing a defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct.[75]

An award of punitive damages would be appropriate in this case only if you find for Ms. Parker, and then further find from a preponderance of the evidence:[76]

First, that [Parker: an upper level official of][77] RCSI personally acted with malice or reckless indifference to Ms. Parker's protected rights, and [78]

Second, that RCSI itself had not acted in a good faith attempt to comply with [Parker: the law][79] by adopting and implementing policies and procedures designed to prohibit such discrimination in the workplace.[80]

---

[74] *Kolstad v. American Dental Assoc.* 527, U.S. 526, 535 (1999); *White v. BFI Waste Services, LLC.*, 2006 WL 14434444 (May 23, 2006); *Garcia Hernandez v. Chipotle Mexican Grill*, Civ. No. 14-297, ECF No. 116 (D.D.C. 2016) (jury instructions regarding punitive damages in case in which plaintiff brought claim of discrimination under Title VII of the Civil Rights Act).

[75] *See id.*

[76] *See id.*

[77] **Defendant:** Defendant objects to this phrase.
**Plaintiff:** Plaintiff responds that this is a correct statement of the law. This language is modelled off of the instructions given in *Garcia Hernandez v. Chipotle Mexican Grill* ("That a higher management official of the defendant personally acted with malice or reckless indifference to plaintiff's protected rights.")

[78] *See Garcia Hernandez v. Chipotle Mexican Grill*, Civ. No. 14-297, ECF No. 116 (D.D.C. 2016) (jury instructions regarding punitive damages in case in which plaintiff brought claim of discrimination under Title VII of the Civil Rights Act).

[79]**Defendant**: This is the 3rd Circuit's proposed instruction. I don't know what "law" is being referenced here and find this to be confusing. I can't find any other samples that clarify this.
**Plaintiff**: Plaintiff responds that the word is not confusing in the context of the whole instruction.

[80] *See Garcia Hernandez v. Chipotle Mexican Grill*, Civ. No. 14-297, ECF No. 116 (D.D.C. 2016) (jury instructions regarding punitive damages in case in which plaintiff brought claim of discrimination under Title VII of the Civil Rights Act).

In evaluating the good-faith attempt of RCSI, the jury may consider RCSI's efforts to implement anti-discrimination policies and procedures, including, for example, by educating its personnel about these policies and procedures.[81]

If you find that punitive damages should be assessed against RCSI, you may consider the financial resources of the defendant in fixing the amount of such damages.[82]

Punitive damages must bear a reasonable relationship to the plaintiff's injury.[83] However, there is no simple way to link punitive to compensatory damages.[84] In determining a reasonable relationship to the injury, you must consider all relevant factors.[85] These include:

1. The impact or severity of RCSI's conduct.[86]

2. The amount of time [Parker: defendant employee conducted himself] [RCSI: RCSI conducted itself][87] in this manner.[88]

3. The amount of compensatory damages.[89]

4. The attitudes and actions of RCSI's top management after the misconduct was discovered.[90]

5. The effect of the damages award on RCSI's financial condition.[91]

Your award, if any, should be sufficient to punish RCSI for its conduct and to serve as an example to prevent others from acting in a similar way.[92]

---

[81] *See id.*
[82] *See id.*
[83] *See id.*
[84] *See id.*
[85] *See id.*
[86] *See id.*
[87] **Defendant**: Defendant objects to the term "defendant employee."
**Plaintiff**: Plaintiff believes that the term "defendant employee" is necessary for this sentence to make sense.
[88] *See Garcia Hernandez v. Chipotle Mexican Grill*, Civ. No. 14-297, ECF No. 116 (D.D.C. 2016).
[89] *See id.*
[90] *See id.*
[91] *See id.*
[92] *See id.*

## V.      JURY DELIBERATIONS

### 29.      Deliberation and Verdict

Members of the Jury, thank you for your attention this morning during my instructions on the law and the attorneys' closing arguments.  We have now reached the time for you to begin your deliberations on this case.  My warnings not to discuss the case among yourselves no longer apply.  Once you go back to the jury room, it is your job to discuss the case and reach a verdict.

When you retire to the jury room, your first order of business will be to select one member of the jury to serve as your foreperson.  The foreperson will sign all communications with the Court, including the verdict form, and be your spokesperson here in Court.

In this case, it will be your duty to return your verdict by marking answers to the written questions which are contained in the Verdict Form which will be provided to you.  Your answers will constitute your verdict.  Each answer is to be marked in the space provided after each question.  It is your duty to answer each of the questions in accordance with the evidence in this case.  The form has multiple questions and, depending on your answers to certain questions, you may be directed by the form not to answer certain other questions on the form.  Please follow the instructions in the verdict form very carefully and only answer the questions that you are asked to answer.

Before marking each answer, all of you must agree upon it.  That is, your verdict must be unanimous, reflecting the considered judgment of each and every one of you.  Your answer to each question submitted to you must be unanimous.  Unless all of you agree, you may not return an answer to any question.

In reaching a unanimous verdict, it is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual

judgment.[93]   Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.   In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if you are convinced that it is erroneous.   But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

If it becomes necessary during your deliberations to communicate with me, you may give a note to the bailiff (the security officer who will be sitting outside the jury room) signed by your foreperson, or by one or more members of the jury.   No member of the jury should ever attempt to communicate with me by any means other than a signed writing.   I will never communicate with any member of the jury on any subject touching the merits of the case other than in writing, or orally here in open Court.   You are never to reveal to any person—and must not include in any note to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict.

You will note from the oath about to be taken by the bailiff that he, too, as well as all other persons, is forbidden to communicate in any way or manner with any members of the jury on any subject touching the merits of the case.

When you reach a unanimous verdict, send a note to the Court through the bailiff stating that you have reached a verdict.   Do not send the verdict form.   When asked to do so, return to the courtroom and have your foreperson bring the verdict form with him or her.

---

[93] **Defendant**: Is this the right phrase?

{00446152v. (15424.00002)}                    40

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of November 2021 true and correct

copies of the above and foregoing PARTIES' PROPOSED JOING PRETRIAL ORDER and

ATTACHMENTS have been filed and served through the Court's ECF system on the following:

Donald J. Walsh (Bar # 09384)
dwalsh@wcslaw.com
Marie J. Ignozzi (Bar # 29762)
mignozzi@wcslaw.com
Alanna C. Casey (Bar #21818)
acasey@wcslaw.com
**WRIGHT, CONSTABLE & SKEEN, LLP**
Attorneys for Defendant
7 St. Paul Street, 18th Floor
Baltimore, Maryland 21202
Telephone: (410) 659-1354
Facsimile: (410) 659-1350

/s/ Andrew R. Kopsidas
Andrew R. Kopsidas (Bar No. 16057)
kopsidas@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

1