# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**For the District of Maryland**
**Greenbelt Division**

| | |
|---|---|
| **EVANGELINE J. PARKER,** | |
| **Plaintiff,** | **Civil No. 8:17-cv-01648-TDC** |
| **v.** | |
| **REEMA CONSULTING SERVICES, INC.** | |
| **Defendant.** | |

## DECLARATION OF JOANNA WASIK IN SUPPORT OF PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS

I, Joanna K. Wasik, declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge:

1.      I am over the age of 18 and am legally competent to make this declaration. I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs.

2.      The work performed by attorneys and paralegals at the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("WLC") is described in contemporaneous time records and invoices that were kept by WLC and attached as Exhibit 2.

3.      I am a Supervising Counsel at WLC. I have worked at WLC since August 2019. I am a member of the bars of New York and the District of Columbia and admitted to practice before this Court. As Supervising Counsel, I litigate matters with the Workers' Rights practice group at WLC and supervise its docket and operations. Prior to WLC, I worked as an Associate Attorney at Mehri & Skalet, PLLC, a boutique litigation firm that specializes in class actions. While at Mehri & Skalet, I litigated cases in district courts and federal circuit courts across the

1

country, representing workers in their class action discrimination claims under the federal civil rights laws, as well as consumers and whistleblowers. I have also served as a law clerk to Judge J. Curtis Joyner in the District Court for the Eastern District of Pennsylvania and an Associate Attorney in the litigation practice of Freshfields, Bruckhaus, Deringer US LLP in New York City, New York.

4.      In addition to my time on this matter, WLC is seeking reimbursement for time spent by Dennis Corkery. Tiffany Yang, Tristin Brown, and Samantha Weaver.

5.      Dennis Corkery is Counsel at WLC and is admitted to the Bars of the New York and the District of Columbia. He has worked at WLC since 2012, transitioning from Fellow to Staff Attorney and Counsel. He has extensive experience litigating civil rights cases throughout the district and appellate courts in the District of Columbia, Maryland, and Virginia as well as in administrative proceedings. He focuses his practice on workers' rights, including anti-discrimination cases on an individual, group, and class basis, as well as police misconduct cases. In 2015, he was named one of the Best LGBT Lawyers Under the Age of 40 by the National LGBT Bar Association.

6.      Tiffany Yang was a Fellow at WLC from 2018-2019. She is a 2015 graduate of Stanford Law School, and a former law clerk for the Hon. Josephine L. Staton (Central District of California) and the Hon. Andre M. Davis (Fourth Circuit Court of Appeals). Ms. Yang is currently a fellow at the Appellate Litigation Clinic at the Georgetown University Law Center. During her time at WLC, Ms. Yang contributed to the *Parker v. RCSI* litigation as the primary author of Plaintiff's appellate briefs to the Fourth Circuit Court of Appeals, as well as Plaintiff's opposition to Defendant's petition for certiorari to the Supreme Court of the United States.

7.      Tristin Brown was a Fellow and then Associate Counsel at WLC from 2019-2021. She is a 2019 graduate of the Georgetown University Law Center, where she was President of the Black Law Students' Association, and a *summa cum laude* graduate of Florida A&M University. She is currently the Policy and Program Director at the People's Parity Project, an organization dedicated to fighting for a legal system that works for working people, especially workers of color and low-wage workers. During her time at WLC, Ms. Brown contributed to the *Parker v. RCSI* litigation by helping with preparation for depositions and drafting portions of Plaintiff's opposition to Defendant's Motion for Summary Judgment.

8.      Samantha Weaver was a paralegal at WLC from 2016 to 2019, where she supported WLC's programs across many civil rights issues. She is a graduate of Dartmouth College.

9.      WLC, like many of its counterparts throughout the country, was established in 1968 by leaders of the local bar as a response to the publication of the Report of National Advisory Commission on Civil Disorders. This Presidential Commission, also known as the Kerner Commission, had identified racial discrimination and poverty as root causes of the riots that erupted in cities across the country during the late 1960s and in Washington, D.C. following the assassination of Dr. Martin Luther King. Jr.

10.      For over 50 years, WLC has represented both individuals and groups seeking to vindicate their civil rights. It has handled over 5,000 civil rights cases in the areas of fair housing, equal employment opportunity, public accommodations, police misconduct, disability rights, and prisoners' rights. Leveraging its own broad expertise in federal and local civil rights laws, the Committee's litigation efforts have been nationally known for landmark court victories, record judgments, and precedent-setting decrees.

11.     WLC is a private, nonprofit public interest legal services organization with extensive experience in litigating civil rights cases, principally, but not always, in the Washington, D.C., metropolitan region. Our clients are never charged legal fees. However, our projects depend, in significant part, on the recovery of fees in successfully litigated cases.  The availability of fees as part of the remedy for our clients is critical to WLC's ability to carry out its mission. Put simply, without fee-shifting, the WLC would be unable to focus on and combat discrimination and injustice in the robust way that it has throughout its 50 years of existence.

12.     Typically, WLC represents individuals in civil rights litigation by co-counseling with Washington, D.C. area law firms and public interest organizations. WLC and its partners act as "private attorneys general" in these cases, enforcing legal rights, investigating and deterring unlawful behavior, and promoting access to justice for clients otherwise unable to afford a lawyer. Ms. Parker's case in particular may have been unattractive to members of the private bar given her low potential recovery compared to the significant labor involved in litigation her case; however, WLC's co-counseling model allows it to bring such cases to advance the civil rights of workers.

13.     I have reviewed all the time diaries for work done on this matter by the attorneys and staff of WLC. I have removed any billing entries that were not properly billed to this case, deleted any time entries that were not properly billed in accordance with this Court's local rules, removed redundant or duplicative entries, and otherwise exercised billing judgment across all the WLC time records.

14.     Based on this review of WLC's time records, Plaintiff requests reimbursement of the attorneys' fees and for legal work performed by WLC in the amount of $272,097.50. This amount reflects just over 850 hours of paralegal and attorney time spent on this matter.

4

15.     WLC expended significant time on this litigation from the investigation and filing of the complaint through a successful jury trial verdict. Plaintiff's counsel first invested time in investigating and developing the facts of the case prior to filing a complaint. Later, after plaintiff's complaint was dismissed early in the litigation, plaintiff appealed the decision to the Fourth Circuit Court of Appeals, prevailing on two out of three issues and obtaining a precedential opinion reversing the lower court's dismissal of plaintiff's hostile work environment and retaliation claims. The resulting Fourth Circuit created an important precedent about the use of sex stereotypes in the workplace, concluding that a rumor that a female subordinate had sex with a male superior to obtain a promotion is actionable under Title VII's prohibitions on sex discrimination. As of December 20, 2021, according the Lexis, the opinion had been cited 43 times by other courts.

16.     After the Fourth Circuit issued its opinion, Defendant filed a petition of certiorari to the Supreme Court, which Plaintiff opposed. Plaintiff was successful in her opposition to the cert petition, and the case returned to this Court for the discovery phase.

17.     During discovery, the parties appeared in front of Magistrate Judge Simms twice for discovery-related disputes. The Parties conducted seven depositions, including two 30(b)(6) depositions necessitated by a late production of documents by Defendant's 30(b)(6) deponent.. Because the majority of the witnesses were former employees not within either Party's control, Plaintiff's counsel expended time and effort to research and locate the witnesses and serve them with subpoenas. Plaintiff's counsel also had to pivot to remote depositions and protocols in the midst of discovery due to the covid-19 pandemic.

18.     Plaintiff made attempts at broaching settlement negotiations at multiple junctures during the case, but discussions between the Parties did not bear fruit. Plaintiff first attempted to

5

settle the litigation in September 2017 for less than the statutory limit and back-pay she is now entitled to.  Defendant promptly responded, not only rejecting the offer out of hand, but calling it "offensive."  At a case management conference in April 2019, Plaintiff argued for an early mandatory mediation date to potentially save both sides (and the Court) from expending resources on litigation, but Defendant was opposed to any mediation being scheduled before summary judgment motions were decided.  In July 2020, the parties did finally agree to referral to a Magistrate Judge for alternative dispute resolution.  However, after reviewing the parties' *ex parte* submissions and following separate discussions with the parties, Judge Sullivan cancelled the mediation because he thought the parties were so far apart that a conference would be futile.

19.     Plaintiff successfully opposed a motion for summary judgment filed by Defendant. Counsel then prepared for pre-trial submissions and trial, taking into account the court's new covid-related protocols and requirements, and attended a pretrial conference, voir dire, and three days of trial.

20.     Plaintiff's counsel expended time opposing Defendant's seven motions in limine, and litigating eight of her own motions. As this Court noted at the Pretrial Conference, the Parties also disagreed vigorously on the jury instructions to be given in the case, requiring Plaintiff's counsel to expend time and effort on legal research and creating a presentation of the competing instructions that would be useful for the Court.

21.     Trial preparation required Plaintiff's counsel to again locate witnesses outside the Parties' control, serve them with subpoenas, and apprise them of the Court's covid-related protocols. Plaintiff's counsel also provided witnesses with covid tests to facilitate compliance with the Court's rules. Further, Plaintiff's counsel spent time preparing the video deposition of

one witness who did not attend trial so that it could be shown the jury, and preparing for the eventuality that other witnesses may also not comply with their subpoenas.

22.     Plaintiff was ultimately successful on both of the claims she presented to the jury – hostile work environment based on sex and retaliation. The jury awarded not just $340,000 in compensatory damages, but also $385,000 in punitive damages.

23.     In our fee submission, Plaintiff's counsel have complied with this Court's local rules and also exercised overall billing judgment, as described in further detail below.

24.     Per the Court's Local Rules, in our fee submission we have recorded time for only one WLC lawyer to attend each deposition, each court hearing, and each conference with the client, opposing counsel, or third parties. In each of these instances, we have charged for the more senior lawyer who attended these events.

25.     We have charged for the time of only one WLC attorney to attend each day of trial, voir dire, and the pretrial conference. Although other WLC attorneys also contributed to trial events, including jury instructions and taking notes on evidence used in closing arguments, redirect examinations, and to oppose Defendant's Rule 50 motion, we have not charged for their time attending trial.

26.     WLC has also excised all time spent by highest-level supervisors, including WLC's Legal Director and Deputy Legal Director, in final reviews of pleadings and briefs, and charged only for time spent on the case by the line attorneys for each task. WLC has also removed time entries by attorneys who contributed to the litigation on a limited basis, providing interim strategic guidance or research support.

27. Per the Court's local rules, in our fee submission we have recorded a maximum of two hours of travel time to and from court appearances and other events, if that time could not be devoted to doing substantive work for the client.

28. In a further exercise of billing judgment, we have also excised one-third of the time WLC spent working on the motion for reconsideration and appeal to the Fourth Circuit Court of Appeals (approximately 74 hours) after the grant of the motion to dismiss, given that plaintiff ultimately prevailed on two out of three issues that were appealed. We have also excised all time spent on opposing Defendant's motion to quash a subpoena in front of Magistrate Judge Simms, given that plaintiff did not prevail on this discovery motion.

29. Overall, WLC has removed from its bills approximately 358 hours of time.

30. After the above exercise of removing time entries to comply with local rules and billing judgment, WLC has recorded just over 850 hours on this case. Customarily, WLC uses the rates for attorneys and law clerks of comparable experience in the Washington, D.C. metropolitan area. Specifically, the WLC relies upon the rates set forth in the Adjusted Laffey Matrix. *See Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000); *see also* http://laffeymatrix.com/see.html (last visited September 1, 2021). These rates are updated each year by use of a methodology that calculates the matrix rates for each year by using the Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

31. The current hourly billing rates promulgated by the Adjusted Laffey Matrix for the period of June 1, 2021 to May 31, 2022, is $676 for attorneys with eight to ten years of experience for the period, and $381 for attorneys with one to three years experience. The rate for

8

paralegals and law clerks is $208 per hour.  If it were calculated at WLC's customary rates, WLC's total lodestar would be over $546,000.

32.     However, in its fee request, WLC is requesting fees comporting with Appendix B of this Court's local rules. WLC requests fees at the top of the range of rates used in Appendix B because of the high cost of practicing law in the District of Columbia metro area and because WLC brings a high level of skill and experience to this litigation. WLC requests $150 per hour for paralegal Samantha Weaver, $200 per hour for Tiffany Yang and Tristin Brown, and $350 per hour for Joanna Wasik and Dennis Corkery.

33.     WLC also requests $469.94 in reasonable litigation costs. The records of these costs were kept by WLC's Chief Financial Officer in the regular course of business. The expenses are further broken down as follows:

| Local travel | $27.49 |
|---|---|
| Out of Town travel to 4th Circuit Oral Argument | $41.32 |
| Meals & Lodging | $390.27 |
| Copying and Duplicating | $10.86 |
| *TOTAL* | *$469.94* |

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 7th day of January, 2022.

_____
Joanna K. Wasik

9