**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| EVANGELINE J. PARKER, | |
| Plaintiff, | Civil No. 8:17-cv-01648-TDC |
| v. | |
| REEMA CONSULTING SERVICES, INC. | |
| Defendant. | |

**DEFENDANT'S RESPONSE**
**TO PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES & COSTS**

Defendant Reema Consulting Services, Inc. ("RCSI"), by its undersigned counsel, respectfully submits this Memorandum in response to Plaintiff's Request for Attorney's Fees and Costs. Several critical points appear to have been lost in Plaintiff's Request for Fees which total more than 10 times Plaintiff's achievable damages in this case.

First, as was reflected in the Parties' Joint Pretrial Order and as was reflected in the Motion for Judgment, the total achievable damages in this case were never more than $83,000 (plus the potential for prejudgment interest on this amount). Second, as was noted by the Court during pretrial conversations and at the beginning of trial, Plaintiff's counsel has included an unreasonable number of attorneys for a case which was not complicated, required no expert testimony, lasted only three days and had a total of seven witnesses appear for trial. Although Plaintiff's counsel now claims that they eliminated certain redundancies within the respective two firms which represented Plaintiff's interests, there is no doubt that counsel's approach to this case and to undertake pro bono work were not measured by required billing judgment and within the bounds of the legal considerations for recovery of such fees.

In the present case, Plaintiff's counsel did not exercise reasonable judgment in pursuing the limited damages available here and opted instead to use this case as a training ground for attorneys in its office and to pursue self-promotion of such efforts. Even the billings submitted to this Court indicate that on February 11 & 12, 2019 Plaintiff's counsel sought to charge RCSI for counsel to "prepare draft of media release regarding appellate decision." Fish and Richardson ("F&R") readily concedes that the total fees spent by its firm on this matter were not reasonable and only sought to recover a portion of those fees here. *See* Exhibit 3 in support of Plaintiff's Motion. Although F&R claims to have eliminated certain fees,[1] it seems to ignore the admission that its approach to staffing and handling this matter has nothing to do with the needs of the case, its complexity or any business decision. As explained on Fish and Richardson's website:

> At Fish, we are committed to making pro bono work an integral part of our professional culture, and we strongly encourage all of our legal professionals to take on pro bono matters as a part of their professional lives. We back up this commitment by providing our attorneys with full hours credit for approved pro bono matters, and by assigning a principal-level attorney in each of our U.S. offices with the task of seeking out and publicizing local pro bono opportunities.

*See* Exhibit 1.

Although admirable in its devotion to the community, the Court cannot equate the desire to provide pro bono activities to the reasonable needs of a case or good billing judgment which must be exercised before fees are shifted. As was visibly observed at trial, this case was not one which was staffed or handled purely to produce a positive result but was staffed to maintain a training ground for as many of F&R's staff as it could. Plaintiff's counsel identified in its billing submissions that it had at least twelve people billing to this matter in addition to other overhead staff and third parties handling IT at trial which it now seeks to recover. The inefficiencies created

---

[1] Specific identification of the fees and expenses eliminated have not been identified and F&R have not produced its billing records for this matter.

2

by having multiple people handling a relatively simple case, the lack of the use of good billing judgment because staff are rewarded for filling billable hour goals unbalanced by the needs of the case and simple law firm economics make the demand by Plaintiff's counsel in this case obscene.

Piling on the unreasonableness of the requested fee award is Plaintiff's counsels' audacity at requesting this Court award in costs without a complete itemization of those costs. Had Plaintiff's counsel itemized the entire support provided for such costs, the Court would have seen that it includes costs for Plaintiff's counsel to be admitted to the Fourth Circuit Court of Appeals, an IT budget for services provided during trial, including the establishment of an office and conference room reservations at a local hotel where Plaintiff's counsel housed 10 people for seven days, travel expenses to travel to North Carolina and refilling Starbuck's gift card balances. Plaintiff's counsel has undeniably failed to shoulder its burden that its costs can be recovered.

**Background**

As the Court is aware from a review of the docket, the initial Complaint in this case was filed in May, 2017 and contained three counts. By that point in time, Plaintiff had incurred all of her backpay damages and had moved on to a job making more money than she had with RCSI. RCSI's contract was also coming to an end bringing its employee count well below the 20 employees working on this contract. The total damages recoverable at the time that suit was filed were fixed at roughly $83,000. That amount never changed.

In December, 2017, the Court dismissed the case and it went to the Fourth Circuit where that decision was reversed only in part and the matter was remanded to begin discovery. The dismissal of one third of the Complaint was affirmed despite challenges on appeal. According to the Fee Petition now introduced by Plaintiff's counsel, it incurred fees of $100,558 by the time the Court initially dismissed it. By that point, no discovery had taken place. Plaintiff's counsel spent

in excess of another $16,000 in filing a Motion for Reconsideration.  On appeal, Plaintiff's counsel indicated that it spent another $64,843.  As reflected in the fee request's reported hours, no concessions were made in Plaintiff's counsel's fee petition of approximately $180,000 in fees through the date of the remand to account for the loss of a third of the case it had fought to maintain.

Discovery in this case was equally not difficult or contentious.  In addition to an exchange of interrogatories and document production, seven depositions were taken and only four of them were done live, with the remaining depositions all being taken through remote means.  Although there were four conferences with the Court about discovery issues, they were all resolved at the conference stage.   At least two efforts were made at settlement (including the one taken through the Fourth Circuit) but, even with the Court's assistance, the divide was not bridged since the demands all transcended the known damages by some multiple.

As the Court is well aware, trial was also not long and consistent with the lack of complexity in the case, it took less than three full days.  The Court also witnessed the parties' efforts at trial and in pretrial efforts to work collaboratively in their advocacy for their clients.  At the conclusion of all evidence, both sides made Motions for Judgment which were denied as the Court indicated there was sufficient evidence for the matter to be decided by the jury. Notwithstanding the jury's verdict, in Plaintiff's request for judgment filed after the trial, Plaintiffs again noted that the verdict should be reduced and the damages limited to the $83,000 subject only to enhancement based on prejudgment interest.[2]

Throughout this entire time period, the facts never changed, the witness list never expanded, the complexity of the case never changed and the amount of damages of $83,000 has

---

[2]     Plaintiff failed to offer the Court any evidence of when the prejudgment interest should begin undermining the request thus eliminating the issue for the Court to determine an appropriate rate to apply.

never gone up. The only thing which has changed, and dramatically so, has been Plaintiff's counsel's fees.

## Argument

It is within the discretion of a court to award a prevailing party in a Title VII action her *reasonable* attorney's fees and costs. 42 U.S.C. § 2000e-5(k). As Plaintiff's counsel has noted, when attorney's fees are to be awarded, the normal method of calculating a reasonable fee is for the court to determine a lodestar amount by multiplying the number of hours *reasonably expended* on the case by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (calculation of attorney's fees pursuant to 42 U.S.C. § 1988 in a case brought under the civil rights statute); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). This fee must be determined to be reasonable in light of market rates and market practices, such that the fee would be deemed reasonable if billed by an attorney to his own client. *Hensley.* The courts have always made clear that fees awarded to counsel in fee-shifting cases should not result in windfalls to prevailing counsel. *Blum v. Stenson*, 465 U.S. 886, 893-94 (1984); *Hensley,* 461 U.S. at 430, n.4. As was recognized by the Supreme Court in *Blum,* 465 U.S. at 896–97,

> in actions to enforce federal civil rights, § 1988 authorizes a court, "in its discretion," to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The legislative history explains that "a reasonable attorney's fee" is one that is "adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys." S.Rep. No. 94–1011, p. 6 (1976).

Consistent with the avoidance of windfalls. "other courts have recognized, an entitlement to attorney's fees cannot be a carte blanche license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction." *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003). Although under a different fact pattern, the *Goss* Court

warned that a "strategy of 'shaking down' Defendants with nightmarishly expensive litigation solely in pursuit of attorney's fees must not be rewarded." The burden is on a party requesting fees and costs to demonstrate, by clear and convincing evidence, that the fees and costs requested are reasonable. *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 572 (E.D. Va. 1988) (citing *Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987)); see also Bland v. Fairfax Cty.*, 2011 WL 5330782, at *3 (E.D. Va. Nov. 7, 2011).

The lodestar method requires the Court to determine the amount of hours reasonably expended by Plaintiff's counsel. This analysis focuses on the exclusion of hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir.1999) (quoting *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988). This means that the "district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' " *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The Court is required to exclude from its initial fee calculation "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. As was explained by other decisions, a Court must disallow those hours requested which are excessive and fee applicants must exercise what the Supreme Court has termed "billing judgment." *ACLU of Georgia*, 168 F.3d at 428 (quoting *Hensley*, 461 U.S. at 434). "[R]easonably competent counsel do not bill hours that are 'excessive, redundant, or otherwise unnecessary." *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1183 (N.D. Cal. 2004) (also quoting *Hensley*, 461 U.S. at 434). Consequently, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

6

The burden is upon the applicant for fees to submit detailed documentation that will assist the court in determining the amount of fees to properly and reasonably award. *ACLU of Georgia*, 168 F.3d at 427. The party seeking the fees must keep "meticulous, contemporaneous time records that reveal for each lawyer whose fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Ramos v. Lamm*, 713 F. 2d 546, 553 (10th Cir. 1983). Additionally, when considering the detailed list of tasks, the Court should also consider the "possibility that reported hours include duplication by reviewing with particular care the numbers of lawyers present and by evaluating the roles played by the lawyers in the litigation generally." *Id.* at 554. As even Plaintiff's counsel here agrees, in performing this reasonableness assessment, a district court should look to the twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243-44 (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)) (adopting twelve factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)) (factors typically referred to as the "Johnson factors").

Some other principles have arisen with respect to a Court's review of a fee petition. A court should not automatically accept the hours requested by counsel as reasonable and, instead, must review each hour entry for reasonableness, excluding those "hours which it finds 'excessive, redundant or otherwise unnecessary.' " *Alexander S. by & through Bowers v. Boyd*, 929 F. Supp.

925, 928 (D.S.C. 1995) (quoting *Hensley*, 461 U.S. at 434). In considering whether a given requested hour entry is reasonable, a court may consider the first two *Johnson* factors—the time and labor expended and the novelty and difficulty of the questions raised. *Id.* at 939. "[H]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980).

"Proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks. Fee claimants must submit documentation that reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity." *Nutri/System, Inc.*, 685 F. Supp. at 573. "The information supplied must be sufficient to permit the trial judge to 'weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities.'" *Id.* (quoting *Johnson*, 488 F.2d at 717). Only properly documented hours will permit a district court to accurately exclude " 'hours that were not reasonably expended.'" *Id.* (quoting *Hensley*, 461 U.S. at 433). Finally, "[i]nadequate documentation is a basis for reducing or denying a fee award." *Id.* (citing *Hensley*, 461 U.S. at 433).

It is well settled that a fee claimant "must submit documentation that reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity." *E.E.O.C. v. Nutri/Sys., Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 440-41 (1983)). Failure to submit proper documentation is a basis for reducing or denying a fee award since the trial judge must have sufficient information to weigh the hours claimed against his or her own knowledge and experience of the time required to complete the documented activities. *Hensley*, 461 U.S. at 433; *Johnson*. Indeed, entries lacking sufficient detail cannot be evaluated for reasonableness and therefore cannot be compensated. *Ursa Minor Ltd. v. Aon Financial Products, Inc.*, 2001 WL 842042, at *6 (S.D.N.Y. May 30, 2001).

Accordingly, a court may reduce a fee award because of "vagueness, inconsistencies, and other deficiencies in the billing records." *Kirsch v. Fleet Street, Ltd*., 148 F.3d 149, 173 (2d Cir.1998). "[T]he use of excessively vague time descriptions is a generally disfavored billing practice. Such descriptions 'inhibit the court's reasonableness view' and also 'justify a percentage reduction in the fee award.'" *Supinger*, 2019 WL 1450530, at *5 (alteration in original) (quoting *Brown*, 222 F. Supp. 3d at 514). The court in *Supinger* found entries inadequate where the description included only phrases such as "legal research," "prepare for deposition," or "work on discovery." *Id*. at *4.

As noted below in more detail, the fees allegedly spent by Plaintiff's counsel should be denied as unreasonable and excessive.

### a.  The time and labor expended.

Foremost, before the Court can even evaluate the fee petition, it has to focus on the information provided in support of the fees.  The record does not contain timesheets, contemporaneous billing entries or bills.  The Court should give special scrutiny to any reconstructions or estimates of time expended and make reductions when appropriate. *See Hensley*. There has been no explanation for how the time entries presented to the Court here were created or how these were culled out of the other entries Plaintiff's counsel claims to have made on behalf of this case any may have been omitted from the petition.  Without this basic source documentation and ability to truly see contemporaneous records which would explain the billing methods and fee judgments exemplified in those records, this Court cannot accept the summaries presented here to determine if the fees proposed are consistent with the Court's direction for awards.

Second, as was explained by the DC Court of Appeals in *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980), the court must undertake a careful analysis of the total amount of hours sought to ensure proper judgment was undertaken by Plaintiff's counsel in presenting the fees.

It does not follow that the amount of time actually expended is the amount of time reasonably expended. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority. Thus, no compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.

The Court cannot look at the fee petition presented here and not be taken aback by the amount of fees demanded given the nature of this case and its history. This was not a complicated matter nor a lengthy trial with multiple witnesses. In addition to not being a complicated or involved, of important note, this case was undertaken by F&R not because of the merits of the case, at the expense of other clients, or with an eye toward assuring that a reasonable fee would be earned and charged as it does other clients.

Consistent with its internal policy of treating each hour of pro bono work the same as a billable hour, F&R created a policy where billing to matters such as this case are untethered to any checks and balances because there are no billing impacts or consequences. Its policy which started out as a method of trying to ensure that underserved communities obtained legal services has ended up having attorneys use the proverbial "pro bono bucket" as a place to simply dump time entries to meet billable hour goals. An assessment of fees based on a policy which is divorced from practical billing and collection policies does not encourage efficiency, does not encourage good decision-making in billing practices and simply looks to create the very windfalls which the Supreme Court and Congress warned should be avoided.

In the current case, numerous examples of the impact of this policy are found in the materials provided by Plaintiff's counsel.[3] Mr. Kopsidas' affidavit attached to the Request for

---

[3]    Notwithstanding Plaintiff's Counsel's presentation of different spreadsheets based on summary activities, RCSI has combined all fees into a chronological reference which better illustrates the efforts and dollars introduced by Plaintiff's counsel. *See* attached Exhibit 2.

Fees made clear that F&R eliminated from its presentation time for multiple attorneys to attend depositions, court hearings, conferences, trial and internal meetings and "mock appellate arguments." *See* Exhibit 3 to Request ¶¶15, 16, 17 and 19.  This concession admits that F&R undertook this case and its billing to this case without the typical judgment used for its cases or with reasonable billing judgment which is required.  This lack of basic checks and balances permeates all of the billing presented here rendering it extremely unreasonable.

For example, prior to the Complaint even being filed, Plaintiff's counsel had spent $31,045 in legal fees. *See* attached Exhibit 2.  By the time the case was dismissed, Plaintiff's counsel had spent over $100,000. *Id.* From the beginning of discovery until the summary judgment motion, Plaintiff's counsel racked up another $289,233 in discovery costs to exchange written discovery, approximately 425 pages of documents, including emails, and taken seven depositions.  *Id.*

Other examples of the excessive fees and unchecked billing practices are found in Messrs. Davis and Kopsidas, who only sporadically assisted in the past few years, were lead counsel at trial but played only minor roles in the actual trial.  Charging at the highest rate available under the rates identified in Local Rules Appendix B, these two attorneys charged $224,818 from June 1, 2021 through the conclusion of trial. *Id.* The time entries for Mr. Davis illustrated he had done nothing with the case since February, 2019 and was clearly using the time since June, 2021 to refamiliarize himself with the facts for trial.  Mr. Kopsidas' actual efforts are unknown since his time entries after June, 2021 consist largely of entries which only indicate "prepare for trial," "work on trial preparations," "trial preparations," and "trial preparations and pretrial submissions." *Id.* Although the Court is well aware of the limited involvement of these counsel at trial and the shared responsibilities among all counsel appearing for Plaintiff at trial, rather than give counsel who participated on those days the credit for the fees at the lower rates available for those counsel,

Plaintiff's counsel charged at the highest rate available for counsel appearing in this trial regardless of their limited efforts.

These fees generated by these two gentlemen were closely matched by the $208,093 spent by the other six attorneys identified in the fee petition who assisted during this same period of time since June, 2021. The fact that the Plaintiff's counsel claims to have spent over $400,000 in less than six months on a three-day jury trial simply shocks the conscience. For each day from December 3, 2021 to December 9, 2021 Plaintiff's counsel charged 30, 17.7, 38, 45.1, 41.4, 21.2 and 14.6 hours, respectfully. That is a total of 208 hours in 7 days at a charged cost of $88,535. That fee is simply unreasonable and undeserved.

Excessive billing untethered to any realistic approach to the complexity of the case, the length of the trial or its realistic damages is found throughout the fee petition. Other examples, include:

- 173.4 hours at a cost of $54,325.00 spent on Responding to the Motion for Summary Judgment compared to only 40 more hours (212.5 and $64,051) spent on the appeal to the Fourth Circuit Court of Appeals. *Id.* A similar amount of time was spent in responding to the consent Motion to Transfer and the initial Motion to Dismiss--186.9 hours at a cost of $61,388. *Id.* This demonstrates that the 4th Circuit hours were horrifically inflated and duplicated since the appeal involved identical legal issues as were raised in the Motion to Dismiss.[4]

---

[4]     This excludes the just over 61 hours (one and half weeks of full-time work) were spent on the Motion for Reconsideration of the granting of the initial Motion to Dismiss at a cost of another $16,239.

12

- The summary judgment effort was equally overstaffed and reflects one person working 40 hours a week for over four full-time weeks and was completed by 8 different attorneys. *Id.* Obviously overstaffed, it should be reduced.

- Excluding Mr. Kopsidas' repetitive trial and pretrial charges, another 40.3 hours at a billed cost of $10,928 were spent on duplicative time entries which mirrored themselves in the billing reports. *Id.*

- 10 hours were spent by four different attorneys reviewing the documents from the EEOC which included roughly 20 pages, the majority of which was only the position statement of RCSI which had already been produced in discovery. *Id.*

- Despite Plaintiff's counsel indicating that "mock appellate argument" entries were deleted, (Exhibit 3, ¶19) but they still appear as billed entries totaling almost $4,000. *Id.*

- Over 23.6 hours were spent drafting a 30(b)(6) deposition notice which had only 12 categories of testimony. *Id.*

- More than 40 hours were spent by five people participating in preparing for Ms. Parker's deposition. *Id.*

- More than 16 hours and over $5,000 was spent in fighting for Mr. Moppins' employment records from an employer after he left RCSI before Plaintiff's counsel gave up the fight as irrelevant. *Id.*

- Almost 20 hours were spent on summaries and outlines of the two depositions of Mr. Moppins and Mr. Pickett. *Id.* More than seven of those hours were after the deposition of Mr. Moppins took place.

- 1.5 were spent by Mr. Kopsidas on "Pickett deposition" and he was not even present for the deposition.  Pickett's deposition lasted only 5 hours.  This also is in addition to Plaintiff's counsel spending more than 17 hours just prepping for Mr. Pickett's trial testimony when he was a witness called by Plaintiff and lasted less than 40 minutes. *Id.*

- More than a day and half in hours was spent in billing for preparation of the mediation statement. *Id.*

- Almost 20 hours were spent drafting the Motion in Limine on the *Faragher Ellereth* defense which the court is aware that Defense counsel had never indicated would apply or would be used. *Id.*

- Although some communication and collaboration among co-counsel is necessary, Plaintiff's counsel has identified "team" meetings and summaries among Plaintiff's counsel which totaled 244 hours in the billing at a price of more than $82,400 and included at least 10 different timekeepers. *Id.*

These incidents alone total over $530,000 in excessive fees and do not even account for the full impact of the inefficiencies of multiple people billing and being involved in this matter. These billing also do not fully account for the billing of hours with no eye toward what would be a reasonable bill to a client.  After carefully analyzing these time records against the policies under which F&R took this case, there is no doubt that the Plaintiff's counsel submitted time for this matter devoid of any normal billing judgment where the factors to be used by the Court would even have applicability.  Based on this presentation and request for fees, there is little doubt that the fees requested are excessive and Plaintiff's counsel has failed to meet the necessary element of showing reasonable fees incurred.

14

**b.  The novelty and difficulty of the questions raised and skill required to perform the legal services rendered.**

The claims tried in this case were relatively straight-forward and direct. Plaintiff asserted she was subjected to a hostile work environment and that RCSI retaliated against her for engaging in protected activity. The framework for both claims is well established. Moreover, the case resulted in a relatively ordinary three-day jury trial, with no experts, was not contentious and required no unusual skills, insights, or preparation of trial exhibits were apparent.  Plaintiff's counsel's overstaffing of this matter for reasons unrelated to the fee petition should not be permitted nor should they be charged at the highest rate chargeable for such services should not include rates on the upper end of those listed in Appendix B of the Local Rules as sought by Plaintiff's counsel.

**c.  The attorney's opportunity costs in pressing the litigation and attorney's expectations.**

Plaintiff's counsel has not brought forth any evidence supporting or demonstrating any opportunity cost in pressing the present litigation. In fact, there are no opportunity costs lost by either of the firms which acted as Plaintiff's counsel here.  WLC handles these cases on a regular basis as part of its mission and suggested in no fashion that the handling of this case kept it from taking other cases or assisting other litigants.  F&R publicly acknowledges that there are no opportunity costs lost by its pursuing such cases.  It encourages its attorneys to regularly engage in such cases treating each hour worked as a billable hour to a client.  As identified in its website

> Fish attorneys are dedicated to serving the communities in which they live and work, and pro bono work is an integral part of the firm's professional culture. Fish believes that the practice of law is a privilege that carries with it the responsibility to provide pro bono legal services to those who cannot afford to pay. In 2020, nearly 75% of the firm's attorneys took part in pro bono projects, resulting in roughly 22,000 pro bono hours dedicated firmwide.

*See* Exhibit 1.

15

The simple fact that F&R found that it could use multiple attorneys on this case of no great complexity suggests strongly that it has ample capacity in taking this case and it had no impact or sacrifices to the practice of the firm.

**d.  Customary fee for like work.**

Plaintiff's counsel admits that WLC does not charge hourly rates and that the rates of F&R are well above the rates permitted under Local Rules Appendix B.  Beyond reference to the Lodestar rates in the Local Rules, Plaintiff's Counsel has failed to introduce evidence to support the rates requested for Title VII litigation in the Southern District of Maryland. Even the Local Rules explain that reliance on Appendix B is not sufficient and "the Court expects all claims to be appropriately supported."  There has been insufficient effort to justify the rates used in this case recognizing the Plaintiff's counsels' years of service, where that service has been and whether it is commensurate with the case sought here.

WLC produced an affidavit noting that the attorneys do not regularly keep billing rates and are paid a salary. *See* Exhibit 5 to Motion. Although that same affidavit notes that the rates of $350 for Mr. Corkery and Ms. Wasik as identified in the Local Rules Appendix B are appropriate, no evidence was provided supporting the reasonableness of the rates for the others billing through WLC, including Tiffany Yang, Tristin Brown and Samantha Weaver.  At the time of their efforts in this case, Ms. Yang and Mr. Brown had been practicing for less than five years.

Recognizing it is Plaintiff's counsel's burden to substantiate its fee requests and rates, without support for the appropriateness of the rates sought within the Greenbelt area, Plaintiff's counsel has offered insufficient support for an award and none can be made.  It is especially incredulous that Plaintiff's counsel has failed to offer such evidence given the amount of fees supposedly spent on this matter.  Before counsel submitted a request for almost a million dollars

16

in fees, it should have gone through the appropriate steps to show the fees were consistent with the rates in Greenbelt for similar cases.

**e.  Time limitations imposed by the client and circumstances.**

Plaintiff's counsel has not brought forth any evidence supporting any unusual time restrictions or limitations placed upon them. Judging by the amount of time which Plaintiff's counsel devoted to this case, there is little question that they had ample time available to devote to this case which is contrary to the notion that any sacrifice in time was taken for the case. In 2021 alone, Messrs, Tishman, Kopsidas and Davis spent 171, 371 and 114 hours, respectively, on this case. Ms. Wasik spent over 300 hours in 2021 while Mr. Corkery spent another 100 hours. Clearly all of counsel had ample time to devote to this case and taking it presented no sacrifice to other clients. Given the hours shown here and the policy at F&R giving full credit for such pro bono efforts, it is equally likely that Plaintiff's counsel used this case to fill holes in meeting billable hour goals.

**f.  The amount in controversy and the results obtained.**

The Court may adjust the lodestar, if necessary, to reflect a plaintiff's overall degree of success, making the award "reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. In this case, Plaintiff's counsel must concede that it lost the opportunity to pursue at least one of Plaintiff's original counts which was claiming disparate treatment. Despite the affirmance of the dismissal, the billing support provided by Plaintiff's counsel demonstrates no deduction for Plaintiff's counsel's fees for drafting the Complaint, responding to the Motion to Dismiss, Motion for Reconsideration or Appeal were reduced. An appropriate subtraction of those costs by at least one third is appropriate and should be taken. This one third reduction totals $41,654.

The victory in this case which Plaintiff's counsel may have claimed in the jury verdict was also not without the harsh reality that Plaintiff and her counsel have known since they filed suit— Plaintiff's recovery could never be more than $83,000 for her wages and her legally capped compensatory and punitive damages.  Despite always knowing that the award would be limited to no more than this $83,000, Plaintiff's counsel racked up fees and expenses without abandon and across multiple timekeepers totaling more than 10 times that amount.  Plaintiff's counsel did this not because the case merited the effort nor because of the possibility of higher damages but solely to continue to provide pro bono billable hours for its legal staff.

Any business concerns typical among counsel pursuing such a case were cast aside in favor of Plaintiff's counsel's goals to provide opportunities for staff which it would not otherwise be able to provide.  This factor should weigh against Plaintiff's counsel in assessing whether this was a reasonable fee.

### C. Market Rate

It is initially the burden of the prevailing party to demonstrate the reasonableness of the claimed rate and hours spent under a fee-shifting statute. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986); *Plyler v. Evatt*, 902 F.2d 273, 277–78 (4th Cir.1990). The prevailing market rate is "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."

A district court is permitted to "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 499 (6th Cir.2011); *see Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442, 447 (6th Cir.2009) (affirming a district court's calculation of a reasonable hourly rate based on the court's "knowledge of local

18

billing practices" and counsel's customary billing rates). Further, the fee claimant must furnish specific support for the proposed hourly rate. *Blum*, 465 U.S. at 895-96. This support typically includes affidavits from lawyers who are familiar with the prevailing community rate in comparable cases for counsel with similar qualifications.

> Keeping in mind our extremely deferential standard of review in this area, we hold the district court abused its discretion in basing the Fee Award on the hourly rates requested by Plaintiff, without reduction. Plaintiff's prevailing-hourly-rate evidence is inadequate to support the award. Critically, beyond the affidavit of Lead Counsel Elaine Bredehoft, Plaintiff offered no specific evidence that the hourly rates sought for his attorneys coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which our case law required him to do. *Plyler*, 902 F.2d at 277 ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (internal quotation marks omitted).

*Grissom v. The Mills Corp.*, 549 F.3d 313, 322-323 (4th Cir. 2008).

A Plaintiff must "furnish specific support for the hourly rate[s] [she] proposes." *Nutri/System*, 685 F. Supp. at 573. A court must consider the "prevailing market rates in the relevant community" when determining what a reasonable hourly fee is in a given case. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum*, 465 U.S. at 895). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits," however, "[i]n circumstances where it is reasonable to retain attorneys from other communities ... the rates in those communities may also be considered." *Id.* "Typically, a reasonable hourly rate is established by affidavits from lawyers with first-hand knowledge of the prevailing community rate in comparable cases for counsel with similar qualifications." *Nutri/System*, 685. F. Supp. at 573.

An example of "satisfactory specific evidence" has been held to be "affidavits from other local lawyers who are familiar both with the skills of the fee applicants and more generally with

19

the type of work in the relevant community." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009); *see also CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp.2d 780, 788 (D. Md. 2000) (evidence of the prevailing market rate "usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate").

Plaintiff's counsel has included affidavits by three attorneys as support for reasonable hourly rates of experienced trial attorneys in Greenbelt, Maryland.  The submitted affidavits fail to establish what constitutes a reasonable market rate in the relevant area because none of the affiants adequately compare Plaintiff's counsel to attorneys of reasonably comparable skill and experience in civil rights litigation in the Greenbelt nor do they proffer what the rates are in Greenbelt. Moreover, two of the affiants merely make generalized statements about familiarity with employment lawyers and civil litigators in the DC suburbs. Those affidavits are insufficient to establish the prevailing market rate in the relevant community. *Rum Creek Coal Sales, Inc.*, 31 F.3d 169, 175 (4th Cir.1994) (*quoting Blum*, 465 U.S. at 895 (a reasonable hourly rate is defined as "the 'prevailing market rate[ ] in the relevant community'")).*See National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir.1988) (the relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits).

Although the affiants fall back on Appendix B to the Local Rules, reliance on this Appendix does not relieve them of their burden of showing reasonable rates.  Even the Local Rules explain that reliance on Appendix B of the Local Rules is not sufficient and "the Court expects all claims to be appropriately supported." Given the amount of fees sought in this proceeding, it is naturally expected that Plaintiff's Counsel could have obtained sufficient support for this notion.  They have not and fees should not be awarded given this failure of proof.

**Plaintiff's Counsel's Costs**

Plaintiff's Counsel also seeks costs in in the amount of $68,352.85. The standard for an award of other costs to a prevailing party is different than that for an award of attorneys' fees. Whereas the fee-shifting provision under Title VII, discussed above, places the award of attorneys' fees in the court's discretion.  While there is a presumption in favor of awarding costs to the prevailing party, a party seeking costs must provide the court with adequate documentation of the costs incurred. *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994).  Without proper support for the claimed costs, they may not be assessed.  Upon careful examination of such costs claimed here, there is a lack of support.

Costs that may be awarded in the court's discretion include travel, copy, and other expenses that would normally be charged to a client. *Trimper v. City of Norfolk*, 58 F.3d 68, 75 (4th Cir. 1995).  Costs of photocopies necessarily obtained for use in the litigation are recoverable upon proof of necessity. 28 U.S.C. § 1920(4); *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir.1994).

a. **Costs sought by Plaintiff are not allowable under 28 U.S.C § 1920, are unsupported by affidavit, and are otherwise unreasonable.**

Plaintiff has submitted a wish list of costs incurred prior to, and during the pendency of the trial which are not taxable under federal law and are otherwise completely unreasonable. There is no breakdown or evidentiary support for these expenses demonstrating their necessity for this trial.  All expenses sought are included in Exhibit 6 without tally or explanation.

Only those costs specifically enumerated in 28 U.S.C. §§ 1920, 1921 and 1923 are taxable, and the Clerk shall deny all other requested costs. *See* Fed. R. Civ. P. 54(d); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920); *Charter*

21

*Med. Corp. v. Cardin*, 127 F.R.D. 111, 113 (D. Md. 1989); *Advance Bus. Sys. & Supply Co. v. SCM Corp.*, 287 F.Supp. 143, 162 (D. Md. 1968), *aff'd*, 415 F.2d 55 (4th Cir. 1969). Prevailing parties are responsible for providing the required documentation to support their bills of costs, including clearly demonstrating how the documents support each item. *Id.* Here, Plaintiff seeks a plethora of expenses that are not enumerated in 28 U.S.C. §§ 1920, 1921 and 1923, are not otherwise provided for by case law and are not supported by any factual support.

28 U.S.C. § 1920 provides for the following costs:

(1)　　Fees of the clerk and marshal;
(2)　　Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)　　Fees and disbursements for printing and witnesses;
(4)　　Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)　　Docket fees under section 1923 of this title;
(6)　　Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. §§ 1921 and 1923 provides costs that may be taxed by the Court as well, but which are not relevant here and have not been submitted by Plaintiff. The vast majority of costs submitted by Plaintiff are not taxable under these statutes.

　　　i.　　Parking, Transportation, and Hotels.

Plaintiff seeks reimbursement for parking and transportation expenses that are neither allowable under the federal statutes nor are they reasonable. Preliminarily, it should be identified that Plaintiff is represented by a surprisingly large number of attorneys from F&R, a Washington, D.C. law firm with offices a mere 15.6 miles from the U.S. District Court in Greenbelt. Despite this, Plaintiff's counsel has submitted a litany of expenses for Uber transportation, parking, and, confusingly, airfare from Charlotte, North Carolina to Washington, D.C.

22

Further, Plaintiff's counsel seeks recovery for the staggering eleven hotel rooms and conference rooms and miscellaneous food expenses occupied by Plaintiff's counsel in the days leading up to and during the pendency of the trial.  Plaintiff's counsel's personal choice to stay next to the Courthouse for a start time of no earlier than 8:30 am and an end time of no later than 5:00 pm is neither a necessity nor should it be shouldered by RCSI.

None of these expenses are allowable under 28 U.S.C. § 1920 and are certainly not reasonable in this case. They should therefore be denied.

ii.       Attorney Bar Admissions

Plaintiff has supplied as expenses and seeks reimbursement for several attorneys to be admitted to the bar *pro hac vice* or to the Fourth Circuit Court of Appeals.   Attorney bar admissions and pro hac vice applications are not taxable under the federal statutes nor appropriately assessed here.

iii.      Courier Services

Plaintiff's counsel seeks reimbursement for courier services which were utilized by Plaintiff's counsel.  Although the bills for these expenses were presented, there is no explanation for what the charges relate to, why they were needed or any other evidence.  Not only are courier services not taxable under the federal statutes and are done purely for the convenience of counsel, there is an utter lack of explanation tying them to this case.

iv.      Computer Equipment and IT Services and Conference Space

Plaintiff's counsel apparently elected to employ an information technology consulting firm and contractor to provide an entire suite of luxury IT and office suite services during the trial, including copiers and large display screens for assistance in trial preparations.  This equipment was delivered and installed in Plaintiff's counsel's remote office at the hotel, which

was constructed in conference space rented out in the Crowne Plaza Hotel.  Just as the travel expenses submitted by Plaintiff's counsel are completely unreasonable and not taxable under the federal statutes, construction of a remote office fifteen miles away from counsel's main office was completely unreasonable, and not taxable under the federal statutes. These expenses also include IT services at the trial.  The convenience of counsel who was not as adept at operating court technology is not a cost which was necessitated by the trial and should not be taxed.

v.  Starbucks Gift Cards, Smoothies, Candy, and Breath Mints.

Counsel for Plaintiff did not suffer from a shortage of calories or caffeine during the trial or its preparations.  Beginning in the weekend prior to trial, Plaintiff's counsel spent large sums of money at retailers and delivery services including, but not limited to, Popeye's, Target, Grub Hub, Shipt, BJ's Wholesale Club, and Starbucks.  Plaintiff's counsel enjoyed granola bars, fried chicken, sparkling water, a wide variety of teas for every peculiar taste (as well as an electric tea kettle for preparation) and chewing gum and breath mints.  Plaintiff's counsel has also asked this Court to assess costs for multiple Starbucks gift cards, which is surprising given the amount of tea and coffee that was delivered via Shipt and Grub Hub during this time.  None of the documentation submitted is supported by an affidavit alleging that these treats were consumed during the pendency of the trial or were necessitated by this trial.

Regardless, none of this is taxable under the federal statutes and should all be denied by this Court.

vi.  The Extensive Deposition Services and Copies Produced by Plaintiff Were Not Necessary for Litigation.

Plaintiff's counsel has submitted extensive costs for taxation related to the unreasonable number of copies that were made for her unnecessarily large litigation team witnessed by this

24

Court.  While copies are taxable costs under the federal statutes, § 1920 states explicitly that the copies must be necessary for use in the case.  Plaintiff paraded no less than 8 attorneys into the courtroom throughout the trial, each of which followed along with trial counsel's every move with binders and copies of their own.  The copies produced by Plaintiff's counsel for the excessive number of attorney-spectators brought to witness the case were not necessary for use in the case, and therefore the federal statutes do not allow taxation for such costs.

Additionally, while deposition costs can be taxable to the non-prevailing party, the deposition costs must still be reasonably necessary.  *See American Medical Security, Inc. v. Larsen*, 31 F.Supp.2d 502, 509 (D. Md. 1998).  Here, Plaintiff seeks recovery for excessive deposition costs including videographers, Realtime recording and ASCII files.  Under some circumstances a prevailing party may recover the cost of both video and transcript, such as an instance where a video deposition is played at trial.  *See Cherry v. Champion International Corp.*, 186 F.3d 442, 448 (4th Cir. 1999).  Only one video deposition was played at trial here and that was done by Plaintiff to avoid having an unvaccinated witness appear at trial.  Further, Plaintiff incurred expenses that were not reasonably necessary, such as expedited rough drafts of deposition transcripts many months prior to trial where expedition was not reasonably necessary.  Plaintiff also incurred fees to have Realtime reporting so that deposition testimony could be presented in real time to counsel.  These excessive deposition fees cannot be assessed.

Ultimately, like the request for fees, Plaintiff's counsel seeks taxation of costs against Defendant that are not reasonable and were not necessary for their case.  Plaintiff's counsel spared no expense, whether it was for personal consumption, travel, comfort, or excess.  The vast majority of costs submitted for taxation by Plaintiff's counsel are either not allowable under the federal statutes or were not necessary for pursuit of her case and therefore should be denied.

**Conclusion**

Although RCSI does not believe that Plaintiff's counsel has met its burden at this stage of the proceedings which would justify the Court awarding any fees to Plaintiff's counsel consistent with their pro bono mantra, it is likely that the Court will still find it appropriate to make an award of some fees.

An award of $83,000, which is equivalent to the total recovery which was obtainable is more than reasonable and appropriate given the nature of this case, the limited achievable damages and Plaintiff's counsel's expressed intent to benefit from the litigation experience available from this case and not its resolution.

/s/ Donald J. Walsh
Donald J. Walsh (Bar #09384)
dwalsh@rkwlawgroup.com
RKW, LLC
10075 Red Run Boulevard, 4th Floor
Owings Mills, Maryland 21117
Telephone: (443)379-4011

*Attorneys for RCSI Consulting Services, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 28th day of January, 2022, a copy of the Response to Plaintiff's Request for Attorney's Fees and Costs was sent to those counsel identified via the Court's ECF system.

/s/ Donald J. Walsh

26