**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

|  |  |
|---|---|
| EVANGELINE J. PARKER,<br><br>       Plaintiff,<br><br>v.<br><br>REEMA CONSULTING SERVICES, INC.<br><br>       Defendant. | Civil No. 8:17-cv-01648-TDC |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**HER MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff's request for attorneys' fees and costs should be granted. Title VII provides for full recovery of fees even when the time and costs of bringing a meritorious case through appeal and trial are greater than the potential recovery by civil rights plaintiffs. *See Riverside v. Rivera*, 477 U.S. 561, 575 (1986). In this case in particular, Defendant's litigation strategy has resulted in a substantial expenditure of effort by Ms. Parker's counsel, despite Plaintiff's ongoing attempts to approach the case pragmatically. As a case in point, in September 2017, Plaintiff proposed to settle this case for less than $80,000, *inclusive of attorneys' fees and costs*. Ex. 1, Supplemental Declaration of Joanna Wasik, ¶ 2 ("Wasik Decl."). Instead of accepting or negotiating such a prudent offer at that juncture or any other time, Defendant chose to pursue a full-throttle litigation strategy, encompassing a motion to dismiss, an appeal, a petition for certiorari to the United States Supreme Court, and discovery. Ultimately, Defendant pursued the case through a trial in which the jury concluded not only that Ms. Parker's claims were meritorious, but that Defendant's treatment of Ms. Parker was so egregious, and so demanding of admonition, that it must be punished by an award of $725,000, including $385,000 in punitive damages. Dkt. 170.

1

Defendant cannot now complain that its decisions somehow justify a reduction in Plaintiff's attorneys' fees.

Plaintiff's time expenditures were reasonable given the demands of this case and the excellent results that they yielded for Ms. Parker. Moreover, according to the Defendant's certiorari petition to the Supreme Court, Ms. Parker's claims presented "a significant issue affecting the public interest," the resolution of which "has widespread consequences for employers." *Reema Consulting Services, Inc. v. Evangeline Parker*, Petition for Writ of Certiorari in the Supreme Court of the United States of Reema Consulting Services, Inc. at 15 (May 9, 2019).[1] Plaintiff agrees with this characterization, and has noted in her Motion for Attorneys' Fees and Costs that the novelty of the legal issue presented in this case, and the reverberating impact of Plaintiff's appellate and trial success for employees and employers in the Fourth Circuit and beyond, justifies her request for fees and costs. Dkt. 176 at 15-17. While Defendant now complains of time that Plaintiff's attorneys spent on preparations for oral argument, preparing Ms. Parker for her deposition, opposing a motion for summary judgment, or preparing for trial, counsel was justified in performing these time-intensive and critical tasks.

Lastly, in an effort to streamline the issues for the Court, Plaintiff withdraws her request for entries totaling $16,242.50, and has clarified for the Court the specific non-taxable expenses that she is seeking, which total $469.94 for the Washington Lawyers' Committee and $11,722.12 for Fish & Richardson. Plaintiff also seeks to recover a portion of her counsel's time, totaling $4,970.00, for the instant Reply and the Reply in Support of the Motion for Entry of Judgment. Dkt. 180.

---

[1] Defendant's petition for certiorari is available at
https://www.supremecourt.gov/DocketPDF/18/18-1442/100204/20190517141414348_18-
     PetitionForAWritOfCertiorari%205.17.pdf

In total, Plaintiff seeks an award of $955,162.50 in attorneys' fees and $12,192.06 in costs.

**I.      The Fee-Shifting Statutes Provide For Attorneys' Fees Precisely Because Fees in Civil Rights Cases Often Outstrip Plaintiffs' Recovery**

Congress included fee shifting provisions in civil rights statutes specifically to incentivize attorneys to take meritorious cases like that of Ms. Parker, in which a plaintiff's potential recovery is outstripped or exceeded by the attorneys' fees and costs required to bring the case. The Supreme Court has explained that:

> [A] civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms . . . Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it intended that the amount of fees awarded under § 1988 to be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature.

*Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (internal citations omitted). Judge Grimm has echoed this sentiment in a case litigated by the Washington Lawyers' Committee:

> Without lawyers willing to take civil rights cases on a pro bono basis, cases such as this one, where there were serious [] violations alleged (and confirmed by discovery) would not be brought when the plaintiff does not have the resources to hire counsel. . . Civil rights cases are challenging to bring, and frequently met with vigorous opposition. . . When courts evaluate how much of a reduction is needed to align the recovery received with the hourly fee requested, they must not wield too sharp a pencil when modifying a fee award, lest they discourage the type of lawyers needed for these cases from taking them – marathoners, not sprinters.

*Sergeant v. Acol*, Case No. PWG-15-2233, 2018 U.S. Dist. LEXIS 879, 28-30 (D. Md. 2018).

In its opposition, Defendant seems to suggest that, because Ms. Parker did a good job of mitigating her economic damages by promptly obtaining other employment — which speaks to her worth as a stellar employee — her attorneys should not have spent much time on her case. Dkt. 179 at 2-3, 18 ("Plaintiff's counsel racked up fees and expenses" despite the "harsh reality"

that Plaintiff's damages were capped). Both Fish & Richardson and the Washington Lawyers'

Committee for Civil Rights reject the offensive notion that a low monetary claim deserves poor

lawyering, and only provide the highest level of service to the clients they retain. Further,

Defendant ignores the reality that even the capped damages required a win at trial, as well as all

the litigation that preceded such a win, for Ms. Parker to recover them.

It is common for courts to award attorneys' fees that are higher — often much higher —

than the recovery of a civil rights plaintiff herself in the same case. *See, e.g.*, *Wilcox v. City of*

*Reno*, 42 F.3d 550 (9th Cir. 1994) (affirming award of $66,535 in fees after jury award of $1.00

in Section 1983 action and finding that the "lawsuit achieved admirable results" despite a

nominal damages award).  In a Title VII case in which the plaintiff prevailed on her pregnancy

discrimination claim at a four-day trial, a court awarded $825,621.77 in fees to the Washington

Lawyers' Committee and law firm co-counsel. *Garcia Hernandez v. Chipotle Mexican Grill*,

Inc., 257 F. Supp. 3d 100, 37 (D.D.C. 2017). Unlike this case, *Garcia Hernandez* did not involve

a motion for reconsideration, appeal, or opposition to a petition for certiorari, highlighting the

reasonableness of Ms. Parker's request here. Further, Ms. Garcia was awarded $550,000 at trial

by the jury, $175,000 less than the jury verdict achieved by Ms. Parker.[2] In *Overbey v. Mayor*,

Civ. No. DKC-17-1793, 2021 U.S. Dist LEXIS 133973 (D. Md. 2021), Judge Chasanow

awarded plaintiff's counsel $523,416.50 in attorneys' fees in a First Amendment case brought by

a single plaintiff that proceeded through discovery, an appeal to the Fourth Circuit resulting in a

precedential opinion, and summary judgment. *Id.* at 4-6. The plaintiff obtained an award of

---

[2] Ms. Garcia's award was reduced to $390,000 by the statutory cap imposed by 42 U.S.C.
§ 1981(b)(3)(D). *Hernandez*, 257 F. Supp. 3d at 103.

$31,500 from the court when she prevailed at summary judgment. *Id*. Unlike the instant case, *Overbey* did not involve a petition for certiorari or, notably, a trial.

In another case, Judge Hazel awarded the Washington Lawyers' Committee and law firm co-counsel the full $487,616.25 in fees requested in a disability discrimination case in which plaintiff prevailed at a two-day trial. *Van Rossum v. Baltimore County*, Case No. GJH-14-0115, 2017 U.S. Dist. LEXIS 157196 (September 26, 2017). Again, unlike the present case, *Van Rossum* did not require a motion for reconsideration, appeal, or opposition to a petition for certiorari. In a third case in which a plaintiff accepted an offer of judgment after just a motion to dismiss and some discovery — far less than the work required in this present case — Judge Grimm awarded the Washington Lawyers' Committee and co-counsel $202,836 of the total $279,000 requested in fees. *Sergeant v. Acol*, Case No. PWG-15-2233, 2018 U.S. Dist. LEXIS 879, 1-3 (D. Md. 2018). The plaintiff had received just above half of this, $125,000, in the judgment. *Id*. Judge Grimm noted that the rates sought by Plaintiff's counsel were "reasonable as they are within the guidelines set by this Court's local rules – despite all of them being at the highest acceptable rate." *Id*. at 9.

Further, a remittitur to a Title VII cap on damages has no effect on the court's evaluation of the success of counsel or the reasonableness of the fees, as Defendant contends it should. "[S]uccess as a civil rights plaintiff cannot be measured entirely by her monetary recovery, as her success also has an impact on the local public." *Bland v. Fairfax County*, 1:10-cv-1030, 2011 U.S. Dist. LEXIS 128522 (E. D. Va. 2011) (awarding $295,703 in fees with only $1,995 reduction in total requested amount, in case in which jury award was remitted to $50,000). In the present case, the clear message sent by Ms. Parker's jury award of $725,000 — a very substantial amount — is a deterrent to future unlawful behavior of the type that Ms. Parker

experienced. In addition, Ms. Parker's previous victories creating a precedential Fourth Circuit opinion that has been cited forty-three times, is also undiluted by the remitter to the cap. *See* Dkt. 176 at 6, 15-17.  Ms. Parker is owed a fully compensatory fee notwithstanding her lower "achievable damages." Dkt. 179 at 1.

## II.     Defendant's Litigation Strategy Justifies Plaintiffs' Fees

Defendant's actions throughout the course of litigation have had the effect of unnecessarily adding to Plaintiffs' fees. First, Defendant rejected out of hand a number of reasonable settlement offers made by Plaintiff. In September 2017, Plaintiff made a demand of $80,000, inclusive of attorneys' fees and costs, to Defendant. Ex. 1, Supp. Wasik Decl. ¶ 2. Given that this was an opening demand, one would reasonably expect that Plaintiff was willing to accept less than $80,000 to settle her claims – and even this opening was nine times less than the jury eventually determined her case was worth. *Id.*; Dkt. 170. Defendant rejected this offer, stating that "[w]e find your unsupported demand of $80,000 to be as offensive as [Ms. Parker's] allegations." *Id.* ¶ 3. Plaintiff continued to take seriously the possibility of settlement, making several more reasonable offers to Defendant. *Id.* at 2. In September 2020, at the conclusion of discovery but prior to Defendant's motion for summary judgment, Plaintiff made an opening demand of $85,000 in damages and $210,000 in attorneys' fees, and was again willing to accept less than these amounts to settle. *Id.* at 4.[3] Defendant refused to entertain negotiations, and even now takes issue with Plaintiff's spending "more than a day and a half in hours" in earnest preparations for this mediation. Dkt. 179 at 14. Through all of these efforts, Plaintiff was trying to bring the Parties together and avoid the scenario that Defendant now complains of — a

---

[3] Given this history, Defendant's contention that Plaintiff's "demands all transcended the known damages by some multiple," Dkt. 179 at 4, is false.

significant accrual of fees necessitated by litigation through trial. Indeed, the fact that Defendant finds objectionable a day0and-a-half preparation for (what Plaintiff believed would be) a serious mediation confirms that Defendant never entertained the idea of settlement and mitigation of costs. While Defendant was within its right to litigate, the reality is that continued litigation results in an accrual of fees.

Second, Defendant increased the complexity and length of this case by taking the extraordinary step of filing a petition for certiorari to the Supreme Court.[4]  Although Defendant now claims that this case "was not complicated," and the framework for the claims is "well established," Dkt. 179 at 1, 15, it took the opposite view in its petition, arguing that "[t]his case presents a recurring question of significant federal importance that has divided the Federal Courts of Appeals"; that the legal issue regarding gender-based rumors suffered by Ms. Parker "is a significant issue affecting the public interest"; that this legal issue implicates one or more of the holdings in Supreme Court precedent; and that the Supreme Court should consider the case because "the Fourth Circuit's decision has widespread consequences for employers." *Reema Consulting Services, Inc. v. Evangeline Parker*, Petition for Writ of Certiorari at 2, 14-15 (May 9, 2019).[5] Plaintiff agrees with Defendant's assessment of the public interest influence of Ms. Parker's case, and notes that her victory justifies a fully compensatory fee. Dkt. 176 at 15-17; *see also Doe v. Kidd*, 656 Fed. Appx. 643, 657 (4th Cir. 2016) (reversing reduction of fee request

---

[4] According to SCOTUSBlog, the Supreme Court grants approximately 1% of all petitions filed, illustrating the Hail Mary nature of Defendant's strategy. Ralph Mayrell and John Elwood, *The statistics of relists over the past give terms: the more things change, the more they stay the sam*e (Jan 4, 2022), https://www.scotusblog.com/2022/01/the-statistics-of-relists-over-the-past-five-terms-the-more-things-change-the-more-they-stay-the-same/#:~:text=Relists%20and%20cert%20grants%3A%20Together%20forever&text=For%20the%20court's%202016%20to,were%20relisted%20at%20least%20once.

[5] Defendant's petition is available at https://www.supremecourt.gov/DocketPDF/18/18-1442/100204/20190517141414348_18-___PetitionForAWritOfCertiorari%205.17.pdf.

because district court failed to recognize that plaintiff's case "changed the legal landscape" under the relevant statute and "opened the courthouse doors" to other plaintiffs). Yet Defendant's very recent about-face seeking to minimize the novelty and importance of the legal issue presented in this case is a transparent attempt to avoid the natural consequences of its earlier strategy decisions.

Defendant's litigation excesses continued after the petition for certiorari, in discovery and trial preparation, further driving up fees. Defendant's interrogatory responses listed 13 witnesses, most of whom were former employees of Defendant whom Plaintiff made efforts to locate and, where possible, depose. Ex. 1, ¶ 6. In May 2021, in email correspondence in which Plaintiff's counsel sought to minimize trial preparation and proposed 3-4 days of a streamlined trial, Defendant's counsel indicated that Defendant intended to call 10-11 witnesses and that trial would need to last "at least a week given the volume of witnesses who are involved." *Id.* ¶ 7. Later in August 2021, when Plaintiff's counsel proposed to Defense counsel that witness lists be exchanged in September to minimize unnecessary work, Defense counsel indicated that they could not respond until October. *Id*. ¶ 8. Even in October 2021, less than two months before trial, Defendant indicated that it was still likely to call Mr. Donte Jennings as a witness at trial. *Id*. ¶ 9. Ultimately, Defendant only called two trial witnesses that had not already been called by Plaintiff. However, as a result of Defendant's posturing, Plaintiff had been forced to investigate and prepare for the possibility that Defendant would call all of these witnesses.

Plaintiff also had to respond to Defendant's insistence on re-litigating issues previously settled in the case. In its opposition, Defendant complains of time that Plaintiff spent drafting a Motion *in Limine* for the *Farragher Ellerth* defense and falsely claims that it "never indicated" the defense would be used. Dkt. 179 at 14. However, during a meet and confer on October 14,

2021, Defendant's counsel refused to agree that this Court had ruled in its summary judgment order that the *Farragher Ellerth* defense was inapplicable. Ex. 1, ¶ 10. As a result, Plaintiff was forced to research, draft, and file the Motion *in Limine*, which the Court ultimately granted — attorney time which is fully compensable. In another example, Defendant argued at summary judgment that the rumor experienced by Plaintiff was not "based on sex" despite the Fourth Circuit's opinion to the contrary and the Supreme Court's denial of certiorari, Dkt. 122 at 15 ("RCSI nevertheless argues that Parker has not established this element…"); in pretrial negotiations, defense counsel raised the possibility that Defendant would make the same arguments in front of the jury, forcing Plaintiff to file a Motion *in Limine* based on the law of the case doctrine. *Id*. ¶ 11; Dkt. 144 (MIL No. 2). This motion was also granted. Dkt. 156.

Further, at many points in the case, Plaintiff's counsel were forced to bat down legal arguments that had no basis in the applicable law — which required an unnecessary expenditure of time and increased Plaintiff's fees. For example, as this Court noted at the pretrial conference, the jury instructions were particularly over-litigated. In its submission, Defendant proposed instructions replete with incorrect statements of the law and facts, Dkt. 147 at 19 n.13, 21 n. 20, 22 n. 21, and which misquoted and misconstrued caselaw on which it relied, *id.* at 18 n. 7 & 9, 26 n. 42. Defendant also proposed a wholly unprecedented and highly misleading instruction on hostile work environment. *Id.* at 28 n. 53. As a further recent case in point, in Defendant's Response in Opposition To Plaintiff's Motion for Entry of Judgment, Dkt. 180, Defendant cited to irrelevant cases that did not stand for the cited proposition, and argued without any legal justification that Virginia law should apply to a Maryland case — a moot point given that the prejudgment interest in Virginia is 6%, the same as the rate requested by Plaintiff. *See* Dkt. 181.

It is exactly this type of pointless opposition that Plaintiff has faced throughout the past 4.5 years of litigation, and which has unnecessarily added to the fees of her attorneys.

### III.    The Rates and Hours Requested Are Reasonable

The rates charged, and time spent, on Ms. Parker's case are both reasonable. As a threshold matter, Plaintiffs have complied with the Court's rules in its fee submission. Although Defendant protests that Plaintiffs have not provided "basic source information," and has submitted an exhibit re-organizing Plaintiffs' time records into chronological order, Dkt. 179 at 9; Dkt. 179-2, Plaintiffs have followed Appendix B's requirement that counsel present time records organized by litigation phase. Dkt. 176-2, 176-4. Further, the two declarations submitted by Plaintiffs note that these submissions reflect "contemporaneous time records" kept by the attorneys and staff working on Ms. Parker's case. Dkt. 176-1 at ¶ 2 (Wasik Decl.); Dkt 176-3 at ¶ 2 (Kopsidas Decl.). Defendant is incorrect that more is required.

Defendant makes much of the time spent by Ms. Parker's team on trial preparation. Dkt. 179 at 12. As noted above, Plaintiff's counsel made an early effort to streamline preparation and narrow witness lists months before trial, yet was met with resistance by Defense counsel. Further, the time-intensive preparation by Ms. Parker's counsel was necessary. To win at trial, a civil rights plaintiff must convince a jury that she is credible and honest through powerful testimony on both direct and cross examination — testimony which is honed, like Ms. Parker's was, through many time-intensive sessions with multiple members of the legal team providing feedback. Likewise, the support of key and credible fact witnesses was essential to prove Ms. Parker's case. It took time and effort to track down Mr. Birgans and Mr. Pickett, and to prepare for their direct — while also preparing for the possibility that their testimony would need to be presented by depositions. Ex. 1, Supp. Wasik Delc. ¶ 12-13. Plaintiff's counsel was similarly

ready for either live testimony or video deposition of Ms. Wallace. Preparation of the cross examinations of Defendant's witnesses, Ms. Price, Mr. Moppins, and Mr. Vora, was also time intensive, and proved effective. This thorough and reasonable preparation by Plaintiff's counsel yielded excellent results. Before trial, the Court granted seven out of the eight Motions *in Limine* that Plaintiff had filed. Dkt. 156. Further, the jury instructions given by the Court were largely drawn from those proposed by Plaintiff, and did not include the highly objectionable instruction on hostile work environment sought by Defendant. *See* Dkt 147 at 28. At the conclusion of trial, Ms. Parker achieved not just a judgment in her favor, but a verdict of $725,000.

Lastly, Defense counsel omits the fact that the vast majority of the joint pretrial and trial work of the Parties was completed by Plaintiff's legal team. Ex. 1, Supp. Wasik. Dec. ¶¶ 14-15. Plaintiff's counsel completed a first draft of the pretrial order and combined the Parties' competing jury instructions into a document useful for the Court. Plaintiffs' counsel oversaw staff gathering and printing all trial exhibit binders for the Court, witnesses, and Parties, as well as adjusting the redactions to exhibits to account for pretrial and trial rulings, and editing and preparing Ms. Wallace's video deposition. This time-consuming work inured to the benefit of both Parties as well as the Court. *Id*.

Although Defendant takes aim at the overall size of Ms. Parker's legal team over time, the staffing was reasonable given the necessary rotation of staff on the case over the course of over four years of litigation, and the necessity of various team members to fill in for one another when other were unavailable due to other work or absences. For example, Washington Lawyers' Committee lawyers Tristin Brown and Tiffany Yang each spent approximately a year at the Committee during their fellowships, contributed to separate portions of the case, and never worked on the case at the same time. Dkt. 176-1, ¶¶ 6 -7.  Similarly, Fish & Richardson attorneys

faced intense competing demands on their time, including at critical junctures in this case, requiring a legal team large enough to provide vigorous prosecution of Ms. Parker's case even when not all team members were available. Ex. 1, ¶ 7.  Ms. Parker has already removed duplicative time and time spent by any new counsel learning the case.

Despite observing that Plaintiff's counsel invested significant resources representing Ms. Parker at each phase of this case, RSCI makes no attempt to specify how many hours it contends would have been reasonable.  Instead, RCSI casts aspersions about the amount of fees spent at each phase, and couples those aspersions with specific outlier time entries.[6]  A response to each specific complaint made by RCSI is provided in the following table:

| RCSI Complaint | Response |
|---|---|
| "F&R eliminated . . . time for multiple attorneys to attend depositions, court hearings, conferences, trial and internal meetings and 'mock appellate arguments.'"  Dkt. 179 at 10-11. | Elimination of entries from a motion for fees demonstrates reasonable efforts to eliminate disputes over fees while zealously advocating for Ms. Parker's civil rights, rather than a "lack of basic checks and balances" as suggested by RCSI. |
| "Prior to the Complaint ever being filed, Plaintiff's counsel had spent $31,045 in legal fees." Dkt. 179 at 11. | Pre-filing investigation and due diligence are critical steps before filing any lawsuit. Plaintiffs' counsel file lawsuits only after thorough investigation and research. |
| "Messrs. Davis and Kopsidas, who only sporadically assisted in the past few years, were lead counsel at trial but played only minor roles in the actual trial." Dkt. 179 at 11. | Messrs. Kopsidas and Davis were co-lead counsel at trial due to their significant experience trying jury cases, and each held critical roles at trial.  Mr. Kopsidas conducted the cross-examination of Mr. Moppins, and presented a compelling opening statement. Moreover, he is as knowledgeable about the case as anyone, having managed it from the beginning. In addition, he supervised attorneys with fewer years of experience to ensure that Ms. Parker attained high quality representation.  Mr. Davis conducted the direct examination of Ms. Parker, |

---

[6] In addition, RCSI critiques Fish & Richardson for its devotion to pro bono matters, suggesting without any basis that Fish & Richardson's attorneys "use the proverbial 'pro bono bucket' as a place to simply dump time entries to meet billable hour goals." *See* Dkt. 179 at 10.  This type of serious *ad hominem* attack is without merit, and is unproductive.

| RCSI Complaint | Response |
|---|---|
|  | which lasted several hours, presented compelling closing arguments, and likewise supervised other attorneys with fewer years of experience. |
| "For each day from December 3, 2021 to December 9, 2021 Plaintiff's counsel charged 30, 17.7, 38, 45.1, 41.4, 21.2 and 14.6 hour respectively." Dkt. 179 at 12. | Preparation and presentation of numerous witness examinations, deposition designations, exhibit objections, and other tasks are time-consuming endeavors. Ms. Parker's civil rights are deserving of this type of high quality legal representation. |
| "173.4 hours at a cost of $54,325.00 spent Responding to the Motion for Summary Judgment." Dkt. 179 at 12 (also addressing motion to dismiss, Fourth Circuit appeal) | RCSI filed a 27-page motion for summary judgment on both counts of Plaintiff's case. Dkt. 116-1. The record on summary judgment was 706 pages, and included 33 exhibits, as well as numerous depositions presented with 4-pages per sheet. *See* Dkt. 120-1. The Court's order denied RCSI's motion in a 25-page opinion. The issues were complex and required significant effort to address in a compelling manner. The same is true of RCSI's motion to dismiss and the resulting appeal that set precedent in the Fourth Circuit. |
| "[D]uplicative time entries which mirrored themselves in the billing reports." Dkt. 179 at 13. | It is unsurprising that time entries would repeat themselves. Many activities are repetitive, such as preparing for trial, drafting discovery requests, interviewing witnesses, conducting legal research, and working on deposition outlines. The mere fact that billing entries are repetitive does not render any such entries unnecessary or excessive. |
| "10 hours were spent by four different attorneys reviewing the documents from the EEOC which included roughly 20 pages." Dkt. 179 at 13. | RCSI's calculation of the number of hours spent reviewing EEOC records is erroneous, and includes entries such as "preparing stipulated protective order," "review and prepare summary of RCSI's response to written discovery," among others. Dkt. 179-2 at 66. |
| "'[M]ock appellate argument' entries" Dkt. 179 at 13. | Fish & Richardson's entries regarding "mock argument" or "moot hearing" occurred between November 23, 2017 and December 1, 2017—i.e., the days leading up to the motion to dismiss hearing, and are unrelated to the Fourth Circuit appellate argument. |

| RCSI Complaint | Response |
|---|---|
| | The time spent by Washington Lawyers' Committee attorney Dennis Corkery preparing for the Fourth Circuit oral argument that he conducted, including mock appellate argument sessions, is fully compensable. Dkt. 176-2 at 4-5. |
| "Over 23.6 hours were spent drafting a 30(b)(6) deposition notice . . . ." Dkt. 179 at 13. | RCSI's calculation of the number of hours spent drafting a deposition notice ignorse that the entries in question include other tasks such as drafting written discovery requests, drafting subpoenas, and reviewing documents. Dkt. 179-2 at 66-67. |
| "More than 40 hours were spent by five people participating in preparing for Ms. Parker's deposition" Dkt. 179 at 13. | Ms. Parker had never testified before and her deposition was among the most important events in the case. It warranted significant preparation with experienced counsel. Ms. Parker's civil rights are deserving of this type of high-quality legal representation. |
| "1.5 hours were spent by Mr. Kopsidas on 'Pickett deposition' and he was not even present." Dkt. 179 at 14. | Although Mr. Kopsidas was not present at the deposition of Mr. Pickett, he coordinated closely with Ms. Burgener throughout the day about the deposition, including calls before the deposition and during breaks in the deposition. |
| "More than a day and a half in hours was spent in billing for preparation of the mediation statement." Dkt. 179 at 14. | Plaintiff's counsel took mediation seriously, and carefully assessed the strengths and weaknesses of Ms. Parker's case to present a reasonable settlement demand, and to prepare for a productive negotiation. Defendant's counsel was unwilling to offer anything beyond a nuisance settlement amount, resulting in the need for further litigation and fees. |
| "Plaintiff's counsel has identified 'team' meetings and summaries among Plaintiff's counsel which totaled 244 hours in the billing . . . ." Dkt. 179 at 14. | RCSI's calculation of 244 hours allegedly associated with team meetings includes any entry with the word "team" in the bucket of "team meetings," including meetings with Ms. Parker, trial preparations, and other tasks. *See, e.g.*, Dkt. 179-2 at 74 ("incorporate feedback from WLC team into Price outline"). The mere fact that a time entry includes coordination with colleagues does not in any way render the underlying task excessive, unnecessary, or duplicative. |

14

### IV.      Modifications to Fees Requested

Notwithstanding the above, Plaintiff requests a few alterations to the fees requested in her motion. Dkt. 176. With the goal of narrowing the issues for the Court, Plaintiffs' counsel will withdraw its request for the following entries:

| Description | Fee |
|---|---|
| Prepare draft of media release | $1,080 |
| Fees associated with subpoena to Mr. Moppins' former employer Olgoonik Development, LLC | $5,157.50 |
| 5.2 hours associated with "Draft deposition outline for Larry Moppins."[7] | $1,170 |
| Fees associated with one-third of the value of Fish & Richardson's work on the appeal to the 4th Circuit Court of Appeals (25.7 hours of work), given that Plaintiff prevailed on 2 out of 3 issues on appeal.[8] | $8,835 |
| **Total** | **$ 16,242.50** |

Per the above, Plaintiff is submitting an updated chart of the fees of Fish & Richardson as Exhibit 2, as well as an updated chart of the fees of the Washington Lawyers' Committee as Exhibit 3. In each of these exhibits, Plaintiff has crossed out the entries for which she withdraws her requests and has provided new totals for the Court.

In addition, Plaintiff requests an upward adjustment to her fee request to account for a portion of her attorneys' work on her reply briefs.[9] She requests an additional $4,970.00 for 14.2 hours spent by the Washington Lawyers' Committee for Civil Rights on the present Reply brief as well as Plaintiff's Reply in Support of Her Motion for Entry of Judgment. The contemporaneous time records supporting this additional request have been included in Ex 3.

---

[7] The descriptions for the entries associated with these seven hours inadvertently referred to Mr. Moppins and should have referred to other witnesses. Acknowledging that the descriptions are errant, Plaintiff's counsel withdraws its request associated with these entries.

[8] The Washington Lawyers' Committee already excised one-third of its time spent working on the motion for reconsideration and appeal to the Fourth Circuit, for a total of approximately 74 hours deleted from its entries. Dkt. 176-1 at ¶ 28 (Wasik Decl.).

[9] While all of Plaintiff's time spent on the Reply briefs is compensable, she seeks only a portion of this time in an effort to streamline the issues before the Court.

15

Given these upward and downward adjustments, Plaintiff's total fee request is $955,162.50

## V.    Costs and Expenses

Defendant's critiques of Plaintiff's costs and expenses relate almost entirely to expenses that Plaintiff is not seeking (Starbucks, Popeye's, Target, Grub Hub, etc.), but rather expenses that were included in a comprehensive exhibit detailing all invoices associated with this case (Exhibit 6, Dkt. 176-6).  Plaintiff's opening brief addresses and details the taxable costs, Dkt. 176 at 17-20 (fees of the Clerk, fees for service of summons and subpoena, fees for recorded transcripts, printing fees, and fees for witnesses), as well as necessary non-taxable expenses associated with prosecuting and trying this case, *id.* at 20-21 (travel, meals, lodging, etc.).  In addressing both categories under the umbrella of non-recoverable costs under 28 U.S.C. § 1920, RCSI ignores that the Fourth Circuit treats reasonable expenses as recoverable where, as here, the plaintiff is entitled to attorneys' fees.  *See Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986).

As set forth in detail below, Plaintiff will submit a bill of costs after entry of judgment, and seeks to recover only certain discrete categories of non-taxable expenses.  In particular, for the largest expense included in Plaintiff's opening brief—the "Meals & Lodging" expenses incurred by Fish & Richardson—Plaintiff's counsel is seeking recovery of a small fraction of the hotel bill associated with the week of trial.

### <u>Non-Taxable Expenses</u>

Plaintiff's counsel incurred significant expenses prosecuting this case for over four years, including substantial expenses associated with a three-day trial.  The expenses that Plaintiff's counsel seeks to recover were necessary and reasonable:

**Meals & Lodging**: In order to diligently and zealously represent their client, Plaintiff's counsel elected to stay in a hotel in Greenbelt, MD, near the courtroom, in the days before and

during trial. This was necessary for those days in which counsel and staff worked late into the evening and early in the morning to ensure that the trial was tried efficiently and effectively. These expenses were necessary and reasonable for Plaintiff's entire trial team[10]; however, in order to minimize the disputes before the Court, Plaintiff is willing to reduce the "Meals & Lodging" category for Fish & Richardson to cover only 3 individuals during trial, reducing "Meals & Lodging" to **$4,242.12** (calculated by multiplying the $18,382.53 bill from the Crowne Plaza hotel in Greenbelt by 3/13, *see* 176-6 at 212).[11]   In addition, Plaintiff's counsel maintains its request for **$390.27** in "Meals & Lodging" for the Washington Lawyers' Committee associated with travel to the oral argument at the Fourth Circuit.

**Travel**: Throughout the course of this case, Plaintiff's counsel has traveled to and from hearings, depositions, and trial. Although these expenses were necessary and reasonable, and the amount that Plaintiff's counsel sought in its motion for fees was a mere $530.98, Plaintiff's counsel will withdraw its request for Fish & Richardson's travel expenses in order to reduce the disputed issues before the Court. Plaintiff's counsel maintains its request for **$27.49** in "Local Travel" for the Washington Lawyers' Committee as well as **$41.32** in travel associated with travel to the oral argument at the Fourth Circuit.

**Trial Assistance**: Throughout the trial, Mr. Dave Sayres from Tangent Computer Solutions presented exhibits and deposition videos. Mr. Sayres prepared deposition video clips for use at trial, and synced the videos to transcripts and exhibits that were displayed

---

[10] This included 8 attorneys, one paralegal, two secretaries, and one computer technician. In addition, Ms. Parker stayed at the Crowne Plaza hotel. Further, Plaintiff notes that Defense counsel stayed at this same hotel during trial, supporting the reasonableness of the choice of hotel.

[11] Notably, Defendant makes much ado about miscellaneous snack and coffee expenses; those were not part of Plaintiff's counsel's request for trial expenses, but rather included in the comprehensive list of invoices attached as Exhibit 6 to Plaintiff's motion.

concurrently.  These efforts included a deposition video that was played for one witness who was unable to attend the trial (Ms. Angela Wallace), and other deposition videos prepared as contingency plans due to the unpredictable nature of trial during the COVID-19 pandemic.  In addition, Mr. Sayres displayed exhibits throughout trial, not just at Plaintiff's request, but occasionally at the Court's.  His trial assistance expenses contributed to the seamless presentation at trial, at a reasonable cost of **$7,480.00**.  This entire amount was reasonable and necessary to present an efficient trial.

**Total**: In sum, Plaintiff's counsel has modified its request for non-taxable expenses to the following for the Washington Lawyers' Committee (WLC) and Fish & Richardson (F&R):

| Category | Expense |
| --- | --- |
| WLC Local Travel | $27.49 |
| WLC Travel to 4th Circuit Oral Argument | $41.32 |
| WLC Meals & Lodging for 4th Circuit Oral Argument | $390.27 |
| WLC Copying & Duplicating | $10.86 |
| F&R Travel | $0.00 |
| F&R Meals & Lodging for Trial | $4,242.12 |
| F&R Trial Assistance | $7,480.00 |
| **Total** | **$12,192.06** |

### Taxable Costs

Pursuant to D. Md. Local Rule 109.1, a bill of costs shall be filed within 14 days of entry of judgment.  Plaintiff's counsel included a detailed description of the taxable costs at pages 17-20 of Plaintiff's opening brief, and will continue to meet and confer with Defendant in an effort to eliminate disputes associated with the taxable costs ahead of the deadline for filing.  However, these issues do not need to be addressed at this time.

**CONCLUSION**

Plaintiff respectfully requests an award of $955,162.50 in attorneys' fees and $12,192.06 in costs.

Dated:  February 4, 2022                    Respectfully submitted,

By:  */s/ Joanna Wasik*
    Dennis A. Corkery (Bar. No. 19076)
    Joanna K. Wasik (Bar. No. 21063)
    **WASHINGTON LAWYERS' COMMITTEE**
    **FOR CIVIL RIGHTS AND URBAN AFFAIRS**
    700 14th Street NW, Suite 400
    Washington, DC 20036
    Telephone: (202) 319-1000
    Facsimile: (202) 319-1010

    Andrew R. Kopsidas (Bar No. 16057)
    Ahmed Davis (admitted *pro hac vice)*
    Daniel A. Tishman (admitted *pro hac vice*)
    Taylor Caldwell (admitted *pro hac vice*)
    **FISH & RICHARDSON P.C.**
    1000 Maine Avenue, SW
    Suite 1000
    Washington, DC 20024
    Telephone: (202) 783-5070
    Facsimile: (202) 783-2331

    *Counsel for Plaintiff Evangeline J. Parker*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4th Day of February, 2022, true and correct copy of the was served through the Court's ECF system on the following:

Donald J. Walsh
RKW,LLC
10075 Red Run Blvd, 4th Floor, Owings Mill, MD 21117
DWalsh@RKWlawgroup.com

*/s/ Joanna Wasik*

20