**IN THE UNITED STATES DISTRICT COURT**
**For the District of Maryland**
**Greenbelt Division**

|  |  |
|---|---|
| **EVANGELINE J. PARKER,** | |
| **Plaintiff,** | **Civil No. 8:17-cv-01648-TDC** |
| **v.** | |
| **REEMA CONSULTING SERVICES, INC.** | |
| **Defendant.** | |

**SUPPLEMENTAL DECLARATION OF JOANNA WASIK IN SUPPORT OF
PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS**

I, Joanna K. Wasik, declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge:

1.  I am over the age of 18 and am legally competent to make this declaration. I submit this supplemental declaration in further support of Plaintiff's Motion for Attorneys' Fees and Costs.

2.  Plaintiffs have made multiple settlement overtures to Defendant throughout the course of this litigation. On September 27, 2017, Plaintiff made a settlement demand of $80,000 to Defendant. This offer was inclusive of damages and attorneys' fees and costs. Because $80,000 was an opening demand, Plaintiff was prepared to settle the case for less than this amount.

3.  On September 29, 2017, Defendant rejected Plaintiff's settlement offer. The letter rejecting the offer stated: "We find your unsupported demand of $80,000 to be as offensive as her allegations." It also stated, "[a]t this time, my client is willing to pay no more than nuisance value to bring this matter to an end."

1

4.   On September 18, 2020, after the conclusion of discovery but prior to Defendant's motion for summary judgment, I sent a letter to Defendant with an opening demand of $85,000 in damages and $210,000 in attorneys' fees to settle Ms. Parker's claims at the Parties' upcoming mediation with Magistrate Judge Sullivan. Plaintiff's attorneys' fees had accumulated in the three years since the filing of the case, and discovery had unearthed strong evidentiary support for Ms. Parker's allegations. We were confident that Ms. Parker would prevail on her claims, but she was nevertheless willing to settle for less than this opening demand (both in terms of damages and fees) in order to save the time and expense of summary judgment and trial.

5.   On September 29, 2020, Defendant rejected our attempt to enter into negotiations, again stating that it would offer only nuisance value for Plaintiff's claims and fees. Judge Sullivan cancelled our mediation session.

6.   In discovery, Defendant listed thirteen witnesses in its interrogatory responses. Most of these witnesses were former employees of the Defendant company. We made efforts to locate and, where possible, depose these individuals.

7.   I understand from my co-counsel at Fish & Richardson that they faced intense competing demands on their time while working on this case. For example, they litigated numerous other cases that went to trial or required their full attention during the course of this litigation, including at critical times in this case. Further, one attorney, Andrew Huh, left the firm during the case. Fish & Richardson staffed their legal team so that there always existed available members of their legal team to provide excellent representation to Ms. Parker from 2017 to 2022. According to the declaration of my co-counsel Andrew Kopsidas, Fish & Richardson has removed all entries for six attorneys and seven support staff from their firm.

8.   In May 2021, approximately six months before trial, my co-counsel Andrew Kopsidas sent an email to Defense counsel in advance of a conference with the court. The Parties discussed the potential length of a trial in this case. While Plaintiffs indicated that we believed a trial of 3-4 days would be appropriate, Defense counsel replied that "I suspect it will be at least a week given the volume of witnesses who are involved." Defense counsel also noted that "we have a total of 10-11 expected possible witnesses."

9.   In August 2021, when Plaintiff's counsel proposed to Defense counsel that witness lists be exchanged in September to minimize unnecessary work, Defense counsel indicated he was busy and could not respond until October. Our legal team continued our trial preparations on the assumption that Defendant may call 10-11 witnesses at trial.

10. At the end of September 2021, Plaintiff's counsel voluntarily disclosed Plaintiff's witness list to Defense counsel in an effort to streamline the remaining trial preparation. In early October 2021, Defense counsel noted for the first time that Defendant would not in fact call anyone other than the witnesses on Plaintiff's list, with the possible exception of Donte Jennings.

11.  The Parties participated in a meet and confer teleconference on October 14, 2021. During this teleconference, we discussed the potential Motions in Limine that the parties intended to file. In an effort to obviate the need for a motion on the *Farragher/Ellerth* defense, I noted that this Court had ruled in its Memorandum Opinion denying Defendant's Motion for Summary Judgment that the defense was inapplicable given the facts of Ms. Parker's case. Defense counsel disagreed. As a result, Plaintiff's counsel had no choice but to research, brief, and file a Motion in Limine to exclude the *Farragher/Ellerth* defense from trial.

12. During this same October 14 teleconference, Defense counsel stated that he retained the right to argue to the jury that Ms. Parker could not meet the prong of her claim that the

harassment she faced was "based on sex." As a result of this position, Plaintiff's counsel had to research, brief, and file a Motion in Limine to exclude the line of argument that a rumor that a rumor that Ms. Parker had obtained a promotion through a sexual relationship with a supervisor was not "based on sex." The Motion in Limine was based on the law of the case doctrine as established by the Fourth Circuit's precedential opinion and this Court's Memorandum Opinion denying Defendant's Motion for Summary Judgment.

13.  As a part of Plaintiff's trial preparation, Plaintiff's counsel prepared for the eventuality that certain witnesses over whom Plaintiff did not have control would not come to trial, despite their having been served with subpoenas. In particular, Plaintiff's counsel was able to maintain only sporadic contact with Mr. Pickett, whom we prepared for trial on the limited basis he made himself available. We therefore spent time preparing different versions of his direct examination outline to be able to adjust during trial to the testimony that he would give. We also spent time preparing for the possibility that we would have to present his deposition by reading it into the record (since a video was not taken of Mr. Pickett's deposition), which required close review of his deposition transcript and Plaintiff and Defendant's designations and counter-designations thereto.

14. Plaintiff's counsel had even less contact with Mr. Birgans, and had to similarly prepare for multiple outcomes given the unpredictability of his testimony and the possibility that he would not give live testimony, including preparing a deposition video.

15. Before trial and during trial, Plaintiff's counsel shouldered the vast majority of the burden of the Parties' joint work. For example, Plaintiff's counsel prepared the first draft of the Parties' Joint Pretrial Order. Plaintiff's counsel also combined the Parties' competing jury instructions into a format that was useful and digestible for the Court.

16. Plaintiff's counsel also oversaw staff work to identify, gather, and print all trial exhibits for the court, witnesses, and Parties. During trial, Plaintiff's counsel oversaw the proper redaction of exhibits to account for the Court's pretrial rulings and replaced exhibits in the Court's, witnesses', and Parties' binders as necessary. When the Parties agreed to play the video deposition of Angela Wallace in lieu of live testimony by Ms. Wallace, Plaintiff's counsel worked with a trial technician to splice together the Parties' competing deposition designations into a format that was useful for the jury.

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED this 4th day of February, 2022.

_____
Joanna K. Wasik