UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| EVANGELINE J. PARKER, <br><br> Plaintiff, <br><br> v. <br><br> REEMA CONSULTING SERVICES, INC., <br><br> Defendant. | Civil Action No. TDC-17-1648 |

**MEMORANDUM OPINION**

Plaintiff Evangeline J. Parker filed this civil action against Defendant Reema Consulting Services, Inc. ("RCSI") in which she alleged that while working at RCSI, she was subjected to sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2, 2000e-3 (2018). At trial, the jury returned a verdict in favor of Parker, and the Court entered a judgment awarding her back pay and compensatory and punitive damages. ECF Nos. 170, 182. Pending before the Court is Parker's Motion for Attorneys' Fees and Expenses, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

On May 15, 2017, Parker filed the Complaint in this case, asserting claims of a hostile work environment based on sex, retaliatory termination, and discriminatory termination, in violation of Title VII. On December 7, 2017, the Court (Titus, J.) dismissed all of Parker's claims. The hostile work environment and retaliatory termination claims were dismissed on the grounds that the

alleged harassment against her, which was based on a rumor that she had had an affair with a supervisor, was not actionable under Title VII because it could not constitute a hostile work environment because of sex. The discriminatory termination claim was dismissed because she failed to exhaust administrative remedies by asserting the claim before the United States Equal Employment Opportunity Commission ("EEOC") or the relevant state agency. On appeal, the United States Court of Appeals for the Fourth Circuit reversed the dismissal of Parker's hostile work environment and retaliatory termination claims on the grounds that allegations of harassment based on a rumor that a female employee had such an affair could be properly construed as based on sex. *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 305 (4th Cir. 2019). The Fourth Circuit affirmed the dismissal of Parker's discriminatory termination claim. *Id.* at 306. After remand, the parties completed discovery, and RCSI filed a Motion for Summary Judgment, which was denied. After a four-day trial on Parker's hostile work environment and retaliatory termination claims, the jury returned a verdict in favor of Parker on both counts. The jury awarded Parker a total of $725,000 in compensatory and punitive damages, which was reduced to $50,000 as a result of Title VII's statutory cap. *See* Judgment at 3, ECF No. 182. The Court also awarded Parker $33,039.37 in back pay and $10,681.08 in prejudgment interest on back pay. *Id.*

## DISCUSSION

In her Motion, Parker seeks an award of attorney's fees and costs pursuant to Title VII, which permits such an award to a prevailing party. 42 U.S.C. § 2000e-5(k). Parker was represented throughout this litigation by attorneys from the law firm of Fish & Richardson, P.C. ("Fish & Richardson") and the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("WLC"), both on a *pro bono* basis. Parker initially requested $966,435 in attorney's fees and $27,853.55 in costs. In her reply brief, Parker revised her request by removing certain entries

2

and adding others, resulting in a revised demand of $955,162.50 in attorney's fees and $12,192.06 in costs. RCSI does not dispute that Parker was a prevailing party eligible for an award of attorney's fees and costs but opposes the request as unreasonable and argues against the award of any fees or, in the alternative, for an award equivalent to Parker's statutory recovery, $83,000.

Though Parker's Motion also requests taxable costs, such costs were addressed separately in a June 24, 2022 Clerk's Order Taxing Costs and will not be addressed here.

I.  **Legal Standard**

Under Title VII, a court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e-5(k). The standard for granting attorney's fees under Title VII is "identical" to the standard for doing so under 42 U.S.C. § 1988. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 n.10 (4th Cir. 1995). In such an action, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). Fee awards must be fair and fully compensate prevailing attorneys but are not intended to produce windfalls to attorneys. *Martin*, 48 F.3d at 1359. To that end, fee applicants "should exercise 'billing judgment' with respect to hours worked." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In calculating an award of attorney's fees, a court first "determine[s] a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). The court then must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones" and award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* at 88 (quoting *Robinson*, 560 F.3d at 244).

3

## II. Attorney's Fee Award

As an initial matter, to the extent that RCSI argues that Parker should not be awarded any attorney's fees or costs, the Court rejects that argument. Even though Parker's attorneys originally took the case *pro bono* and have stated that they intend for any attorney's fees awarded to be given to WLC, those circumstances do not preclude an award. *See Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234-35 (4th Cir. 2001) (stating that "courts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client and, in some cases, received public funding"). Where the attorneys achieved a very favorable result for Parker after protracted litigation, the Court will, in its discretion, award attorney's fees and costs. *See Martin*, 48 F.3d at 1359.

## III. Lodestar Calculation

In determining the reasonableness of the billing rates and hours worked to be used in a lodestar calculation, the Fourth Circuit has directed courts to consider the following factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors"):

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 & n.5. A court is not required to conduct a specific analysis of each of the *Johnson* factors if they are considered and addressed more broadly. *See, e.g., Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 836 (D. Md. 2005); *Murrill v. Merritt*, No. DKC-17-2255, 2020 WL

4

1914804, at *3 (D. Md. Apr. 20, 2020). Here, the Court finds that, upon consideration, the seventh, tenth, and eleventh *Johnson* factors are not particularly relevant to the present case.

### A. Reasonable Rates

In considering the reasonableness of the proposed hourly rates, the Court primarily considers the fourth, fifth, ninth, and twelfth *Johnson* factors. The reasonable hourly rate requirement is typically met by compensating attorneys at prevailing market rates in the community, ordinarily "the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc.*, 31 F.3d at 175. Here, Parker has requested that the court apply hourly rates that fall within the guideline ranges for attorney's fee calculations based on each attorney's years of experience, as set forth in Appendix B to the Local Rules of this Court. *See* D. Md. Local R. App. B.3. Though these ranges are non-binding, they are "presumptively reasonable." *EEOC v. Freeman*, 126 F. Supp. 3d 560, 575 (D. Md. 2015).

RCSI argues that there is insufficient evidence to support Parker's requested rates. However, the affidavit of a local attorney "familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" is sufficient to verify the prevailing market rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009). Here, Parker has submitted a declaration from a local civil rights practitioner "familiar with what lawyers in Maryland charge their clients" and "familiar with fee awards for civil rights cases in the District of Maryland" which states that the requested rates "are appropriate and reasonable" considering the experience of the attorneys and the rates that they would charge to other clients. Jeon Decl. ¶¶ 12, 14, Mot. Ex. 5, ECF No. 176-5; *see Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir. 2007) (noting that the prevailing market rate can be determined by evidence of what attorneys earn from paying clients in similar circumstances). This declaration, which

addresses the fifth, ninth, and twelfth *Johnson* factors, provides significant support for the reasonableness of the hourly rates.

Moreover, the requested rates are significantly lower than the actual billing rates employed by the Fish & Richardson attorneys and generally lower than the rates requested by the WLC attorneys in other cases. *See* Kopsidas Decl. ¶ 21, Mot. Ex. 3, ECF No. 176-3; Wasik Decl. ¶ 31, Mot. Ex. 1, ECF No. 176-1. Though these rates may reflect work in Washington, D.C., this case was litigated nearby at the United States Courthouse in Greenbelt, Maryland, which is part of the Washington, D.C. metropolitan area, and the actual practice of the requesting attorneys is relevant in establishing reasonableness, particularly on the fourth *Johnson* factor of the opportunity cost to the attorneys.

Based on the present record, and based upon a consideration of the relevant *Johnson* factors, the Court finds that the proposed hourly rates set forth above are reasonable with the following adjustments. The Court will reduce the hourly rate applicable to Dennis Corkery and Joanna Wasik from $350 to $300, because the $350 figure is at the high end of the Local Rules range for attorneys with 9-14 years of experience, and these attorneys each had only nine years of experience, the low end of that range. This revised rate also aligns with the $300 rate proposed for Andrew Huh of Fish & Richardson, an attorney with the same level of experience. For similar reasons, the Court will also adjust the hourly rate applicable to Andrew Kopsidas and Ahmed Davis of Fish & Richardson from $475—the high end of the 20-plus year experience range—to $425, because these attorneys' 23 years of experience place them at the lower end of that range. While these figures are lower than these attorneys' standard billing rates, where the attorneys took this case *pro bono* and were thus prepared to litigate this case without compensation, such a

difference remains consistent with the sixth *Johnson* factor, the attorney's expectations at the outset of the litigation. The Court will therefore award fees based on the following hourly rates:

**Table 1: Revised Rates**

| Name | Years | Requested Rate | Guideline Range | Revised Rate |
|---|---|---|---|---|
| Andrew Kopsidas | 23 | $475 | $300-475 | $425 |
| Ahmed Davis | 23 | $475 | $300-475 | $425 |
| Joseph Colaianni | 26 | $475 | $300-475 | $475 |
| Daniel Tishman | 11 | $350 | $225-350 | $350 |
| Andrew Huh | 9 | $300 | $225-350 | $300 |
| Tracea Rice | 4 | $225 | $150-225 | $225 |
| Taylor Burgener | 5 | $225 | $165-300 | $225 |
| Dennis Corkery | 9 | $350 | $225-350 | $300 |
| Joanna Wasik | 9 | $350 | $225-350 | $300 |
| Tiffany Yang | 1 | $200 | $150-225 | $200 |
| Tristin Brown | 1 | $200 | $150-225 | $200 |
| Samantha Weaver | Paralegal | $150 | $ 95-150 | $150 |

**B.     Reasonable Hours**

As for the reasonableness of the hours worked, the Court primarily considers the first, second, third, and eighth *Johnson* factors. Parker has provided charts reflecting actual hours worked by the specific Fish & Richardson and WLC attorneys with descriptions of the specific tasks performed. *See* Fish & Richardson Chart, Reply Ex. 2, ECF No. 183-2; WLC Chart, Reply Ex. 3, ECF No. 183-3. The charts are organized by litigation phase and reflect the submission of quarterly fee statements, as required by the Local Rules. *See* D. Md. Local R. App. B.1. In considering the submitted charts, the Court finds that the general tasks performed by the attorneys were reasonable in light of the multiple stages of this bitterly contested and protracted litigation. This case spanned over four years and involved several dispositive motions, an appeal, a petition for a writ of certiorari, fact discovery, settlement conferences, and a trial. The dispositive motions were initiated by RCSI, not by Parker, whose attorneys were compelled to respond. While the claims fell under the familiar rubric of Title VII claims for a hostile work environment, retaliatory

termination, and discriminatory termination, the underlying legal theory of how the rumor about Parker invoked sex stereotypes and constituted discrimination based on sex was sufficiently novel and difficult, as reflected by the Fourth Circuit's precedential opinion on the issue, that those aspects of the case necessitated more than the typical amount of legal work. *See Parker*, 915 F.3d at 303-04. Furthermore, RCSI's own actions, including the rare litigation step of filing a petition for a writ of certiorari to the United States Supreme Court after the Fourth Circuit's decision, prolonged the litigation. *See* Pet. for a Writ of Certiorari, *Reema Consulting Services, Inc. v. Parker*, No. 18-1442, 140 S. Ct. 115 (2019). A review of the submitted charts demonstrates that the entries generally reflect reasonable litigation tasks under the circumstances of this case. Notably, Parker has already removed several billing entries that were either erroneous or related to non-litigation tasks such as press releases.

In objecting to the reasonableness of the hours billed, RCSI primarily argues that the fact that the attorneys had agreed to represent Parker on a *pro bono* basis resulted in the overstaffing of attorneys working on what RCSI deemed to be a relatively simple case. Their objection implicates the first, second, third, fifth, and eighth *Johnson* factors. The Court agrees with RCSI's objection to a certain extent. The Fourth Circuit has continuously reaffirmed its "sensitiv[ity] to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney." *Rum Creek Coal Sales, Inc.*, 31 F.3d at 180. In *Goodwin v. Metts*, 973 F.2d 378 (4th Cir. 1992), the Fourth Circuit affirmed the district court's disallowance of approximately 50 percent of attorney hours claimed because the case was overstaffed when "one or two lawyers would have sufficed . . . as opposed to the four employed." *Id.* at 384. Overstaffing, the court concluded, was a "sound basis for disallowing attorney hours spent." *Id.* at 385; *see also Spell v. McDaniel*, 852 F.2d 762, 768-70 (4th Cir. 1988) (reducing hours billed on an appeal from

approximately 1,400 to 420, a roughly 70 percent reduction, based on the court's conclusion that the work could have been performed by two attorneys billing 35 hours a week and that the billing records reflected "substantial duplication of effort amongst at least four attorneys").

This sensitivity is also reflected in the Local Rules guidelines regarding compensable and non-compensable time, which state that only "one lawyer for each separately represented party shall be compensated" for attending depositions and hearings. D. Md. Local R. App. B.2(b)-(c). Similarly, "only one lawyer is to be compensated for client, third party, and intra-office conferences," though the time may be "charged at the rate of the more senior lawyer." *Id.* App. B.2(d).

Parker's billing charts reflect hours worked by 11 attorneys and one paralegal across Fish & Richardson and WLC, including three attorneys billing in the highest range provided in this Court's Local Rules. *See supra* Section III.A. In contrast, RCSI had a total of only six attorneys enter an appearance in this case, at varying times. Only two attorneys worked for RCSI on its Motion for Summary Judgment, *see* Mot. Summ. J. at 28, ECF No. 116-1, as opposed to the eight attorneys listed on Parker's memorandum in opposition to that motion, *see* Opp'n Mot. Summ. J. at 35-36, ECF No. 118. Likewise, only two attorneys appeared at trial for RCSI, as compared to the seven attorneys who appeared on behalf of Parker.

Although the Court applauds the commitment of Parker's legal team to ensure that Parker received high-level, comprehensive representation even though the case was handled on a *pro bono* basis, the Court agrees with RCSI that the involvement of so many different attorneys renders the overall number of hours billed beyond what is reasonable for an attorney's fee award. Though Parker argues that her attorneys have exercised "billing judgment" by "excis[ing] the time spent by other . . . attorneys that assisted in limited capacities," *see* Kopsidas Decl. ¶ 19, the participation

9

of so many attorneys necessarily resulted in additional and often duplicative hours spent reviewing work product and discussing the case. For example, the records reflect that at least four attorneys, including attorneys at the same firm—Andrew Kopsidas, Ahmed Davis, Dennis Corkery, and Andrew Huh—billed for reviewing the Fourth Circuit's opinion, resulting in 4.6 hours with a total value of $1,995 in fees. *See* Fish & Richardson Chart at 12; WLC Chart at 5. Likewise, while both Fish & Richardson and WLC have submitted affidavits stating that they have excised hours in compliance with the District's guidelines limiting duplicative billing, *see* Kopsidas Decl. ¶¶ 15-17; Wasik Decl. ¶¶ 23-25, a review of the submitted entries reflects that such excising was not entirely complete and that the attorneys did not excise duplicative hours across the two legal organizations. By way of example, both Andrew Kopsidas and Andrew Huh of Fish & Richardson, as well as Dennis Corkery of WLC, recorded hours for an April 6, 2017 meeting with Parker and each other. *See* Fish & Richardson Chart at 2; WLC Chart at 1.

Accordingly, the Court will reduce the fee award to account for the presence of more attorneys than reasonably necessary to litigate this case. Specifically, the Court finds that in general, this case could have been litigated by two reasonably competent attorneys and will thus include the hours of only two attorneys for each phase of the case. For each litigation phase as defined by the Local Rules—case development, pleadings, written discovery, depositions, motions practice, attending court hearings, trial preparation, attending trial, ADR, and fee petition preparation—the Court has identified the senior attorney and junior attorney who spent the most time working on that phase and will include their hours as reasonable while disallowing all other hours billed in the same phase. To the extent that the billing charts allow for further specificity within a phase, for example by individual motion or deposition, the Court identified and included only the hours billed by the two attorneys who spent the most hours on each specific motion or

deposition. Consistent with the Local Rules, the Court has included the hours of only a single attorney for attendance at a deposition, hearing, or client, third party, or intraoffice conference.

The Court will also adjust the total hours counted for trial preparation. The litigation of the Motion to Dismiss and the Fourth Circuit appeal related to a novel issue of law and thus justified a greater than typical expenditure of attorney time. However, after remand, the case involved a relatively straightforward employment discrimination case with two Title VII claims requiring only seven depositions and approximately three and a half days of trial before deliberations began. After adjusting to include only hours worked by two attorneys, the Court calculates the remainder of Parker's requested hours relating trial preparation to consist of 543 hours, or approximately 68 attorney work days. The Court finds that this number is still beyond what is reasonable for an attorney's fee award. Notably, the trial preparation billing entries include a significant number of hours from August and September 2021, over three months before trial, described only as relating to "trial preparations" or some other vague term, in contravention of the Local Rules's requirement of "a detailed description of the work performed broken down by hours . . . expended on each task." D. Md. Local R. 109.2(b); *see* Fish & Richardson Chart at 43-45. For a trial of this length and complexity, the Court concludes that a reasonable fee request for trial preparation would be 400 hours, or five full work weeks for two attorneys. *See Spell*, 852 F.2d at 767-68 (calculating a reasonable number of hours that counsel exercising billing judgment could have charged). The Court will therefore subtract 143 hours from the trial preparation category subject to the fee award.

The Court's adjustments and the underlying methodology satisfy the Supreme Court's recognition that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve

auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The Court's revised calculation of attorney's fees, based on the Court's adjusted rates, is $484,980.50.

**Table 2: Revised Hours**

| Phase | Requested Hours | Requested Value | Revised Hours | Revised Value |
|---|---|---|---|---|
| Case development | 57.90 | $20,077.50 | 53.00 | $17,487.50 |
| Pleadings | 40.60 | $15,082.50 | 34.80 | $12,602.50 |
| Motions Practice | 751.85 | $227,997.50 | 408.91 | $122,137.00 |
| Written Discovery | 288.33 | $87,443.00 | 145.70 | $45,172.50 |
| Depositions | 436.82 | $137,537.00 | 279.12 | $85,671.00 |
| ADR | 61.60 | $19,225.00 | 16.10 | $5,492.50 |
| Court Hearings | 24.00 | $9,225.00 | 23.00 | $8,020.00 |
| Trial Preparation | 932.40 | $367,765.00 | 400.00 | $147,962.50 |
| Attending Trial | 131.10 | $58,460.00 | 77.90 | $29,995.00 |
| Fee Petition | 34.80 | $12,180.00 | 34.80 | $10,440.00 |
| **Total** | | **$954,992.50** | | **$484,980.50** |

## IV.  Adjustments to the Lodestar Amount

After calculation of the lodestar amount, the Court must then "subtract fees for hours spent on unsuccessful claims unrelated to successful ones" and then award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). RCSI argues that because Parker prevailed on only two of the three claims initially asserted in her Complaint, all fees for work conducted until the Fourth Circuit affirmed the dismissal of the discriminatory termination count should be reduced by one-third. It is not appropriate to award fees for unsuccessful claims, but claims involving "a common core of facts," as is the case here, make it difficult for a court to divide hours on a claim-by-claim basis. *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998) (quoting *Hensley*, 461 U.S. at 435) (vacating an award of 40 percent of fees based on a determination that the plaintiff prevailed on only 40 percent of the claims as improper). Here, Parker's discriminatory termination claim arose from the same core of facts as her other two claims but was dismissed on a distinct

legal ground: Parker failed to exhaust administrative remedies on this claim because she did not include the relevant allegations in the charging document she submitted to the EEOC. *Parker*, 915 F.3d at 306. Because the factual basis for all three claims is the same such that the claims are significantly intertwined, the Court will not reduce the fees associated with the case development and pleadings phases, as the work of investigating the case and drafting the Complaint largely applied to all claims equally.

As to the motions practice phase, however, the legal arguments were distinct and thus can be separated out. There is no need to adjust the fees associated with the appeal to the Fourth Circuit because Parker has already withdrawn entries totaling one-third of the fees from Fish & Richardson, and WLC previously excised one-third of its hours spent working on the appeal. Under the same approach, the Court will reduce by one-third its calculation of the attorney's fees to be awarded for the legal work on Parker's memorandum in opposition to RCSI's Motion to Dismiss, as the discriminatory termination claim was separately addressed in that brief and was thus the subject of a distinct legal issue on which Parker did not ultimately prevail. This adjustment results in a further reduction of $9,110.00, bringing the fee award to a total of $475,870.50.

As for the final step, the Court will award 100 percent of the remaining amount because "the most critical factor" is "the degree of success obtained," and it is beyond dispute that Parker's attorneys achieved a complete victory at trial that was not diminished in any way by the dismissal of the discriminatory termination claim. *Brodziak*, 145 F.3d at 196 (quoting *Hensley*, 461 U.S. at 436)). RCSI's objection that the fee award would significantly exceed the amount of Parker's total recovery of $83,000 does not alter this conclusion. *See Martin*, 48 F.3d at 1359 (noting that the court "has not been reluctant to affirm fee awards in excess of jury awards"). The amount in controversy and the results obtained, the eighth *Johnson* factor, is "only one of many factors that

a court should consider in calculating an award" and does require that the attorney's fee award be proportionate to the damages recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion). That is particularly true in this instance where the jury actually concluded that Parker had established $725,000 in compensatory and punitive damages, and she would have received that amount in the absence of the statutory cap on such damages. *See* Verdict, ECF No. 170. Under these circumstances, and where the litigation was prolonged by RCSI's insistence on fully litigating this $83,000 case at every turn, including all the way to the Supreme Court, the Court's award of $475,870.50 in attorney's fees is entirely appropriate.

## V.     Litigation Expenses

Finally, Parker requests a total of $12,192.06 in litigation expenses, which include costs relating to travel, meals and lodging, and trial assistance. A prevailing plaintiff is "entitled to compensation for reasonable litigation expenses" as part of the authorization of attorney's fees. *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986). Ordinarily, litigation expenses include "supplemental secretarial costs, copying, telephone costs and necessary travel." *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir. 1978). RCSI opposes Parker's request as not allowable under 28 U.S.C. § 1920, but that provision governs taxation of costs which was resolved separately in a Clerk's Order. *See Daly*, 790 F.2d at 1084 (distinguishing costs under 28 U.S.C. § 1920 from litigation expenses).

Upon review of the litigation expenses, the Court will deduct the $4,242.12 for Fish & Richardson's meals and lodging during trial as well as the $7,480.00 for technological trial assistance. Because the trial occurred at the United States Courthouse in Greenbelt, Maryland, which is located only 16 miles from the Fish & Richardson office in Washington, D.C. at which trial counsel were based, the Court finds that the cost of meals and lodging during the trial is not a

reasonable litigation expense. The same is true of the technological assistance expense, considering that only one deposition video was played at trial and the display of exhibits and videos is routinely accomplished during trials in this Court without a separate specialist. With these deductions, the Court will award the remaining $469.94 in reasonable litigation expenses.

## CONCLUSION

For the foregoing reasons, Parker's Motion for Attorneys' Fees and Expenses will be GRANTED IN PART and DENIED IN PART. The Motion is granted in that the Court will award $475,870.50 of attorney's fees and $469.94 of litigation expenses. It is otherwise denied. A separate Order shall issue.

Date: July 21, 2022

THEODORE D. CHUANG
United States District Judge